# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CHAPTER 11

IN RE:

    LUKE RECORDS, INC.·

    Debtor,

    LUTHER CAMPBELL,

    Debtor.

CASE NO. 95-11447-BKC-RAM

CASE NO. 95-12795-BKC-RAM

**JOINT PLAN OF REORGANIZATION**

**EXHIBIT A**

**LETTER-OF-INTENT**

Letter of Intent re:  Joint Plan of
Re-Organization (the "Plan") of the Luke Records and
Luther Campbell Bankruptcy Estates as proposed by
the Official
Unsecured Creditors Committee of Luke Records
and Luther Campbell

The undersigned parties agree to the terms of a plan of reorganization for the Bankruptcy Estates of Luther Campbell and Luke Records, Inc. under the following terms and conditions:

## I.  Conveyance of Assets to Joseph Weinberger/Lil' Joe Records, Inc. ("Weinberger")

A.      Luke Records, Inc., debtor and debtor in possession, Luther Campbell, debtor and debtor in possession, Pac Jam Publishing, Luke Mortgage, Inc., 2 L.C., Inc., Luke Records Fan Club, Inc., and Rockville Productions, Inc. will convey the following assets to Weinberger, conveyed and delivered to Weinberger, or his nominee or nominees, free and clear of any and all liens, claims, encumbrances, charges, setoffs or recoupments of any kind, except as noted hereinbelow, subject to an order of confirmation of the Bankruptcy Court entered pursuant to 11 U.S.C. § 1129 after notice and a hearing within the meaning of the Bankruptcy Code not later than April 1, 1996; or such later date that the parties agree.

1.      All worldwide rights to the masters, two inch and one-quarter inch reels, all DATs, production masters, video masters (one inch, three-quarter inch and betacam), film, artwork, color separations, matchprints, pictures, signs, etc. owned or controlled by Luther Campbell or Luke Records including all masters of H-Town (XR126 and XR212) (except as provided in paragraph V.C.1), but not including (a) (subject to paragraph 13 pertaining to Lorenzo and Verb and section P below); (b) (subject to Paragraph 13 and Section P below) the following "Luther Campbell" masters:  I Got Shit on My Mind, I Got Sumthin on my Mind, Luke in the Nude (nasty and clean versions) and Freak For Life, Cat. Nos. XR118; XR119; XR200; XR201; and XR6996; (c) all recordings of the artists Trellini and Society as well as any singles released from the foregoing albums and subject to paragraph 13 and Section P below. All Masters to be transferred to Weinberger under this Agreement including those pursuant to Paragraph I.A.13 and I.P. hereof, if applicable, are hereinafter referred to as the "Masters" and all other Masters are collectively referred to as the "Excluded Masters").  Luther Campbell and/or Pac Jam Publishing shall receive no royalties, whether as artist, producer, writer, publisher, or in any other capacity, on any of the masters or compositions being sold.

2.      All worldwide copyrights and/or publishing interests held by Luther Campbell, Luke Records, Inc., or Pac Jam Publishing, except as related to the compositions embodied on the Excluded Masters.

3.      The Publishers share of BMI performance monies related to the masters in paragraph I.A. above, except related to the Compositions contained on the Excluded Masters.

RCW\2507.0000\51926.19\020696

4.      All inventory wherever located, except for the inventory of the Excluded Masters.

5.      Assignment of all merchandising rights and merchandise, except that which is related to the recording artists on the Excluded Masters and all account balances of Luke Records Fan Club, Inc.

6.      Assignment of judgments belonging to Luke Records, Inc. against Patsy Billingsly, Jim Sears, and Tony Butler.

7.      Assignment of Mortgages and account balances and notes and/or proceeds held by Luke Mortgage or its attorneys for the following: Urban Constructors, Inc. ($38,000.00 net of $4,000.00 attorney's fees); Hopkins ($84,490.60) balance as of 11/10/94; Humphrey ($105,532.57) balance as of 11/29/94), including all original notes, mortgage files and copies of bank records related to the above, with a warranty that there have been no discounts given or payments received except in ordinary course.  In the event any mortgage has been foreclosed on, the proceeds shall be escrowed until closing.  Hopkins shall have the right to pay off his mortgage for the sum of $70,000.00 provided a binding commitment from an institutional lender is provided upon confirmation of the Plan and such payoff occurs no later than April 15, 1996.  Otherwise a 6 month moratorium against foreclosure shall be given, provided all then applicable monthly payments are made, in accordance with the terms of the Note, and there are no other defaults under such mortgage.

8.      Assignment of all receivables and future payments from all contracts receivables on Masters and compositions being sold, except as set forth on Exhibit "A" which are retained for Luke Records and related to the Excluded Masters, and except for masters being retained in paragraph V.B and except for receivables, if any, owing from RED, as to which the net receivable (balance on owners' activity report, less reserves) is to be divided by 50% up to a maximum of $200,000.00 to Weinberger and the remaining amount shall be distributed to the bankruptcy estate of Luke Records, Inc.

9.      Whatever rights to the 2 Live Crew name, servicemark and trademark are held by either Luther Campbell, debtor and debtor in Possession, Luke Records, Inc., debtor and debtor in possession, 2 LC, Inc. or any other affiliated Companies.  Separate consideration shall be given for such conveyances and sale in the amount of $100.00 to each party; provided, however, that nothing contained herein shall affect the right of the Luke Records Liquidating Trustee to object to the Chris Wong Won claim or to assert defenses and counterclaims with respect to the claims asserted against the Luke Records estate by Wong Won.

RLCW\2507.0000.51926.19.000696

10.     Irrevocable license worldwide in perpetuity to use the likeness of Luther Campbell, his name and the Luke Records name and Luke Records logos only in connection with all previously released masters, the masters being sold herein, and all product already manufactured, including but not limited to, compilations, refurbished product and so called greatest hits albums, comprised solely of the Masters sold hereunder but not with regard to releasing product recorded after June 12, 1995, i.e. must use all photographs or artwork in being without alteration to the likeness of Luther Campbell. The album covers on the previously issued album "Banned in the U.S.A." shall be changed to a group picture and all references to "The Luke LP Featuring 2 Live Crew" shall be deleted. Also, the compositions "F—Martinez" and "Arrest in Effect" shall be deleted from all future manufacturing. Nothing in this paragraph shall prohibit the sale of existing inventory or the resale of returned inventory.

11.     Luke Records, debtor and debtor in possession, shall assume and assign to Weinberger, in Weinberger's sole discretion, and at Weinberger's sole expense all existing artist and producer contracts to which Luke Records or its affiliates and subsidiaries is a party with Poison Clan, Bust Down, U-Mynd, Professor Griff, Home Team, Jiggie Gee, Likkle Wicked, Junior Demus, and Indo G & Lil' Blunt, except for the contracts to the Excluded Masters, H Town, and Verb & Lorenzo as provided in Paragraph A.13. Luke Records shall reject any contract to which it is a party with Chris Wong Won.

12.     Assignment at the expense of Weinberger of all pending trademark and/or copyright applications regarding the Masters and/or groups being sold, including, without limitation, any with respect to the name "2 Live Crew", excluding those regarding the Excluded Masters and the Artists and compositions appearing thereon.

13.     If Luther Campbell elects prior to March 3, 1996 and subject to RED's approval to be delivered on or before March 10, 1996, and any conditions attached by them, he may retain the rights to the masters, publishing and merchandising of the Luther Campbell Masters specifically described in paragraph I.A.1., Lorenzo (XR214), and Verb as an individual artist (no catalog number assigned), as well as future contractual rights of said artists. A condition precedent to such election shall be the agreement by a "major" record distributor (as that Term is understood in the Recording Industry) to assume all return liability emanating from these masters for which RED may otherwise be liable, to agree to reimburse RED in an amount equal to monies paid or credited by RED to customers in connection with returns such records accepted by RED in its sole discretion notwithstanding such distributor's assumption of return liability, and to agree to send a jointly with RED at such distributors' expense, and in a form acceptable to RED, informing retail distributors, wholesalers, one-stops and the like that all future returns of records emanating from these masters are to be sent to such new distributor.

In such event, Weinberger shall receive in return for the Masters, Publishing Rights existing inventory wherever located and publisher's share of BMI performance monies and Merchandising Rights to Lorenzo and Verb at Luther Campbell's option:

        a.      payment of $200,000.00 from Luther Campbell (deemed $180,000 for Lorenzo and $20,000 for Verb), or

        b.      Transfer of stock and assets of Luke Development, Inc., the Miami Lakes Lot and Palm Beach lot owned by Luther Campbell free and clear of any claims, liens and encumbrances. If Luther Campbell fails to elect to purchase Lorenzo and Verb, he shall nevertheless receive all the rights to Society and Trellini without further payment subject to paragraph 14 below.

14.      Furthermore, if he makes such election to purchase Lorenzo and Verb as provided in Paragraph 13, which is approved by RED, Luther Campbell shall arrange for a third party record company in the business of distribution of records to accept the returns of prior sales of such product including returns of records shipped by RED, which distributor must be acceptable to RED, and such distributor must assume all liability with respect to the return of records, CD's, tapes and videos from retail distributors, wholesalers, one stops and the like corresponding to the Excluded Masters in such form suitable to RED.

15.      For the avoidance of doubt, except as specified herein to the contrary, this paragraph grants to Weinberger no rights to future recording services or songs written by Artists appearing on the Excluded Masters.

16.      Whenever RED's approval is required hereunder, RED shall not act unreasonably to withhold such consent. With respect to paragraphs 13 and 14, RED will not withhold its consent regarding Luther Campbell's election to retain rights to Excluded Masters and with respect to Paragraph V.C., RED will not withhold its consent regarding the sale of the H-Town Hard Assets, provided in either case that Luther Campbell/the Liquidating Trustee enters into an agreement with a "major" distributor that possesses the ability to perform as contemplated hereunder or Alliance Distribution, Inc. Such performance shall include, but not be limited to, preparing and distributing to customers a change of distributor notice in a form acceptable to RED which will state that such distributor shall accept returns of all records embodying the Excluded Masters, as well as a guaranty (also in a form acceptable to RED) pursuant to which such "major" distributor or Alliance shall agree to reimburse RED in an amount equal to the amount paid or credited by RED to customers in connection with return of

records embodying Masters and/or Excluded Masters notwithstanding the distribution of the change of distributor notice.

17.     Weinberger agrees that any compositions on the 2 Live Crew Masters that represent solo performances by Luther Campbell shall not be included in any future "Greatest Hits" compilations (other then existing "Greatest Hits" compilations) which are released by Weinberger or Lil' Joe.

B.     Weinberger shall assume all of RED's liability for returned Records, CDs, tapes and orders processed on or after the Closing hereunder with respect to Masters being purchased by him for which RED would otherwise have liability.  RED shall retain its right to recoup such liability from funds to otherwise come due to Weinberger under the amended distribution agreement.  RED and Weinberger agree to negotiate in good faith to modify the Distribution Agreement.  Modification of the Distribution Agreement in form satisfactory to both shall be a condition precedent to the obligation of RED and Weinberger to perform hereunder, which shall be completed on or before February 22, 1996 or such later date agreed by Weinberger and Red.

C.     Any new distribution agreement will contain terms no less favorable to Weinberger or RED than the terms of the existing distribution agreement between RED and Luke Records, Inc., except that any future receivables reserve shall be increased to 20%, Weinberger shall personally guarantee the obligations thereunder, the security interest shall transfer to the masters being sold, and customary inducement letters shall be executed by all artists signed by Weinberger.

D.     The parties hereto shall execute all documents and take such actions as shall be necessary to perfect the transfers and assignments hereunder, including making all necessary filings with the U.S. Office of Copyright and the U.S. Patent and Trademark Office, and execute notice of assignments to all third parties, including, but not limited to, K-Tel, Priority Records, Tommy Boy Records, Landmark Distributors, Inc., Music Distributors, Inc., and Independent National Distributors, Inc.  Additionally, each of the parties herein shall deliver all business records and documents in its possession representing or evidencing the assets being acquired hereunder, including copies of all sales reports, sales and credit invoices and/or memoranda, ledger statements, sample and other license agreements, mechanical license agreements and other underlying documentation, artists contracts, producer contracts and accompanying royalty statements and back-up  documentation.  No representation is made to the accuracy of such documents.

RCW\2507.0000\51926.10\020696

E.     The obligation of each of the parties to this letter to consummate the transactions described herein shall be subject to (i) each corporation other than Luke Records being in good standing in the jurisdiction of incorporation, as evidenced by a certificate of good standing dated the date of closing, (ii) delivery of corporate resolutions authorizing the consummation of the transactions (except from RED and Luke) contemplated hereby and the execution of all appropriate documentation, and (iii) bankruptcy court confirmation of the Plan. The parties hereto agree to negotiate in good faith to arrive at such documentation.

F.     All inventory of the records described in Paragraph A.1. and Masters being sold hereunder on the confirmation date located at Luke Records, Inc.'s headquarters at 8400 N.E. 2nd Avenue, Miami, Florida shall, except to the extent sold at an arms' length basis, be substantially identical to that set forth on the current inventory schedules. For purposes of this paragraph, "substantially identical" shall mean a difference of less than or equal to ten (10%) percent of the records set forth in Luke Records' initial bankruptcy schedules using the valuation methodology used in such bankruptcy schedules. In the event the inventory transferred is not substantially identical, any claims arising out of such difference shall belong to the liquidating trustee. Debtors shall document to Weinberger and to the Luke Records liquidating trustee, any differences between the current Inventory Schedule and the Inventory identified in the Bankruptcy Schedules.

G.     The Debtors at Weinberger's expense, if any, shall direct all manufacturers, vendors and other relevant parties to transfer all Masters, artwork, and the other items acquired hereunder to Weinberger. If a court order shall be necessary to effectuate such a transfer, the Debtors shall use best efforts to obtain such order.

H.     Rockville Productions, Inc. shall have no claims against any of the artists being sold and hereby releases, and shall execute any written releases of, the artists or any management rights to such artists.

I.     All parties shall have a continuing obligation to cooperate in any pending litigation and execute all appropriate documents. In the event of non-cooperation as set forth in an order compelling cooperation, the non-prevailing party shall reimburse the prevailing party for all attorneys fees, costs and expenses incurred in all court proceedings, including the Bankruptcy Court.

J.     The Debtors shall return to Weinberger the Bally Briefcase and the Hewlett Packard III Printer, belonging to Weinberger.

RCW\2507.0000\51926.1\042004%

K.    Luther Campbell shall not re-record any Compositions recorded by him or as a member of The 2 Live Crew contained on the Albums purchased by Weinberger for a period of 2 years from confirmation of the Plan.

L.    The Debtors shall execute the release and settlement agreements in the *Acuff Rose V. Campbell* litigation matters and seek to obtain Bankruptcy Court approval of same, and shall assign to Weinberger any licenses granted thereby.

M.    Luther Campbell, Pac Jam Publishing, and Luke Records shall grant on a quitclaim basis, a worldwide, royalty-free master and mechanical license to Lil' Joe Records, Inc. and its publishing company of that portion of the Luther Campbell composition "I Wanna Rock to the extent written and/or controlled by Luther Campbell, PAC Jam or Luke Records and solely as contained on the album Bass Records Greatest Hits for said Album and no other. No warranties or representations are made as to any samples.

N.    Peter Jones, PAC Jam Publishing and Luke Records shall cause Peter Jones to grant to Weinberger, on a most favored nation basis, the worldwide master and mechanical license for the composition "Shake It" contained on the album Bass Records Greatest Hits.

O.    Within 3 days of posting the deposit provided in Paragraph X below, the Debtors shall, at Weinberger's expense, remove all original documents, and inventory artwork, DATS, and masters to a location selected by Weinberger and Frank Terzo for inspection by Weinberger, to be held in custody by Frank Terzo until the closing hereunder.

P.    If any of the Excluded Masters are not assigned to Luther Campbell as set forth in paragraph A.13 above or sold by the Luke Records liquidating trustee pursuant to paragraph V.C. below, then Excluded Master(s) shall be deemed a Master and shall remain the property of Weinberger hereunder, and Weinberger shall assume all return liability associated therewith.

Q.    Weinberger shall accept returns of any and all records returned to RED in any configuration, including without limitation, vinyl discs, analog cassette tapes and compact discs (collectively, "records") embodying the master recordings acquired by Weinberger herein.

R.    Subject to paragraph II.A.(i) and II.C.3.,  Weinberger shall reimburse RED in an amount equal to any monies paid or credited by RED to retailers, wholesalers and the like in connection with the return of records referred to in Section Q to the extent RED has not offset or recouped such amounts from reserves maintained pursuant to the agreement between Luke Records and RED, dated August 26, 1994, as amended (the "RED Agreement").

RCW\2507.00000\31926.1\PA000090

S.    Luke Records and Luther Campbell, individually and as debtors and debtors in possession waive and relinquish all claims that they have against Weinberger including preference and other avoidance actions under the Bankruptcy Code and agree to execute general releases regarding same.

T.    Weinberger and his corporate affiliates (including all companies owned by him) shall receive a General Release from all parties, except from RED with respect to returns liability as set forth herein and except for obligations in the distribution agreement as amended and give to all parties general releases at closing.  All pending lawsuits against Weinberger shall be dismissed with prejudice.  Releases given to Weinberger and his corporate affiliates shall include, without limitation, any and all claims which the Debtors, Debtors-in-Possession, Creditors Committee and/or any successor Trustee may hold or could assert (e.g., preference and/or other avoidance actions under the Bankruptcy Code).  Said releases shall be approved in the order confirming the plan.

U.    Weinberger agrees to waive all claims against Luke Records, Inc. and Luther Campbell including but not limited to those claims previously filed in the Bankruptcy case and shall issue a general release upon confirmation.

V.    As consideration for the foregoing, Weinberger shall pay:

    1.    To Luke Records Bankruptcy Estate the sum of $450,000.00, which shall be paid as follows:

        a.    $350,000.00 in cash upon an order confirming the Plan; and

        b.    $100,000.00 on or before the first anniversary thereof, which amount shall be paid without interest and personally guaranteed by Joe Weinberger as set forth in a promissory note which will provide for default interest at 12% and attorneys fees.

    2.    In addition, Weinberger agrees to pay upon an order confirming the Plan the sum of $350,000.00 in cash to the Luther Campbell Bankruptcy Estate.

W.    On the later of ten (10) days following execution of this document, or upon approval of Weinberger by RED, Weinberger agrees to deposit with the trust account of Coll, Davidson, Carter, et al. the sum of $80,000.00 in an interest bearing trust account towards the purchase price set forth in Paragraph V above.

RCW\12907.00003\5926.1\042006\96

---

X.    If Weinberger is unable to obtain financing, he shall give written notice to the Luke Records Liquidating Trustee to be received on or before February 12, 1996.  If Weinberger fails to timely give such notice, his obligations under this agreement shall become absolute to the extent provided for herein.  Weinberger shall use his reasonable best efforts to obtain such financing.

Y.    Luther Campbell, debtor and debtor in possession, and Pac Jam Publishing shall exchange mutual General Releases.

## II.  RED/Luke

A.    Luke Records shall assume the distribution agreement between RED and Luke, dated August 26, 1994, as amended (the "RED Agreement") pursuant to Section 365(a) of the Bankruptcy Code, and assign the RED Agreement (as modified in accordance with the terms of this Agreement) to Lil' Joe pursuant to Section 365(f) of the Bankruptcy Code (the "Assumption and Assignment").  Subject to (i) payment in full in cash by the Luke Records estate on the effective date of the Plan of the entire unrecouped balance owing to RED, (ii) Lil' Joe providing RED with adequate assurance of future performance under the RED Agreement (including a personal guaranty from Joseph Weinberger and suitable collateral) RED shall consent to the Assumption and Assignment, and (iii) sale and assignment of the H-Town Masters to an entity acceptable to RED that agrees to assume the return record liability in accordance with the terms of this Agreement as set forth in Paragraph II.C.2.

B.    Lil Joe shall grant to RED a security interest in the Masters and in the inventory in its possession.  Any party taking title to the Masters and record inventory (the "Inventory") shall execute such security agreements and related documents as RED may request to permit RED to perfect its security interest in the Masters and Inventory owned by such new owner.  RED shall agree that its security interest in the Masters and Inventory shall only secure the indebtedness and obligation of the party taking title to those Masters and Inventory.  RED agrees to release its security interest in the Masters and Inventory within six (6) months following the end of the Post-Term Return Period (as defined in the RED Agreement), provided that all obligations owing to RED from Lil' Joe or the owner of the H-Town assets (as the case may be) have been satisfied in full.

C.    RED shall waive its claim against Luke Records' estate for return record liability (the "Return Record Claim") upon the satisfaction of each of the conditions described in subparagraphs 1, 2 and 3 of this paragraph; provided, however, that to the extent these

conditions are not satisfied on or before the effective date of the plan, RED shall not be required to waive the Return Record Claim to the extent attributable to the unsatisfied condition.

1.      The Assumption and Assignment and sale to Weinberger of all Masters described in Paragraph I.A.1 owned or controlled by Luke Records other than the Excluded Masters;

2.      A sale of the H-Town Masters, pursuant to paragraph V.C., to an entity suitable to RED as set forth in paragraph 14 above, who shall have agreed to accept and be liable for the portion of the Return Claim attributable to return of records embodying the performances of H-Town and to reimburse RED in an amount equal to any and all sums paid or credited by RED to customers in connection with returns accepted by RED, regardless of when such records were sold or returned.

3.      Payment in full in cash by the Luke Records estate of the unrecouped balance owing to RED (including returns in excess of Reserves) as of the effective date of the Plan on the effective date of the Plan.

D.      RED shall provide an accounting to the Luke Records Liquidating Trustee of all records sold under the RED Agreement and back up documents describing the unrecouped balance at least seven (7) days prior to the Confirmation.

E.      Upon confirmation of the plan, Luke Records, debtor and debtor in possession and Luther Campbell, debtor and debtor in possession, shall deliver general releases to RED (including its officers, directors, employees, agents, affiliates and attorneys) of all claims as defined in Section 101(5) of the Bankruptcy Code, except that Luke Records shall not release RED from RED's future obligation to liquidate reserves in accordance with the RED Agreement, to the extent reserves exceed the then unrecouped balance. These releases shall be approved in the order confirming the Plan.

F.      RED will amend its proof of claim against Luke Records consistent with the terms of the plan no later than three (3) days after the effective date of the plan waiving all claims against Luke Records, except the unrecouped balance owing to RED including returns in excess of reserves and except amounts being assumed by other entities hereunder, which indebtedness will be transferred to such other entities.

G.      On the effective date of the Plan, the Luke Records estate shall pay to RED in full in cash the unrecouped balance owing to RED as of the effective date of the Plan (inclusive

RCW\2507.0000\51926.19\020696

of amounts by which returns have exceeded reserves and to the extent RED has agreed to pay Jones for any liability under the terms of the Settlement Agreement dated December 27, 1994).

H.    On the effective date of the Plan, RED shall liquidate its reserves and use the amount of such reserves to reduce the amount of its unrecouped balance.

I.    As a condition precedent to the performance of RED's obligations hereunder, RED shall have the right to review and approve financial statements of Weinberger and Lil' Joe, which shall be completed on or before twenty (20) days following receipt of same or such later date as shall be agreed by Weinberger and RED.   Subject to execution of a suitable confidentiality agreement by RED, Weinberger and Lil' Joe shall give RED within ten days after the date of execution hereof, such financial information as RED may reasonably request.

## III.  Peter Jones/Luke Records/Luther Campbell

A.    The Bankruptcy Estates of Luke Records, debtor and debtor in possession and Luther Campbell, debtor and debtor in possession agrees to waive all claims against Peter Jones for preferential payments.   Releases given to Peter Jones shall include without limitation all claims which the Debtors, Debtors in possession, creditors committee and/or any successor Trustee may hold or assert.

B.    Peter Jones agrees to reduce his entire claim in the Luke Records Bankruptcy Estate to an unsecured claim in the sum of $900,000.00.   Peter Jones will not reduce his claim in the Luther Campbell Bankruptcy Estate which shall not be objected to by any of the parties. Peter Jones shall be entitled to receive distributions in respect to the claims he holds in both Estates, but his total recovery shall be limited to the unreduced amount of his claim in the Luther Campbell Bankruptcy Estate.

1.    Upon confirmation of the Plan, Peter Jones agrees to release Luther Campbell for any and all liabilities except as provided herein to the extent his Bankruptcy claims are not fully satisfied.

C.    Luke Records and Weinberger (to the extent he receives same) agree to deliver to Peter Jones on or before the confirmation date the Master tapes of his recordings which shall remain his property free and clear of all third party claims.

RCW\2507.00003\926.1\042096\96

Joint Plan of Re-Organization
Page 12

---

### IV. Luke Records/Luther Campbell Bankruptcy Estate/Luther Campbell

A. The following assets shall be sold, transferred to or retained by Luther Campbell in addition to the rights otherwise provided herein:

1. Miami Lakes lot.

2. Palm Beach lot.

3. Stock of Luke Development, Inc. and/or any properties owned therein.

4. Office building located at 8400 N.E. 2nd Avenue, Miami, FL, owned by Luke Records, Inc., subject to all liens and mortgages.

5. Any and all interests in home of Stanley Campbell.

6. Any interest in stock of Scandalous, Inc. and proceeds of contract with Island Records.

7. All personal items owned by Luther Campbell.

8. All cars owned by Rockville Productions, Inc., with the exception of the Viper which shall be returned to the leasing company.

9. Subject to Paragraph I.A.10., all servicemark, trademark, intellectual property and merchandising rights to the name Luke and Luke Records, including, subject to Paragraph I.A.1 inventory of merchandise related to the Artist Luke.

10. The recording studio and all fixtures, equipment and personal property located at 67 N.W. 2nd Avenue, Miami, Florida.

11. All furniture, equipment and personalty owned by Luke Records, Inc.

12. 1990 Jaguar.

13. 1992 Chevrolet Van.

14. Stock of Luke Records Fan Club, Inc.

RCW\3507.0000\51926.10\020696

**Joint Plan of Re-Organization**
**Page 13**

---

15.    All book and publication rights.

16.    The stock of Rockville Productions.

17.    The annuity claimed as exempt.

18.    All other assets not specifically set forth in this Agreement, provided they have been disclosed on the Schedules or Amended Schedules, filed to date.

B.    The above items shall be transferred to Luther Campbell in "as is" condition, "where is" and subject to all liens, encumbrances and assessments of record.

C.    In return therefore, Luther Campbell shall pay the following sums:

1.    Upon confirmation of the Plan the sum of $100,000.00 to be paid to Luke Records Bankruptcy Estate.

2.    Upon confirmation of the Plan the sum of $100,000.00 plus the costs described in paragraph a.(1) below shall be paid to the Luther Campbell Liquidating Trustee.

3.    In addition, the sum of $100,000.00 shall be paid to the Luke Records Liquidating Trustee; and the sum of $200,000.00 shall be paid to the Luther Campbell liquidating trustee, on or before the first anniversary of confirmation of the Plan, subject to the following:

a.    The amounts set forth in this Paragraph C.3 shall be secured by:

(1)    A second mortgage on the home of Luther Campbell located at 7180 N. Oakmont Drive, Miami Lakes, Florida.

(2)    A first mortgage on the Miami Lakes lot at 7190 N. Oakmont Drive.

(3)    A first mortgage on the Palm Beach lot. The Real Estate described in sub-paragraphs 1 through 3 above, is more fully described on Exhibit "C" and hereinafter called the "Secured Real Estate. The mortgage shall be in the amount of $300,000.00, (split between the two Bankruptcy Estates as provided in Paragraph C.3. above which mortgages must be executed on or before confirmation of the Plan and recorded within

2 days thereafter, at the expense of Luther Campbell (including abstracting, recording fees and applicable taxes).  Luther Campbell agrees to keep the Secured Real Estate free of liens and unpaid assessments and insured with the Liquidating Trustees named as an additional insured, in an amount and in a form acceptable to the Liquidating Trustees.

        4.     Notwithstanding the foregoing, the aforementioned $300,000.00 shall be paid upon the earlier of:

        a.     the first anniversary, following confirmation of the Plan;

        b.     sale of the Secured Real Estate.

        5.     In the event of default, the amounts outstanding shall bear interest at the rate of eighteen (18%) percent, and the Liquidating Trustees shall be entitled to recovery of all attorneys fees and other costs of collection.

        6.     Upon execution of this document, Luther Campbell agrees to deposit the sum of $50,000.00 in the trust account of Jay Gamberg, Esquire.

     D.     Luther Campbell shall execute such documents reasonably requested to confirm the foregoing.

     E.     Luther Campbell agrees to assume the obligation to the Internal Revenue Service for all outstanding income taxes payable and liabilities which shall be payable by him from his personal assets, outside of the assets of the Bankruptcy Estate.

     F.     Within three (3) days of posting the deposit provided in paragraph I.X. above, Luther Campbell shall deliver to a bonded warehouse, all master tapes, inventory, contracts and property described in Paragraph's I.A., and V.C. which warehouse shall be selected and paid for by Joseph Weinberger.

     G.     Luther Campbell agrees to execute a release to Joe Weinberger, Lil' Joe Records, Inc., Richard C. Wolfe, Peter Jones, Frank Terzo, George Tavares for any and all claims, including the claim for royalties to be paid in the future, as a result of sales of those master tapes described in Paragraph I.A. above.

H.    Luther Campbell will waive all personal claims and claims on behalf of Pac Jam Publishing, Inc. in the Luke Records Bankruptcy Estate.

I.    Upon a default by Luther Campbell of any of the terms of this agreement, the Peter Jones Judgment in the full amount shall be deemed reinstated in full, less only any payments made to date or from the Liquidating Trustees.

V.  Residual Assets

A.    The other net assets of Luke Records and Luther Campbell Bankruptcy Estates described on Exhibit "A" shall be conveyed to the Liquidating Trustees, Frank Terzo and Richard C. Wolfe, respectively, who shall liquidate same for the benefit of the creditors. Luke Records believes that the accounts receivable balance with Atlantic Recording Corporation and M.S. Distributors, Inc. in the total amount of $120,000.00 remain due and owing and that Luke Records has not pledged, hypothecated or collected same. Luke Records further represents that the Luke Records Profit Sharing Plan is not a Qualified Retirement Plan pursuant to ERISA or IRC §401 et. seq., and that upon confirmation of the Plan, Luther Campbell shall transfer to the Luke Records Liquidating Trustee account balances of Nations Bank Account No. 3603554779 and Capital Bank Account No. 2020001233 containing an approximate balance of $52,000.00. The Luke Records Liquidating Trustee shall determine, pursuant to applicable law, if said funds are to be distributed to the Luke Records creditors or the employees. To the extent the funds are to be distributed to the employees, then Luther Campbell's share is to be distributed to the Luther Campbell Liquidating Trustee. Any funds which becomes otherwise the property of Luke Records because of forfeiture, vesting or waiver shall be distributed to the creditors of Luke Records.

B.    The Liquidating Trustees shall make a quarterly accounting of proposed distributions fees and costs expended in the liquidation process and send same to the Creditors Committee of Luke Records and the 20 largest Creditors of the Luther Campbell Estate. If no objection is received within thirty (30) days of mailing, the Trustees shall make such disbursement(s). The Bankruptcy Court shall retain jurisdiction to hear and rule upon any objections filed with said thirty (30) day period.

C.    The sale of "H-Town" assets shall be conducted as follows:

1.    Sale of Hard Assets:  Frank Terzo as liquidating trustee of the Luke Records Bankruptcy Estate shall endeavor to sell the H-Town assets to any third party person, including Luther Campbell or his assignee, which will include:

a. The rights to all master tapes recorded by H-Town and owned by Luke Records;

b. all publishing rights to the compositions contained thereon owned by Pac Jam Publishing;

c. all H-Town inventory held by RED or Luke Records, but specifically excluding any contract rights with the group H-Town (the assets described in Paragraphs a, b and c above are hereinafter called the "H-Town Hard Assets"). The sale shall be completed by the Liquidating Trustee on terms acceptable to the liquidating trustee. The Sale of the H-Town assets must be in accordance with Paragraph II.C.2. above. It is agreed that the proceeds from the sale of the H-Town assets shall be divided eighty (80%) percent to the Luke Records Bankruptcy Estate and twenty (20%) percent to the Luther Campbell Bankruptcy Estate.

In the event that Frank Terzo is unable to sell the H-Town Hard Assets as described herein, on or before the fifth day prior to the Effective Date of the Plan, then in such event:

i) Upon notice by Frank Terzo or RED that no sale has taken place, Weinberger agrees to purchase the H-Town Hard Assets for the sum of $10.00.

ii) Weinberger agrees to accept the H-Town Return Record liability as provided in Paragraph II.C.2 above.

iii) Those Accounts Receivable of Luke Records, listed on Schedule "B" shall be assigned by Luke Records, Debtor and Debtor in Possession to Weinberger, to collect for his own account.

iv) $200,000.00 of the Purchase Price, otherwise payable to Luke Records by Weinberger pursuant to Paragraph I.V.1.a. shall be deferred and allocated eighty (80%) percent to the payment due Luke Records Bankruptcy Estate and twenty (20%) percent to the payment due Luther Campbell Bankruptcy Estate for a period of six months so that the sum of $150,000.00 shall be paid upon an order confirming the Plan and $200,000.00 shall be paid six months thereafter. This amount shall be paid without interest, personally guaranteed by Weinberger as set forth on a Promissory Note which will provide for default interest at 12% and attorneys' fees and secured by a Letter of Direction, in a form acceptable to RED and the Luke Records Liquidating Trustee directing payment of any money otherwise

becoming payable to Weinberger (if any) from RED and further secured by all of the issued and outstanding shares of Lil' Joe Records, Inc. or any other entity owned or controlled by Weinberger taking title to the H-Town Hard Assets.  Notwithstanding the foregoing, if Luke Records fails to sell the H-Town Hard Assets by February 22, 1996, then Weinberger shall be entitled to the deferral as set forth in this Paragraph IV.

    2.   <u>Sale of Soft Assets</u>:  Frank Terzo as attorney for the Creditors Committee of the Luke Records Bankruptcy Estate shall, subject to court approval, endeavor to sell the Contract Rights that Luke Records asserts against the members of the group H-Town (hereinafter called "H-Town Soft Assets"):  In this regard, the parties grant Philip Calloway a seven-day period from January 31, 1996 to complete a deal for the sale of such rights, so long as the Bankruptcy Estate, prior to confirmation of the Plan receives net of commissions the minimum sum of $600,000.00 or such other amount acceptable to the Luke Records creditors committee.  The sale shall be completed by the Luke Records Liquidating Trustee on terms acceptable to the Luke Records Liquidating Trustee.  It is agreed that the proceeds from the sale of the H-Town Soft Assets shall be divided 80% to the Luke Records Bankruptcy Estate and 20% to the Luther Campbell Bankruptcy Estate.

    a.   In the event the Luke Records Liquidating Trustee is unable to complete the sale of the H-Town Soft Assets, the Luke Records Liquidating Trustee may otherwise, in his own discretion, assume the Exclusive Recording Agreement pursuant with H-Town to Section 365(a) of the Bankruptcy Code and assign same to any third party, pursuant to Section 365(f) of the Bankruptcy Code on terms acceptable to the Luke Records Liquidating Trustee.

    b.   Any sale of the H-Town Soft Assets shall be accomplished at the discretion of the Luke Records Liquidating Trustee, with a waiver of any claims that the members of H-Town may assert against the Luke Records Bankruptcy Estate.

    c.   The sale of the H-Town Soft Assets herein shall not be a condition precedent to the remainder of the provisions set forth hereunder.

    D.   The liquidation of the remaining assets of Pac Jam Publishing shall be conducted as follows:

    1.   Luther Campbell shall assign all issued and outstanding shares of Pac Jam Publishing, Inc. ("Pac Jam") to the Luther Campbell Liquidating Trustee, who in turn, will agree to assign to Luther Campbell the publishing rights to the compositions encompassed on

the Albums described in Paragraph I.A.1., in perpetuity, in consideration for his waiving all claims against Pac Jam.

    2.    The Luther Campbell Liquidating Trustee will:

    a.    Sell to Weinberger the publishing rights to the songs and the compositions and assign all licenses in perpetuity, consistent with the terms of Paragraph I.A.

    b.    Sell to the purchaser of the H-Town Hard Assets the publishing to the compositions encompassed on the prior Albums described in Paragraph V.B. consistent therewith.

    c.    Distribute the sum of $100,000.00 and all other remaining assets if any, to a designated assignee for the benefit of creditors of Pac Jam who will file claims consistent with Florida Statute §727.112 and distribute all proceeds consistent with Florida Statute §727.et seq. Luther Campbell will, on or before the Confirmation Date, provide to the Luther Campbell Liquidating Trustee a list of names and addresses of all potential claimants against Pac Jam.

    3.    Upon confirmation of the Plan, Luke Records, and Luther Campbell Bankruptcy Estates agree to each contribute the sum of $50,000.00 to the Liquidating Trustee of the Luther Campbell Bankruptcy Estate, to hold such sums in trust pending an assignment for the benefit of creditors which will be commenced immediately thereafter. Any sums not distributed to the creditors of Pac Jam, shall be returned to the respective Estates in equal proportions. Luther Campbell agrees to waive any rights that he may otherwise have to a portion of the Pac Jam funds.

    4.    The Circuit court of Dade County will have jurisdiction to determine the validity of any filed claims against Pac Jam that are objected to by the Assignee.

    5.    All claims against professionals for malpractice together with various causes of action for account balances as designated on Exhibit "A" except as provided in paragraph V.B.1. shall be retained by the Bankruptcy Estates and shall be jointly prosecuted or abandoned by the two liquidating trustees, who shall hire counsel to prosecute such claims, if appropriate, and the recovery net of attorneys fees and costs shall be distributed equally by the Luke Records Liquidating Trustee and the Luther Campbell Bankruptcy Trustee. Luther Campbell and Weinberger agree to cooperate with the Liquidating Trustees in the prosecution of all causes of action and agree to provide all necessary information and documents as requested

by the Liquidating Trustee's attorneys unless otherwise prohibited by court order or privilege, subject to reimbursement of any reasonable costs incurred by Luther Campbell or Weinberger.

## VI.  General Terms

    A.    All the parties hereto agree:

        1.    to endorse the Plan; and

        2.    confirmation of each plan is subject to confirmation of the other;

        3.    Approval of the Plan is not conditional upon the performance of Luther Campbell hereunder.  If Luther Campbell fails to perform those obligations required of him, prior to confirmation of the plan, then in such event all non-exempt assets described in paragraph IV above shall be sold by the Luther Campbell Liquidating Trustee and Luke Records Liquidating Trustee satisfied hereunder.

    B.    All parties shall acknowledge their agreement to this Plan by returning the acknowledgment copy of this letter to the undersigned, which shall be received not later than February 2, 1996.

    C.    In all events, the Joint Plan of Re-Organization shall be filed not later than February 5, 1996.

    D.    Frank Terzo will file the objections to the claims in the Luke Records Bankruptcy Estate and Howard Berlin will file objections to the claims in the Luther Campbell Bankruptcy Estate as set forth on the attached schedules.

    E.    Except as provided for herein, all deposits shall be forfeited to the Luke Records Bankruptcy Estate, if the depositor fails to complete the agreements set forth herein, (without cause attributable to a third party) on or before the effective date of the Plan.

    F.    The Plans of Reorganization and Disclosure Statements shall be drafted by Plan Proponents with the parties acknowledging the benefit of the services of the law firm of Kluger, Peretz, Kaplan & Berlin and Bedzow, Korn & Kan, P.A. to the formation and execution of the Plan.

RCW\2307.0000\51926.1\020696

Joint Plan of Re-Organization
Page 20

--------------------------------------------------------------------------------

     G.     The parties and their counsel acknowledge that the total Administrative Costs of the debtors counsel in the Luther Campbell Bankruptcy Estate shall in no event exceed the sum of $150,000 and the total administrative costs of the Luke Records Bankruptcy Estate shall in no event exceed the sum of $180,000.00.

     H.     This Agreement may be executed in counterparts with each signature page deemed binding as a whole original.

     I.     Except to the extent actions are required to be taken before confirmation of a Plan of Reorganization, all obligations hereunder are subject to an order of confirmation of Plans of Reorganization in the Luke Records and Luther Campbell bankruptcy cases.

     J.     Whenever the term "record" is used herein, such Term shall mean any reproduction of a master recording containing sounds with or without visual images in any configuration now or hereafter known, including but not limited to, vinyl disc, analog cassette tape or compact discs.

     K.     The parties acknowledge that the Luke Records Creditors Committee is a party in interest in the Luther Campbell Bankruptcy Case and may be a proponent of this Plan of Reorganization in such case.

     L.     All transactions contemplated by this Agreement shall be closed within five (5) days after the date of entry of confirmation orders in the Luke Records and Luther Campbell Bankrupcy cases.

<u>VII.  Acknowledgments</u>

     The signatures below acknowledge and confirm such persons agreement, on behalf of themselves and/or their clients to the terms and conditions stated herein.

Joint Plan of Re-Organization
Page 1

RED Distribution, Inc.

By: _____
James P.S. Leshaw, Esquire

RCW\2507.00003\926.10\200696

Signature Page 1

**The Official Unsecured Creditors Committee
of Luke Records, Inc.**

By: _____

Frank Terzo, Esquire

Signature Page 2

Joint Plan of Re-Organization
Page 3

Luther Campbell, Debtor and Debtor in Possession

By: _____
     Jay Gamberg, Esquire
     Mark Cohen, Esquire

_____
Luther Campbell, Debtor and Debtor in Possession

RCW\2307.0000\51926.19\220696

Signature Page 3

**Joint Plan of Re-Organization**
**Page 4**

Luke Records, Inc., Debtor and Debtor in
Possession

By: _____
    Luther Campbell, President

RCW\2507.0000.51926.19.020696

Signature Page 4

Joint Plan of Re-Organization
Page 5

Rockville Productions, Inc.

By: _____
Luther Campbell, President

BCW\2507.0000\31926.10\020696

Signature Page 5

**Joint Plan of Re-Organization**
Page 6

**2 L.C., Inc.**

By:_____
        Luther Campbell, President

Joint Plan of Re-Organization
Page 7

Luke Mortgage, Inc.

By: _____
Luther Campbell, President

RCW\2507.0000.51926.10\020696

Signature Page 7

Joint Plan of Re-Organization
Page 8

Luke Records Fan Club, Inc.

By: _____
Luther Campbell, President

Signature Page 8

Joint Plan of Re-Organization
Page 9

PAC Jam Publishing, Inc.

By: _____
Luther Campbell, President

RCW\2507.0000\51926.1\N400696

Signature Page 9

Joint Plan of Re-Organization
Page 10

Luke Records, Inc.

By: _____
Luther Campbell, President

SWORN TO and subscribed before me this 7 day of _Tebruary_ 1996, by LUTHER
CAMPBELL, who is personally known to me, or who has produced ___Personally Known___
as identification and who did take an oath.

My Commission Expires:

_____
Notary Public, State of Florida

NOTARY PUBLIC, STATE OF FLORIDA
RICHARD C. WOLFE
COMMISSION No. CC-263418
MY COMMISSION EXPIRES
JUN. 03, 1997

**Joe Weinberger and**
**Lil' Joe Records**

By: _____
Joseph Weinberger

　　　SWORN TO and subscribed before me this ____ day of _____, 1996, by LUTHER
CAMPBELL, who is personally known to me, or who has produced _____
as identification and who did take an oath.

My Commission Expires:

_____
Notary Public, State of Florida

Peter Jones

By: _____

Richard C. Wolfe, Esquire

RCW\2507.0000.31926.10\000696

Signature Page 12

LUKE RECORDS, INC.

By: _____

Jonathan Weller, Esquire

RCW\2507.0000\31926.1\4\020696

## Exhibit A

**A.**   Luther Campbell Assets to be delivered to Luther Campbell Liquidating Trustee:

<u>Minimum Amount</u>

1. Barnett Bank account 1464677253
2. Money Market account - Great Western
3. Securities America account
4. Stock of Pensacola Gold Club, Inc.

**B.**   Luke Records Assets to be delivered to Liquidating Trustee:

| | | |
|---|---|---|
| 1. | Barnett Checking account (DIP) 1596254197 | |
| 2. | FPL Deposits | |
| 3. | NationsBank account 03603554779 | 4,280.00 |
| 4. | Capital Bank account 2020001233 | 50,000.00 |
| | | 1,150.00 |

Causes of Action Prosecuted by the Liquidating Trustee:

| | |
|---|---|
| Action Distributions | |
| Associated Distributions | Great Bay |
| Indie:  Big State | Jerry Bassin One Stop |
| | JFL |
| Malverne CRDI | |
| City Hall Records | Landmark |
| Debbie Benett | M.S. Distributors |
| Frankie One Stop | Music Distributors, Inc. |
| Nic Manzini/Manzini & Stevens | Herman Moskowitz |
| Atlantic Recording Corp. | |
| Thomasina Williams/Williams & Clyne | |

RCW\2507.0000\31926.1\PvO20096

Signature Page 14

Joint Plan of Re-Organization
Page 15

---

## EXHIBIT "B"

Conditional Assignment of Accounts Receivable to Weinberger, pursuant to the terms of paragraph V.B.1.iii:

Action Distributors
Associated Distribution
Indie:  Big State, Malverne, CRDI
City Hall Records
Debbie Bennett
Frankie One Stop
Great Bay
Jerry Bassin One Step
JFL
Landmark
Music Distributors

RCW\2507.0000\31926.19.020696

Signature Page 15

Joint Plan of Re-Organization
Page 1

---

RED Distribution, Inc.

By: _____
James P.S. Leshaw, Esquire

RCW\2507.0000\51926.08\020296

Signature Page 1

Joint Plan of Re-Organization
Page 2

The Official Unsecured Creditors Committee
of Luke Records, Inc.

By: _____

Frank Terzo, Esquire

Signature Page 2

Joint Plan of Re-Organization
Page 3

Luther Campbell

By: _____
Jay Gamberg, Esquire
Mark Cohen, Esquire

_____
Luther Campbell, Debtor and Debtor in Possession

RCW\2507.0000\51926.08\000296

Signature Page 3

Joint Plan of Re-Organization
Page 4

Luke Records, Inc., Debtor and Debtor in
Possession

By: _____

Luther Campbell, President

RCW\2507.0000\51926.08\020296

Signature Page 4

Joint Plan of Re-Organization
Page 5

Rockville Productions, Inc.

By: _____
      Luther Campbell, President

RCW\3507 00000:31926.88\020296

Signature Page 5

Joint Plan of Re-Organization
Page 6

2 L.C., Inc.

By: _____
Luther Campbell, President

Joint Plan of Re-Organization
Page 7

Luke Mortgage, Inc.

By: _____
      Luther Campbell, President

Signature Page 7

Joint Plan of Re-Organization
Page 8

Luke Records Fan Club, Inc.

By: _____

Luther Campbell, President

RCW\2507.00005\926.0R\020296

Signature Page 8

Joint Plan of Re-Organization
Page 9

PAC Jam Publishing, Inc.

By: _____
Luther Campbell, President

RCW\12507 00000.51926.00\020296

Signature Page 9

Page 10

Luke Records, Inc.

By: _____
Luther Campbell, President

SWORN TO and subscribed before me this ____ day of _____, 1996, by LUTHER
CAMPBELL, who is personally known to me, or who has produced _____
as identification and who did take an oath.

My Commission Expires: _____

Notary Public, State of Florida

Signature Page 10

Joe Weinberger and
Lil' Joe Records

By: _Joseph Weinberger_____
        Joseph Weinberger

    SWORN TO and subscribed before me this _4_ day of _February_ , 1996, by LUTHER CAMPBELL, who is personally known to me, or who has produced _personal known_ as identification and who did take an oath.

My Commission Expires:

_____
Notary Public, State of Florida

NOTARY PUBLIC, STATE OF FLORIDA
RICHARD C. WOLFE
COMMISSION NO. CC-232410
MY COMMISSION EXPIRES
JUN. 08, 1997

Join.  lan of Re-Organization
Page 13

LUKE RECORDS, INC.

By: _____
      Jonathan Winer, Esquire

RCW\2507.00000-51926.0ff-020296

Signature Page 13

Joint _ .an of Re-Organization
Page 12

Peter Jones

By: _____

Richard C. Wolfe, Esquire

RCW\2507.0000\51926.08F-020296

Signature Page 12

# JAY M. GAMBERG, P.A.

Member of New York Bar
Member of Florida Bar
Qualified in Bankruptcy under
the Florida Designation Plan

BROWARD OFFICE
4651 SHERIDAN STREET, SUITE 300
HOLLYWOOD, FLORIDA 33021

BROW: (305) 962-8889
DADE: (305) 945-6332
FAX: (305) 966-6259

DADE OFFICE
9700 SOUTH DIXIE HIGHWAY, SUITE 1030
MIAMI, FLORIDA 33156

Of Counsel:
Jerome H. Shevin, P.A.

PLEASE RESPOND TO: BROWARD OFFICE

February 5, 1996

Richard C. Wolfe, Esq.
Bedzow Korn & Kan, P.A.
20803 Biscayne Boulevard
Suite 200
Aventura, FL   33180

Re: <u>Luther Campbell</u>

Dear Richard:

In reference to the Letter of Intent regarding the Joint Plan of Reorganization for Luther Campbell, I consider the document to be signed.  Mr. Campbell, at present is on an airplane to Florida and cannot be reached.  The additional signature pages which require Luther Campbell's signature will be signed upon his return tomorrow, Tuesday, February 6, 1996.

I presently am in a deposition which will continue to about 3:30 p.m.

If you need any additional information, please contact my assistant, Vicki Lanzillotta.

Very truly yours,

Jay Gamberg  V.L.

Jay M. Gamberg
(Dictated But Not Read)

JMG/vl
cc:  Mark Cohen, Esq.
     Jonathan Winer, Esq.
     campbell\wolfe3.ltr

SIGNED FOR JAY M. GAMBERG
IN HIS ABSENCE TO PREVENT
DELAY IN MAILING.

# LIl' Joe Records, Inc.

6157 NW 167th Street, :-17
Miami, FL 3 015
305-362-8(v0
Fax: 305-822-1132.

February 3, 1996

Via Fax 212-554-0444

Matthew Greenberg, Esq.
Grubman, Indursky
152 West 57th Street
New York, NY 10019-3301

Dear Mr. Greenberg:

I am in receipt of a copy of your fax to Richard Wolfe (copy annexed for your reference). Upon review of the letter of intent, this point is covered in IA15 as Luther Campbell is obviously an Artist appearing on the Excluded Masters and therefore I would have no rights to future recording services or songs written by him. In the future, I would appreciate your copying my attorney on all future correspondance.

Sincerely,

Joseph Weinberger

cc: Jimmy Morales, Esq. Via fax 374-7296

Richard C. Wolfe, Esq. Via Fax 936-2795

Jay Gamberg, Esq. Via Fax 966-6259

GRUBMAN INDURSKY SCHINDLER & GOLDSTEIN, P.C.

ATTORNEYS AT LAW

CARNEGIE HALL TOWER
152 WEST 57TH STREET
NEW YORK, N.Y. 10019-3301
TELEPHONE (212) 554-0400
TELEFAX (212) 554-0444

WRITER'S DIRECT NUMBER
(212) 554-0416

By Facsimile
305 932 6043

February 2, 1996

Richard C. Wolfe, Esq.
Bedzow, Korn & Kan
20803 Biscayne Boulevard
Aventura, FL 33180

        Re:  Luther Campbell--Bankruptcy Reorganization Plan

Dear Richard:

        In reviewing the most recent draft of the above-referenced
plan which I received this afternoon, I noticed a point that
needs clarification.  That is, it should be clarified in
paragraph I(A)(2) that "Joseph Weinberger is not acquiring any
compositions which are not contained on the Masters Weinberger is
acquiring (e.g. Weinberger is not acquiring any interest in
compositions written and recorded pursuant to the Island Records
agreement)."

        Please make sure this is clarified in the execution copies.

                                        Sincerely yours,

                                        Matthew Greenberg

MMG/ssd36220

cc:  Luther Campbell (by fax)
     Joseph Weinberger, Esq. (by fax)
     Jay Gamberg, Esq. (by fax)
     Paul D. Schindler, Esq.

COLL DAVIDSON CARTER SMITH SALTER & BARKETT
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

PABLO A. ALVAREZ
JANIE L. ANDERSON
JOHN M. BARKETT
FRANCIS L. CARTER
NORMAN A. COLL
MICHAEL J. COMPAGNO
TED C. CRAIG
BARRY R. DAVIDSON
YALE J. FISHMAN
MICHAEL R. GOLDSTEIN
MICHAEL J. HIGER
CHRISTOPHER N. JOHNSON
JOHN J. McNALLY
JIMMY L. MORALES
GARY M. MURPHREE
DARRELL W. PAYNE
VANCE E. SALTER
HARRIS C. SISKIND
RICHARD C. SMITH
SHERRY A. STANLEY
COURTNEY B. WILSON

3200 MIAMI CENTER
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-2312
(305) 373-8200
TELECOPIER (305) 374-7886

CHRIS M. McALILEY
OF COUNSEL

February 6, 1996

Matthew Greenberg, Esq.
Grubman Indursky Schindler
  & Goldstein, P.C.
Carnegie Hall Tower
152 W. 57th Street
New York, New York  10019-3301

       Re:   Luther Campbell--Bankruptcy Reorganization Plan

Dear Matt:

            Yesterday we agreed, and the final version of the Letter of
Intent will hopefully reflect, that paragraph I(A)(2) should read at
the end thereof as follows:

       Joseph Weinberger is not acquiring any compositions which
       are not contained on the Masters Weinberger is acquiring
       (e.g. Weinberger is not acquiring any interest in
       compositions written and recorded pursuant to the Island
       Records Agreement), provided, however, that Weinberger does
       not hereby waive or release any of his rights or claims with
       respect to any unauthorized sampling or publishing
       infringement regarding the Masters and compositions being
       acquired by him hereunder.

As such, the final Plan of Reorganization (and other relevant
documents) should reflect the fact that the general release which Joe
Weinberger is giving pursuant to paragraph I(U) of the Letter of
Intent will specifically carve such infringement claims.

Please contact me if you have any questions regarding the foregoing.

Very truly yours,

Jimmy L. Morales

cc:  Frank Terzo, Esq.
     Richard Wolfe, Esq.
     Joseph Weinberger, Esq.

109030

COLL DAVIDSON CARTER SMITH SALTER & BARKETT

Law Offices of

**MARK D. COHEN, P.A.**

Emerald Hills Executive Plaza II
4651 Sheridan Street, Ste. 300
Hollywood, FL  33021

Broward:  (305) 962-8889                                            Facsimile:  (305) 966-6259

February 2, 1996                                    <u>Letter sent via facsimile
                                                    and U.S. Mail</u>

Richard Wolfe, Esq.
Bedzow, Korn, Kan et al
20803 Biscayne Blvd., #200
Miami, FL  33180

RE:        Luther R. Campbell, Debtor / Case No. 95-12785-BKC-RAM
           Luke Records, Inc., Debtor / Case No. 95-11447-BKC-RAM

Dear Richard:

We are trying to get the fax copies with Luther's signature sent to
you directly.  You are not authorized to release them or Jay
Gamberg's signature until we can speak early Monday morning or over
the weekend to straighten out a few of the typographical errors
that still exist.

Notably, page 17, paragraph 2 still has the name Phillip Calloway
instead of Paul Schindler and we cannot find the release from RED
to Luther at confirmation.  Also on page 15 - Residual Assets, it
appears from the books of the company that only at least $87,338.00
appears to be due of record.  We discussed this with Frank Terzo
who agreed to make that change.

We know time is of the essence and we will get back to you as soon
as possible.

Very truly yours,

MARK D. COHEN, P.A.

Mark D. Cohen, Esq.

MDC/jw
c:  Luther Campbell
    Matt Greenberg, Esq.

$200,000 of the purchase price, otherwise payable to Luke Records Bankruptcy Estate and the Luther Campbell Bankruptcy Estate by Weinberger, pursuant to paragraph 5_____ shall be deferred and such deferral allocated eighty percent (80%) to the payment due the Luke Records Bankruptcy Estate and twenty percent (20%) to the payment due to the Luther Campbell Bankruptcy Estate for a period of six (6) months, so that the sum of One Hundred and Ninety Thousand ($190,000) and Three Hundred and Ten Thousand Dollars ($310,000) shall be paid, respectively, to the Luke Records Bankruptcy Estate and the Luther Campbell Bankruptcy Estate upon an order confirming the plan.  The balance of One Hundred and Sixty Thousand ($160,000) and Forty Thousand ($40,000) to the respective estates shall be paid six (6) months thereafter.