**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| LIL' JOE RECORDS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:21-CV-23727-DPG |
| | ) |
| MARK ROSS; *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS MARK ROSS, CHRISTOPHER WONG WON, JR., RODERICK WONG WON, LETERIUS RAY, ANISSA WONG WON, AND LUTHER CAMPBELL's STATEMENT OF MATERIAL FACTS**

**RESPONSE TO LIL' JOE RECORDS, INC.'S STATEMENT OF MATERIAL FACTS**

1. Undisputed.

2. Undisputed.

3. Disputed. Luke Records, Inc. ("Luke Records, Inc.") claims to be a successor of Skyywalker Records, Inc.. Skyywalker Records, Inc. obtained copyright rights to *2 Live Crew's* music at issue pursuant to a written agreement that was executed in or around 1990 and confirmed a prior oral agreement. (Declaration of Luther Campbell ("Campbell Decl.") at ¶ 12, 24, Exh. 1 The 1987 Agreement; Exh. 67 The Pac Jam Agreements.) Defendants dispute that any 1991 agreements transferred **all** rights in the copyrights and trademarks owned by *2 Live Crew,* because any 1991 agreement would be prospective only. In any event, no 1991 contracts were presented to the court in connection with this motion. The five albums at issue ("Subject Albums") were published from 1986 to 1989 well before any 1991 Agreements could have been entered into. (Declaration of Scott Alan Burroughs ("Burroughs Decl.") at ¶ 2-9, 61-64, Exh. 2-9, 61-64 Copyright Registrations for the Subject Albums; Campbell Decl. at ¶ 2, 21; Ross Decl. at ¶ 2.) Therefore, it is disputed that any 1991 agreement could effect a transfer of **all** of *2 Live Crew's* copyrights and trademarks and specifically the copyrights and trademarks at issue in this case could not have been transferred pursuant to the 1991 agreements. It is also disputed that the Subject Albums were "works for hire" when they were created before 1991 and any 1991 Agreements could not retroactively create an employment situation for works that do not fall within its terms. Burroughs Decl. at ¶ 2-9. 61-64, Exh. 2-9, 61-64 Copyright Registrations for the Subject Albums; Campbell Decl. at ¶ 21, 22-23, 26, 27, 29-40. Further, there was no employer and employee relationship between Luke Records, Inc. and the members of *2 Live Crew.* (Burroughs Decl. at ¶ 2-60, Exh. 2-60; Campbell Decl. at ¶ 14, 18-23, 29-40 , Exh. 1 The 1987 Agreement.) This is further evidenced by the copyright registrations for the Subject Albums that state the author's contributions were not works for hire. (Burroughs Decl. at ¶ 2-60, Exh. 2-60 Copyright Registrations for the Subject Albums.)

4. Undisputed, and immaterial, the fact Luther Campbell and Luke Records became the subject of bankruptcy proceedings does not impact their ability to terminate previous grants of copyright pursuant to Section 203 when those rights have not yet vested.

5. Disputed. Disputed to the extent this fact implies that the Section 203 termination right, that would eventually vest in Luther Campbell, was transferred to Lil' Joe Records, Inc. ("Lil' Joe") and Joseph Weinberger ("Weinberger") as part of the transfer which occurred as a result of the Joint Plan of Reorganization in Luke Bankruptcy. This right is not listed as an asset in the Joint Plan, nor could it have ever been transferred into the estate because the right of termination is inalienable and non-transferrable. (Burroughs Decl. at ¶ 66, Exh. 69 Joint Plan of Reorganization in Luke Bankruptcy.) Undisputed as to the other contents of the Joint Plan listed in Lil' Joe's Fact No. 5.

6. Undisputed, and immaterial, because whether Christopher Wong Won, Mark Ross or David Hobbs filed a claim in the Luke Bankruptcy as no impact on their ability to terminate the original copyright transfer to Luke Records or its predecessor under Section 203.

7. Undisputed, and immaterial, because the right to terminate was not a vested right which could have entered the bankruptcy estate or been abandoned back to Luther Campbell and/or Luke Records with the 2 Live Crew copyrights.

8. Disputed. Defendants do not dispute that there was a 2002 lawsuit filed by Weinberger against Christopher Wong Won, or that a settlement was reached to resolve those claims, Defendant disputes that agreement could and did transfer or release Christopher Wong Won's right to terminate. The settlement agreement between Christopher Wong Won, on the one hand, and Weinberger and Lil' Joe, on the other hand, did **not** release or transfer "all rights to terminate" as stated in Lil' Joe's Fact No. 8. (Burroughs Decl. at ¶ 67, 68, Exh. 70 Wong Won Settlement Agreement; Exh. 71 Release filed with U.S. Copyright Office.) Exhibits 4 and 5 to Plaintiff's Affidavit of Weinberger and attached hereto as Exhibits 70 and 71 to the Burroughs Decl. do not mention or include the Wong Won's right to terminate, nor could they, because it is an inalienable and non-transferrable right. (*Id.*)

9. Disputed. Defendants do no dispute that Mark Ross filed a bankruptcy action in November 2000, that Lil' Joe commenced an adversary proceeding against Mark Ross, or that the settlement agreement states what it states, but do dispute that the settlement agreement transferred, revoked, or otherwise divested Mark Ross of his Section 203 termination rights, which are non-transferrable, inalienable, and not mentioned anywhere

in the settlement agreement attached as Exhibit 6 to the Wienberger Affidavit. (Ross Decl. at Decl. at ¶ 9, Exh. 72 Mark Ross Settlement Agreement)

10. Undisputed.

**DEFENDANTS' ADDITIONAL FACTS**

11. From 1986 to 1989, five albums *The 2 Live Crew is What We Are, Move Somethin', Move Somethin' (Clean), As Nasty As They Wanna Be,* and *As Clean As They Wanna be* ("Subject Albums") were written, recorded, and published by the original members of 2 Live Crew. (Campbell Decl. at ¶ 2; Declaration of Mark Ross ("Ross Decl.") at ¶ 2; Burroughs Decl. at ¶ 2-64; Exh. 2-64 Copyright Registrations for the Subject Albums.)

12. Defendants Anissa Wong Won, Christopher Wong Won, Jr., Roderick Wong Won, and Leterius Rey are the heirs of Christopher Wong Won and have terminated Christopher Wong Won's grant of rights on behalf of the Estate of Christopher Wong Won. Declaration of Anissa Wong Won ("Anissa Decl.") at ¶ 2-4; Declaration of Christopher Wong Won, Jr. ("Won Jr. Decl.") at ¶ 2-4; Declaration of Leterius Rey ("Rey Decl.") at ¶ 2-4; Roderick Wong Won ("Roderick Decl.") at ¶ 2-4.)

13. In or around 1990, 2 Live Crew entered into a written agreement with Skyywalker Records, Inc. that memorialized a prior oral agreement. (Campbell Decl. at ¶ 23, Exh. 1 1987 Agreement; Ross Decl. ¶ 19; Anissa Decl. at ¶ 5-7; Won Jr. Decl. at ¶ 5-7; Rey Decl. at ¶ 5-7; Roderick Decl. at ¶ 5-7.)

14. This is the only written agreement in the record under which the Subject Albums could have been recorded and transferred and is stated to have become effective as of January 1, 1987, between the 2 Live Crew members and Skyywalker Records, Inc. ("1987 Agreement") (Campbell Decl. at ¶ 21, Exh. 1 1987 Agreement; Ross Decl. ¶ 19.)

15. In addition, there are certain related publishing agreements with Pac Jam Publishing, Inc. ("Pac Jam Agreements"). (Campbell Decl. at ¶ 12, Exh. 67 Pac Jam Agreements.)

16. Ultimately, through a series of agreements, bankruptcy proceedings, and litigation settlements Lil' Joe came to own the copyrights in the Subject Albums. (Campbell Decl. at ¶ 17; Ross Decl. at ¶ 11.)

17. On November 4, 2020, over two years before the earliest date of effective termination (November 7, 2022) and less than 10 years from the last date of effective termination (May 1, 2024), Mark Ross, Luther Campbell, and the heirs of Christopher Wong Won

comprising and representing 3 of the 4 members of 2 Live Crew served a noticed termination of its original copyright grants under 17 U.S.C. § 203 (the "Termination Notice"). (Campbell Decl. at ¶ 5, Exh. 66 Termination Notice.)

18. 2 Live Crew's members entered into a less than favorable grant in connection with the Subject Albums and are now, 35 years after those works were published, well in their rights to terminate the grant. (Campbell Decl. at ¶ 5, Exh. 66 Termination Notice.)

19. The grant at issue covered the right of publication. (Campbell Decl. at ¶ 23-24 , Exh. 1 1987 Agreement.) The 1987 Agreement specifically states, "Artist hereby grants to Company the sole and exclusive right during the initial term of this Agreement and all renewals and extensions of the same to use, **publish and permit other to use and publish**…" (Campbell Decl. at ¶ 23-25, Exh. 1 1987 Agreement.) The Pac Jam Agreements cover the composition copyrights for certain compositions on the second and third Subject Album, and stated that "The writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, a certain heretofore **unpublished** original musical composition…[] and all rights, claims, and demands in any way relating thereto…" including the rights to secure, hold, and register the copyright in the identified composition. (Campbell Decl. at ¶ 12-13, Exh. 67 Pac Jam Agreements.) Encompassed within these rights was the right to publish the composition identified. (Campbell Decl. at ¶ 12-13, Exh. 67 Pac Jam Agreements.)

20. Any 1991 agreements could contemplate only *future* recordings and could not possibly cover the Subject Albums, each of which was written, recorded, released, and in some cases registered with the Copyright Office well before 1991. (Campbell Decl. at ¶ 21; Burroughs Decl. at ¶ 2-9, 61-64; Exh. 2-9, 61-64 Copyright Registrations for the Subject Albums.)

21. The 1987 Agreement, which was executed in or around 1990, is the operative agreement for the Subject Albums and to the extent that said written agreement is somehow unenforceable or otherwise flawed the operative agreement would be the oral license that the 1987 agreement sought to memorialize. (Campbell Decl. at ¶ 23-24, Exh. 1 1987 Agreement, 67 Pac Jam Agreements.)

22. Lil' Joe has not, and cannot, argue the existence of any agreements other than the 1987 Agreement. (Campbell Decl. at ¶ 21,; Burroughs Decl. at ¶ 70.)

23. The Termination Notice was served on November 4, 2020, upon all possible rights holders, including Lil' Joe, via first-class mail (return receipt requested) and when possible electronic mail. (Campbell Decl. at ¶ 4-6, Exh. 66 Termination Notice.)

24. The date of publication for the first Subject Album *The 2 Live Crew Is What We Are* was provided in the termination notice as December 1, 1986 and the notice listed a date of effective termination of November 7, 2022, which is over 35 years from the date of publication and within 5 year window beginning on December 1, 2021. The date listed of first publication on the earliest filed composition copyright registration for the songs on the identified Subject Album. (Campbell Decl. at ¶ 4-7, Exh. 66 Termination Notice; Burroughs Decl. at ¶ 2-9, Exh. 2-9 Copyright Registrations for the Subject Albums.)

25. The date of publication of the second and third Subject Albums *Move Somethin'* and *Move Somethin' (Clean)* was provided in the termination notice as March 21, 1988 and the notice listed a date of effective termination of March 21, 2023, within the required timeframe. The date listed of first publication on the February 26, 2001 sound recording copyright registrations for *Move Somethin'*. (Campbell Decl. at ¶ 4-8, Exh. 66 Termination Notice; Burroughs Decl. at ¶ 61, Exh. 61 Copyright Registrations for the Subject Album.)

26. The date of publication of the fourth and fifth Subject Albums *As Nasty as They Wanna Be* and *As Clean as They Wanna Be* was provided in the termination notice as May 1, 1989 and the notice listed a date of effective termination of May 1, 2024, again within the required timeframe. The date listed of first publication on the February 26, 2001 sound recording copyright registrations for the identified Subject Albums. (Campbell Decl. at ¶ 4-9, Exh. 66 Termination Notice; Burroughs Decl. at ¶ 63-64, Exh. 63-64 Copyright Registrations for the Subject Albums.)

27. Pursuant to 17 U.S.C § 203(a)(4)(A) a copy of the Termination Notice was recorded in the Copyright Office before the effective date of termination. (Burroughs Decl. at ¶ 71, Exh. 73 Copyright Office Termination Form and FedEx Receipt of delivery.)

28. Luke Records has never purported to be an author, is not listed as an author on any copyright registration other than three sound recording registrations registered by Lil' Joe in 2001, which are directly contradicted by the composition registrations for the same works. (Campbell Decl. at ¶ 14; Burroughs Decl. at ¶ 10-22, 32-48, 62, 64, Exh. 10-22,

32-48, 62, 64 Copyright Registrations for the Subject Albums.)

29. 2 Live Crew did not create the Subject Albums as works for hire for Skyywalker Records or its predecessor, and the members of 2 Live Crew did not create the Subject Albums within the scope of their employment with any record label. (Campbell Decl. at ¶ 18-20; Ross Decl. at ¶ 12-14, 19-30.)

30. The operative 1987 Agreement does not contain a work-for-hire clause, and Campbell the owner of Skyywalker Records, Inc. confirms that the Subject Albums were not works for hire. (Campbell Decl. at ¶ 23-26, Exh. 1 1987 Agreement.)

31. The 1987 Agreement make clear that royalties were to paid, which makes clear that 2 Live Crew were never employees of the record label. (Campbell Decl. at ¶ 21-22.)

32. The composition PA registrations filed in September 1988 for the first Subject Album *The 2 Live Crew Is What We Are* all list the four original members of *2 Live Crew* as authors and specifically state that each author's contribution was **not** a "work made for hire." (Burroughs Decl. at ¶ 2-9, Exhs 2-9 Copyright Registrations for the Subject Albums.)

33. The composition PA registrations for the second Subject Album *Move Somethin'* all list the four original members of *2 Live Crew* as authors and specifically state that each author's contribution was **not** a "work made for hire." (Burroughs Decl. at ¶ 10-22, Exhs 10-22 Copyright Registrations for the Subject Albums.)

34. The majority of the *Move Somethin'* registrations were effective in April 1988, but two of them for *Intro* and *Do Wah Diddy* were filed in 1998 and 1997 respectively by the entity Lil' Joe Wein Music, Inc. which is an acknowledgement by Lil Joe that the works are not works-for-hire and that this claim is a post-hoc attempt to maintain control of 2 Live Crew's copyrights. (Burroughs Decl. at ¶ 10, 18, Exhs 10, 18 Copyright Registrations for the Subject Albums.)

35. Lil' Joe Wein Music, Inc. is related to and has the same principles as Plaintiff Lil' Joe, who is listed as the entity listed in section 8 for "Correspondence" on the registrations filed by Lil' Joe Wein Music, Inc. (Burroughs Decl. at ¶ 10, 18, Exhs 10, 18 Copyright Registrations for the Subject Albums.)

36. The composition PA registrations for the third Subject Album *Move Somethin' (Clean)* all list the four original members of *2 Live Crew* as authors and specifically state that

each author's contribution was **not** a "work made for hire." (Burroughs Decl. at ¶ 23-31, Exhs 23-31 Copyright Registrations for the Subject Albums.)

37. All but one of these registrations have an effective date of May 22, 2001 and were registered by Lil' Joe Wein Music, Inc. again demonstrating that Lil' Joe was well aware that the Subject Albums have never been works made for hire. (Burroughs Decl. at ¶ 23-27, 29-31, Exh. 23-27, 29-31 Copyright Registrations for the Subject Albums.)

38. The registration for *Do Wa Diddy (clean)* has an effective date of December 29, 1997 the same as the explicit version of *Do Wa Diddy* both of which were filed by Lil' Joe Wein Music, Inc. and stated the respective song was not a work made for hire. (Burroughs Decl. at ¶ 18, 28, Exh. 18, 28 Copyright Registrations for the Subject Albums.)

39. The composition PA registrations filed on August 10, 1989 for the forth Subject Album *As Nasty as They Wanna Be* all list the four original members of *2 Live Crew* as authors and specifically state that each author's contribution was **not** a "work made for hire." (Burroughs Decl. at ¶ 32-48, Exhs 32-48 Copyright Registrations for the Subject Albums.)

40. The composition PA registrations for the final Subject Album *As Clean as They Wanna Be* all list the four original members of *2 Live Crew* as authors and specifically state that each author's contribution was **not** a "work made for hire." (Burroughs Decl. at ¶ 49-60, Exhs 49-60 Copyright Registrations for the Subject Albums.)

41. All but two of the *As Clean as They Wanna Be* registrations have an effective date of March 12, 1998 and were registered by Lil' Joe Wein Music, Inc. again demonstrating that Lil' Joe was well aware that the Subject Albums have never been works made for hire. (Burroughs Decl. at ¶ 49-52, 55-57. 59-60, Exh. 49-52, 55-57. 59-60 Copyright Registrations for the Subject Albums.)

42. The registrations for *You Got Larceny* and *City of Boom* have an effective date of August 10, 1989 on the same date as the *As Nasty as They Wanna Be* album and both were filed by Pac Jam Publishing stated the respective songs were not a work made for hire. (Burroughs Decl. at ¶ 54, 58, Exh. 54, 58 Copyright Registrations for the Subject Albums.)

43. The registration for the song *Coolin'* was both registered by Pac Jam Publishing in 1989 and by Lil' Joe Wein Music, Inc. in 1998. (Burroughs Decl. at ¶ 53, 54, Exh. 53, 54

Copyright Registrations for the Subject Albums.)

44. The sound recording registrations for the Subject Albums registered by Lil' Joe in 2001 falsely state that either Luke Records, Inc. or Lil' Joe were the authors of the sound recordings when Defendants are the actual authors. (Campbell Decl. at ¶ 18-19, 26-40; Burroughs Decl. at ¶ 61-65, Exh. 61-65 Copyright Registrations for the Subject Albums.)

45. The sound recording registrations for the Subject Albums also falsely state on four of the five registrations claim the works were works for hire, despite the composition registrations stating the opposite, this includes the majority of the *Move Somethin' (Clean)* PA registrations with effective dates in May 2001 three months after the SR registrations by Lil' Joe. (Campbell Decl. at ¶ ¶ 18-19, 26-40; Burroughs Decl. at ¶ 23-31, 61-65, Exhs 23-31, 61-65 Copyright Registrations for the Subject Albums.)

46. Two of the four SR registrations check both the work for hire and not work for hire boxes. (Burroughs Decl. at ¶ 61, 63, Exh. 61, 63 Copyright Registrations for the Subject Albums.)

47. The paychecks produced by Plaintiff in this matter[1] do **not** identify what they were for, do not indicate that they were made in connection with the creation of the Subject Albums, and 2 Live Crew were never paid a salary by any of their record labels. (Campbell Decl. at ¶ 40; Ross Decl. at ¶ 30; Burroughs Decl. at ¶ 69.)

48. There is no employment agreement that states a salary and what that salary would be for for any member of *2 Live Crew.* (Campbell Decl. at ¶ 18, 36, 40; Ross Decl. at ¶ 16, 18, 30.)

49. 2 Live Crew had a high level of skill in writing and producing music and over the course of their career created multiple gold and one platinum album. (Campbell Decl. at ¶ 32; Ross Decl. at ¶ 22.)

50. Each member of 2 Live Crew contributed to the compositions and recording and Lil' Joe, Skyywalker Records, Inc., Pac Jam Publishing, or any other contracting entity would not have been able to create and replicate the Subject Albums due to the high level of creativity and skill. (Campbell Decl. at ¶ 32; Ross Decl. at ¶ 22.)

---

[1] The paychecks are identified in the Affidavit of Herman Moskowitz but were not attached as Exhibit 2 as stated, so Defendants address the issues for all paychecks produced in this action.

51. The Subject Albums were written and recorded in third-party studios not at the location of Skyywalker Records, Inc. or any other possible "employer." (Campbell Decl. at ¶ 33; Ross Decl. at ¶ 23.)

52. 2 Live Crew contracted with Skyywalker Records, Inc. (and its predecessor) for a relatively short period of time. (Campbell Decl. at ¶ 23-24, 38, Exh. 1; Ross Decl. at ¶ 28.)

53. 2 Live Crew were not hired and paid on salary or an hourly basis but were paid a royalty on the delivered albums. (Campbell Decl. at ¶ 22-24, Exh. 1 1987 Agreement; Ross Decl. at ¶ 16, 18, 30 Anissa Decl. at ¶ 5-7; Won Jr. Decl. at ¶ 5-7; Rey Decl. at ¶ 5-7; Roderick Decl. at ¶ 5-7.)

54. While Skyywalker Records made certain payments to 2 Live Crew, those payments were for per diems or even office work or odd jobs and were not related to compensation for the creation of the Subject Albums. (Campbell Decl. at ¶ 22-24, 40, Exh. 1 1987 Agreement; Ross Decl. at ¶ 30.)

55. Skyywalker Records, Inc. did not have the ability to arbitrarily assign additional projects outside 2 Live Crew's obligation to create and deliver the required works. (Campbell Decl. at ¶ 35; Ross Decl. at ¶ 25.)

56. 2 Live Crew had the freedom to create their own schedule and did not have assigned times each day to work and simply had the deadline to deliver an album, but otherwise had absolute freedom to decide when to work. (Campbell Decl. at ¶ 39; Ross Decl. at ¶ 29.)

57. Neither Skyywalker Records, Inc. the contracting entity in the 1987 Agreement nor Luke Records, Inc. are still in business or have been in business since the mid-1990s. (Campbell Decl. at ¶ 38; Ross Decl. at ¶ 28.)

58. Skyywalker Records did not provide the members of 2 Live Crew with health insurance, paid vacation time, worker's compensation benefits, a pension plan, or other types of benefits that courts have traditionally found probative of employee status. (Campbell Decl. at ¶ 40; Ross Decl. at ¶ 30; Anissa Decl. at ¶ 5-7; Won Jr. Decl. at ¶ 5-7; Rey Decl. at ¶ 5-7; Roderick Decl. at ¶ 5-7.)

59. Defendants filed their Motion for Summary Judgment without a meet-and-confer and before making its full document production and while the parties were in the process of

setting depositions, which dates are still being confirmed as of the date of this filing. The depositions of Joe Weinberger, the owner of Lil' Joe, and Herman Moscowitz, an accountant who was heavily involved in the business of Skyywalker Records and its successors and predecessors, are crucial to this opposition, as they provide substantive declarations that underpin this Motion. In addition, Plaintiff produced a large trove of documents at or around the time of its filing of this Motion that are still under review. Finally, discovery in this matter does not close until November 4, 2022. (Burroughs Decl. at ¶ 72.)

Dated: October 7, 2022                                  Respectfully submitted,


By: /s/ *Scott Alan Burroughs*
Scott Alan Burroughs
(admitted *pro hac vice*)
DONIGER / BURROUGHS
237 Water Street, First Floor
New York, New York 10038
(310) 590 – 1820
scott@donigerlawfirm.com
October 7, 2022

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on October 7, 2022, a true and authentic copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                 By:  */s/ Scott Alan Burroughs*
                     Scott Alan Burroughs