UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LIL' JOE RECORDS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:21-CV-23727-DPG |
| | ) |
| MARK ROSS; *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF MARK ROSS IN OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT**

## DECLARATION OF MARK ROSS

I, Mark Ross, depose, attest, and say from my personal knowledge, the following:

1. I, Mark Ross, performed in the group named "2 Live Crew" with Luther Campbell, Christopher Wong Won, and David Hobbs.

2. I am a joint creator author, with the others in 2 Live Crew, of the albums entitled *The 2 Live Crew is What We Are, Move Somethin', Move Somethin' (Clean), As Nasty As They Wanna Be,* and *As Clean As They Wanna be* ("Subject Albums") which were written, recorded, and published from 1986 and 1989.

3. The 2 Live Crew's members entered into a less than favorable grant in connection with the Subject Albums and are now, 35 years after those works were published, we are well in our rights to terminate the grant.

4. On November 4, 2020, over two years before the earliest date of effective termination (November 7, 2022) and less than 10 years from the last date of effective termination (May 1, 2024), Luther Campbell, the heirs of Christopher Wong Won, and I comprising and representing 3 of the 4 members of 2 Live Crew served a noticed termination of its original copyright grants under 17 U.S.C. § 203 (the "Termination Notice"). The grants terminated in the Termination Notice included the right of publication.

5. The Termination Notice was served on November 4, 2020, upon all possible rights holders, including Lil' Joe, via first-class mail (return receipt requested) and when possible electronic mail.

6. The date of publication for the first Subject Album *The 2 Live Crew Is What We Are* was provided in the termination notice as December 1, 1986 and the notice listed a date of effective termination of November 7, 2022, which is over 35 years from the date of publication and within 5 year window beginning on December 1, 2021. The date listed of first publication on the earliest filed composition copyright registration for the songs on the identified Subject Album.

7. The date of publication of the second and third Subject Albums *Move Somethin'* and *Move Somethin' (Clean)* was provided in the termination notice as March 21, 1988 and the notice listed a date of effective termination of March 21, 2023, within the required timeframe. The date listed of first publication on the February 26, 2001 sound recording copyright registrations for the album *Move Somethin'*.

2

8. The date of publication of the fourth and fifth Subject Albums *As Nasty as They Wanna Be* and *As Clean as They Wanna Be* was provided in the termination notice as May 1, 1989 and the notice listed a date of effective termination of May 1, 2024, again within the required timeframe. The date listed of first publication on the February 26, 2001 sound recording copyright registrations for the identified Subject Albums.

9. While I participated in various bankruptcy proceedings and agreements, none of those divested me of my rights under 17 U.S.C. § 203. Said rights had not vested at the time of those proceedings and were not part of any relevant bankruptcy estate. One such bankruptcy ended in a settlement agreement between me and Lil' Joe. That agreement did not include any language regarding termination rights to my original grants of copyright because those rights had not vested. A true and correct copy of said settlement agreement is attached hereto as **Exhibit 72.**

10. I entered into various agreements related to my intellectual property rights, but none of those divested me of my rights under 17 U.S.C. § 203. Said rights had not vested at the time of those agreements and were not part of any of those agreements.

11. Ultimately, through a series of agreements, bankruptcy proceedings, and litigation settlements Lil' Joe came to own the copyrights in the Subject Albums. None of the purported agreements provided by Lil' Joe in this case even discuss termination rights, and any language relating to royalties and/or profits, or acknowledging Lil' Joe's rights or interests in the master and/or publishing of any *2 Live Crew* related copyrights does not and cannot extinguish my rights under 17 U.S.C. § 203.

12. When I created and authored the Subject Albums, I, like the others in 2 Live Crew, did so as independent contractors and not employees.

13. 2 Live Crew made all creative decisions in creating the Subject Albums.

14. The Subject Albums were not "works for hire."

15. The 1991 Agreements referenced by Plaintiff do not relate to the Subject Albums and were entered into after the Subject Albums were created. The three 1991 Agreements contemplate only *future* recordings and could not possibly cover the Subject Albums, each of which was written, recorded, released, and in some cases registered with the Copyright Office well before 1991 when the 1991 Agreements were execute and their first term begins.

16. Under the 1991 Agreements the members of 2 Live Crew were paid a royalty for the recordings delivered under the terms of that agreement, and 2 Live Crew were never paid a

3

salary.

17. The operative 1987 Agreement does not contain a work-for-hire clause.

18. Under the 1991 Agreements the members of 2 Live Crew were paid a royalty for the recordings delivered under the terms of that agreement, and 2 Live Crew were never paid a salary.

19. The 1987 Agreement relates to the Subject Albums and to the extent that said agreement does not meet any technical requirements for an effective transfer the operative agreement would be the oral license that the 1987 Agreement sought to memorialize. The 1987 Agreement was executed in or around 1990 and reflects the oral agreement that the members of 2 Live Crew reached prior to its signing. The 1987 Agreement is the operative agreement for the Subject Albums and to the extent that said written agreement is unenforceable the operative agreement would be the oral license that the 1987 agreement sought to memorialize and under which the parties operated. In 1990, Skyywalker Records, Inc. was the name of my recording entity, and it operated out of the address 3050 Biscayne Blvd. Suite 307, Miami, Florida. The 1987 Agreement is accurate because it was executed in or around 1990 when Skyywalker Records, Inc. was in operation at that address.  And, importantly, 2 Live Crew and Skyywalker Records (as well as Skyywalker Records' predecessor, Luke Skyywalker Records) complied with and operated under the terms of the 1987 Agreement, including as renewed, in the release of the Subject Albums and payments made thereunder. The record companies released the Subject Albums to the public and paid royalties to 2 Live Crew.

20. The record company had no right to control the creative process for the songs. At most the record company made suggestions and contributions relating to the songs on the Subject Albums. 2 Live Crew made the artistic decisions. Further, Skyywalker Records, Inc. or any other record company did not have the ability to arbitrarily assign additional projects outside 2 Live Crew's obligation to create and deliver the required works.

21. 2 Live Crew had the freedom to create their own schedule and did not have assigned times each day to work and simply had the deadline to deliver an album, but otherwise had absolute freedom to decide when to work.

22. It took considerable skill required to create, perform, and record the songs on the Subject Albums. Each member of contributed to the compositions and recording and Lil' Joe, Skyywalker Records, Inc., Pac Jam Publishing, or any other contracting entity would not have

4

been able to create and replicate the Subject Albums due to the high level of creativity and skill.

23. The Subject Albums were written and recorded in third-party studios not at the location of Skyywalker Records, Inc. or any other possible "employer."

24. The record label did not provide me or 2 Live Crew's members with health insurance, paid vacation time, worker's compensation benefits, a pension plan, or other types of benefits.

25. The record label did not have the right to assign to 2 Live Crew additional projects.

26. 2 Live Crew had the right to receive royalties from, at the very least, BMI in connection with our creation of the Subject Albums, and received such royalties, which is inconsistent with "employee" status.

27. 2 Live Crew created the songs not at the offices of the music company but at their homes and off-site recording studios.

28. 2 Live Crew's relationship with Skyywalker Records was brief, as the company went out of business in the mid-1990s.

29. 2 Live Crew had discretion over our day-to-day schedule and decided when, where, and how long to work on the Subject Albums.

30. 2 Live Crew received per diem checks at some point beginning in mid-1987, and while some of them were marked "payroll," those payments were not compensation for the creation of the Subject Albums. The Subject Albums were not created within the scope of my employment with any company.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 7, 2022 at  Mark ross ,  Mark ross .

By:  Mark ross

Signature:  Mark ross (Oct 7, 2022 22:15 EDT)

Email:  rossboi305@gmail.com

5

# DeclarationRoss_2LiveCrew_100722

Final Audit Report                                                                                                   2022-10-08

| | |
|---|---|
| Created: | 2022-10-07 |
| By: | Frank Trechsel (ftrechsel@donigerlawfirm.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAXyDeNM64mXgZ95nqGMpbz8ZoWuHnPOsu |

## "DeclarationRoss_2LiveCrew_100722" History

- **Document created by Frank Trechsel (ftrechsel@donigerlawfirm.com)**
  2022-10-07 - 11:56:41 PM GMT- IP address: 47.180.241.76

- **Document emailed to rossboi305@gmail.com for signature**
  2022-10-07 - 11:58:08 PM GMT

- **Email viewed by rossboi305@gmail.com**
  2022-10-08 - 0:18:20 AM GMT- IP address: 146.75.248.0

- **Signer rossboi305@gmail.com entered name at signing as Mark ross**
  2022-10-08 - 2:15:48 AM GMT- IP address: 172.58.6.160

- **Document e-signed by Mark ross (rossboi305@gmail.com)**
  Signature Date: 2022-10-08 - 2:15:50 AM GMT - Time Source: server- IP address: 172.58.6.160

- **Agreement completed.**
  2022-10-08 - 2:15:50 AM GMT

Adobe Acrobat Sign