UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23727-DPG

LIL' JOE RECORDS, INC.,

    Plaintiff,

v.

MARK ROSS, et al.,

    Defendants.

_____/

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Lil' Joe Records, Inc. ("Lil' Joe"), files its reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment [DE 36] ("Response") and states:

### I.    Overview

Plaintiff asserted it is entitled to summary judgment for four independent reasons:

    a. Defendants were "artists for hire" for Luke Records, Inc.;

    b. Two of the three Defendants lost their Section 203 termination rights when they filed for personal bankruptcy;

    c. The Defendants' notice of exercise of the termination rights in 2020 is defective on its face; and

    d. Two of the three Defendants relinquished their Section 203 termination rights by virtue of subsequent settlement agreements.

Plaintiff acknowledges that Defendants have raised genuine issues of contested fact whether Defendants were artists for hire. However, Defendants have raised no facts, nor law opposing or rebutting the Plaintiff's other 3 grounds. Since Defendants are but three of four members of "2 Live Crew," if any ONE of the Defendants have lost or have not properly exercised their Sec. 203 rights, they do not have a sufficient majority to terminate. 17 U.S.C. §203(a)(1).

### II.    Luther Campbell's and Mark Ross' bankruptcies divested them of their Sec. 203 rights.

As Defendants acknowledge, Response at p. 2, to defeat summary judgment they "must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1516 (S.D. Fla. 1995). Defendants do not do so. To the contrary, they acknowledge that Campbell and Ross each filed for bankruptcy after the copyright assignments from which the Sec. 203 rights at issue were created. Statement of Material Facts in Support of Motion for Partial Summary Judgment as to Count I for Declaratory Judgment as to the Validity of the Copyright Termination Notice [D.E. 31] ("Lil' Joe Statement") at pp. 1-5, ¶¶ 1, 3-4 & 9; and Defendants Statement of Material Facts [D.E. 37] ("Defendants' Statement") at pp. 2-3, ¶¶ 1, 3-4[1] & 9[2].

**(a) <u>Any Sec. 203 rights are assets of a bankruptcy estate by operation of law</u>**

Defendants assert the ability to terminate the 2 Live Crew Copyrights cannot be given away by agreement under 17 USC §203(a)(5) based on the fiction that there was some "agreement" in bankruptcy by which Campbell and Ross gave away their Sec. 203 rights. That simply is not true[3]

---

[1] Defendants say it is "Undisputed" that "[i]n 1995 (years after Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs transferred all of their copyright rights to *2 Live Crew*'s music and trademark rights in *2 Live Crew*'s marks and cover designs to Luke Records), Campbell and Luke Records became the subject of bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of Florida which were jointly administered (the 'Luke Bankruptcy')." While defendants now concede this, when asked to admit it in a request for admissions they, including Campbell himself, professed to be "without sufficient knowledge to admit or deny this…." Lil' Joe Statement at p. 4, ¶ 4.

[2] "Defendants do not dispute that Ross filed a bankruptcy action in November 2000, that Lil Joe commenced an adversary proceeding against Ross, or that the settlement agreement states what it states…." It is curious to note that while the Defendants now concede that Ross filed bankruptcy, an adversary proceeding was commenced by Lil' Joe against Mark Ross and settled by a written agreement, when asked about these occurrences in a request for admissions they professed to be "without sufficient knowledge to admit or deny this…." Lil' Joe Statement at pp. 5-6, ¶ 9.

[3] Lil Joe does not contend that there was an agreement in bankruptcy whereby any of the members of *2 Live Crew* gave away their termination rights, but that they lost their termination rights by operation of law when they filed bankruptcy. Motion for Partial Summary Judgment as

2

as a matter of law. Sec. 203 rights become part of a bankruptcy estate immediately upon the commencement of bankruptcy case, not by any "agreement," but by operation of law pursuant to 11 U.S.C. § 541. "The commencement of a [bankruptcy proceeding] creates an estate. Such estate is comprised of…all legal or equitable interests of the debtor in property as of the commencement of the case." 11 USC §541(a)(1).  Further, 11 U.S.C. § 541(b) explicitly sets forth what is excluded from property of the estate and notably absent from this list of exceptions is Sec. 203 Rights. Lil' Joe only referred to Christopher Wong Won's and Ross' subsequent settlement agreements to show that later they acknowledged that the 2 Live Crew Copyrights went through Campbell's, Ross' and Luke Records, Inc.' bankruptcies. Lil' Joe Statement at p. 5, ¶¶ 8-9; Defendants' Statement at p. 3, ¶¶ 8[4]-9.

Tellingly, Defendants fails to address 11 U.S.C. § 541, let alone the extensive law dictating that Ross and Campbell's Sec. 203 rights are property of their respective bankruptcy estates by operation of law. "A debtor's bankruptcy petition creates a legal fiction known as a 'bankruptcy estate' into which the debtor (or trustee appointed to run the debtor's estate) places all of his assets.' … 'All the 'legal or equitable interests' the debtor had in his property pre-petition become property of the bankruptcy estate...'" *Cardwell v Bankruptcy Estate of Joel Spivey (In re Douglas Asphalt Co.),* 483 BR 560, 571 (Bankr. S.D. Ga. 2012). "As the Supreme Court has noted, 'Congress intended a broad range of property to be included in the estate.'" *Goldstone v U.S. Bancorp,* 811 F.3d 1133, 1139 (9th Cir. 2015). "Indeed, the legislative history indicates that §541(a) would 'bring anything of value that the debtors have into the estate.'" *Id.* Bankruptcy Code "Section 541(a)(1)

---

to Count I for Declaratory Judgment as to the Validity of the Copyright Termination Notice [D.E. 30]("Motion") at p. 8 ("any legal or equitable interest that Luther Campbell and Luke Records had in the 2 Live Crew Copyrights, whatever they are, remain the property of their bankruptcy estates represented by their bankruptcy trustee.").

[5] H.R. Rep. No 94-1476 (1976); also see *Walthal v Rusk,* 172 F. 3d 481 (7th Cir. 1999).

'is all-encompassing, and Congress meant for it to be construed commensurately.'" *Russ v Jackson County School Board,* 530 F.Supp. 3d 1074, 1079 (N.D. Fla. 2021). "The Bankruptcy Code defines a bankrupt's estate broadly to encompass all kinds of property, including intangibles…." *Id.* at 1080.

      Accordingly, Campbell's and Ross' Sec. 203 rights became part of their respective bankruptcy estates immediately upon the commencement of their respective bankruptcy case, by operation of law, and remain property of their respective bankruptcy estates. "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code." *Russ,* 530 F.Supp 3d at 1082. Here, the 2 Live Crew Copyrights were not abandoned. Lil' Joe Statement at p. 5, ¶ 7; Defendants' Statement at p. 5, ¶ 7. "After the bankruptcy case has been closed, 'property of the estate that is not administered in the bankruptcy proceedings remains the property of the estate.'" *Russ,* 530 F.Supp 3d at 1082. Consequently, as a result of their bankruptcies, whatever interest Campbell or Ross had in the 2 Live Crew Copyrights, including, but not limited to, any Sec. 203 rights, are not theirs to exercise. As Defendants recognize, the Termination Notice requires the assent of 3 of the 4 members of 2 *Live Crew*. Response at p. 6. Since neither Campbell nor Ross possessed Sec. 203 rights, the Termination Notice was ineffective.

      Congress intended that rights in copyrights, whether or not transferrable by the debtor, are assets of a bankruptcy estate. *Denadai v Preferred Capital Markets, Inc.,* 272 B.R. 21, 29 n 5 (D. Mass. 2001)(citing H.R. Rep. No. 95-595, at 175-76 (1977)). In *Denadai* summary judgment was granted holding that unvested stock options were assets of the estate, even though they contained a transfer restriction, like 17 USC §203(a)(5). *Id.* at 28-30. "Moreover, the bankruptcy code recognizes that only in limited circumstances (of which this is not one) are non-transferability

4

restrictions to be respected in bankruptcy. 11 U.S.C.§541(c)." *Id.* at 38. To be considered for exclusion from becoming an asset of a bankruptcy estate, there must be evidence that Congress intended the statute at issue to serve as a general exemption from creditor process. *Id.* at 40. There is no such evidence here that Congress intended Sec. 203 rights to be exempt from creditor process.

While it is true that no case directly addressed whether Sec. 203 rights are an asset of a bankruptcy estate, the cases, including the foregoing, are legion in stating that all of a debtor's assets except those explicitly excluded in 11 USC §541(b) & (c) are included in the debtor's bankruptcy estate. All means all; the fact that termination rights are not listed in the Bankruptcy Code or have not been addressed in a reported case does not take them outside the confines of "all." Defendants would have this Court believe an author could run up debts as termination approaches, declare bankruptcy just days before termination becomes effective, leaving his creditors high and dry, and then, days later, effect termination and reap the financial reward all for himself while his creditors get nothing. Naturally, no authority stands for that proposition.

**(b) <u>None of the authorities cited by Defendants hold that Sec. 203 rights are not assets of a bankruptcy estate</u>**

To counter all of the foregoing, Defendants cite to *In re McKay,* 143 F. 671 (W.D. N.Y. 1906). *McKay* had absolutely nothing to do with copyrights or Sec 203 rights. It only examined whether trust assets became property of a bankruptcy estate under the Bankruptcy Act of 1898. *Id.* at 672-73. "Defendants' argument is premised on a provision of the Bankruptcy Act of 1898, which was abrogated by the adoption of the Bankruptcy Code in 1978." *Goldstone,* 811 F.3d at 1140. "The scope of §541(a) of the Bankruptcy Code is much greater than that of the prior Bankruptcy Act of 1898." *Goldstone,* 811 F.3d at 1139.

Contrary to Defendants' contention, "[c]ourts consistently have concluded that contingent interests should be included within the bankruptcy estate." *Denadai,* 272 B.R. at 29 n 5. Unvested

and contingent options are assets of a bankruptcy estate. *Stoebner v Wick (In re Wick),* 276 F.3d 412, 415 (8th Cir 2001). *Denadai* considered whether "options that are unvested as of the petition date" are assets of a bankruptcy estate. 272 B.R. at 28. In was observed that "[a]lthough Debtor here did not become entitled to exercise all of the stock options until after filing his petition, he did possess at that time the contingent right to exercise the options in the future." *Id.* at 29.

Defendants' efforts to scrabble an argument that the Sec. 203 rights had not yet vested is also unavailing. First, even if the Sec. 203 rights had not yet vested, they were still assets of Campbell's and Ross' bankruptcy estates.  Second, *Rodriguez v Rodriguez,* 218 F.3d 432, 425 (5th Cir. 2000), cited by Defendants, belies their contention by acknowledging that a "copyright 'vests' in the author…." Defendants claim to be the author of the copyrights at issue from which the termination rights emanate, thus they had "vested." It was further observed that "'[t]o vest' means to give an immediate, fixed right of present or future enjoyment…." *Id.* at 436. There is no dispute that the 2 Live Crew Copyrights at issue existed before Campbell's and Ross' bankruptcies. Lil' Joe Statement at pp. 1-5, ¶¶ 1, 3-4 & 9; Defendants' Statement at pp. 2-3, ¶¶ 1, 3-4 & 9. Since it is the creation of these 2 Live Crew Copyrights that form the basis of the Sec. 203 rights, the rights existed at the time of the creation for future enjoyment. Either way you look at it, *Rodriguez* says the Sec. 203 rights had already vested when Campbell and Ross filed bankruptcy.

The remaining cases cited by Defendants do not help their cause, as none of them address the impact of an author's bankruptcy. *Stillwater Ltd. v Basilotta*, 2017 U.S. Dist LEXIS 170176 * 1-2, 2017 WL 2906056 (C.D. Cal. March 17, 2017), considered a motion to dismiss a complaint seeking a declaration that Basilota did not validly terminate transfer of her copyright. In evaluating the allegations of the complaint, the court observed that "[t]his right is non-transferrable and can only be exercised by the author or his/her heirs." *Id.* at * 8. Since there is no indication that Basilota filed bankruptcy, there is no discussion about the impact of bankruptcy on the ability to exercise

6

this right. *Everly v Everly,* 2020 U.S. Dist. LEXIS 173698 *1-11, 2020 WL 5642359 (M.D. Tenn. Sept. 22, 2020), evaluated whether Phil Everly's agreement to give his brother Don sole rights to a song extinguished Phil's termination right. There is no indication that either of the Everly brothers filed bankruptcy, so no discussion about the impact of bankruptcy on termination rights. *Brown-Thomas v Hynie,* 441 F.Supp. 3d 180, 192-93 (D. S.C. 2019), considered a motion to dismiss a claim that certain heirs of the singer James Brown were deprived of their copyright termination rights by a secret agreement. Just like the other cases, there was no bankruptcy at issue.

In *Stewart v Abend,* 495 U.S. 207, 211 (1990), "[t]he author of a pre-existing work agreed to assign his rights in the renewal copyright term to the owner of the derivative work, but dies before the commencement of the renewal period. *Stewart* has nothing to do with the question presented here – whether copyright termination rights are assets of a bankruptcy estate. Like the other cases, *Stewart* did not consider the impact of bankruptcy on Sec. 203 rights.

*Fred Ahlert Music Corp. v Warner/Chappell Music, Inc.,* 155 F.3d 17, 18 (2nd Cir. 1998), "consider[ed] the scope of the 'Derivative Works Exception' of the Copyright Act of 1976." While no question was posed as to the effect of bankruptcy on termination rights, the question here, the court did observe, contrary to defendants' assertion here, that "an author's termination rights are not unlimited." *Id.* at 19. Defendants gratuitously add "inalienability" before the quote that termination rights are designed to protect an author's interest. *Id.* at 25; Response at p. 9. Lil' Joe does not dispute that this is the design of Sec. 203 rights, but that does not mean that an author does not forfeit his rights when he files bankruptcy.

Defendants also refer to 17 U.S.C. §304(c)(6)(B) & (D), neither of which consider the impact of bankruptcy on Sec. 203 rights.

*Baldwin v EMI Feist Catalog, Inc.,* 2012 U.S. Dist. LEXIS 201053 * 1-2; 2012 WL 13019195 (S.D. Fla. Dec. 11, 2012), evaluated a motion to dismiss a declaratory judgment action

as to the validity of a Sec. 203 notice. The declaratory judgment was held to be ripe, but *Baldwin* did not consider what happens to that termination right when the author files bankruptcy.

Defendants' reference to "a general bankruptcy rule: The estate cannot possess anything more than the debtor did outside bankruptcy", *Mission Product Holdings, Inc. v Tempnology, LLC,* 139 S.Ct. 1652, 1663 (2019), also fails to help their cause. Once again, it is uncontroverted that the copyrights at issue existed before Campbell's and Ross' bankruptcies. Since it is the creation of these copyrights that form the basis of the termination rights, the termination rights existed when Campbell and Ross filed bankruptcy. As the Supreme Court acknowledged in *Mission Product,* "[a] debtor's property does not shrink by happenstance of bankruptcy…." *Id.*

**(c) Additional time**

As to Defendants request for additional time pursuant to Fed. R. Civ. P.56(d), all material facts regarding Campbell's and Ross' bankruptcies are before this Court, and Defendants have proffered nothing to show why, at a minimum, this portion of the request for summary judgment should not be considered now.

**II.   Defendants' Arguments That Sec.203 Rights Cannot Be Settled Or Relinquished (Years After an Initial Transfer) Is Unsupported As A Matter Of Law**

The legislative history of Sec. 203 shows that Congress did not intend to preclude authors from later (after the value of the copyrights is known) and for further consideration relinquish Sec. 203 rights as part of a settlement.[5] Here, Defendants admit that years after the initial transfer of the copyrights (in 1991) there was subsequent litigation between Lil' Joe, on one hand, and both Ross and Wong Won, which resulted with settlement agreements in which Ross and Wong Won relinquished all rights to the copyrights to Lil Joe.[6] Based upon the legislative intent of protecting

---

[5] H.R. Rep. No 94-1476 (1976); also see *Walthal v Rusk,* 172 F. 3d 481 (7th Cir. 1999).
[6] As to Wong Won, see Defendant's Exhibit 70 (DE 39-70) at para. 3; and Defendant's Exhibit 71 (DE 39-71), at p. 1g. As to Ross, see Defendant's Exhibit 72 (DE 39-72), at para. 3g.

authors before the value of the copyrights are known and considering the rights of all who claim an interest in those copyrights, Neither Ross nor Wong Won were in need of the protection Sec. 203 provides. Tellingly Defendants have not issued a notice of termination as to these copyright assignments. By Defendants' theory, no transfer or assignment of copyrights could ever settle a judgment against an artist. Since the legislative history mandates that courts are to consider the legitimate needs of all interests involved, Lil' Joe's rights must likewise be considered.[7]

### III. Defendants Have Asserted No Facts, Nor Law Rebutting Plaintiff's Position That The November 4, 2020 Notice Of Exercise Of Termination Rights Was Defective On Its Face

The notice of exercise of the termination rights (Defendant's Exhibit 66 [DE 39-66]) asserts that the transfer of the alleged copyrights occurred in the "made effective 1987 contract." Defendant's Exhibit 1 (DE 39-1). No other transfer document is referenced, supporting the notice of exercise of Sec.203 rights. Defendants admit in their response that a transfer of copyright can only occur pursuant to a written agreement pursuant to Section 204 of the Copyright Act. However, the undated alleged "made affective of 1987 contract" does not transfer any specific copyrights. Now for the first time, Defendants claim that this agreement confirmed a prior oral agreement and was signed in 1990. This assertion makes no sense. First, the term of the 1987 contract (para. 1) is only for one year. Hence, come 1990, the term was over. Second, paragraph 2(d) provides that the transferee owns all copyrights "free and clear of any claim by artist." This assertion fails to rebut Plaintiff's position that the members of 2 Live Crew entered into a recording artist agreement in 1991 and that Lil Joe acquired ownership of all of the copyrights at issue pursuant to the orders of the United States Bankruptcy Court, written assignment by the Luke Records bankruptcy trustee in 1995 and the subsequent settlement agreements with Wong Won

---

[7] Further, the legislative intent of Sec. 203 could not grant Campbell rights because in addition to being one of the authors, he was the owner of the grantee, Luke Records.

and Ross. Most relevantly, neither the 1991 recording artist agreement, the 1995 order of the Bankruptcy Court, the assignment by the trustee (each transferring the copyrights are issue) or the subsequent assignments in the Ross and Wong Won settlements are mentioned in the November 4, 2020 notice. 37 CFR 201.10(b) mandates that a termination notice must give "a brief statement reasonably identifying the grant to which the notice of termination applies." The notice in this case is defective on its face because no copyrights are identified anywhere in the purported 1987 contract and the notice fails to mention either the 1991, 1995 or subsequent grants.

## IV.   Conclusion

Lil' Joe requests that this Court grant it partial summary judgment as requested in its motion.

        **WOLFE LAW MIAMI PA**
        175 SW 7th Street, Suite 2410
        Miami, Florida 33130
        P: 305.384.7370
        F: 305.384.7371
        Email: rwolfe@wolfelawmiami.com

        By:   /s/ Richard C. Wolfe
                Richard C. Wolfe, Esq.
                Florida Bar No.: 355607

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

Joel Rothman, Esq.
SRIP LAW PA
21301 Powerline Road, Ste 100

/s/ Richard C. Wolfe
Richard C. Wolfe