UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LIL' JOE RECORDS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:21-CV-23727-DPG |
| ) | |
| MARK ROSS; *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS MARK ROSS, CHRISTOPHER WONG WON, JR., RODERICK WONG WON, LETERIUS RAY, ANISSA WONG WON, AND LUTHER CAMPBELL's STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## DEFENDANT'S STATEMENT OF FACTS

Defendants, Mark Ross, Christopher Wong Won, Jr., Roderick Wong Won, Leterius Ray, Anissa Wong Won, and Luther Campbell ("Defendants"), pursuant to S.D. Fla. L.R. 56.1 hereby provides this statement of material facts supporting its Motion for Summary Judgment as to Count 1 for Declaratory Judgment as to the Validity of the Copyright Termination Notice of Defendants' Counter Claim and Counts II-X of Plaintiff's Complaint as follows:

1.  Defendants Mark Ross ("Ross"), Luther Campbell ("Campbell"), and the deceased Christopher Wong Won ("Won") (collectively "2 Live Crew") are three of the four original members of the band 2 Live Crew. (Declaration of Luther Campbell ("Campbell Decl.") ¶ 1; Declaration of Mark Ross ("Ross Decl.") ¶ 1; Declaration of Leterius Ray ("Ray Decl.") ¶ 2.)

2.  Defendants Anissa Wong Won, Christopher Wong Won, Jr., Roderick Wong Won, and Leterius Rey are the heirs of Christopher Wong Won (collectively "Won Heirs") and terminated Won's grant of rights on behalf of the Estate of Christopher Wong Won. (Ray Decl. ¶ 3-4.)

3.  From 1986 to 1989, 2 Live Crew wrote and recorded five albums, *The 2 Live Crew Is What We Are, Move Somethin', Move Somethin' (Clean), As Nasty As They Wanna Be,* and *As Clean As They Wanna Be* ("Subject Albums"). (Campbell Decl. ¶ 2; Ross Decl. ¶ 2.)

4.  The members of 2 Live Crew, at the time they recorded each of the Subject Albums, had an oral agreement when they went into the studio about how the rights, including copyrights, for those albums would be treated. (Campbell Decl. ¶ 6; Ross Decl. ¶ 3.)

5.  The parties performed under that oral agreement between 1986 and 1990. (Campbell Decl. ¶ 6-10; Ross Decl. ¶ 3-7.)

6. 2 Live Crew recorded the Subject Albums, Campbell's label Luke Skyywalker Records, Inc. ("Skyywalker Records") released them, and the label paid the group from the release of the Subject Albums. (Campbell Decl. ¶ 6-10, 43; Ross Decl. ¶ 3-7, 34; Ray Decl. ¶ 5.)

7. Luke Skyywalker Records was renamed Skyywalker Records (the entity that executed the 1990 Agreement), which was then renamed Luke Records. (Campbell Decl. ¶ 3.)

8. The Subject Albums bore the logo and company information for Skyywalker Records under the name the entity bore at the time of release. (Campbell Decl. ¶ 8.)

9. When copyright and obscenity lawsuits relating to the Subject Albums were waged in court, Skyywalker Records was a party to those actions, which is only possible if it had an ownership interest. (Campbell Decl. ¶ 10; Ross Decl. ¶ 7.)

10. At no time between 1986 and 1990 did any of the members of 2 Live Crew, or anyone else for that matter, claim that any entity or individual other than Skyywalker Records held the Subject Album's copyright. (Campbell Decl. ¶ 6-10; Ross Decl. ¶ 3-7.)

11. In or around 1990, 2 Live Crew executed a written agreement with Skyywalker Records memorializing the parties' oral agreement ("1990 Agreement"). (Campbell Decl. ¶ 11, 15, Ex. 1; Ross Decl. ¶ 8; Ray Decl. ¶ 7.)

12. The name of the contracting entity listed on the 1990 Agreement is Skyywalker Records. (Campbell Decl. ¶ 14-15, Ex. 1.)

13. The 1990 Agreement states an effective date of January 1, 1987 but was entered into in 1990 when the members of 2 Live Crew decided to memorialize their oral agreement in writing. (Campbell Decl. ¶ 11, 15, Ex. 1; Ross Decl. ¶ 8.)

14. Lil' Joe Records, Inc., ("Lil' Joe") has had the 1990 Agreement in its files since the early 2000s and, before this litigation, never took any steps to challenge its validity or

veracity. Declaration of Scott Alan Burroughs ("Burroughs Decl.") ¶ 67, 69, Ex. 70.)

15. There are certain publishing agreements with another entity, Pac Jam Publishing, Inc., that relate to the compositions for the Subject Albums. (Campbell Decl. ¶ 26, 27, Ex. 4.)

16. Skyywalker Records held the copyrights for the Subject Albums per the 1990 Agreement at all relevant times until it, along with Campbell, declared bankruptcy in 1995. (Campbell Decl. ¶ 12; Ross Decl. ¶ 9.)

17. Ultimately, through the bankruptcy process, Plaintiff, Lil' Joe, obtained the copyrights in the Subject Albums. (Campbell Decl. ¶ 30; Ross Decl. ¶ 22.)

18. On November 4, 2020, 2 Live Crew served a notice terminating ("Notice") its original copyright grants to Skyywalker Records under 17 U.S.C. § 203, which allows an artist to terminate a transfer and reclaim their copyrights after 35 years. (Campbell Decl. ¶ 20-22, Ex. 3; Ross Decl. ¶ 16.)

19. Paragraph 2(d) of the 1990 Agreement reads in part: "All master recordings recorded during the term here of and all derivatives manufactured therefrom, together with the performances embodied thereof shall from the inception of their creation, be entirely and forever the property of the Company, or its designee free from any claims whatsoever by Artist or any person, firm or corporation deriving any rights or interests from Artist; and company shall have the right to assign and otherwise transfer such copyrights to any third party, free and clear of any claim by Artist or any person, firm or corporation, deriving any rights from Artist." (Campbell Decl. ¶ 15, 17, Ex. 1; Ross Decl. ¶ 13.)

20. The parties' intent to transfer is evidenced by the fact that they performed under the 1990 Agreement, recording all of the Subject Albums for release by Skyywalker Records, and receiving payments under the terms of the agreement. (Campbell Decl. ¶ 8-14, Ex. 1; Ross

Decl. ¶ 11.)

21. 2 Live Crew sent the written Notice to all possible rights holders, including Lil' Joe, via first-class mail (return receipt requested) and when possible electronic mail. (Campbell Decl. ¶ 21-22, Ex. 3; Ross Decl. ¶ 17.)

22. A majority three of the four original 2 Live Crew membership interests joined in the termination. (Campbell Decl. ¶ 21-22, Ex. 3; Ross Decl. ¶ 16.)

23. The Notice was sent on November 4, 2020 over two years before the earliest date of effective termination (November 7, 2022) and less than 10 years from the last date of effective termination (May 1, 2024). (Campbell Decl. ¶ 21-22, Ex. 3; Ross Decl. ¶ 16.)

24. The grant at issue (1990 Agreement) covered the right of publication, and therefore, the notice of termination provides a date of effective termination for each of the Subject Albums which is over 35 years from the date of publication and within the 5-year window beginning on December 1, 2021. (Campbell Decl. ¶ 14-16, Ex. 1; Ross Decl. ¶ 10-12.)

25. The 1990 Agreement specifically states, "Artist hereby grants to Company the sole and exclusive right during the initial term of this Agreement and all renewals and extensions of the same to use, publish and permit other to use and publish…" (Campbell Decl. ¶ 15-16, Ex.1; Ross Decl. ¶ 12.)

26. A copy of the Notice was recorded in the Copyright Office before the effective date of termination. (Burroughs Decl. ¶ 68, Ex. 69.)

27. The date of publication of the Subject Albums is also included in 2 Live Crew's Notice. (Campbell Decl. ¶ 20-25, Ex.3; Ross Decl. ¶ 18-20.)

28. 2 Live Crew did not create the Subject Albums as works for hire for Skyywalker Records. (Campbell Decl. ¶ 32, 34, Ex.1; Ross Decl. ¶ 23, 25.)

29. The members of 2 Live Crew and Campbell, the owner of Skyywalker Records, agree that the members were not employees. (Campbell Decl. ¶ 32, 34, Ex.1; Ross Decl. ¶ 23, 25.)

30. There is no employment agreement with any 2 Live Crew member let alone one that states the existence of a salary, what that salary would be for, and that the creation of musical works is within the scope of that employment. (Campbell Decl. ¶ 15, 18, Ex.1; Ross Decl. ¶ 14; Ray Decl. ¶ 5-7.)

31. The paychecks produced by Lil' Joe do not identify what they were for, do not indicate that they were made in connection with the creation of the Subject Albums. (Burroughs Decl. ¶ 66.)

32. 2 Live Crew received per diem checks at times and while some of them were marked "payroll," those payments were not compensation for the creation of the Subject Albums. (Campbell Decl. ¶ 43, 47; Ross Decl. ¶ 34, 38.)

33. At the time of the Subject Albums' creation, Campbell was the owner of Skyywalker Records; however, his role as a member of 2 Live Crew was wholly independent of his Skyywalker Records role, as evidenced by the fact he is a signatory of the 1990 Agreement on behalf of both 2 Live Crew and Skyywalker Records. (Campbell Decl. ¶ 3, 47.)

34. The operative 1990 Agreement does not contain a work-for-hire clause. (Campbell Decl. ¶ 15, 18, Ex.1; Ross Decl. ¶ 14; Ray Decl. ¶ 6.)

35. The composition (PA) registrations filed for the first of the Subject Albums list the four original members of *2 Live Crew* as authors and specifically state that each author's contribution was not a "work made for hire." (Campbell Decl. ¶ 36; Ross Decl. ¶ 27; Burroughs Decl. ¶ 2-60, Ex. 5-63.)

36. The majority of the composition (PA) registrations were filed and registered by Lil' Joe Wein Music, Inc., an affiliate of Plaintiff. (Burroughs Decl. ¶ 2-60, Ex. 5-63.)

37. The registrations for *You Got Larceny* and *City of Boom* have an effective date of August 10, 1989 and filed on the same date as the *As Nasty as They Wanna Be* album and both were filed by Pac Jam Publishing stated the respective songs were not a work made for hire. (Burroughs Decl. ¶ 54, 58, 64, Ex. 57, 61, 67.)

38. The registration for the song *Coolin'* was registered by both Pac Jam Publishing in 1989 and by Lil' Joe Wein Music, Inc. in 1998. (Burroughs Decl. ¶ 53, Ex. 56.)

39. Lil' Joe Wein Music, Inc. is related to and has the same principle, Joseph Weinberger as Lil' Joe, who is listed as the entity listed in section 8 for "Correspondence" on the registrations filed by Lil' Joe Wein Music, Inc. (Burroughs Decl. ¶ 10, 18, Ex. 13, 21.)

40. The sound recording (SR) registrations for the Subject Albums were registered by Lil' Joe on February 26, 2001 and falsely state that either Luke Records, Inc. or Lil' Joe are the authors of the sound recordings when these entities did not exist at the time of creation of the recordings, and 2 Live Crew are the *actual* authors. (Burroughs Decl. ¶ 61- 65, Ex. 64-68.)

41. The sound recording (SR) registrations falsely state on four of the five registrations the works were works-for-hire, despite the composition registrations stating the opposite. (Burroughs Decl. ¶ 61- 65, Ex. 64-68.)

42. The majority of the *Move Somethin' (Clean)* PA registrations state the works were not works-for-hire, which were filed in May 2001, three months after the SR registrations were filed by Lil' Joe. (Burroughs Decl. ¶ 10-22 Ex. 13-25.)

43. Two of the four SR registrations check both the work-for-hire and not work-for-hire boxes. (Burroughs Decl. ¶ 61, 63, Ex. 64, 68.)

44. Joe Weinberger on behalf of Lil' Joe admitted during its deposition to changing the sound recording registration for *Move Somethin'* which initially stated the work was not made for hire to stating it was a work-for-hire, in 2021. (Burroughs Decl. ¶ 69, Ex. 70.)

45. The agreements alleged to be operative by Lil' Joe from 1991 are dated in 1991 and executed after the creation of the Subject Albums. (Campbell Decl. ¶ 35; Ross Decl. ¶ 26.)

46. 2 Live Crew exercised a high level of skill in writing and producing music and over the course of their career created multiple gold and one platinum album. (Campbell Decl. ¶ 39; Ross Decl. ¶ 30.)

47. None of the contracting entities would not have been able to create and replicate the Subject Albums due to the high level of creativity and skill. (Campbell Decl. ¶ 39; Ross Decl. ¶ 30.)

48. The Subject Albums were written and recorded in third-party studios. (Campbell Decl. ¶ 40, 44; Ross Decl. ¶ 31, 35.)

49. 2 Live Crew worked with Skyywalker Records for a relatively short period of time. (Campbell Decl. ¶ 4, 45; Ross Decl. ¶ 36.)

50. 2 Live Crew were not hired as employees and paid on a salary or hourly basis but were paid a royalty on the delivered albums. (Campbell Decl. ¶ 9, 14, 47; Ross Decl. ¶ 6, 11, 38; Ray Decl. ¶ 5.)

51. Skyywalker Records did not have the ability to arbitrarily assign additional projects outside 2 Live Crew's obligation to create and deliver the required works. (Campbell Decl. ¶ 37-38, 42; Ross Decl. ¶ 28-29, 33.)

52. Skyywalker Records or any of its iterations are not still in business and have not been in business since the mid-1990s. (Campbell Decl. ¶ 4. 45; Ross Decl. ¶ 36.)

53. 2 Live Crew had the freedom to create their own schedule and did not have assigned times each day to work and simply had the deadline to deliver an album, but otherwise had absolute freedom to decide when to work. (Campbell Decl. ¶ 40, 44, 46; Ross Decl. ¶ 31, 35, 37.)

54. Skyywalker Records did not provide 2 Live Crew with health insurance, paid vacation time, worker's compensation benefits, a pension plan, or other types of benefits that courts have traditionally found probative of employee status. (Campbell Decl. ¶ 41; Ross Decl. ¶ 32.)

55. Plaintiff fails to show the Defendants "adopted an identical or similar mark" to one allegedly owned by Plaintiff, such as the 2 Live Crew mark. (Ross Decl. ¶ 39; Ray Decl. ¶ 8; Burroughs Decl. ¶ 70-71.)

56. Plaintiff identifies only use by third parties of the 2 Live Crew mark to describe certain Defendants. (Ross Decl. ¶ 39; Ray Decl. ¶ 8; Burroughs Decl. ¶ 70-71.)

57. Any use of a mark arguably similar to those of 2 Live Crew were used in a descriptive sense to state that Ross, for example, was a former member of 2 Live Crew. (Ross Decl. ¶ 39; Ray Decl. ¶ 8; Burroughs Decl. ¶ 70-71.)

Dated: December 1, 2022                                 Respectfully submitted,

                                                        By: /s/ Scott Alan Burroughs
                                                        Scott Alan Burroughs
                                                        (admitted pro hac vice)
                                                        DONIGER / BURROUGHS
                                                        237 Water Street, First Floor
                                                        New York, New York 10038
                                                        (310) 590 – 1820
                                                        scott@donigerlawfirm.com
                                                        December 1, 2022

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2022, a true and authentic copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:  */s/ Scott Alan Burroughs*
Scott Alan Burroughs