# EXHIBIT 4

Copyright
Office
of the
United
States

THE
LIBRARY
OF
CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-
MENT WAS RECORDED IN THE COPYRIGHT OFFICE
ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.

DATE OF RECORDATION

6MAY88

| VOLUME | PAGE |
|--------|------|
| 2357 | 185 |

| VOLUME | PAGE |
|--------|------|
| 2357 | 187 |

OFFICIAL SEAL

Register of
Copyrights and
Assistant
Librarian for
Copyright
Services

Certificate of Recordation
(Title September 1987) # 1000

/db 15

Lil Joe docs 00448

Case 1:2?-cv-2572?-??? Document 22.6 Entered on FLSD Docket 12/01/2022 Page 3 of 27

# POPULAR SONGWRITERS CONTRACT

AGREEMENT made this 19th day of March 19 88 between

PAC - JAM PUBLISHING
(hereinafter called "Publisher"), with offices at 3050 Biscayne Blvd, Miami,Fla., 33137

and MARK ROSS, DAVID HOBBS, AND LUTHER CAMPBELL, CHRIS WONGWON

jointly and/or severally, (hereinafter called "Writer(s)");

WITNESSETH:

In consideration of the agreement herein contained and of the sum of One ($1.00) Dollar and other good and valuable consideration in hand paid by the publisher to the Writer(s), receipt of which is hereby acknowledged, the parties agree as follows:

1 The Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, a certain heretofore unpublished original musical composition, written and/or composed by the above named writer(s), now entitled:

NO. 1 SOMETHIN

including the title, words and music, and all copyrights thereof, including but not limited to the copyright registration No.            and all rights, claims, and demands in any way relating thereto; the exclusive right to secure copyright in said musical composition throughout the entire world, and the right to hold the said copyright and all rights of whatsoever nature now and hereafter existing under any agreements or licenses relating thereto, for and during the full terms of all said copyrights. In further consideration of the agreement herein contained, the Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, all renewals and extensions of the copyrights of said musical composition to which the Writer(s) may be now or hereafter entitled, and all registrations thereof, and all rights of any and every nature now and hereafter thereunder existing, for the full terms of all such renewals and extensions of copyrights. The Writer(s) hereby irrevocably appoints the Publisher, its successors and assigns and its or their officers, servants, agents and employees, his true and lawful attorneys to register a claim to any all such renewals and extensions of copyrights.

2 The Writer(s) hereby warrants that the said composition is his sole, exclusive work, and that he has full right and power to make the within agreement, and that there exist no adverse claim to or in the said composition.

3 The Writer(s) hereby warrants that the foregoing musical composition is new and original and does not infringe any other work and if applicable, has been created by the joint collaboration of the Writers named herein and that said composition, including the title, words and music thereof, has been, unless herein otherwise specifically noted, the result of the joint efforts of all the undersigned Writers and not by way of any independent or separable activity by any of the Writers.

4 In consideration of this agreement, the Publisher agrees to pay the Writer(s) as follows:

(a) The sum of $            paid to the Writer(s) (jointly in equal shares) as a general advance against any royalties and other payments heretofore and hereafter payable to the Writer(s) by the Publisher, or any of its subsidiary or associated corporations, and to be recouped therefrom;

(b) In respect of regular piano copies sold and paid for at wholesale in the United States of America, royalties of            cents per copy;

(c) A royalty of            cents per copy of dance orchestrations thereof sold and paid for in the United States of America.

(d) A royalty of fifty (50%) percent of all net earned proceeds received by the Publisher in respect of regular piano copies and/or orchestrations thereof sold and paid for in any foreign country;

(e) A royalty of fifty (50%) percent of all new sums received by the Publisher for the publication of the composition in any folio or composite work or lyric magazine by the Publisher or its licenses, such publication, if any, may be made at any time in the discretion of the Publisher. In the event the Publisher shall print and sell its own folio or composite work of lyric magazine then the Writer(s) shall be entitled to receive 10% of the suggested retail selling price of the publication but reduced in proportion to the number of compositions covered hereby bears to the total number of compositions contained in the publication;

(f) As to free "professional material" — Not sold or resold, no royalty shall be payable;

(g) An amount equal to fifty (50%) percent of all net proceeds received and actually retained by the Publisher arising out of the manufacture of phonograph records and other parts or instruments serving to mechanically reproduce said composition, any and all sums paid to or deducted by Harry Fox or any similar mechanical collection agency may be deducted in computing such net proceeds.

(h) Except as herein expressly provided, no other royalties shall be paid with respect to the said composition.

5 It is understood and agreed by and between all the parties hereto that all sums hereunder payable jointly to the Writer(s) shall be paid to and divided amongst them respectively as follows:

(1)

10B16

Lil Joe docs 00449

| Name | | Shares: |
|------|--|---------|
| MARK ROSS | | 33 1/3 % |
| DAVID HOBBES | | 33 1/3 % |
| LUTHER CAMPBELL | | 33 1/3 % |
| CHRIS WONGWON | | 33 1/3% |
| | | |
| | | |
| | | |
| | | |

6. The Publisher shall render to the Writer(s), as above, on or before each August 15th covering the six months ending June 30th; and each February 15th covering the six months ending December 31st, royalty statements accompanied by remittance for any royalties due thereunder.

7. The Publisher shall determine, in its sole discretion, whether public demand for the composition is created as to warrant printing copies and offering the same for sale and distribution. It is contemplated that the Publisher shall license and assign the performance rights to a performing rights society on such terms as may be agreed upon between such society and the Publisher. It is further contemplated that the mechanical reproduction rights shall be administered by Harry Fox, as agent or some other agency as selected by the Publisher on such terms as may be approved by the Publisher. The terms of individual mechanical licenses may vary and shall be determined by the Publisher. The Publisher is specifically authorized to enter into any foreign marketing arrangements as it may approve whether or not the foreign representative, agent or licensee shall be affiliated or associated with the Publisher or whether or not the Publisher or any of its officers, directors or shareholders shall have any interest in the foreign representative, agent or licensee, provided that the Writer(s) shall receive fifty (50%) percent of the new proceeds received by the Publisher from such foreign representative agent or licensee. The Publisher, at its sole option, shall determine whether the Writer(s) participation in proceeds derived from the marketing of the piano copies of the composition in Canada shall be on the same basis as herein provided for marketing of the same in the United States of America or as herein provided for marketing of the same in foreign countries.

8. The Writer(s) may appoint a certified public accountant who shall, upon written request therefor, have access to all records of the Publisher during business hours relating to said composition for the purpose of verifying royalty statements hereunder. Such examination shall not be more frequent than once in any half calendar year.

9. All accountings and statements rendered to the Writer(s) by the Publisher shall be deemed to be accepted and approved by the Writer(s) unless objection to same is given to the Publisher by the Writer(s) in writing within six months from the date first rendered by the Publisher.

10. The Writer(s) hereby consents to such changes, adaptations, dramatizations transpositions, editing and arrangements of said composition, and the setting of words to the music and of music to the words, and the change of title as the Publisher deems desirable. In the event that the composition covered by this agreement is an instrumental composition, then and in such event, the Writer(s) hereby irrevocably grants to the Publisher the sole and exclusive right and privilege to cause to have lyrics written for such composition by a writer or writers designated by the Publisher, which lyrics shall require only the approval of the Publisher, whereupon the Writer(s) shall be entitled to only one-half of the aforementioned royalties provided in this agreement. The Writer(s) hereby waives any and all claims which he has or may have against the Publisher and/or its associated, affiliated and subsidiary corporations by reason of the fact that the title of said composition may be the same or similar to that of any musical composition or compositions heretofore or hereafter acquired by the Publisher and/or its associated, affiliated and subsidiary corporations. The Writer(s) consents to the use of his (their) name and likeness and the title to the said composition on the music, folios, recordings, performances, player rolls and in connection with publicity and advertising concerning the Publisher, its successors, assigns and licensees, and said composition, and agrees that the use of such name, likeness and title may commence at such time as the Publisher, in its discretion, may determine.

11. Written demands and notices other than royalty statements provided for herein shall be sent by either certified or registered mail.

12. Any legal action brought by the Publisher against any alleged infringer of said composition shall be initiated and prosecuted at the Publisher's sole expense, and of any recovery made by it as a result thereof, after deduction of the expense of the litigation, a sum equal to thirty-three and one-third (33-1/3%) percent shall be paid to the Writer(s).

(a) If a claim is presented against the Publisher in respect of said composition it shall thereupon serve written notice upon the Writer(s), containing the full details of such claim known to the Publisher, and thereafter until the claim has been adjudicated or settled, the Publisher shall hold any monies coming due the Writer(s), including monies due the Writer(s) pursuant to this contract or any other contracts made with the Publisher, in trust pending the outcome of such claim or claims. The Publisher shall have the right to settle or otherwise dispose of such claims in any manner as if, in its sole discretion, may determine. In the event of any recovery against the Publisher, either by way of judgement or settlement, all of the costs, charges, disbursements, attorney fees and the amount of the judgement or settlement may be deducted by the Publisher from any and all royalties or other payments due or thereafter payable to the Writer(s) by the Publisher or by its associated, affiliated or subsidiary companies pursuant to this agreement or any other agreement between the Writer(s) and the Publisher, or its associated, affiliated, or subsidiary companies. If the Publisher is successful in defending the said action or disposing of such claim or claims, then it shall be permitted to pay any and all costs involved in defeating or disposing of said claims including reasonable counsel fees, and charge such costs to the Writer(s), who agree to pay said sum to the Publisher.

(2)

10617

Lil Joe dncs 00450

Case 1:21-cv-22622-RNS   Document 23-6   Entered on FLSD Docket 12/01/2022   Page 5 of 27

# POPULAR SONGWRITERS CONTRACT

VOL.2357 PAGE 165

**AGREEMENT made this** 19th **day of** March **19** 88 **between**

PAC - JAM PUBLISHING

(hereinafter called "Publisher"), with offices at 3050 Biscayne Blvd, Miami,Fla., 33137

**and** MARK ROSS, DAVID HOBBS, AND LUTHER CAMPBELL, CHRIS WONGWON

jointly and/or severally, (hereinafter called "Writer(s)"):

WITNESSETH:

In consideration of the agreement herein contained and of the sum of One ($1.00) Dollar and other good and valuable consideration in hand paid by the publisher to the Writer(s), receipt of which is hereby acknowledged, the parties agree as follows:

1. The Writer(s) hereby sells, assigns, transfers and deli ers to the Publisher, its successors and assigns, a certain heretofore unpublished original musical composition, written and/or composed by the above named writer(s), now entitled:

## MOVE SOMETHIN

including the title, words and music, and all copyrights thereof, including but not li...ted to the copyright registration No. and all rights, claims, and demands in any way relating thereto; the exclusive right to secure copyright in said musical composition throughout the entire world; and the right to hold the said copyright and all rights of whatsoever nature now and hereafter existing under any agreements or licenses relating thereto, for and during the full terms of all said copyrights. In further consideration of the agreement herein contained, the Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, all renewals and extensions of the copyrights of said musical composition to which the Writer(s) may be now or hereafter entitled, and all registrations thereof, and all rights of any and every nature now and hereafter thereunder existing, for the full terms of all such renewals and extensions of copyrights. The Writer(s) hereby irrevocably appoints the Publisher, its successors and assigns and its or their officers, servants, agents and employees, his true and lawful attorneys to register a claim to any all such renewals and extensions of copyrights.

2. The Writer(s) hereby warrants that the said composition is his sole, exclusive work, and that he has full right and power to make the within agreement, and that there exist no adverse claim to or in the said composition.

3. The Writer(s) hereby warrants that the foregoing musical composition is new and original and dues not infringe any other work and if applicable, has been created by the joint collaboration of the Writers named herein and that said composition, including the title, words and music thereof, has been, unless herein otherwise specifically noted, the result of the joint efforts of all the undersigned Writers and not by way of any independent or separable activity by any of the Writers.

4. In consideration of this agreement, the Publisher agrees to pay the Writer(s) as follows:

(a) The sum of $ paid to the Writer(s) (jointly in equal shares) as a general advance against any royalties and other payments heretofore and hereafter payable to the Writer(s) by the Publisher, or any of its subsidiary or associated corporations, and to be recouped therefrom;

(b) In respect of regular piano copies sold and paid for at wholesale in the United States of America, royalties of cents per copy;

(c) A royalty of cents per copy of dance orchestrations thereof sold and paid for in the United States of America;

(d) A royalty of fifty (50%) percent of all net earned proceeds received by the Publisher in respect of regular piano copies and/or orchestrations thereof sold and paid for in any foreign country;

(e) A royalty of fifty (50%) percent of all new sums received by the Publisher for the publication of the composition in any folio or composite work or lyric magazine by the Publisher or its licenses, such publication, if any, may be made at any time in the discretion of the Publisher. In the event the Publisher shall print and sell its own folio or composite work or lyric magazine then the Writer(s) shall be entitled to receive 10% of the suggested retail selling price of the publication but reduced in proportion to the number of compositions covered hereby bears to the total number of compositions contained in the publication;

(f) As to free "professional material" — Not sold or resold, no royalty shall be payable;

(g) An amount equal to fifty (50%) percent of all net proceeds received and actually retained by the Publisher arising out of the manufacture of phonograph records and other parts or instruments serving to mechanically reproduce said composition; any and all sums paid to or deducted by Harry Fox or any similar mechanical collection agency may be deducted in computing such net proceeds;

(h) Except as herein expressly provided, no other royalties shall be paid with respect to the said composition.

5. It is understood and agreed by and between all the parties hereto that all sums hereunder payable jointly to the Writer(s) shall be paid to and divided amongst them respectively as follows:

(1)

10818

Lil Joe docs 00451

VOL. 2 3 5 7 /   0 0

| Name: | Shares: |
|---|---|
| MARK ROSS | 33 1/3 % |
| DAVID HOBBS | 33 1/3 % |
| LUTHER CAMPBELL | 33 1/3 % |
| CHRIS WONGWON | 33 1/3% |

6. The Publisher shall render to the Writer(s), as above, on or before each August 15th covering the six months ending June 30th; and each February 15th covering the six months ending December 31st, royalty statements accompanied by remittance for any royalties due thereunder.

7. The Publisher shall determine, in its sole discretion, whether public demand for the composition is created as to warrant printing copies and offering the same for sale and distribution. It is contemplated that the Publisher shall license and assign the performance rights to a performing rights society on such terms as may be agreed upon between such society and the Publisher. It is further contemplated that the mechanical reproduction rights shall be administered by Harry Fox, as agent or some other agency as selected by the Publisher on such terms as may be approved by the Publisher. The terms of individual mechanical licenses may vary and shall be determined by the Publisher. The Publisher is specifically authorized to enter into any foreign marketing arrangements as it may approve whether or not the foreign representative, agent or licensee shall be affiliated or associated with the Publisher or whether or not the Publisher or any of its officers, directors or shareholders shall have any interest in the foreign representative, agent or licensee, provided that the Writer(s) shall receive fifty (50%) percent of the new proceeds received by the Publisher from such foreign representative agent or licensee. The Publisher, at its sole option, shall determine whether the Writer(s) participation in proceeds derived from the marketing of the piano copies of the composition in Canada shall be on the same basis as herein provided for marketing of the same in the United States of America or as herein provided for marketing of the same in foreign countries.

8. The Writer(s) may appoint a certified public accountant who shall, upon written request therefor, have access to all records of the Publisher during business hours relating to said composition for the purpose of verifying royalty statements hereunder. Such examination shall not be more frequent than once in any half calendar year.

9. All accountings and statements rendered to the Writer(s) by the Publisher shall be deemed to be accepted and approved by the Writer(s) unless objection to same is given to the Publisher by the Writer(s) in writing within six months from the date first rendered by the Publisher.

10. The Writer(s) hereby consents to such changes, adaptations, dramatizations, transpositions, editing and arrangements of said composition, and the setting of words to the music and of music to the words, and the change of title as the Publisher deems desirable. In the event that the composition covered by this agreement is an instrumental composition, then and in such event, the Writer(s) hereby irrevocably grants to the Publisher the sole and exclusive right and privilege to cause to have lyrics written for such composition by a writer or writers designated by the Publisher, which lyrics shall require only the approval of the Publisher, whereupon the Writer(s) shall be entitled to only one-half of the aforementioned royalties provided in this agreement. The Writer(s) hereby waives any and all claims which he has or may have against the Publisher and/or its associated, affiliated and subsidiary corporations by reason of the fact that the title of said composition may be the same or similar to that of any musical composition or compositions heretofore or hereafter acquired by the Publisher and/or its associated, affiliated and subsidiary corporations. The Writer(s) consents to the use of his (their) name and likeness and the title in the said composition on the music, folios, recordings, performances, player rolls and in connection with publicity and advertising concerning the Publisher, its successors, assigns and licensees, and said composition, and agrees that the use of such name, likeness and title may commence at such time as the Publisher, in its discretion, may determine.

11. Written demands and notices other than royalty statements provided for herein shall be sent by either certified or registered mail.

12. Any legal action brought by the Publisher against any alleged infringer of said composition shall be initiated and prosecuted at the Publisher's sole expense, and of any recovery made by it as a result thereof, after deduction of the expense of the litigation, a sum equal to thirty-three and one-third (33-1/3%) percent shall be paid to the Writer(s).

(a) If a claim is presented against the Publisher in respect of said composition it shall thereupon serve written notice upon the Writer(s), containing the full details of such claim known to the Publisher, and thereafter until the claim has been adjudicated or settled, the Publisher shall hold any monies coming due the Writer(s), including monies due the Writer(s) pursuant to this contract or any other contracts made with the Publisher, in trust pending the outcome of such claim or claims. The Publisher shall have the right to settle or otherwise dispose of such claims in any manner as it, in its sole discretion, may determine. In the event of any recovery against the Publisher, either by way of judgement or settlement, all of the costs, charges, disbursements, attorney fees and the amount of the judgement or settlement may be deducted by the Publisher from any and all royalties or other payments due or thereafter payable to the Writer(s) by the Publisher or by its associated, affiliated or subsidiary companies pursuant to this agreement or any other agreement between the Writer(s) and the Publisher, or its associated, affiliated, or subsidiary companies. If the Publisher is successful in defending the said action or disposing of such claim or claims, then it shall be permitted to pay any and all costs involved in defeating or disposing of said claims including reasonable counsel fees; and charge such costs to the Writer(s), who agree to pay said sum to the Publisher.

(2)

10 B 19

Lil Joe docs 00452

(b) From and after the service of summons in a suit for infringement filed against the Publisher with respect to said composition, any and all sums of money thereafter coming due to the Writer(s) pursuant to this agreement or any other contract between the Writer(s) and the Publisher shall be held by the Publisher in trust until the suit has been adjudicated and then be disbursed accordingly, unless the Writer(s) shall elect to file, with the Publisher, a Surety Company bond in form and amount and with Sureties acceptable to the Publisher, in which event the sums so held shall be paid to the Writer(s).

13. The Writer(s), each for himself, hereby irrevocably constitute and appoint the Publisher or any of its officers, directors or general manager, his (their) attorney and representative, in the name(s) of the Writer(s), or any of them, or in the name of the Publisher, its successors and assigns, to make, sign, execute, acknowledge and deliver any and all instruments which may be desirable or necessary in order to vest in the Publisher, its successors and assigns, any of the rights hereinabove referred to.

14. Any expenses, including studio, musicians, performers, arrangements, copying, equipment, lead sheets, or any other material or supplies helpful in obtaining a demonstration record, may be paid by the publisher and shall be charged against the Writer(s) jointly and severally, as an advance against any royalties or payments, from any source, due or to become due the Writer(s) from the Publisher or any company connected, associated, or affiliated with the Publisher.

15. The Publisher shall have the right to sell, assign, transfer, license or otherwise dispose of any of its rights in whole or in part under this agreement to any person, firm or corporation, but said disposition shall not affect the right of the Writer(s) to the royalties hereinabove set forth.

16. This agreement shall be construed only under the laws of the state of Penna. If any part of this agreement shall be invalid or unenforceable, it shall not affect the validity of the balance of this agreement.

17. This agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their respective successors in interest, legal representatives and assigns, and represents the entire understanding between the parties.

18. The recording of the composition by a commercial record manufacturing company by means of disc or tape or by any other means of mechanically reproducing sound new known or hereafter discovered, shall avoid any recapture rights the Writer(s), anything hereinabove set forth which may be construed to the contrary notwithstanding.

19. The Publisher shall have the right, in its sole discretion, to advance monies for advertising and promotion, and charge not more than fifty (50%) percent of the same to the Writer(s)' royalties which may become due hereunder.

20. *Definitions:*

(a) Writer(s) as used herein shall be deemed to include all authors and composers signing this agreement.

(b) "His", "Himself" and "He", when used with reference to "Writer(s)" shall be construed in the singular or plural, or masculine or feminine, whichever shall apply.

Witness:

.................................................................................... ................. . . . ...

Writer ........................................................................ (L.S.)

Address ...................................................................

Writer ........................................................................ (L.S.)

Address  1 5 7 6 0  N W  7 1 5  A v e  # A

Writer ........................................................................ (L.S.)

Address  1 3 7 5 0  N E  2 0 + 2  P a g e  4 0 1 2 0

Writer ........................................................................ (L.S.)

Address  3 5 7  L i v e r p o o l  3 9 3 3  m i a m i  F l

Writer ........................................................................ (L.S.)

Address ...................................................................

Writer ........................................................................ (L.S.)

Address ...................................................................

Writer ........................................................................ (L.S.)

Address ...................................................................

Publisher:

By: .........................................................................

Address:

(3)

/ 0 B 2 0

Lil Joe docs 00453

Copyright
Office
of the
United
States

THE
LIBRARY
OF
CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-
MENT WAS RECORDED IN THE COPYRIGHT OFFICE
ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.

DATE OF RECORDATION

6MAY88

| VME | PAGE |
|-----|------|
| 2357 | 194 |

| VOLME | PAGE |
|-----|------|
| 2357 | 196 |



OFFICIAL SEAL

Register of
Copyrights and
Assistant
Librarian for
Copyright
Services

Certificate of Recordation
of September 1987 edition

10 B 23

Lil Joe docs 00456

Case 1:21-cv-23727-DPG   Document 53-6   Entered on FLSD Docket 12/01/2021   Page 9 of 27

# POPULAR SONGWRITERS CONTRACT

vol. 2357 PAGE 94

AGREEMENT made this   19th   day of  March                              19 88     between

PAC - JAM PUBLISHING
(hereinafter called "Publisher"), with offices at  3050 Biscayne Blvd, Miami, Fla., 33137

and  MARK ROSS, DAVID HOBBS, AND LUTHER CAMPBELL, Chris Wongwon

jointly and/or severally, (hereinafter called "Writer(s)");

WITNESSETH:

In consideration of the agreement herein contained and of the sum of One ($1.00) Dollar and other good and valuable consideration in hand paid by the publisher to the Writer(s), receipt of which is hereby acknowledged, the parties agree as follows:

1. The Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, a certain heretofore unpublished original musical composition, written and/or composed by the above named writer(s), now entitled:

## GHETTO BASS II

including the title, words and music, and all copyrights thereof, including but not limited to the copyright registration No.                    and all rights, claims, and demands in any way relating thereto; the exclusive right to secure copyright in said musical composition throughout the entire world; and the right to hold the said copyright and all rights of whatsoever nature now and hereafter existing under any agreements or licenses relating thereto, for and during the full terms of all said copyrights. In further consideration of the agreement herein contained, the Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, all renewals and extensions of the copyrights of said musical composition to which the Writer(s) may be now or hereafter entitled, and all registrations thereof, and all rights of any and every nature now and hereafter thereunder existing, for the full terms of all such renewals and extensions of copyrights. The Writer(s) hereby irrevocably appoints the Publisher, its successors and assigns and its or their officers, servants, agents and employees, his true and lawful attorneys to register a claim to any all such renewals and extensions of copyrights.

2. The Writer(s) hereby warrants that the said composition is his sole, exclusive work, and that he has full right and power to make the within agreement, and that there exist no adverse claim to or in the said composition.

3. The Writer(s) hereby warrants that the foregoing musical composition is new and original and does not infringe any other work and if applicable, has been created by the joint collaboration of the Writers named herein and that said composition, including the title, words and music thereof, has been, unless herein otherwise specifically noted, the result of the joint efforts of all the undersigned Writers and not by way of any independent or separable activity by any of the Writers.

4. In consideration of this agreement, the Publisher agrees to pay the Writer(s) as follows:

(a) The sum of $            paid to the Writer(s) (jointly in equal shares) as a general advance against any royalties and other payments heretofore and hereafter payable to the Writer(s) by the Publisher, or any of its subsidiary or associated corporations, and to be recouped therefrom:

(b) In respect of regular piano copies sold and paid for at wholesale in the United States of America, royalties of      cents per copy;

(c) A royalty of            cents per copy of dance orchestrations thereof sold and paid for in the United States of America;

(d) A royalty of fifty (50%) percent of all net earned proceeds received by the Publisher in respect of regular piano copies and/or orchestrations thereof sold and paid for in any foreign country;

(e) A royalty of fifty (50%) percent of all new sums received by the Publisher for the publication of the composition in any folio or composite work or lyric magazine by the Publisher or its licenses such publication, if any, may be made at any time in the discretion of the Publisher. In the event the Publisher shall print and sell its own folio or composite work or lyric magazine then the Writer(s) shall be entitled to receive 10% of the suggested retail selling price of the publication but reduced in proportion to the number of compositions covered hereby bears to the total number of compositions contained in the publication;

(f)  as to free "professional material" – Not sold or resold, no royalty shall be payable;

(g)  an amount equal to fifty (50%) percent of all net proceeds received and actually retained by the Publisher arising out of the manufacture of phonograph records and other parts or instruments serving to mechanically reproduce said composition; any and all sums paid to or deducted by Harry Fox or any similar mechanical collection agency may be deducted in computing such net proceeds;

(h) Except as herein expressly provided, no other royalties shall be paid with respect to the said composition.

5. It is understood and agreed by and between all the parties hereto that all sums hereunder payable jointly to the Writer(s) shall be paid to and divided amongst them respectively as follows:

(1)

10 B 24

Lil Joe docs 00457

| Name: | Shares: |
|---|---|
| MARK ROSS | 33 1/3 % |
| DAVID HOBBS | 33 1/3 % |
| LUTHER CAMPBELL | 33 1/3 % |
| CHRIS WONGWON | 33 1/3% |
| | |
| | |
| | |
| | |

6. The Publisher shall render to the Writer(s), as above, on or before each August 15th covering the six months ending June 30th; and each February 15th covering the six months ending December 31st, royalty statements accompanied by remittance for any royalties due thereunder.

7. The Publisher shall determine, in its sole discretion, whether public demand for the composition is created as to warrant printing copies and offering the same for sale and distribution. It is contemplated that the Publisher shall license and assign the performance rights to a performing rights society on such terms as may be agreed upon between such society and the Publisher. It is further contemplated that the mechanical reproduction rights shall be administered by Harry Fox, as agent or some other agency as selected by the Publisher on such terms as may be approved by the Publisher. The terms of individual mechanical licenses may vary and shall be determined by the Publisher. The Publisher is specifically authorized to enter into any foreign marketing arrangements as it may approve whether or not the foreign representative, agent or licensee shall be affiliated or associated with the Publisher or whether or not the Publisher or any of its officers, directors or shareholders shall have any interest in the foreign representative, agent or licensee, provided that the Writer(s) shall receive fifty (50%) percent of the new proceeds received by the Publisher from such foreign representative agent or licensee. The Publisher, at its sole option, shall determine whether the Writer(s) participation in proceeds derived from the marketing of the piano copies of the composition in Canada shall be on the same basis as herein provided for marketing of the same in the United States of America or as herein provided for marketing of the same in foreign countries.

8. The Writer(s) may appoint a certified public accountant who shall, upon written request therefor, have access to all records of the Publisher during business hours relating to said composition for the purpose of verifying royalty statements hereunder. Such examination shall not be more frequent than once in any half calendar year.

9. All accountings and statements rendered to the Writer(s) by the Publisher shall be deemed to be accepted and approved by the Writer(s) unless objection to same is given to the Publisher by the Writer(s) in writing within six months from the date first rendered by the Publisher.

10. The Writer(s) hereby consents to such changes, adaptations, dramatizations, transpositions, editing and arrangements of said composition, and the setting of words to the music and of music to the words, and the change of title as the Publisher deems desirable. In the event that the composition covered by this agreement is an instrumental composition, then and in such event, the Writer(s) hereby irrevocably grants to the Publisher the sole and exclusive right and privilege to cause to have lyrics written for such composition by a writer or writers designated by the Publisher, which lyrics shall require only the approval of the Publisher, whereupon the Writer(s) shall be entitled to only one-half of the aforementioned royalties provided in this agreement. The Writer(s) hereby waives any and all claims which he has or may have against the Publisher and/or its associated, affiliated and subsidiary corporations by reason of the fact that the title of said composition may be the same or similar to that of amy musical composition or compositions heretofore or hereafter acquired by the Publisher and/or its associated, affiliated and subsidiary corporations. The Writer(s) consents to the use of his (their) name and likeness and the title to the said composition on the music folios, recordings, performances, player rolls and in connection with publicity and advertising concerning the Publisher, its successors, assigns and licensees, and said composition, and agrees that the use of such name, likeness and title may commence at such time as the Publisher, in its discretion, may determine.

11. Written demands and notices other than royalty statements provided for herein shall be sent by either certified or registered mail.

12. Any legal action brought by the Publisher against any alleged infringer of said composition shall be initiated and prosecuted at the Publisher's sole expense, and of any recovery made by it as a result thereof, after deduction of the expense of the litigation, a sum equal to thirty-three and one-third (33-1/3%) percent shall be paid to the Writer(s).

(a) If a claim is presented against the Publisher in respect of said composition it shall thereupon serve written notice upon the Writer(s), containing the full details of such claim known to the Publisher, and thereafter until the claim has been adjudicated or settled, the Publisher shall hold any monies coming due the Writer(s), including monies due the Writer(s) pursuant to this contract or any other contracts made with the Publisher, in trust pending the outcome of such claim or claims. The Publisher shall have the right to settle or otherwise dispose of such claims in any manner as it, in its sole discretion, may determine. In the event of any recovery against the Publisher, either by way of judgement or settlement, all of the costs, charges, disbursements, attorney fees and the amount of the judgement or settlement may be deducted by the Publisher from any and all royalties or other payments due or thereafter payable to the W___ ) by the Publisher or by its associated, affiliated or subsidiary companies pursuant to the agreement or any other agreement between the Writer(s) and the Publisher, or its associated, affiliated, or subsidiary companies. If the Publisher is successful in defending the said action or disposing of such claim or claims, then it shall be permitted to pay any and all costs involved in defeating or disposing of said claims including reasonable counsel fees; and charge such costs to the Writer(s), who agree to pay said sum to the Publisher.

(2)

10 B28

Lil Joe docs 00458

(b) From and after the service of summons in a suit for infringement filed against the Publisher with respect to said composition, any and all sums of money thereafter coming due to the Writer(s) pursuant to this agreement or any other contract between the Writer(s) and the Publisher shall be held by the Publisher in trust until the suit has been adjudicated and then be disbursed accordingly, unless the Writer(s) shall elect to file, with the Publisher, a Surety Company bond in form and amount and with Sureties acceptable to the Publisher, in which event the sums so held shall be paid to the Writer(s).

13. The Writer(s), each for himself, hereby irrevocably constitute and appoint the Publisher or any of its officers, directors or general manager, his (their) attorney and representative, in the name(s) of the Writer(s), or any of them, or in the name of the Publisher, its successors and assigns, to make, sign, execute, acknowledge and deliver any and all instruments which may be desirable or necessary in order to vest in the Publisher, its successors and assigns, any of the rights hereinabove referred to.

14. Any expenses, including studio, musicians, performers, arrangements, copying, equipment, lead sheets, or any other material or supplies helpful in obtaining a demonstration record, may be paid by the publisher and shall be charged against the Writer(s) jointly and severally, as an advance against any royalties or payments, from any source, due or to become due the Writer(s) from the Publisher or any company connected, associated, or affiliated with the Publisher.

15. The Publisher shall have the right to sell, assign, transfer, license or otherwise dispose of any of its rights in whole or in part under this agreement to any person, firm or corporation, but said disposition shall not affect the right of the Writer(s) in the royalties hereinabove set forth.

16. This agreement shall be construed only under the laws of the state of Penna. If any part of this agreement shall be invalid or unenforceable, it shall not affect the validity of the balance of this agreement.

17. This agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their respective successors in interest, legal representatives and assigns, and represents the entire understanding between the parties.

18. The recording of the composition by a commercial record manufacturing company by means of disc or tape or by any other means of mechanically reproducing sound now known or hereafter discovered, shall avoid any recapture rights the Writer(s), anything hereinabove set forth which may be construed to the contrary notwithstanding.

19. The Publisher shall have the right, in its sole discretion, to advance monies for advertising and promotion, and charge not more than fifty (50%) percent of the same to the Writer(s)' royalties which may become due hereunder.

20 *Definitions.*
(a) Writer(s) as used herein shall be deemed to include all authors and composers signing this agreement.
(b) "His", "Himself" and "He", when used with reference to "Writer(s)" shall be construed in the singular or plural, or masculine or feminine, whichever shall apply.

Witness:

..................................................................................

Writer ......................................................(LS )
Address ....................................................
Writer ......................................................(LS.)
Address  1576, Nov 7ᵗᵉ Ave # A
Writer  Mark Ross ..........................(LS.)
Address  1205 E. AV. 50ᵗᵉ Jane Apt 20
Writer ......................................................(LS )
Address  33217 Alexander 7 33133 ......
Writer ......................................................(LS )
Address ....................................................
Writer ......................................................(LS.)
Address ....................................................
Writer ......................................................(LS.)
Address ....................................................

Publisher:
By: ...........
Address:

(3)

10 826

Lil Joe docs 00459

*Copyright*
*Office*
*of the*
*United*
*States*

THE
LIBRARY
OF
CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-
MENT WAS RECORDED IN THE COPYRIGHT OFFICE
ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE

DATE OF RECORDATION

6MAY83

| VOLUME | PAGE |
|--------|------|
| 2357 | 200 |

| VOLUME | PAGE |
|--------|------|
| 2357 | 202 |



OFFICIAL SEAL



Register of
Copyrights and
Assistant
Librarian for
Copyright
Services

$10b^{29}$

Lil Joe docs 00462

**POPULAR SONGWRITERS CONTRACT** · VOL. 2 3 5 7 PAGE 2 0 0

**AGREEMENT** made this 19th day of March 19 88 between

PAC – JIM PUBLISHING

(hereinafter called "Publisher"), with offices at 3050 Biscayne Blvd., Miami, Fla., 33137

and MARK ROSS, DAVID HOBBS, AND LUTHER CAMPBELL, CHRIS WONGWON

jointly and/or severally, (hereinafter called "Writer(s)");

**WITNESSETH:**

In consideration of the agreement herein contained and of the sum of One ($1.00) Dollar and other good and valuable consideration in hand paid by the publisher to the Writer(s), receipt of which is hereby acknowledged, the parties agree as follows:

1. The Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, a certain heretofore unpublished original musical composition, written and/or composed by the above named writer(s), now entitled:

**WITH YOUR BAD SELF**

including the title, words and music and all copyrights thereof, including but not limited to the copyright registration No. and all rights, claims, and demands in any way relating thereto; the exclusive right to secure copyright in said musical composition throughout the entire world; and the right to hold the said copyright and all rights of whatsoever nature now and hereafter existing under any agreements or licenses relating thereto, for and during the full terms of all said copyrights. In further consideration of the agreement herein contained, the Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, all renewals and extensions of the copyrights of said musical composition to which the Writer(s) may be now or hereafter entitled, and all registrations thereof, and all rights of any and every nature now and hereafter thereunder existing, for the full terms of all such renewals and extensions of copyrights. The Writer(s) hereby irrevocably appoints the Publisher, its successors and assigns and its or their officers, servants, agents and employees, his true and lawful attorneys to register a claim to any all such renewals and extensions of copyrights.

2. The Writer(s) hereby warrants that the said composition is his sole, exclusive work, and that he has full right and power to make the within agreement, and that there exist no adverse claim to or in the said composition.

3. The Writer(s) hereby warrants that the foregoing musical composition is new and original and does not infringe any other work and if applicable, has been created by the joint collaboration of the Writers named herein and that said composition, including the title, words and music thereof, has been, unless herein otherwise specifically noted, the result of the joint efforts of all the undersigned Writers and not by way of any independent or separable activity by any of the Writers.

4. In consideration of this agreement, the Publisher agrees to pay the Writer(s) as follows:

(a) The sum of $ paid to the Writer(s) (jointly in equal shares) as a general advance against any royalties and other payments heretofore and hereafter payable to the Writer(s) by the Publisher, or any of its subsidiary or associated corporations, and to be recouped therefrom;

(b) In respect of regular piano copies sold and paid for at wholesale in the United States of America, royalties of cents per copy;

(c) A royalty of cents per copy of dance orchestrations thereof sold and paid for in the United States of America;

(d) A royalty of fifty (50%) percent of all net earned proceeds received by the Publisher in respect of regular piano copies and/or orchestrations thereof sold and paid for in any foreign country;

(e) A royalty of fifty (50%) percent of all new sums received by the Publisher for the publication of the composition in any folio or composite work or lyric magazine by the Publisher or its licensee; such publication, if any, may be made at any time in the discretion of the Publisher. In the event the Publisher shall print and sell its own folio or composite work or lyric magazine then the Writer(s) shall be entitled to receive 10% of the suggested retail selling price of the publication but reduced in proportion to the number of compositions covered hereby bears to the total number of compositions contained in the publication;

(f) As to free "professional material" – Not sold or resold, no royalty shall be payable;

(g) An amount equal to fifty (50%) percent of all net proceeds received and actually retained by the Publisher arising out of the manufacture of phonograph records and other parts or instruments serving to mechanically reproduce said compositions; any and all sums paid to or deducted by Harry Fox or any similar mechanical collection agency may be deducted in computing such net proceeds;

(h) Except as herein expressly provided, no other royalties shall be paid with respect to the said composition.

5. It is understood and agreed by and between all the parties hereto that all sums hereunder payable jointly to the Writer(s) shall be paid to and divided amongst them respectively as follows:

(1)

Lil Joe docs 00463

| Name: | Shares: |
|-------|---------|
| MARK ROSS | 33 1/3 % |
| DAVID HOBBS | 33 1/3 % |
| LOMER CAMPBELL | 33 1/3 % |
| CHRIS WONGWON | 33 1/3% |
|  |  |
|  |  |
|  |  |
|  |  |

6. The Publisher shall render to the Writer(s), as above, on or before each August 15th covering the six months ending June 30th; and each February 15th covering the six months ending December 31st, royalty statements accompanied by remittance for any royalties due thereunder.

7. The Publisher shall determine, in its sole discretion, whether public demand for the composition is created as to warrant printing copies and offering the same for sale and distribution. It is contemplated that the Publisher shall license and assign the performance rights to a performing rights society on such terms as may be agreed upon between such society and the Publisher. It is further contemplated that the mechanical reproduction rights shall be administered by Harry Fox, as agent or some other agency as selected by the Publisher on such terms as may be approved by the Publisher. The terms of individual mechanical licenses may vary and shall be determined by the Publisher. The Publisher is specifically authorized to enter into any foreign marketing arrangements at it may approve whether or not the foreign representative, agent or licensee shall be affiliated or associated with the Publisher or whether or not the Publisher or any of its officers, directors or shareholders shall have any interest in the foreign representative, agent or licensee, provided that the Writer(s) shall receive fifty (50%) percent of the new proceeds received by the Publisher from such foreign representative agent or licensee. The Publisher, at its sole option, shall determine whether the Writer(s) participation in proceeds derived from the marketing of the piano copies of the composition in Canada shall be on the same basis as herein provided for marketing of the same in the United States of America or as herein provided for marketing of the same in foreign countries.

8. The Writer(s) may appoint a certified public accountant who shall, upon written request therefor, have access to all records of the Publisher during business hours relating to said composition for the purpose of verifying royalty statements hereunder. Such examination shall not be more frequent than once in any half calendar year.

9. All accountings and statements rendered to the Writer(s) by the Publisher shall be deemed to be accepted and approved by the Writer(s) unless objection to same is given to the Publisher by the Writer(s) in writing within six months from the date first rendered by the Publisher.

10. The Writer(s) hereby consents to such changes, adaptations, dramatizations, transpositions, editing and arrangements of said composition, and the setting of words to the music and of music to the words, and the change of title as the Publisher deems desirable. In the event that the composition covered by this agreement is an instrumental composition, then and in such event, the Writer(s) hereby irrevocably grants to the Publisher the sole and exclusive right and privilege to cause to have lyrics written for such composition by a writer or writers designated by the Publisher, which lyrics shall require only the approval of the Publisher, whereupon the Writer(s) shall be entitled to only one-half of the aforementioned royalties provided in this agreement. The Writer(s) hereby waives any and all claims which he has or may have against the Publisher and/or its associated, affiliated and subsidiary corporations by reason of the fact that the title of said composition may be the same or similar to that of any musical composition or compositions heretofore or hereafter acquired by the Publisher and/or its associated, affiliated and subsidiary corporations. The Writer(s) consents to the use of his (their) name and likeness and the title to the said composition on the music, folios, recordings, performances, player rolls and in connection with publicity and advertising concerning the Publisher, its successors, assigns and licensees, and said composition, and agrees that the use of such name, likeness and title may commence at such time as the Publisher, in its discretion, may determine.

11. Written demands and notices other than royalty statements provided for herein shall be sent by either certified or registered mail.

12. Any legal action brought by the Publisher against any alleged infringer of said composition shall be initiated and prosecuted at the Publisher's sole expense, and of any recovery made by it as a result thereof, after deduction of the expense of the litigation, a sum equal to thirty-three and one-third (33-1/3%) percent shall be paid to the Writer(s).

(a) If a claim is presented against the Publisher in respect of said composition it shall thereupon serve written notice upon the Writer(s), containing the full details of such claim known to the Publisher, and thereafter until the claim has been adjudicated or settled, the Publisher shall hold any monies coming due the Writer(s), including monies due the Writer(s) pursuant to this contract or any other contracts made with the Publisher, in re ...nding the outcome of such claim or claims. The Publisher shall have the right to settle or otherwise dispose of such claims in any manner as it, in its sole discretion, may determine. In the event of any recovery against the Publisher, either by way of judgement or settlement, all of the costs, charges, disbursements, attorney fees and the amount of the judgement or settlement may be deducted by the Publisher from any and all royalties or other payments due or thereafter payable to the Writer(s) by the Publisher or by its associated, affiliated or subsidiary companies pursuant to this agreement or any other agreement between the Writer(s) and the Publisher, or its associated, affiliated, or subsidiary companies. If the Publisher is successful in defending the said action or disposing of such claim or claims, then it shall be permitted to pay any and all costs involved in defeating or disposing of said claims including reasonable counsel fees; and charge such costs to the Writer(s), who agree to pay said sum to the Publisher.

(2)

10 B 31

Lil Joe docs 00464

(b) From and after the serv. A summons in a suit for infringement filed against .... Publisher with respect to said composition, any and all sums of money thereafter coming due to the Writer(s) pursuant to this agreement or any other contract between the Writer(s) and the Publisher shall be held by the Publisher in trust until the suit has been adjudicated and then be disbursed accordingly, unless the Writer(s) shall elect to file, with the ~ublisher, a Surety Company bond in form and amount and with Sureties acceptable to the Publisher, in which event the sums so held shall be paid to the Writer(s).

13. The Writer(s), each for himself, hereby irrevocably constitute and appoint the Publisher or any of its officers, directors or general manager, his (their) attorney and representative, in the name(s) of the Writer(s), or any of them, or in the name of the Publisher, its successors and assigns, to make, sign, execute, acknowledge and deliver any and all instruments which may be desirable or necessary in order to vest in the Publisher, its successors and assigns, any of the rights hereinabove referred to.

14. Any expenses, including studio, musicians, performers, arrangements, copying, equipment, lead sheets, or any other material or supplies helpful in obtaining a demonstration record, may be paid by the publisher and shall be charged against the Writer(s) jointly and severally, as an advance against any royalties or payments, from any source, due or to become due the Writer(s) from the Publisher or any company connected, associated, or affiliated with the Publisher.

15. The Publisher shall have the right to sell, assign, transfer, license or otherwise dispose of any of its rights in whole or in part under this agreement to any person, firm or corporation, but said disposition shall not affect the right of the Writer(s) to the royalties hereinabove set forth.

16. This agreement shall be construed only under the laws of the state of Penna. .; any part of this agreement shall be invalid or unenforceable, it shall not affect the validity of the balance of this agreement.

17. This agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their respective successors in interest, legal representatives and assigns, and represents the entire understanding between the parties.

18. The recording of the composition by a commercial record manufacturing company by means of disc or tape or by any other means of mechanically reproducing sound now known or hereafter discovered, shall avoid any recapture rights the Writer(s), anything hereinabove set forth which may be construed to the contrary notwithstanding.

19. The Publisher shall have the right, in its sole discretion, to advance monies for advertising and promotion, and charge not more than fifty (50%) percent of the same to the Writer(s)' royalties which may become due hereunder.

20. *Definitions:*

(a) Writer(s) as used herein shall be deemed to include all authors and composers signing this agreement.

(b) "His", "Himself" and "He", when used with reference to "Writer(s)" shall be construed in the singular or plural, or masculine or feminine, whichever shall apply.

Witness:

...................................................................

Writer ..................................................... (L.S.)

Address ...............................................................

Writer ............................................. (L.S.)

Address .1.5.760. .U.W. .J.=. .A.v.e. .#.A.............

Writer ...................................................(L.S.)

Address ......................................................

Writer ...................................................(L.S.)

Address .....................................................

Writer ...................................................(L.S.)

Address .....................................................

Writer ...................................................(L.S.)

Address .....................................................

Writer ...................................................(L.S.)

Address .....................................................

Publisher:

By: .......................................................

Address:

(3)

10B32

Lil Joe docs 00465

Copyright
Office
of the
United
States

THE
LIBRARY
OF
CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-
MENT WAS RECORDED IN THE COPYRIGHT OFFICE
ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE

DATE OF RECORDATION

6MAY83

| VOLUME | PAGE |
|---|---|
| 2357 | 188 |

| VOLUME | PAGE |
|---|---|
| 2357 | 190 |

OFFICIAL SEAL

Register of
Copyrights and
Assistant
Librarian for
Copyright
Services



Certificate of Recordation
(Title of certificate) 1967 4 44

Lil Joe docs 00468

POPULAR SONGWRITERS CONTRACT

ㅅ3.25

**AGREEMENT made this** 19th **day of** March **19** 88 **between**

PAC - JAM PUBLISHING

(hereinafter called "Publisher"), with offices at 3050 Biscayne Blvd., Miami, Fla., 33137

**and** MARK ROSS, DAVID HOBBS, AND LUTHER CAMPBELL , CHRIS WONGWON

jointly and/or severally, (hereinafter called "Writer(s)"):

WITNESSETH:

In consideration of the agreement herein contained and of the sum of One ($1.00) Dollar and other good and valuable consideration in hand paid by the publisher to the Writer(s), receipt of which is hereby acknowledged, the parties agree as follows:

1   The Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, a certain heretofore unpublished original musical composition, written and/or composed by the above named writer(s), now entitled:

PUSSY ASS NIGGA

including the title, words and music, and all copyrights thereof, including but not limited to the copyright registration No.                 and all rights, claims, and demands in any way relating thereto, the exclusive right to secure copyright in said musical composition throughout the entire world; and the right to hold the said copyright and all rights of whatsoever nature now and hereafter existing under any agreements or licenses relating inereto, for and during the full terms of all said copyrights. In further consideration of the agreement herein contained, the Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, all renewals and extensions of the copyrights of said musical composition to which the Writer(s) may be now or hereafter entitled, and all registrations thereof, and all rights of any and every nature now and hereafter thereunder existing, for the full terms of all such renewals and extensions of copyrights. The Writer(s) hereby irrevocably appoints the Publisher, its successors and assigns and its or their officers, servants, agents and employees, his true and lawful attorneys to register a claim to any all such renewals and extensions of copyrights.

2.  The Writer(s) hereby warrants that the said composition is his sole, exclusive work, and that he has full right and power to make the within agreement, and that there exist no adverse claim to or in the said composition.

3   The Writer(s) hereby warrants that the foregoing musical composition is new and original and does not infringe any other work and if applicable, has been created by the joint collaboration of the Writers named herein and that said composition, including the title, words and music thereof, has been, unless herein otherwise specifically noted, the result of the joint efforts of all the undersigned Writers and not by way of any independent or separable activity by any of the Writers.

4.  In consideration of this agreement, the Publisher agrees to pay the Writer(s) as follows:

(a)  The sum of $              paid to the Writer(s) (jointly in equal shares) as a general advance against any royalties and other payments heretofore and hereafter payable to the Writer(s) by the Publisher, or any of its subsidiary or associated corporations, and to be recouped therefrom:

(b)  In respect of regular piano copies sold and paid for at wholesale in the United States of America, royalties of            cents per copy;

(c)  A royalty of              cents per copy of dance orchestrations thereof sold and paid for in the United States of America;

(d)  A royalty of fifty (50%) percent of all net earned proceeds received by the Publisher in respect of regular piano copies and/or orchestrations thereof sold and paid for in any foreign country;

(e)  A royalty of fifty (50%) percent of all new sums received by the Publisher for the publication of the composition in any folio or composite work or lyric magazine by the Publisher or its licenses; such publication, if any, may be made at any time in the discretion of the Publisher.  In the event the Publisher shall print and sell its own folio or composite work or lyric magazine then the Writer(s) shall be entitled to receive 10% of the suggested retail selling price of the publication but reduced in proportion to the number of compositions covered hereby bears to the total number of compositions contained in the publication;

(f)  As to free "professional material" – Not sold or resold, no royalty shall be payable;

(g)  An amount equal to fifty (50%) percent of all net proceeds received and actually retained by the Publisher arising out of the manufacture of phonograph records and other parts or instruments serving to mechanically reproduce said composition; any and all sums paid to or deducted by Harry Fox or any similar mechanical collection agency may be deducted in computing such net proceeds;

(h)  Except as herein expressly provided, no other royalties shall be paid with respect to the said composition.

5.  It is understood and agreed by and between all the parties hereto that all sums hereunder payable jointly to the Writer(s) shall be paid to and divided amongst them respectively as follows.

(1)

10 B36

Lil Joe docs 00469

| Name: | | res: VOL. 2 3 5 7 : 1 8 9 |
|---|---|---|
| MARK ROSS | | 33 1/3 % |
| DAVID HOBBS | | 33 1/3 % |
| LUTHER CAMPBELL | | 33 1/3 % |
| CHRIS WONGWON | | 33 1/3 % |
| | | |
| | | |
| | | |
| | | |

6.  The Publisher shall render to the Writer(s), as above, on or before each August 15th covering the six months ending June 30th; and each February 15th covering the six months ending December 31st, royalty statements accompanied by remittance for any royalties due thereunder.

7.  The Publisher shall determine, in its sole discretion, whether public demand for the composition is created as to warrant printing copies and offering the same for sale and distribution. It is contemplated that the Publisher shall license and assign the performance rights to a performing rights society on such terms as may be agreed upon between such society and the Publisher. It is further contemplated that the mechanical reproduction rights shall be administered by Harry Fox, as agent or some other agency as selected by the Publisher on such terms as may be approved by the Publisher. The terms of individual mechanical licenses may vary and shall be determined by the Publisher. The Publisher is specifically authorized to enter into any foreign marketing arrangements as it may approve whether or not the foreign representative, agent or licensee shall be affiliated or associated with the Publisher or whether or not the Publisher or any of its officers, directors or shareholders shall have any interest in the foreign representative, agent or licensee, provide that the Writer(s) shall receive fifty (50%) percent of the new proceeds received by the Publisher from such foreign representative agent or licensee. The Publisher, at its sole option, shall determine whether the Writer(s) participation in proceeds derived from the marketing of the piano copies of the composition in Canada shall be on the same basis as herein provided for marketing of the same in the United States of America or as herein provided for marketing of the same in foreign countries.

8.  The Writer(s) may appoint a certified public accountant who shall, upon written request therefor, have access to all records of the Publisher during business hours relating to said composition for the purpose of verifying royalty statements hereunder. Such examination shall not be more frequent than once in any half calendar year.

9.  All accountings and statements rendered to the Writer(s) by the Publisher shall be deemed to be accepted and approved by the Writer(s) unless objection to same is given to the Publisher by the Writer(s) in writing within six months from the date first rendered by the Publisher.

10.  The Writer(s) hereby consents to such changes, adaptations, dramatizations, transpositions, editing and arrangements of said composition, and the setting of words to the music and of music to the words, and the change of title as the Publisher deems desirable. In the event that the composition covered by this agreement is an instrumental composition, then and in such event, the Writer(s) hereby irrevocably grants to the Publisher the sole and exclusive right and privilege to cause to have lyrics written for such composition by a writer or writers designated by the Publisher, which lyrics shall require only the approval of the Publisher, whereupon the Writer(s) shall be entitled to only one-half of the aforementioned royalties provided in this agreement. The Writer(s) hereby waives any and all claims which he has or may have against the Publisher and/or its associated, affiliated and subsidiary corporations by reason of the fact that the title of said composition may be the same or similar to that of any musical composition or compositions heretofore or hereafter acquired by the Publisher and/or its associated, affiliated and subsidiary corporations. The Writer(s) consents to the use of his (their) name and likeness and the title to the said composition on the music, folios, recordings, performances, player rolls and in connection with publicity and advertising concerning the Publisher, its successors, assigns and licensees, and said composition, and agrees that the use of such name, likeness and title may commence at such time as the Publisher, in its discretion, may determine.

11.  Written demands and notices other than royalty statements provided for herein shall be sent by either certified or registered mail.

12.  Any legal action brought by the Publisher against any alleged infringer of said composition shall be initiated and prosecuted at the Publisher's sole expense, and of any recovery made by it as a result thereof, after deduction of the expense of the litigation, a sum equal to thirty-three and one-third (33-1/3%) percent shall be paid to the Writer(s).

(a)  If a claim is presented against the Publisher in respect of said composition it shall thereupon serve written notice upon the Writer(s), containing the full details of such claim known to the Publisher, and thereafter until the claim has been adjudicated or settled, the Publisher shall hold any monies coming due the Writer(s), including monies due the Writer(s) pursuant to this contract or any other contracts made with the Publisher, in trust pending the outcome of such claim or claims. The Publisher shall have the right to settle or otherwise dispose of such claims in any manner as it, in its sole discretion, may determine. In the event of any recovery against the Publisher, either by way of judgement or settlement, all of the costs, charges, disbursements, attorney fees and the amount of the judgement or settlement may be deducted by the Publisher from any and all royalties or other payments due or thereafter payable to the Writer(s) by the Publisher or by its associated, affiliated or subsidiary companies pursuant to this agreement or any other agreement between the Writer(s) and the Publisher, or its associated, affiliated, or subsidiary companies. If the Publisher is successful in defending the said action or disposing of such claim or claims, then it shall be permitted to pay any and all costs involved in defeating or disposing of said claims including reasonable counsel fees; and charge such costs to the Writer(s), who agree to pay said sum to the Publisher.

(2)

/0 B 37

Lil Joe docs 00470

(b) From and after the service of summons in a suit for infringement filed against the Publisher with respect to said composition, any and all sums of money thereafter coming due to the Writer(s) pursuant to this agreement or any other contract between the Writer(s) and the Publisher shall be held by the Publisher in trust until the suit has been adjudicated and then be disbursed accordingly, unless the Writer(s) shall elect to file, with the Publisher, a Surety Company bond in form and amount and with Sureties acceptable to the Publisher, in which event the sums so held shall be paid to the Writer(s).

13. The Writer(s), each for himself, hereby irrevocably constitute and appoint the Publisher or any of its officers, directors or general manager, his (their) attorney and representative, in the name(s) of the Writer(s), or any of them, or in the name of the Publisher, its successors and assigns, to make, sign, execute, acknowledge and deliver any and all instruments which may be desirable or necessary in order to vest in the Publisher, its successors and assigns, any of the rights hereinabove referred to.

14. Any expenses, including studio, musicians, performers, arrangements, copying, equipment, lead sheets, or any other material or supplies helpful in obtaining a demonstration record, may be paid by the publisher and shall be charged against the Writer(s) jointly and severally, as an advance against any royalties or payments, from any source, due or to become due the Writer(s) from the Publisher or any company connected, associated, or affiliated with the Publisher.

15. The Publisher shall have the right to sell, assign, transfer, license or otherwise dispose of any of its rights in whole or in part under this agreement to any person, firm or corporation, but said disposition shall not affect the right of the Writer(s) to the royalties hereinabove set forth.

16. This agreement shall be construed only under the laws of the state of Penna. If any part of this agreement shall be invalid or unenforceable, it shall not affect the validity of the balance of this agreement.

17. This agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their respective successors in interest, legal representatives and assigns, and represents the entire understanding between the parties.

18. The recording of the composition by a commercial record manufacturing company by means of disc or tape or by any other means of mechanically reproducing sound now known or hereafter discovered, shall avoid any recapture rights the Writer(s), anything hereinabove set forth which may be construed to the contrary notwithstanding.

19. The Publisher shall have the right, in its sole discretion, to advance monies for advertising and promotion, and charge not more than fifty (50%) percent of the same to the Writer(s)' royalties which may become due hereunder.

20. *Definitions:*
(a) Writer(s) as used herein shall be deemed to include all authors and composers signing this agreement.
(b) "His", "Himself" and "He", when used with reference to "Writer(s)" shall be construed in the singular or plural, or masculine or feminine, whichever shall apply.

Witness:

................ ........................................................................

Writer ........................................................... (L.S.)
Address ...................................................
Writer ...........................................................(L.S.)
Address ...................................................
Writer ...........................................................(L.S.)
Address ...................................................
Writer ...........................................................(L.S.)
Address ...................................................
Writer ...........................................................(L.S.)
Address ...................................................
Writer ...........................................................(L.S.)
Address ...................................................
Writer ...........................................................(L.S.)
Address ...................................................

Publisher:
By: ...........
Address:

(3)

*10 B 38*

Lil Joe docs 00471

*Copyright*
*Office*
*of the*
*United*
*States*

THE
LIBRARY
OF
CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-
MENT WAS RECORDED IN THE COPYRIGHT OFFICE
ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.

DATE OF RECORDATION

6MAY88

| VOLUME | PAGE |
|--------|------|
| 2357 | 191 |

| VOLUME | PAGE |
|--------|------|
| 2357 | 193 |

OFFICIAL SEAL

Register of
Copyrights and
Assistant
Librarian for
Copyright
Services

Certificate of Recordation
of the September Documents

10843

Lil Joe docs 00476

AGREEMENT made this    19th    day of   March                    19 88    between

PAC - JAM PUBLISHING

(hereinafter called "Publisher"), with offices at   3050 Biscayne Blvd, Miami,Fla., 33137

and   MARK ROSS, DAVID HOBBS, AND LU:HER CAMPBELL , Chris Wongwon

jointly and/or severally, (hereinafter called "Writer(s)");

   WITNESSETH:

   In consideration of the agreement herein contained and of the sum of One ($1.00) Dollar and other good and valuable consideration in hand paid by the publisher to the Writer(s), receipt of which is hereby acknowledged, the parties agree as follows:

   1. The Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, a certain heretofore unpublished original musical composition, written and/or composed by the above named writer(s), now entitled:

                                    S AND M

including the title, words and music, and all copyrights thereof, including but not limited to the copyright registration No.          and all rights, claims, and demands in any way relating thereto; the exclusive right to secure copyright in said musical composition throughout the entire world; and the right to hold the said copyright and all rights of whatsoever nature now and hereafter existing under any agreements or licenses relating thereto, for and during the full terms of all said copyrights. In further consideration of the agreement herein contained, the Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, all renewals and extensions of the copyrights of said musical composition to which the Writer(s) may be now or hereafter entitled, and all registrations thereof, and all rights of any and every nature now and hereafter thereunder existing, for the full terms of all such renewals and extensions of copyrights. The Writer(s) hereby irrevocably appoints the Publisher, its successors and assigns and its or their officers, servants, agents and employees, his true and lawful attorneys to register a claim to any all such renewals and extensions of copyrights.

   2. The Writer(s) hereby warrants that the said composition is his sole, exclusive work, and that he has full right and power to make the within agreement, and that there exist no adverse claim to or in the said composition.

   3. The Writer(s) hereby warrants that the foregoing musical composition is new and original and does not infringe any other work and if applicable, has been created by the joint collaboration of the Writers named herein and that said composition, including the title, words and music thereof, has been unless herein otherwise specifically noted, the result of the joint efforts of all the undersigned Writers and not by way of any independent or separable activity by any of the Writers.

   4. In consideration of this agreement, the Publisher agrees to pay the Writer(s) as follows:

      (a) The sum of S          paid to the Writer(s) (jointly in equal shares) as a general advance against any royalties and other payments heretofore and hereafter payable to the Writer(s) by the Publisher, or any of its subsidiary or associated corporations, and to be recouped therefrom;

      (b) In respect of regular piano copies sold and paid for at wholesale in the United States of America, royalties of          cents per copy,

      (c) A royalty of          cents per copy of dance orchestrations thereof sold and paid for in the United States of America;

      (d) A royalty of fifty (50%) percent of all net earned proceeds received by the Publisher in respect of regular piano copies and/or orchestrations thereof sold and paid for in any foreign country;

      (e) A royalty of fifty (50%) percent of all new sums received by the Publisher for the publication of the composition in any folio or composite work or lyric magazine by the Publisher or its licenses; such publication, if any, may be made at any time in the discretion of the Publisher. In the event the Publisher shall print and sell its own folio or composite work or lyric magazine then the Writer(s) shall be entitled to receive 10% of the suggested retail selling price of the publication but reduced in proportion to the number of compositions covered hereby bears to the total number of compositions contained in the publication;

      (f) As to free "professional material" – Not sold or resold, no royalty shall be payable;

      (g) an amount equal to fifty (50%) percent of all net proceeds received and actually retained by the Publisher arising out of the manufacture of phonograph records and other parts or instruments serving to mechanically reproduce said composition; any and all sums paid to or deducted by Harry Fox or any similar mechanical collection agency may be deducted in computing such net proceeds;

      (h) Except as herein expressly provided, no other royalties shall be paid with respect to the said composition.

   5. It is understood and agreed by and between all the parties hereto the    sums hereunder payable jointly to the Writer(s) shall be paid to and divided amongst them respectively as follows:

                                    (1)

                                                  10844

Lil Jne dncs 00477

| Name | |
|------|------|
| HARY ROSS | 33 1/3 % |
| DAVID HOBBS | 33 1/3 % |
| LUTHER CAMPBELL | 33 1/3 % |
| CHRIS WONGWON | 33 1/3% |
| | |
| | |
| | |
| | |

6.  The Publisher shall render to the Writer(s), as above, on or before each August 15th covering the six months ending June 30th, and each February 15th covering the six months ending December 31st, royalty statements accompanied by remittance for any royalties due thereunder.

7.  The Publisher shall determine, in its sole discretion, whether public demand for the composition is created as to warrant printing copies and offering the same for sale and distribution. It is contemplated that the Publisher shall license and assign the performance rights to a performing rights society as such terms as may be agreed upon between such society and the Publisher. It is further contemplated that the mechanical reproduction rights shall be administered by Harry Fox, as agent or some other agency as selected by the Publisher on such erms as may be approved by the Publisher. The terms of individual mechanical licenses may vary and shall be determined oy the Publisher. The Publisher is specifically authorized to enter into any foreign marketing arrangements as it may approve whether or not the foreign representative, agent or licensee shall be affiliated or associated with the Publisher or whether or not the Publisher or an of its officers, directors or shareholders shall have any interest in the foreign representative, agent or licensee, provided that the Writer(s) shall receive fifty (50%) percent of the new proceeds received by the Publisher from such foreign representative agent or licensee. The Publisher, at its sole option, shall determine whether the Writer(s) participation in proceeds derived from the marketing of the piano copies of the composition in Canada shall be on the same basis as herein provided for marketing of the same in the United States of America or as herein provided for marketing of the same in foreign countries.

8.  The Writer(s) may appoint a certified public accountant who shall, upon written request therefor, have access to all records of the Publisher during business hours relating to said composition for the purpose of verifying royalty statements hereunder. Such examination shall not be more frequent than once in any half calendar year.

9   All accountings and statements rendered to the Writer(s) by the Publisher shall be deemed to be accepted and approved by the Writer(s) unless objection to same is given to the Publisher by the Writer(s; in writing within six months from the date first rendered by the Publisher.

10.  The Writer(s) hereby consents to such changes, adaptations, dramatizations, transpositions, editing and arrangements of said composition, and the setting of words to the music and of music to the words, and the change of title as the Publisher deems desirable  In the event that the composition covered by this agreement is an instrumental composition, then and in such event, the Writer(s) hereby irrevocably grants to the Publisher the sole and exclusive right and privilege to cause to have lyrics written for such composition by a writer or writers designated by the Publisher, which lyrics shall require only the approval of the Publisher, whereupon the Writer(s) shall be entitled to only one-half of the aforementioned royalties provided in this agreement  The Writer(s) hereby waives any and all claims which he has or may have against the Publisher and/or its associated, affiliated and subsidiary corporations by reason of the fact that the title of said composition may be the same or similar to that of any musical composition or compositions heretofore or hereafter acquired by the Publisher and/or its associated, affiliated and subsidiary corporations. The Writer(s) consents to the use of his (their) name and likeness and the title to the said composition on the music, folios, recordings, performances, player rolls and in connection with publicity and advertising concerning the Publisher, its successors, assigns and licensees, and said composition, and agrees that the use of such name, likeness and title may commence at such time as the Publisher, in its discretion, may determine.

11.  Written demands and notices other than royalty statements provided for herein shall be sent by either certified or registered mail.

12.  Any legal action brought by the Publisher against any alleged infringer of said composition shall be initiated and prosecuted at the Publisher's sole expense, and of any recovery made by it as a result thereof, after deduction of the expense of the litigation, a sum equal to thirty-three and one-third (33-1/3%) percent shall be paid to the Writer(s).

(a)  If a claim is presented against the Publisher in respect of said composition it shall thereupon serve written notice upon the Writer(s), containing the full details of such claim known to the Publisher, and thereafter until the claim has been adjudicated / settled, the Publisher shall hold any monies coming due the Writer(s), including monies due the Writer(s) pursuant to this c  tract or any other contracts made with the Publisher, in trust pending the outcome of such claim or claims. The Publisher shall have the right to settle or otherwise dispose of such claims in any manner as it, in its sole discretion, may determine.  In the event of any recovery against the Publisher, either by way of judgement or settlement, all of the costs, charges, disbursements, attorney fees and the amount of the judgement or settlement may be deducted by the Publisher from any and all royalties or other payments due or thereafter payable to the Writer(s) by the Publisher or by its associated, affiliated or subsidiary companies pursuant to this agreement or any other agreem  etween the Writer(s) and the Publisher, or its associated, affiliated, or subsidiary companies. If the Publisher is successful in defending the said action or disposing of such claim or claims, then it shall be permitted to pay any and all costs involved in defeating or disposing of said claims including reasonable counsel fees; and charge such costs to the Writer(s), who agree to pay said sum to the Publisher.

(2)

10B45

Lil Joe docs 00478

(b) From and after the service of summons in a suit for infringement filed against the Publisher with respect to said composition, any and all sums of money thereafter coming due to the Writer(s) pursuant to this agreement or any other contract between the Writer(s) and the Publisher shall be held by the Publisher in trust until the suit has been adjudicated and then be disbursed accordingly, unless the Writer(s) shall elect to file, with the Publisher, a Surety Company bond in form and amount and with Sureties acceptable to the Publisher, in which event the sums so held shall be paid to the Writer(s).

13. The Writer(s), each for himself, hereby irrevocably constitute and appoint the Publisher or any of its officers, directors or general manager, his (their) attorney and representative, in the name(s) of the Writer(s), or any of them, or in the name of the Publisher, its successors and assigns, to make, sign, execute, acknowledge and deliver any and all instruments which may be desirable or necessary in order to vest in the Publisher, its successors and assigns, any of the rights hereinabove referred to.

14. Any expenses, including studio, musicians, performers, arrangements, copying, equipment, lead sheets, or any other material or supplies helpful in obtaining a demonstration record, may be paid by the publisher and shall be charged against the Writer(s) jointly and severally, as an advance against any royalties or payments, from any source, due or to become due the Writer(s) from the Publisher or any company connected, associated, or affiliated with the Publisher.

15. The Publisher shall have the right to sell, assign, transfer, license or otherwise dispose of any of its rights in whole or in part under this agreement to any person, firm or corporation, but said disposition shall not affect the right of the Writer(s) to the royalties hereinabove set forth.

16. This agreement shall be construed only under the laws of the state of Penna. If any part of this agreement shall be invalid or unenforceable, it shall not affect the validity of the balance of this agreement.

17. This agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their respective successors in interest, legal representatives and assigns, and represents the entire understanding between the parties.

18. The recording of the composition by a commercial record manufacturing company by means of disc or tape or by any other means of mechanically reproducing sound now known or hereafter discovered, shall avoid any recapture rights the Writer(s), anything hereinabove set forth which may be construed to the contrary notwithstanding.

19. The Publisher shall have the right, in its sole discretion, to advance monies for advertising and promotion, and charge not more than fifty (50%) percent of the same to the Writer(s)' royalties which may become due hereunder.

20. *Definitions:*
(a) Writer(s) as used herein shall be deemed to include all authors and composers signing this agreement.
(b) "His", "Himself" and "He", when used with reference to "Writer(s)" shall be construed in the singular or plural, or masculine or feminine, whichever shall apply.

Witness.

............    ......................... ...............    ...........................

Writer ................................................... (L.S.)
Address .................................................
Writer ................................................... (L.S.)
Address .................................................
Writer ................................................... (L.S.)
Address .................................................
Writer ................................................... (L.S.)
Address .................................................
Writer ................................................... (L.S.)
Address .................................................
Writer ................................................... (L.S.)
Address .................................................
Writer ................................................... (L.S.)
Address .................................................

Publisher:
By: .......................................................
Address:

(3)

10 846

Lil Joe docs 00479

*Copyright*
*Office*
*of the*
*United*
*States*

THE
LIBRARY
OF
CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-
MENT WAS RECORDED IN THE COPYRIGHT OFFICE
ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.

DATE OF RECORDATION

6MAY88

| VOLUME | PAGE |
|---|---|
| 2357 | 197 |

| VOLUME | PAGE |
|---|---|
| 2357 | 199 |



OFFICIAL SEAL

Register of
Copyrights and
Assistant
Librarian for
Copyright
Services

Certificate of Recordation
C-7×2 September 1987—80,000

10 858

LH Joe docs 00491

AGREEMENT made this    19th        day of   March                        19 88    between

PAC - JAM PUBLISHING

(hereinafter called "Publisher"), with offices at   3050 Biscayne Blvd, Miami,Fla., 33137

**and**  MARK ROSS, DAVID HOBBS, AND LUTHER CAMPBELL ,CHRIS  ADNGWO'.

jointly and/or severally, (hereinafter called "Writer(s)");

WITNESSETH:

In consideration of the agreement herein contained and of the sum of One ($1.00) Dollar and other good and valuable consideration in hand paid by the publisher to the Writer(s), receipt of which is hereby acknowledged, the parties agree as follows:

1. The Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, a certain heretofore unpublished original musical composition, written and/or composed by the above named writer(s), now entitled:

WORD II

including the title, words and music, and all copyrights thereof, incl. ling but not limited to the copyright registration No.              and all rights, claims, and demands in any way relating thereto; the exclusive right to secure copyright in said musical composition throughout the entire world; and the right to hold the said copyright and all rights of whatsoever nature now and hereafter existing under any agreements or licenses relating there  , for and during the full terms of all said copyrights. In further consideration of the agreement herein contained, the Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, all renewals and extensions of the copyrights of said musical composition to which the Writer(s) may be now or hereafter entitled, and all registrations thereof, and all rights of any and every nature now and hereafter thereunder existing, for the full terms of all such renewals and extensions of copyrights. The Writer(s) hereby irrevocably appoints the Publisher, its successors and assigns and its or their officers, servants, agents and employees, his true and lawful attorneys to register a claim to any all such renewals and extensions of copyrights.

2. The Writer(s) hereby warrants that the said composition is his sole, exclusive work, and that he has full right and power to make the within agreement, and that there exist no adverse claim to or in the said composition.

3. The Writer(s) hereby warrants that the foregoing musical composition is new and original and does not infringe any other work and if applicable, has been created by the joint collaboration of the Writers named herein and that said composition, including the title, words and music thereof, has been, unless herein otherwise specifically noted, the result of the joint efforts of all the undersigned Writers and not by way of any independent or separable activity by any of the Writers.

4. In consideration of this agreement, the Publisher agrees to pay the Writer(s) as follows:

(a) The sum of $              paid to the Writer(s) (jointly in equal shares) as a general advance against any royalties and other payments heretofore and hereafter payable to the Writer(s) by the Publisher, or any of its subsidiary or associated corporations, and to be recouped therefrom:

(b) In respect of regular piano copies sold and paid for at wholesale in the United States of America, royalties of         cents per copy;

(c) A royalty of         cents per copy of dance orchestrations thereof sold and paid for in the United States of America;

(d) A royalty of fifty (50%) percent of all net earned proceeds received by the Publisher in respect of regular piano copies and/or orchestrations thereof sold and paid for in any foreign country.

(e) A royalty of fifty (50%) percent of all new sums received by the Publisher for the publication of the composition in any folio or composite work or lyric magazine by the Publisher or its licenses such publication, if any, may be made at any time in the discretion of the Publisher. In the event the Publisher shall print and sell its own folio or composite work or lyric magazine then the Writer(s) shall be entitled to receive 10% of the suggested retail selling price of the publication but reduced in proportion to the number of compositions covered hereby bears to the total number of compositions contained in the publication;

(f) As to free "professional material" — Not sold or resold, no royalty shall be payable;

(g) An amount equal to fifty (50%) percent of all net proceeds received and actually retained by the Publisher arising out of the manufacture of phonograph records and other parts or instruments serving to mechanically reproduce said composition; and all sums paid to or deducted by Harry Fox or any similar mechanical collection agency may be deducted in computing such net proceeds;

(h) Except as herein expressly provided, no other royalties shall be paid with respect to the said composition.

5. It is understood and agreed by and between all the parties hereto that all sums hereunder payable jointly to the Writer(s) shall be paid to and divided amongst them respectively as follows:

(1)

10 1359

Lil Joe docs 00492

| Name: | | Share: |
|---|---|---|
| MARK ROSS | | 33 1/3 % |
| DAVID HOBBS | | 33 1/3 % |
| LUTHER CAMPBELL | | 33 1/3 % |
| CHRIS WONGWON | | 33 1/3% |
| | | |
| | | |
| | | |
| | | |

6.  The Publisher shall render to the Writer(s), as above, on or before each August 15th covering the six months ending June 30th; and each February 15th covering the six months ending December 31st, royalty statements accompanied by remittance for any royalties due thereunder.

7.  The Publisher shall determine, in its sole discretion, whether public demand for the composition is created as to warrant printing copies and offering the same for sale and distribution. It is contemplated that the Publisher shall license and assign the performance rights to a performing rights society on such terms as may be agreed upon between such society and the Publisher. It is further contemplated that the mechanical reproduction rights shall be administered by Harry Fox, as agent or some other agency as selected by the Publisher on such terms as may be approved by the Publisher. The terms of individual mechanical licenses may vary and shall be determined by the Publisher. The Publisher is specifically authorized to enter into any foreign marketing arrangements as it may approve whether or not the foreign representative, agent or licensee shall be affiliated or associated with the Publisher or whether or not the Publisher or any of its officers, directors or shareholders shall have any interest in the foreign representative, agent or licensee provided that the Writer(s) shall receive fifty (50%) percent of the new proceeds received by the Publisher from such foreign representative agent or licensee. The Publisher, at its sole option, shall determine whether the Writer(s) participation in proceeds derived from the marketing of the piano copies of the composition in Canada shall be on the same basis as herein provided for marketing of the same in the United States of America or as herein provided for marketing of the same in foreign countries.

8.  The Writer(s) may appoint a certified public accountant who shall, upon written request therefor, have access to all records of the Publisher during business hours relating to said composition for the purpose of verifying royalty statements hereunder. Such examination shall not be more frequent than once in any half calendar year.

9.  All accountings and statements rendered to the Writer(s) hy the Publisher shall be deemed to be accepted and approved by the Writer(s) unless objection to same is given to the Publisher by the Writer(s) in writing within six months from the date first rendered by the Publisher.

10.  The Writer(s) hereby consents to such changes, adaptations, dramatizations, transpositions, editing and arrangements of said composition, and the setting of words to the music and of music to the words, and the change of title as the Publisher deems desirable. In the event that the composition covered by this agreement is an instrumental composition, then and in such event, the Writer(s) hereby irrevocably grants to the Publisher the sole and exclusive right and privilege to cause to have lyrics written for such composition by a writer or writers designated by the Publisher, which lyrics shall require only the approval of the Publisher, whereupon the Writer(s) shall be entitled to only one-half of the aforementioned royalties provided in this agreement. The Writer(s) hereby waives any and all claims which he has or may have against the Publisher and/or its associated, affiliated and subsidiary corporations by reason of the fact that the title of said composition may be the same or similar to that of any musical composition or compositions heretofore or hereafter acquired by the Publisher and/or its associated, affiliated and subsidiary corporations. The Writer(s) consents to the use of his (their) name and likeness and the title to the said composition on the music, folios, recordings, performances, player rolls and in connection with publicity and advertising concerning the Publisher, its successors, assigns and licensees, and said composition, and agrees that the use of such name, likeness and title may commence at such time as the Publisher, in its discretion, may determine.

11.  Written demands and notices other than royalty statements provided for herein shall be sent by either certified or registered mail.

12.  Any legal action brought by the Publisher against any alleged infringer of said composition shall be initiated and prosecuted at the Publisher's sole expense, and of any recovery made by it as a result thereof, after deduction of the expense of the litigation, a sum equal to thirty-three and one-third (33-1/3%) percent shall be paid to the Writer(s).

(a)  If a claim is presented against the Publisher in respect of said composition it shall thereupon serve written notice upon the Writer(s), containing the full details of such claim known to the Publisher, and thereafter until the claim has been adjudicated or settled, the Publisher shall hold any monies coming due the Writer(s), including monies due the Writer(s) pursuant to this contract or any other contracts made with the Publisher, in trust pending the outcome of such claim or claims. The Publisher shall have the right to settle or otherwise dispose of such claims in any manner as it, in its sole discretion, may determine. In the event of any recovery against the Publisher, either by way of judgement or settlement, all of the costs, charges, disbursements, attorney fees and the amount of the judgement or settlement may be deducted by the Publisher from any and all royalties or other payments due or thereafter payable to the Writer(s) by the Publisher or by its associated, affiliated or subsidiary companies pursuant to this agreement or any other agreement between the Writer(s) and the Publisher, or its associated, affiliated, or subsidiary companies. If the Publisher is successful in defending the said action or disposing of such claim or claims, then it shall be permitted to pay any and all costs involved in defeating or disposing of said claims including reasonable counsel fees; and charge such costs to the Writer(s), who agree to pay said sum to the Publisher.

(2)

10 B60

Lil Jne docs 00493

(b) From and after the entry of summons in a suit for infringement filed against Publisher with respect to said composition, any and all sums of money thereafter coming due to the Writer(s) pursuant to this agreement or any other contract between the Writer(s) and the Publisher shall be held by the Publisher in trust until the suit has been adjudicated and then be disbursed accordingly, unless the Writer(s) shall elect to file, with the Publisher, a Surety Company bond in form and amount and with Sureties acceptable to the Publisher, in which event the sums so held shall be paid to the Writer(s).

13. The Writer(s), each for himself, hereby irrevocably constitute and appoint the Publisher or any of its officers, directors or general manager, his (their) attorney and representative, in the name(s) of the Writer(s), or any of them, or in the name of the Publisher, its successors and assigns, to make, sign, execute, acknowledge and deliver any and all instruments which may be desirable or necessary in order to vest in the Publisher, its successors and assigns, any of the rights hereinabove referred to.

14. Any expenses, including studio, musicians, performers, arrangements, copying, equipment, lead sheets, or any other material or supplies helpful in obtaining a demonstration record, may be paid by the publisher and shall be charged against the Writer(s) jointly and severally, as an advance against any royalties or payments, from any source, due or to become due the Writer(s) from the Publisher or any company connected, associated, or affiliated with the Publisher.

15. The Publisher shall have the right to sell, assign, transfer, license or otherwise dispose of any of its rights in whole or in part under this agreement to any person, firm or corporation, but said disposition shall not affect the right of the Writer(s) to the royalties hereinabove set forth.

16. This agreement shall be construed only under the laws of the state of Penna. If any part of this agreement shall be invalid or unenforceable, it shall not affect the validity of the balance of this agreement.

17. This agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their respective successors in interest, legal representatives and assigns, and represents the entire understanding between the parties.

18. The recording of the composition by a commercial record manufacturing company by means of disc or tape or by any other means of mechanically reproducing sound now known or hereafter discovered, shall avoid any recapture rights the Writer(s), anything hereinabove set forth which may be construed to the contrary notwithstanding.

19. The Publisher shall have the right, in its sole discretion, to advance monies for advertising and promotion, and charge not more than fifty (50%) percent of the same to the Writer(s)' royalties which may become due hereunder.

20. Definitions.
(a) Writer(s) as used herein shall be deemed to include all authors and composers signing this agreement.
(b) "His", "Herself" and "He", when used with reference to "Writer(s)" shall be construed in the singular or plural, or masculine or feminine, whichever shall apply.

Witness:

...................................... ....................................... ... ......................

Writer .................................................... (L.S.)

Address ............................................................

Writer .................................................... (L.S.)

Address ...1.5.760. NW 7ᵗʰ Ave # ............

Writer .. Mark Ross .................... (L.S.)

Address ...12050 SC 50ᵗᵗ June Apt 20

Writer ............................................... (L.S.)

Address .......................... 33133 ............

Writer ................................................... (L.S.)

Address ............................................................

Writer ................................................... (L.S.)

Address ............................................................

Writer ................................................... (L.S.)

Address ............................................................

Publisher:

By: ............................................................

Address:

(3)

10861

Lil Joe docs 00494