# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| LIL' JOE RECORDS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-CV-23727-DPG |
| | ) | |
| MARK ROSS; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF MARK ROSS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

## DECLARATION OF MARK ROSS

I, Mark Ross, depose, attest, and say from my personal knowledge, the following:

1.     I, Mark Ross, performed in the group named "2 Live Crew" with Luther Campbell, Christopher Wong Won, and David Hobbs.

2.     I am a joint creator author, with the others in 2 Live Crew, of the albums entitled *The 2 Live Crew is What We Are, Move Somethin', Move Somethin' (Clean), As Nasty As They Wanna Be,* and *As Clean As They Wanna be* ("Subject Albums") which were written, recorded, and published from 1986 and 1989.

3.     The members of 2 Live Crew including myself at the time we recorded each of the Subject Albums, had an oral agreement when we went into the studio about how the rights, including copyrights, for those albums would be treated. Under that agreement, the copyright for the albums would be transferred to the record label or publishers that Luther Campbell ("Campbell") set up and that entity would release the albums and make payments to the group. Campbell set up a record label Skyywalker Records, Inc. and the group transferred the copyrights for the Subject Albums to Skyywalker Records. 2 Live Crew and Skyywalker records performed under this oral agreement at all times from 1986 to 1990.

4.     2 Live Crew recorded the Subject Albums from 1986 to 1990.

5.     Campbell released the Subject Albums through his label Skyywalker Records or its other iterations.

6.     Skyywalker Records or its other iterations paid me and the other members of 2 Live Crew a royalty for the recordings delivered.

7.     When 2 Live Crew was the subject of copyright and obscenity lawsuits relating to the Subject Albums, Skyywalker Records or its iterations were named parties to those actions because it was an owner of the copyrights.

8.     In or around 1990, the members of 2 Live Crew including myself executed a written agreement with Skyywalker Records that memorialized the prior oral agreement between the parties (the "1990 Agreement"). The 1990 Agreement states it has an effective date of January 1, 1987 and is between 2 Live Crew and Skyywalker Records, Inc., the successor to Luke Skyywalker Records, Inc.

9.     Skyywalker Records and its successors held the copyrights for the Subject Albums per the 1990 Agreement at all relevant times until its successor and Campbell declared

bankruptcy in 1995.

10.    The 1990 Agreement relates to the Subject Albums and to the extent that said agreement does not meet any technical requirements for an effective transfer the operative agreement would be the oral license that the 1990 Agreement sought to memorialize.

11.    2 Live Crew and Skyywalker Records (as well as Skyywalker Records' predecessor, Luke Skyywalker Records) complied with and operated under the terms of the 1990 Agreement, including as renewed, in the release of the Subject Albums and payments made thereunder. The record companies released the Subject Albums to the public and paid royalties to 2 Live Crew.

12.    The 1990 Agreement specifically states in paragraph 3: "Artist hereby grants to Company the sole and exclusive right during the initial term of this Agreement and all renewals and extensions of the same to use, **publish and permit other to use and publish...**" Thus, the agreement included a right to publish, also in line with the parties oral agreement.

13.    The 1990 Agreement also states in paragraph 2(d): "Company shall own all master recordings embodying the performance of Artist made hereunder and all derivatives of the same; and Company shall further own all of the performances of Artist embodied in said master recordings and derivatives thereof. Without limiting the generality of the forgoing, Company's said rights of ownership shall include the sole and exclusive right to manufacture, advertise, sell, lease, license or otherwise use, deal in or dispose of records embodying the performances of Artist to be recorded hereunder in all fields of use perpetually and throughout the world and upon terms and conditions as Company may approve; and the sole and exclusive right publicly to perform Artists performances embodied in recordings hereunder by means of radio broadcasting or otherwise and to license and authorize others to do so perpetually and throughout the world upon such terms and conditions as Company may approve. All master recordings recorded during the term here of and all derivatives manufactured therefrom, together with the performances embodied thereof shall from the inception of their creation, be entirely and forever the property of the Company, or its designee free from any claims whatsoever by Artist or any person, firm or corporation deriving any rights or interests from Artist; and company shall have the right to assign and otherwise transfer such copyrights to any third party, free and clear of any claim by Artist or any person, firm or corporation, deriving any rights from Artist." This evidences the parties intent to transfer copyrights in the works to Skyywalker

Records.

14.    The operative 1990 Agreement does not contain a work-for-hire clause.

15.    Lil' Joe has not, and cannot, argue the existence of any agreements other than the clearly inapposite agreements from 1991.

16.    On November 4, 2020, over two years before the earliest date of effective termination (November 7, 2022) and less than 10 years from the last date of effective termination (May 1, 2024), Luther Campbell, the heirs of Christopher Wong Won, and I comprising and representing 3 of the 4 members of 2 Live Crew served a noticed termination of its original copyright grants under 17 U.S.C. § 203 (the "Termination Notice"). The grants terminated in the Termination Notice included the right of publication.

17.    The Termination Notice was served on November 4, 2020, upon all possible rights holders, including Lil' Joe, via first-class mail (return receipt requested) and when possible electronic mail.

18.    The date of publication for the first Subject Album *The 2 Live Crew Is What We Are* was provided in the termination notice as December 1, 1986 and the notice listed a date of effective termination of November 7, 2022, which is over 35 years from the date of publication and within 5 year window beginning on December 1, 2021. The date listed of first publication on the earliest filed composition copyright registration for the songs on the identified Subject Album.

19.    The date of publication of the second and third Subject Albums *Move Somethin'* and *Move Somethin' (Clean)* was provided in the termination notice as March 21, 1988 and the notice listed a date of effective termination of March 21, 2023, within the required timeframe. The date listed of first publication on the February 26, 2001 sound recording copyright registrations for the album *Move Somethin'*.

20.    The date of publication of the fourth and fifth Subject Albums *As Nasty as They Wanna Be* and *As Clean as They Wanna Be* was provided in the termination notice as May 1, 1989 and the notice listed a date of effective termination of May 1, 2024, again within the required timeframe. The date listed of first publication on the February 26, 2001 sound recording copyright registrations for the identified Subject Albums.

21.    While I participated in various bankruptcy proceedings and agreements, none of those divested me of my rights under 17 U.S.C. § 203. Said rights had not vested at the time of

4

those proceedings and were not part of any relevant bankruptcy estate. One such bankruptcy ended in a settlement agreement between me and Lil' Joe. That agreement did not include any language regarding termination rights to my original grants of copyright because those rights had not vested.

21.     I entered into various agreements related to my intellectual property rights, but none of those divested me of my rights under 17 U.S.C. § 203. Said rights had not vested at the time of those agreements and were not part of any of those agreements.

22.     Ultimately, through bankruptcy proceedings involving Campbell and his entity Luke Records, Inc. (formerly Skyywalker Records and Luke Skyywalker Records, Inc.) Lil' Joe came to own the copyrights in the Subject Albums. None of the purported agreements provided by Lil' Joe in this case even discuss termination rights, and any language relating to royalties and/or profits or acknowledging Lil' Joe's rights or interests in the master and/or publishing of any *2 Live Crew* related copyrights does not and cannot extinguish my rights under 17 U.S.C. § 203.

23.     When I created and authored the Subject Albums, I, like the others in 2 Live Crew, did so as independent contractors and not employees.

24.     2 Live Crew made all creative decisions in creating the Subject Albums.

25.     The Subject Albums were not "works for hire."

26.     Any 1991 agreements referenced by Plaintiff could not relate to the Subject Albums and were entered into after the Subject Albums were created. They contemplate only *future* recordings and could not possibly cover the Subject Albums, each of which was written, recorded, released, and in some cases registered with the Copyright Office well before 1991.

27.     The copyright registrations for the Subject Albums do not indicate that they were works for hire except in limited and often fraudulent cases.

28.     The record company had no right to control the creative process for the songs. At most the record company made suggestions and contributions relating to the songs on the Subject Albums. 2 Live Crew made the artistic decisions. Further, Skyywalker Records, Inc. or any other record company did not have the ability to arbitrarily assign additional projects outside 2 Live Crew's obligation to create and deliver the required works.

29.     2 Live Crew had the freedom to create their own schedule and did not have assigned times each day to work and simply had the deadline to deliver an album, but otherwise

had absolute freedom to decide when to work.

30.     It took considerable skill required to create, perform, and record the songs on the Subject Albums. Each member of contributed to the compositions and recording and Lil' Joe, Skyywalker Records, Inc., Pac Jam Publishing, or any other contracting entity would not have been able to create and replicate the Subject Albums due to the high level of creativity and skill. 2 Live Crew has over the course of our career written and produced several gold albums and one platinum album.

31.     The Subject Albums were written and recorded in third-party studios not at the location of Skyywalker Records, Inc. or any other possible "employer."

32.     The record label did not provide me or 2 Live Crew's members with health insurance, paid vacation time, worker's compensation benefits, a pension plan, or other types of benefits.

33.     The record label did not have the right to assign to 2 Live Crew additional projects.

34.     2 Live Crew had the right to receive royalties from, at the very least, BMI in connection with our creation of the Subject Albums, and received such royalties, which is inconsistent with "employee" status. I received payment under the 1990 Agreement.

35.     2 Live Crew created the songs not at the offices of the music company but at their homes and off-site recording studios.

36.     2 Live Crew's relationship with Skyywalker Records was brief, as the company went out of business in the mid-1990s.

37.     2 Live Crew had discretion over our day-to-day schedule and decided when, where, and how long to work on the Subject Albums.

38.     2 Live Crew received per diem checks at some point beginning in mid-1987, and while some of them were marked "payroll," those payments were not compensation for the creation of the Subject Albums. The Subject Albums were not created within the scope of my employment with any company.


[Intentionally Left Blank]

39.     I have not used the 2 Live Crew name or trademark as a mark. Any use of the 2 Live Crew trademark by a third-party is limited to a description that I was formerly a member of 2 Live Crew to describe who I am. There is likewise no evidence I have adopted the 2 Live Crew mark or one substantially similar. I am also not aware of any consumer confusion related to any purported use by third-parties of a 2 Live Crew name as a descriptor.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 30, 2022 at _____,  Mark _____.  Mark

By: _____  Mark Ross (Dec 1, 2022 19:00 EST)   _____

**Signature:**

**Email:**  scott@donigerlawfirm.com

7