UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23727-DPG

LIL' JOE RECORDS, INC.,

    Plaintiff,

v.

MARK ROSS, *et al.*,

    Defendants
_____/

**RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND STATEMENT OF ADDITIONAL MATERIAL FACTS)**

Plaintiff, Lil' Joe Records, Inc. ("Lil' Joe"), pursuant to S.D. Fla. L.R. 56.1 hereby responds to the Statement of Material Facts Supporting Defendants' Motion for Summary Judgment [DE 53-1] and provides its statement of additional material facts as follows:

**Response to Statement of Material Facts**

1.     Undisputed.

2.     Undisputed.

3.     Disputed that Luther Campbell ("Campbell") knows who wrote the songs on *2 Live Crew Is What We Are*, Transcript of November 1, 2022, deposition of Luther Campbell, a copy of which is attached hereto as Exhibit A ("Campbell Transcript") at p. 26.

4.     Undisputed that Campbell and Mark Ross ("Ross") state that they had an oral agreement; disputed that any oral agreement existed, Affidavit of Allen Jacobi, the original of which is attached hereto as Exhibit B ("Jacobi Affidavit") at ¶¶ 2-3, or if it existed was enforceable because, among other things, they don't know the terms of this purported oral agreement,

Campbell Transcript at pp. 22[1] & 23-24[2]; Transcript of November 4, 2022, deposition of Mark Ross, a copy of which is attached hereto as Exhibit C ("Ross Transcript") at pp. 7-8 & 34[3]; Transcript of November 4, 2022, deposition of Leterius Ray, a copy of which is attached hereto as Exhibit D ("Ray Transcript") at p. 66[4], including, but not limited to, how it addressed copyrights, Ross Transcript at p. 8[5].

     5.    Disputed because no such oral contract existed, Jacobi Affidavit at ¶¶ 2-3, and if it existed the members of *2 Live Crew* don't know the terms of this purported oral agreement, Ross Transcript at pp. 7-8, Campbell Transcript at pp. 22-24, Ray Transcript at p. 34.

---

[1]  Q.    What were the terms of the verbal contract?
    A.    I don't recall the specific verbal terms of the contract….

[2]  Q.    You had a verbal contract before 1987?
    A.    I don't recall-I don't recall the date that I had a verbal contract.
    …
    Q.    What was the term of the contract?
    A.    The term of the contract? The verbal contract?
    Q.    Yes.
    A.    I don't recall the terms of the verbal contract.
    Q.    How were they to be paid pursuant to this verbal contract?
    A.    I don't recall how they were being paid.
    …
    Q.    Okay. And where was this verbal contract reached?
    A.    I don't recall where it was reached.
    Q.    Were you in the studio, in a restaurant, were you somewhere?
    A.    I don't recall where it was reached.

[3]  Q.    And where was this verbal agreement reached?
    A.    I can't recall.

[4]  Q.    Now, previously I had asked you about the so-called oral agreement that your father had with Luther Campbell regarding 2 Live Crew. Okay? Are you—did he tell you or do you have knowledge of any of the terms of that so-called oral agreement?
    A.    I don't recall. I was-I wasn't there. I just-I just know that the, you know, the '87 agreement or the one entered with Skywalker was to cover it.

[5]  Q.    Do you recall if that oral agreement discussed or involved who would own the copyrights?
    A.    I don't recall.

6. Undisputed that the "Subject Albums" were released by Luke Records, Inc. f/k/a Luke Skyywalker Records, Inc. and Skyywalker Records, Inc. ("Luke Records"), disputed because the members of *2 Live Crew* were compensated as employees, Affidavit of Joseph Weinberger in Opposition to Defendants' Motion for Summary Judgment, the original of which is attached hereto as Exhibit E ("Weinberger Affidavit") at ¶¶ 16-24, and that Leterius Ray ("Ray") is competent to provide evidence to support or oppose summary judgment since all he knows is hearsay relayed to him by his deceased father, Ray Transcript at p. 25[6].

7. Disputed. Luke Skyywalker Records, Inc. was renamed Skyywalker Records, Inc. which was then renamed Luke Records, Inc. (while the gist of what is alleged is accurate, the names used are not precise.). Declaration of Luther Campbell [DE 53-2] at p. 2, ¶ 3.

8. Undisputed.

9. Disputed that this "is only possible if it had an ownership interest", which is neither stated in the cited declarations nor do the declarants have personal knowledge of same.

10. Disputed. While Ross stated in his declaration that there was "an oral agreement when we went into the studio about how the rights, including copyrights, for those albums would be treated", in deposition he did not know if the oral agreement addressed who would own the

---

[6] Q. Okay. And I'm asking you. Other than what you spoke with your father, do you have any personal knowledge of anything else involving the 2 Live Crew copyrights or your father's relationship with Lil' Joe Records?
A. Just our conversations.
Q. With your father, correct?
A. Correct.

copyrights, Ross Transcript at p. 8[7], and didn't recall any transfer of his copyrights, Ross Transcript at pp 14-17[8].

11.     Disputed, no such agreement existed, Jacobi Affidavit at ¶ 4, the declarants don't know the terms of this purported oral agreement, Ross Transcript at pp. 7-8, Campbell Transcript at pp. 22-24, Ray Transcript at p. 34, Ross denies that the oral agreements were confirmed in writing, Ross Transcript at p. 40[9], and doesn't know what was the first written agreement among the members of 2 *Live Crew,* Ross Transcript at pp. 11 & 13, 16 ("I can't recall what was on in the contracts."), and Ray knows nothing about this, Ray Transcript at p. 36[10].

12.     Disputed. Jacobi Affidavit at ¶ 4.

13.     Disputed. Jacobi Affidavit at ¶ 4.

14.     Disputed. Weinberger Affidavit at ¶¶ 13-14. Further, Scott Burroughs, as Defendants' counsel, would have no personal knowledge what documents were in Lil' Joe's possession .

---

[7] Q. Do you recall if that oral agreement discussed or involved who would own the copyrights?
A. I don't recall.

[8] Q. Mr. Ross, is this the contract, this one I'm showing you on the screen, which we marked as Exhibit 2, dated the blank day of April, 1991, by which you and David Hobbs transferred to Luke Records the copyrights to the first three albums?
…
THE WITNESS: Yes, I see the contracts, but I can't recall if there were any transfers.

[9] Q.     And did you confirm those oral agreements in writing?
A.     No.

[10] Q.     Did your father tell that he had entered into this contract with Luke Records?
A.     I don't recall.
Q.     So you don't recall whether or not you had a conversation with your father about his contract dated April of 1991?
A.     I mean, I don't recall a specific conversation about this contract.

15. Generally undisputed except that the contracts that transferred the copyrights to Luke Records are the 1991 Contracts (as hereinafter defined). Weinberger Affidavit at ¶¶ 6 & 13-14, Jacobi Affidavit at ¶¶ 4-5.

16. Undisputed that Luke Records owned the copyrights to the "Subject Albums" until it and Campbell declared bankruptcy; disputed that Ross has any knowledge of this. Ross Transcript at p. 25[11], and disputed that the "Subject Albums" are subject to the "1990 Agreement", Jacobi Affidavit at ¶¶ 4-5, Weinberger Affidavit at ¶¶ 6 & 13-14, whose term is January 1- December 31, 1987, and was not extended, Ross Transcript at p 48[12], and none of the "Subject Albums" were recorded during this term, Ross Transcript at p. 49[13].

17. Undisputed; but disputed that Ross has knowledge of this. Ross Transcript at p. 25[14].

18. Undisputed; but disputed that such notice is effective to terminate the transfer of the copyrights at issue.

---

[11] Q.   You don't recall what happened in the bankruptcy?
A.   No.

[12] Q.   Do you see the term of this contract is January 1st, 1987, and ending December 31st, 1987?
A.   I see December 31, 1987. I see that part.
Q.   Now, at any time did any of Luther's companies send you notice that they were extending the term?
…
THE WITNESS:   I can't recall.

[13] Q.   Exactly. But none were recorded between January 1, 1987, and December 31, 1987?
A.   I don't recall those dates, but I know there were some recordings made before '87.

[14] Q.   Now, do you recall as a result of the Luke Records bankruptcy, Joe Weinberger purchased all of the contracts of 2 Live Crew?
A.   I can't recall.
Q.   You don't recall what happened in the bankruptcy?
A.   No.

5

19.  Undisputed that this is an accurate quote, disputed that the "1990 Agreement" transferred the copyrights at issue. Weinberger Affidavit at ¶¶ 6 & 13-14, Jacobi Affidavit at ¶¶ 4-5.

20.  Disputed, this is an argument, not a factual assertion, and the facts contained therein are disputed because the "1990 Agreement", even if it existed, did not occur until after the "Subject Albums were recorded and released, Ross Transcript at pp. 48-49 (*supra* at p. , n 12 & 13), did not transfer the copyrights at issue, Weinberger Affidavit at ¶¶ 6 & 13-14, Jacobi Affidavit at ¶¶ 3-4, and the members of *2 Live Crew* were compensated as employees, Weinberger Affidavit at ¶¶ 16-24.

21.  Generally undisputed, but disputed that such notice is effective to terminate the transfer of the copyrights at issue.

22.  Undisputed that ¾ of *2 Live Crew's* members signed the notice, but disputed that such notice is effective to terminate the transfer of the copyrights at issue.

23.  Undisputed

24.  Disputed that the grant occurred through the "1990 Agreement." Weinberger Affidavit at ¶¶ 6 & 13-14, Jacobi Affidavit at ¶¶ 4-5.

25.  Undisputed That this is an accurate quote, disputed that the "1990 Agreement" transferred the copyrights at issue. Weinberger Affidavit at ¶¶ 6 & 13-14, Jacobi Affidavit at ¶¶ 4-5.

26.  Undisputed that the notice was recorded. Disputed that is it legally sufficient.

27.  Undisputed.

28.  Disputed. Weinberger Affidavit at ¶¶ 6 (¶¶ 1(a), 2(d), 4, 5 & 21 of the 1991 Contracts) & 16-24, Affidavit of Herman Moskowitz in Support of Motion for Partial Summary

Judgment as to Count I for Declaratory Judgment as to the Validity of the Copyright Trademark Notice [DE 33]("Moskowitz Affidavit") at ¶¶ 4-5, Jacobi Affidavit at ¶¶ 4-5.

29. Disputed. See *supra* at p. _, ¶ 28.

30. Disputed. See *supra* at p. _, ¶ 28.

31. Disputed. See *supra* at p. _, ¶ 28, Campbell professed to have no recollection how the members of *2 Live Crew* were paid, Campbell Transcript at pp 24-25[15] & 52[16], Ross does not know what he was paid, Ross Transcript at p. 8, and **Ray is not competent to provide evidence to support or oppose summary judgment since all he knows is hearsay relayed to him by his deceased father**, Ray Transcript at pp. 25 (*supra* at p. _ n 6) & 39[17].

32. Disputed, *supra* at p. , ¶ 31.

33. Undisputed that Campbell was the sole-owner of Luke Records. Disputed that his role as member of *2 Live Crew* is independent of his role as the sole-owner of Luke Records and that his signing of any agreement in his individual and corporate capacities evidences that as both legal argument and a physical impossibility to assert that any human being can take any action and

---

[15] Q. How were they to be paid pursuant to this verbal contract?
A. I don't recall how they were being paid.
…
Q. Was any money paid to the other members of 2 Live Crew pursuant to the verbal contract?
A. I don't recall how the money was disbursed, what was paid to them, based on the verbal contract that we had of them recording these records.

[16] Q. Did you, in fact, reach an agreement with the members of 2 Live Crew to pay them a royalty of 15 percent?
A. I don't recall.

[17] Q. Did your father ever tell you how he was paid money by Luke Records from the first three albums?
…
THE WITNESS: To my understanding that there was – being my royalty.

be wholly independent, especially here since Campbell was not paid as an artist but solely as the CEO of Luke Records. Weinberger Affidavit at ¶¶16-24, Moskowitz Affidavit at ¶ 5.

34.     Undisputed that this clause is not contained in the "1990 Agreement", disputed that the "1990 Agreement" transferred the copyrights at issue, the 1991 Contracts, which transferred the copyrights at issue, do contain a work for hire clause. Weinberger Affidavit at ¶¶ 6 & 13-14, Jacobi Affidavit at ¶¶ 4-5.

35.     Disputed, the registrations were supplemented to indicate that they were works for hire. Weinberger Affidavit at ¶ 16.

36.     Undisputed that composition registrations were filed and registered by Lil' Joe Wein Music, Inc. which is an affiliate of Lil' Joe, unable to respond whether or not these constitute a majority since this item does not identify what they purportedly constitute a majority of, disputed that the composition registrations are at issue in this case since Lil' Joe sold the composition copyrights.

37.     Disputed, the registrations were supplemented to indicate that they were works for hire. Weinberger Affidavit at ¶ 16.

38.     Undisputed. However, the copyright for this song is not at issue in this case.

39.     **Undisputed** that Joseph Weinberger ("Weinberger") is the owner of Lil' Joe Wein Music, Inc. and Lil' Joe, unable to respond whether or not these entities are identified for correspondence on registrations since this item does not identify the registrations, **the composition copyrights previously owned by Lil' Joe Wein Music, Inc. are not at issue in this case.**

40.     Undisputed that SR registration was filed. Disputed that it falsely states anything and further, these registrations are correct to properly state the artists were for hire. Weinberger Affidavit at ¶ 16.

41. Disputed that the sound recording registrations falsely state anything. Weinberger Affidavit at ¶ 16.

42. Disputed because it is unknown what "The majority of" the registrations means or that the sound recording registrations falsely state anything, Weinberger Affidavit at ¶ 16, and the composition copyrights to "Move Something" are not at issue in this case.

43. Disputed because it is unknown what "Two of the four SR registrations" refers to.

44. Undisputed, this was corrected by an administrative action taken at the US Copyright office acknowledging the registration was correctly showing the members of *2 live Crew* to be "artists for hire." Weinberger Affidavit at ¶ 16.

45. Disputed. The 1991 agreement was signed before publication of "As Nasty As They Wanna Be" and the declarants have no basis for their factual assertion as they profess to be "without sufficient information to admit or deny" requests asking them to "[a]dmit that in or about 1991, Chris Wong Won, Mark Ross and David Hobbs transferred all of their copyright rights to 2 Live Crew's music and trademark rights in 2 Live Crew's marks and cover designs to Luke Records" Defendant Luther Campbell's Responses to Plaintiff's First Set of Requests for Admission, Defendant Mark Ross' Responses to Plaintiff's First Set of Requests for Admission, Defendant Christopher Wong Won, Jr.'s Responses to Plaintiff's First Set of Requests for Admission, Defendant Roderick Wong Won's Responses to Plaintiff's First Set of Requests for Admission, Defendant Leterius Ray's Responses to Plaintiff's First Set of Requests for Admission and Defendant Anissa Wong Won's Responses to Plaintiff's First Set of Requests for Admission (collectively the "Defendants Responses to Request for Admissions")(Request No. 5).

46. Undisputed.

47.     Lil' Joe is unable to respond to this item because the term "contracting entities" is not defined, nonetheless, if the term "contracting entities" includes Luke Records, then it is disputed because Campbell is Luke Records. Weinberger Affidavit at ¶¶ 19-24.

48.     Disputed, two of the albums at issue were recorded in a studio owned by Luke Records. Weinberger Affidavit at ¶ 17.

49.     Disputed. *2 Live Crew* worked for Luke Records from 1988/1989 through the date of its bankruptcy in 1995. Further, Campbell worked full time, everyday, as CEO of Luke Records for the same period of time. Weinberger Affidavit at ¶¶ 17-24.

50.     Disputed. Weinberger Affidavit at ¶¶ 6 (¶¶ 1(a), 2(d), 4, 5 & 21 of the 1991 Contracts) & 16-24, Moskowitz Affidavit at ¶¶ 4-5, Jacobi Affidavit at ¶¶ 4-5. Campbell professed to have no recollection how the members of *2 Live Crew* were paid, Campbell Transcript at pp 24-25 (*supra* at p. _ n 16) & 52 (*supra* at p. _ n 17), and Ray is competent to provide evidence to support or oppose summary judgment since all he knows is hearsay relayed to him by his deceased father, Ray Transcript at pp. 25 (*supra* at p. _ n 6) & 39 (*supra* at p. _ n 18). Defendants profess to be "without sufficient information to admit or deny" requests asking them to "[a]dmit that Luther Campbell was an employee of Luke Records." Defendants Responses to Request for Admissions (Request No. 7).

51.     Disputed. See Weinberger Affidavit at ¶¶ 6 (¶¶ 1(a), 2(d), 4, 5 & 21 of the 1991 Contracts) & 16-24, Jacobi Affidavit at ¶¶ 4-5.

52.     Undisputed that Luke Records entered bankruptcy in 1995. Weinberger Affidavit at ¶ 7.

53.     Disputed, the studios at which the "Subject Albums" were written and recorded were scheduled, selected, paid and arranged by Luke Records, which actually owned the studios where two of the albums at issue were recorded, and directed when its employees, Campbell,

Christopher Wong Won, Ross and David Hobbs, should report to the studios to work on the recordings at issue. Weinberger Affidavit at ¶¶ 6 (¶¶ 1, 4(b), 8(a & b), 9(b), 20 (a & b), 21(a), 23(a) & 25(f) of the 1991 Contracts), 17 & 19-20.

54. Undisputed as to Ross, Christopher Wong Won and David Hobbs. Disputed as to Campbell. Weinberger Affidavit at ¶¶ 21 & 24.

55. Disputed. Ross Transcript at p. 37[18]; Ray Transcript at p. 82[19].

56. Disputed see Weinberger Affidavit at 15-26.

57. Disputed. This is a legal argument, not a factual statement.

### Statement of Additional Material Facts

1. *2 Live Crew* was a group comprised of Campbell, Christopher Wong Won, Ross and David Hobbs. Answer and Counterclaim [DE 12] at p. 14, ¶ 9; Weinberger Affidavit at ¶ 4.

2. There is no estate that was administered for Christopher Wong Won. Weinberger Affidavit at ¶ 5.

3. Pursuant to an Exclusive Recording Agreement dated April 1991, between Luke Records and Chris Wong Won, Exclusive Recording Agreement dated April 1991, between Luke Records and Mark Ross and David Hobbs, and Exclusive Recording Agreement dated February 1991, between Luke Records and Mark Ross, Chris Wong Won, David Hobbs and Luther

---

[18] Q. How many times since 2000 did you perform as 2 Live Crew?
…
THE WITNESS: I can't recall.
…
Q. And did you have permission for Joe Weinberger to do so?
A. No.

[19] Q. And it advertises it as 2 Live Crew after party?
A. That's what it says.

11

Campbell, true and correct copies of each of which are collectively attached to the Complaint as Exhibit A (collectively, the "1991 Contracts"), each of Campbell, Christopher Wong Won, Ross and David Hobbs transferred all of their copyright rights to *2 Live Crew*'s music and trademark rights in *2 Live Crew*'s cover designs to Luke Records. Weinberger Affidavit at ¶ 6. The 1991 Contracts were prepared by Luke Records attorney, Allen Jacobi, at the direction of Campbell who told Jacobi that there was no prior contract between Luke Records and the members of *2 Live Crew*. Jacobi Affidavit at ¶¶ 4-5.

4. In 1995 (years after Campbell, Christopher Wong Won, Ross and David Hobbs transferred all of their copyright rights to *2 Live Crew*'s music and trademark rights in *2 Live Crew*'s marks and cover designs to Luke Records), Campbell and Luke Records became the subject of bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of Florida which were jointly administered (the "Luke Bankruptcy"). Weinberger Affidavit at ¶ 7.

5. Pursuant to the Joint Plan of Reorganization in the Luke Bankruptcy, all of the copyright rights to *2 Live Crew*'s music and compositions and trademark rights in *2 Live Crew*'s marks and cover designs were again transferred to Lil' Joe and Weinberger "free and clear of any and all liens, claims, encumbrances, charges, setoffs or recoupments of any kind", thereafter "no royalties, whether as artist, producer, writer, publisher, or in any other capacity, on any of the masters or compositions" are due to Luther Campbell or Luke Records, and Luther Campbell released, among others, Lil' Joe and Weinberger, including "for royalties to be paid in the future" as a result of this transfer. Complaint Ex B [DE 1-3] (Joint Plan of Reorganization in Luke Bankruptcy), Weinberger Affidavit at ¶ 8. Defendants are "without sufficient information to admit or deny this…." **Defendants Responses to Request for Admissions** (Request Nos. 9, 10 & 11).

6. At no time did Christopher Wong Won, Ross or David Hobbs file a claim in the

Luke Bankruptcy asserting that they owned or were entitled to any rights appurtenant to any of the 2 Live Crew copyrights transferred to Lil' Joe and Weinberger. Weinberger Affidavit at ¶ 9. Defendants are "without sufficient information to admit or deny this" as to Christopher Wong Won or Mark Ross. **Defendants Responses to Request for Admissions** (Request Nos. 12 & 13).

7. The 2 Live Crew copyrights transferred to Lil' Joe and Weinberger were not abandoned back to Campbell and/or Luke Records. Weinberger Affidavit at ¶ 10.

8. In 2002, Weinberger sued Christopher Wong Won. Christopher Wong Won, in settling the claims asserted against him, agreed that Lil' Joe "own all right, title and interest to all copyrights and trademarks previously conveyed to them in the bankruptcy of Luke Records and Luther Campbell", "releases any claims whatsoever to those works", and further agreed that "he has no further claims to any royalties to any of the works owned by" Lil' Joe. As a result of that settlement, Christopher Wong Won further released Lil' Joe and Weinberger from, among other things, "[a]ll royalties, profits and other monies or payments at any time, directly or indirectly, due or to become due", "[a]ll rights to sue for infringements", and all rights to terminate. Weinberger Affidavit at ¶ 11.

9. On November 22, 2000, Ross filed a bankruptcy in the U.S. Bankruptcy Court for the Northern District of Alabama (the "Ross Bankruptcy"). In the Ross Bankruptcy, an adversary proceeding was commenced by Lil' Joe against Ross and, in settling that claim Mark Ross acknowledged that, other than writer's performance rights which are not relevant to this proceeding, "he has no rights (master or publishing) to any previous recordings owned by Lil' Joe Records, Inc. and Lil Joe Wein Music, Inc. and The 2 Live Crew name which were previously owned by Luther Campbell and Luke Records…. Additionally, Debtor [( Mark Ross)] has no rights (master or publishing) in any other recordings owned by Lil' Joe Records, Inc." Weinberger

13

Affidavit at ¶ 12. Defendants, even Ross himself, are "without sufficient information to admit or deny this...." **Defendants Responses to Request for Admissions** (Request No. 19). The 2 Live Crew copyrights transferred to Lil' Joe and Weinberger were not abandoned back to Ross. Weinberger Affidavit at ¶ 12.

10. There is no evidence, nor documentation of any valid agreement that predated the 1991 Contracts pursuant to which the members of *2 Live Crew* provided services for Luke Records or transferred the copyrights at issue in this case to Luke Records. Weinberger Affidavit at ¶ 13.

11. When the business records of Luke Records were delivered to Weinberger, they included the 1991 Contracts. Weinberger Affidavit at ¶ 14.

12. The members of *2 Live Crew* were each "artists for hire" as demonstrated by: (i) the clear language in the 1991 Contracts, (ii) Luke Records' tax and payroll records which show that Campbell was treated as an employee, (iii) Luke Records paid for and controlled all of their recording activities, including the selection of the producers, the studios and paying for all costs associated with same, (iv) as to Campbell, he was the sole owner and CEO of Luke Records, and (v) all of the copyright registrations of the sound recording copyrights at issue in this case (when including the supplemental registration) state that the members of *2 Live Crew* were artists for hire. Weinberger Affidavit at ¶ 16.

13. The members of *2 Live Crew* each worked for Luke Records through the date Luke Records' bankruptcy in 1995. They recorded at studios paid for by Luke Records and controlled by Luke Records. Two of the albums at issue "As Nasty As They Wanna Be" and "As Clean As They Wanna Be" were recorded in a studio owned by Luke Records. Weinberger Affidavit at ¶ 17

14. Luke Records maintained and treated the members of *2 Live Crew* as employees. Weinberger Affidavit at ¶ 18, Moskowitz Affidavit at ¶ 5.

15. Campbell, the CEO and sole owner of Luke Records, was paid and treated as an employee for all purposes. Weinberger Affidavit at ¶ 19, Moskowitz Affidavit at ¶ 5.

16. Campbell personally made every decision on behalf of Luke Records regarding the recording of the *2 Live Crew* copyrights at issue in this case, including: the selection of the songs, the studio, the producer, the budget, the expenditure of funds, the mixing, the editing, the album art work, the promotions and the distribution of the records. He maintained regular business hours working from his office within Luke Records' building. The members of *2 Live Crew* followed his directions regarding same. All of this is consistent with Luke Records' regular business as a record company that, like *2 Live Crew*, had relationships with other artists in which it controlled the recording, promotion and distribution of recordings. Weinberger Affidavit at ¶ 20.

17. Luke Records provided extensive employee benefits to Campbell including workers compensation, health care insurance and a profit sharing plan. Weinberger Affidavit at ¶ 21.

18. Campbell regularly signed checks and contracts as the CEO and sole owner of Luke Records, whose signature was binding upon Luke Records. Weinberger Affidavit at ¶ 22.

19. Campbell hired and fired Luke Records' employees, including Weinberger. Weinberger Affidavit at ¶ 23.

20. Campbell was not paid an artist royalty but his compensation was solely as the CEO of Luke Records for which Federal employee income tax, FICA (payroll taxes) and MICA (Medicate taxes) were withheld and unemployment taxes (FUTA and SUTA) were paid to the IRS and the State of Florida. Weinberger Affidavit at ¶ 24, Moskowitz Affidavit at ¶ 5.

                                      WOLFE LAW MIAMI PA
                                      Counsel for Plaintiffs
                                      175 SW 7th Street, Suite 2410

        Miami, Florida 33130
        P: 305.384.7370
        F: 305.384.7371
        Email: rwolfe@wolfelawmiami.com

        By:    /s/ Richard C. Wolfe
                  Richard C. Wolfe, Esq.
                  Florida Bar No.: 355607

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

Joel Rothman, Esq.
SRIP LAW PA
21301 Powerline Road, Ste 100
Boca Raton, Florida 33433
joel.rothman@sriplaw.com

Scott Burroughs, Esq.
Doniger/Burroughs
237 Water Street, First Floor
New York, NY 10038
scott@donigerlawfirm.com

        /s/ Richard C. Wolfe
        Richard C. Wolfe