# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23727-DPG

LIL' JOE RECORDS, INC.,

      Plaintiffs

v.

MARK ROSS, CHRISTOPHER WONG
WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON
and LUTHER CAMPBELL,

      Defendants.
_____/

### AFFIDAVIT OF JOSEPH WEINBERGER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STATE OF FLORIDA      )
                                  ) ss:
COUNTY OF MIAMI DADE  )

      BEFORE ME, the undersigned authority, personally appeared Joseph Weinberger who, upon being duly sworn, deposes and says:

      1.    I am the President of Lil' Joe Records, Inc. ("Lil' Joe") and a 40-year member of the Florida Bar. I hold a LLM in Taxation from NYU Law School. Prior to working for Luke Records Inc. ("Luke Records"), I was a tax lawyer working for a number of prestigious law firms in Miami.

      2.    I make this affidavit based upon my personal knowledge and my review of Lil Joe's business records. I am the custodian of Lil' Joe's business records, which were made at or near the time by, or from information transmitted by, someone with knowledge, are kept in the course of Lil Joe's regularly conducted business activity and making Lil Joe's business records was a regular

practice of Lil Joe's business activity.

3. From 1991 until early 1995, I was in-house counsel to Luke Records. Before working full time for Luke Records as its in-house general counsel, I was its outside counsel from 1988-1991. Accordingly, I am familiar with Luke Records' contracts, tax treatment and business practices and I have personal knowledge of the facts stated herein.

4. *2 Live Crew* was a group comprised of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs.

5. Christopher Wong Won is deceased. Christopher Wong Won, Jr., Roderick Wong Won, Leterius Ray and Anissa Wong Won purport to be his surviving children and heirs. There is no estate that was administered for Christopher Wong Won.

6. Pursuant to an Exclusive Recording Agreement dated April 1991, between Luke Records and Chris Wong Won, Exclusive Recording Agreement dated April 1991, between Luke Records and Mark Ross and David Hobbs, and Exclusive Recording Agreement dated February 1991, between Luke Records and Mark Ross, Chris Wong Won, David Hobbs and Luther Campbell, true and correct copies of each of which are collectively attached to the Complaint as Exhibit A (collectively, the "1991 Contracts"), each of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs transferred all of their copyright rights to *2 Live Crew*'s music and trademark rights in *2 Live Crew*'s cover designs to Luke Records, Inc. f/k/a Skyywalker Records, Inc.. In these 1991 Contracts, each of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs agreed that the sound recordings at issue in this case are works for hire. Their acknowledgment is accurate, as each of them was an employee of Luke Records and *2 Live Crew*'s music was prepared within the scope of their employment, as described herein.

7. In 1995, years after Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs transferred all of their copyright rights to *2 Live Crew*'s music to Luke Records,

Luther Campbell and Luke Records became the subject of bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of Florida which were jointly administered, United States Bankruptcy Court for the Southern District of Florida Case Nos. 95-11447-BKC-RAM and 95-12795-BKC-RAM (the "Luke Bankruptcy").

8. Pursuant to the Joint Plan of Reorganization in the Luke Bankruptcy, all of the copyright rights to *2 Live Crew*'s copyrights were transferred to Lil' Joe and me, Joseph Weinberger, "free and clear of any and all liens, claims, encumbrances, charges, setoffs or recoupments of any kind", thereafter "no royalties, whether as artist, producer, writer, publisher, or in any other capacity, on any of the masters or compositions" are due to Luther Campbell or Luke Records, and Luther Campbell released, among others, Lil' Joe and me, including "for royalties to be paid in the future" as a result of this transfer. A copy of the Joint Plan of Reorganization in the Luke Bankruptcy is attached hereto as Exhibit 1 and a copy of an Order Confirming Joint Plan of Reorganization in the Luke Bankruptcy is attached hereto as Exhibit 2.

9. At no time did Christopher Wong Won, Mark Ross or David Hobbs file a claim in the Luke Bankruptcy asserting that they owned or were entitled to any rights to any of the 2 Live Crew copyrights transferred to Lil' Joe and me.

10. The 2 Live Crew copyrights transferred to Lil' Joe and me were not abandoned back to Luther Campbell and/or Luke Records.

11. In 2002, I sued Christopher Wong Won for various claims. Christopher Wong Won, in settling the claims asserted against him, entered into a Settlement Agreement, a copy of which is attached hereto as Exhibit 3, in which he agreed that Lil' Joe "own all right, title and interest to all copyrights and trademarks previously conveyed to them in the bankruptcy of Luke Records and Luther Campbell", "releases any claims whatsoever to those works", and further agreed that "he has no further claims to any royalties to any of the works owned by" Lil' Joe. As a result of that

3

settlement, recorded in Miami-Dade O.R. Book 21363 Pages 3917-3925, Christopher Wong Won in a release, a copy of which is attached hereto as Exhibit 4, further released Lil' Joe and me from, among other things, "[a]ll royalties, profits and other monies or payments at any time, directly or indirectly, due or to become due", "[a]ll rights to sue for infringements", and all rights to terminate.

12. On November 22, 2000, Mark Ross filed a bankruptcy in the U.S. Bankruptcy Court for the Northern District of Alabama, Case No. 00-43737-JSS-7 (the "Ross Bankruptcy"). In the Ross Bankruptcy, an adversary proceeding was commenced by Lil' Joe against Mark Ross, which was resolved in a Settlement Agreement, a copy of which is attached hereto as Exhibit 5, in which Mark Ross acknowledged that, other than writer's performance rights, "he has no rights (master or publishing) to any previous recordings owned by Lil' Joe Records, Inc. and Lil Joe Wein Music, Inc. and The 2 Live Crew name which were previously owned by Luther Campbell and Luke Records.... Additionally, Debtor [(Mark Ross)] has no rights (master or publishing) in any other recordings owned by Lil' Joe Records, Inc." The 2 Live Crew copyrights transferred to Lil' Joe and me were not abandoned back to Mark Ross.

13. Having reviewed the documents and business records of Luke Records, and having discussed the matter with Allen Jacobi, Luke Records outside entertainment/contract counsel, there is no evidence, nor documentation of any valid agreement that predated the 1991 Contracts pursuant to which the members of *2 Live Crew* provided services for Luke Records and which provided for a transfer of the copyrights (at issue in this case) to Luke Records.

14. When the business records of Luke Records were delivered to me, they included the 1991 Contracts but not the supposedly signed undated 1990 Contract.

15. The Defendants' notice of termination dated November 4, 2020, is defective because: it only refers to an undated contract (transferring the copyrights) supposedly signed in 1990 (the "1990 Contract") not the 1991 Contracts, and because the 1990 Contract does not

4

mention the transfer of any particular copyrights, as is required by Section 204 of the Copyright Act and nothing was recorded in 1987 which was the only term of the 1990 Contract..

16. The members of *2 Live Crew* were each "artists for hire" as demonstrated by: (i) the clear language in the 1991 Contracts, (ii) Luke Records' tax and payroll records which show that Luther Campbell was treated as an employee, (iii) Luke Records paid for and controlled all of their recording activities, including the selection of the producers, the studios and paying for all costs associated with same, (iv) as to Luther Campbell, he was the sole owner and CEO of Luke Records, and (v) all of the copyright registrations of the sound recording copyrights at issue (when including the Supplemental Registration) in this case state that the members of *2 Live Crew* were artists for hire.

17. The members of *2 Live Crew* each worked for Luke Records through the date of the Luke Records' bankruptcy in 1995. They recorded at studios paid for by Luke Records and controlled by Luke Records. Two of the albums at issue "As Nasty As They Wanna Be" and "As Clean As They Wanna Be" were recorded in a studio owned by Luke Records.

18. As the in-house attorney and as the tax attorney for Luke Records, I am aware it maintained and treated the members of *2 Live Crew* as employees.

19. Luther Campbell, the CEO and sole owner of Luke Records, was paid and treated as an employee for all purposes.

20. Luther Campbell personally made every decision on behalf of Luke Records regarding the recording of the *2 Live Crew* copyrights at issue in this case, including: the selection of the songs, the studio, the producer, the budget, the expenditure of funds, the mixing, the editing, the album art work, the promotions and the distribution of the records. He maintained regular business hours working from his office within Luke Records' building. The members of *2 Live Crew* followed his directions regarding same. All of this is consistent with Luke Records' regular

business as a record company, that like *2 Live Crew*, it had relationships with other artists in which it controlled the recording, promotion and distribution of recordings.

21. Luke Records provided extensive employee benefits to Luther Campbell including workers compensation, health care insurance and a profit sharing plan.

22. Luther Campbell regularly signed checks and contracts as the CEO and sole owner of Luke Records, whose signature was binding upon Luke Records.

23. Luther Campbell hired and fired Luke Records employees, including myself.

24. Luther Campbell, unlike the other members of *2 Live Crew*, was not paid an artist royalty but his compensation was solely as the CEO of Luke Records for which Federal employee income tax, FICA (payroll taxes) and MICA (Medicare taxes) were withheld and unemployment taxes (FUTA and SUTA) were paid to the IRS and the State of Florida.

_____
JOSEPH WEINBERGER

Before me the undersigned personally appeared Joseph Weinberger who, being first fully sworn, and who is personally known to me or produced _____ as identification, deposes and says that the foregoing statements contained herein are true to the best of his knowledge and belief.

Dated: Dec 28, 2022

_____
NOTARY PUBLIC
Tamara L. Hodson
PRINT NAME
1/21/2023
My commission expires:

TAMARA L. HODSON
Commission # GG 273854
Expires January 21, 2023
Bonded Thru Troy Fain Insurance 800-385-7019

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23727-DPG

LIL' JOE RECORDS, INC.,

    Plaintiffs

v.

MARK ROSS, CHRISTOPHER WONG
WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON
and LUTHER CAMPBELL,

    Defendants.
_____/

### AFFIDAVIT OF HERMAN MOSKOWITZ IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT I FOR DECLARATORY JUDGMENT AS TO THE VALIDITY OF THE COPYRIGHT TERMINATION NOTICE

STATE OF FLORIDA    )
                                  ) ss:
COUNTY OF BROWARD  )

    BEFORE ME, the undersigned authority, personally appeared Herman Moskowitz who, upon being duly sworn, deposes and says:

    1.    I am a certified public accountant in the State of Florida and was the certified public accountant for Luke Records, Inc. f/k/a Luke Skyywalker Records, Inc. ("Luke Records") from 1987 until 1994 or 1995.

    2.    I make this affidavit based upon my personal knowledge and my review of Luke Records' business records, which were made at or near the time by, or from information transmitted by, someone with knowledge, kept in the course of Luke Records' regularly conducted business activity, and making Luke Records' business records was a regular practice of Luke Records' business activity.

3.  *2 Live Crew* was a rap group comprised of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs.

4.  Pursuant to an Exclusive Recording Agreement dated April 1991, between Luke Records and Chris Wong Won, Exclusive Recording Agreement dated April 1991, between Luke Records and Mark Ross and David Hobbs, and Exclusive Recording Agreement dated February 1991, between Luke Records and Mark Ross, Chris Wong Won, David Hobbs and Luther Campbell, true and correct copies of each of which are collectively attached to the Complaint as Exhibit A, and a Recording Agreement between Skyywalker Records, Inc., and Luther Campbell, David Hobbs, Chris Wong Won and Marques Ross (a true and correct copy of which is attached hereto as Exhibit 1), each of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs transferred all of their copyright rights to *2 Live Crew*'s music and trademark rights in *2 Live Crew*'s marks and cover designs to Luke Records. In these agreements, each of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs agreed that their sound recordings are works made for hire.

5.  Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs' acknowledgment is accurate, as each of them was an employee of Luke Records and the *2 Live Crew* music whose copyright rights were transferred to Luke Records were prepared within the scope of their employment with Luke Records. Attached hereto as Exhibit 2 is a representation sample of payroll checks to Luther Campbell, Christopher Wong Won, and Mark Ross from Luke Records. For all payroll checks, Federal income taxes, and the statutory Fica and Medicare taxes were withheld. The company's share of the payroll taxes was paid by Luke Records.

CASE NO. 1:21-CV-23727-DPG

_____
HERMAN MOSKOWITZ

Before me, the undersigned personally appeared Herman Moskowitz who, being first fully sworn, and who is personally known to me or produced _____ as identification, deposes and says that the foregoing statements contained herein are true to the best of his knowledge and belief.

Dated: 9-20, 2022

STUART SHELDON
MY COMMISSION # HH283564
EXPIRES: October 10, 2026

_Stuart Sheldon_
NOTARY PUBLIC
STUART SHELDON
PRINT NAME
10-10-26
My commission expires:

3