# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LIL' JOE RECORDS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:21-CV-23727-DPG |
| | ) |
| MARK ROSS; et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

# DEFENDANTS' REPLY IN SUPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
# <u>REQUEST FOR ORAL ARGUMENT</u>

## **TABLE OF CONTENTS**

THIS MOTION SHOULD BE GRANTED………………………………………………………1

    A.    The 1990 Agreement transferred 2 Live Crew's copyrights in the Subject Albums……………………………………………………………………………………1

    B.    Lil Joe's challenge to the 1990 Agreement's fails due to the statute of limitations, laches, estoppel, and lack of standing…………………………………...4

    C.    Defendant's termination notice was effective……………………………………….5

    D.    Contingent interests avoid bankruptcy estate………………………………………..6

    E.    Bankruptcy cannot divest a debtor in their termination right…………………………..6

    F.    2 Live Crew did not record the Subject Album as works for hire………………………...8

    G.    Lil' Joe conceded its copyright and trademark claims were meritless…………………..10

    H.    This Motion should be granted……………………………………………………..10

    I.    Request for Hearing S.D. Fla. L.R. 7.1(b)(2)………………………………………11

## TABLE OF AUTHORITIES

Page(s)

Cases

*Acuff-Rose Music, Inc. v. Campbell*,
   754 F. Supp. 1150 (M.D. Tenn. 1991) ........................................................................... 2

*Bernstein v. Georgia Dep't of Educ.*,
   970 F. Supp. 2d 1340 (N.D. Ga. 2013) .......................................................................... 4

*Cox v. Adm'r U.S. Steel & Carnegie*,
   17 F.3d 1386 (11th Cir.) ................................................................................................ 3

*Dellacasa, LLC v. John Moriarty & Assocs. of Fla., Inc.*,
   2007 WL 2979865 (S.D. Fla. Oct. 11, 2007) ................................................................ 5

*Dellacasa, LLC v. Jown Moriarty & Assocs. of Fla., Inc.*,
   2008 WL 299024 (S.D. Fla. Feb. 1, 2008) .................................................................... 3

*Gardner v. Nike, Inc.*,
   279 F.3d 774 (9th Cir. 2002) ......................................................................................... 4

*HGI Assocs., Inc. v. Wetmore Printing Co.*,
   427 F.3d 867 (11th Cir. 2005) ....................................................................................... 5

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*,
   70 F.3d 96 (11th Cir. 1995) ........................................................................................... 2

*In re D & L Nicolaysen*,
   228 B.R. 252 (Bankr. E.D. Cal. 1998) ........................................................................... 7

*In re Grand Jury* (G.J. No. 87–03–A),
   845 F.2d 896 (11th Cir.1988) ........................................................................................ 3

*In re Harter*,
   10 B.R. 272 (Bankr. N. D. Ind. 1981) ........................................................................... 6

*In re Johnston*,
   151 B.R. 367 (Bankr. N.D. Miss. 1992) ........................................................................ 7

*In re Miell*,
   2009 WL 2253256 (Bankr. N.D. Iowa July 27, 2009) .................................................. 7

*In re Satterwhite*,
   271 B.R. 378 (Bankr. W. D. Mo. 2002) ........................................................................ 6

*In re Sundale, Ltd.*,
   471 B.R. 300 (Bankr. S.D. Fla. 2012) ........................................................................... 7

*Jacob Maxwell, Inc. v. Veeck*,
   110 F.3d 749 (11th Cir. 1997) ....................................................................................... 4

*Johns v. CSX Transp., Inc.*,
   210 F. Supp. 3d 1357 (M.D. Ga. 2016) ....................................................................... 10

*Playboy Enterprises, Inc. v. Dumas*,
   53 F.3d 549 (2nd Cir. 1995) .......................................................................................... 8

*Reece v. Commissioner*,
   63 T.C.M. (CCH) 3129 T.C. Memo 1992-335 (1992) .................................................. 8

*Russ v. Jackson Country School Board*,
   530 F. Supp 1074 (N.D. Fla. 2021) ............................................................................... 8

*Santa-Rosa v. Combo Records*,
   471 F.3d 224 (1st Cir. 2006) .......................................................................................... 5

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
  969 F.2d 410 (7th Cir. 1992) .................................................................................................. 8
*Trans-Box Sys., Inc. v. United States*,
  225 F.3d 664, 2* (9th Cir. 2000) .............................................................................................. 8
*U.S. Commodity Futures Trading Comm'n v. Ronald Montano, Montano Enterprises, LLC*,
  2020 WL 5534521 (M.D. Fla. July 14, 2020) ........................................................................ 10
*Venus Lines Agency v. CVG America, Inc.*,
  234 F.3d 1225 (11th Cir.2000) ................................................................................................ 5
*Webster v. Dean Guitars*,
  955 F.3d 1270 (11th Cir. 2020) ............................................................................................... 4

Statutes

11 U.S.C. § 541(a)(1) ..................................................................................................................... 7
11 U.S.C. § 542 .............................................................................................................................. 7
11 U.S.C. § 543 .............................................................................................................................. 7
11 U.S.C. § 554(c) ..................................................................................................................... 7, 8
11 U.S.C. § 554(d) ......................................................................................................................... 8
11 U.S.C. § 1141(b) .................................................................................................................. 7, 8
11 U.S.C. § 1141(d) ....................................................................................................................... 7
17 U.S.C. § 203 ......................................................................................................................... 7, 11
17 U.S.C. § 407(b) ......................................................................................................................... 4

Other Authorities

1976 U.S.C.C.A.N. 5659 ............................................................................................................... 7
H.R. Rep. No. 94-1476 .............................................................................................................. 6, 7
S. Rep. No. 94-473 ......................................................................................................................... 7

## THIS MOTION SHOULD BE GRANTED

The court need only make the following findings to grant 2 Live Crew's[1] Motion:

- The 1990 Agreement transferred 2 Live Crew's copyrights in the Subject Albums to Skyywalker Records.
- The right of termination is not divested through bankruptcy proceedings.
- The members of 2 Live Crew were not employees of Skyywalker Records when they wrote and recorded the Subject Albums.

The Opposition fails to create a triable dispute as to any of the above and it is respectfully submitted that that the Court hold that Defendants own the relevant copyrights. Lil' Joe also failed to address and thus concedes 2 Live Crew's challenges to Lil' Joe's claims for copyright and trademark infringement (Counts 2-10). This motion should be granted in full.

### A. The 1990 Agreement transferred 2 Live Crew's copyrights in the Subject Albums

2 Live Crew intended to, and did, transfer copyrights in the Subject Albums to Skyywalker Records under the 1990 Agreement[2]. Statement of Facts Dkt. 53-1 ("SUF") ¶¶ 3-5, 11. The bankruptcy documentation establishes Skyywalker Records owned those copyrights until Lil' Joe purchased them in bankruptcy in 1995. Statement of Additional Facts ("AF") ¶ 58. Lil' Joe is, therefore, estopped from arguing otherwise.

Lil' Joe recitation of the terms from *subsequent* grants, such as the 1991 Agreements, are immaterial as none identify, let alone transfer copyrights in, the Subject Albums. Plaintiff's Opposition to Motion for Summary Judgment ("Plt. Opp.") pg. 19-20; AF ¶ 59. It is simply *impossible* that the 1991 Agreements transferred the Subject Albums' copyrights because the terms of those agreements relate to albums to be created later[3], and they were signed and dated in 1991 *after* the Subject Albums were created and released.[4] SUF ¶ 3, 45; AF ¶¶ 60, 61. Tellingly,

---

[1] All defined parties and terms will be referred to as they are defined in Defendants' Motion for Summary Judgment (Dkt. 53).
[2] Lil' Joe's statements to the contrary conflict with deposition testimony where it stated it does not know how the copyrights were transferred. "Q. How did the members of 2 Live Crew first transfer their copyrights in the subject albums? A. I don't know." Weinberger Deposition 91:1-3 attached as Exhibit 71 to Supplemental Declaration of Scott Alan Burroughs ¶ 2, Ex. 71.
[3] "The term of this Agreement shall be for a period of one (1) year commencing on the date hereof." AF ¶ 60; 1991 Agreements (Dkt. 1-2).
[4] Lil' Joe disputes that the 1991 Agreements were entered into in 1991 but presents no evidence to support that position and all evidence indicates it they were entered in 1991, including the fact that Allen Jacobi, who purports to have drafted them, did not work for 2 Live Crew in 1989. Plaintiff's Statement of Facts Dkt. 59 ("PSF") pg. 9 ¶ 45; Exhibit B Dkt. 59-2 ¶ 3.

the pre-1990 Subject Albums' covers all bear a copyright notice stating Skyywalker Records owned the Subject Albums' copyrights. SUF ¶ 8. Skyywalker Records could not have claimed those copyrights before 1990 if they were not transferred until 1991. If the 1990 Agreement did not transfer the Subject Albums' copyrights, then Skyywalker Records never owned the Subject Albums' copyrights before 1995, and Lil' Joe did not purchase any copyrights for the Subject Albums in the Skyywalker Records bankruptcy other than what would have been Campbell's limited share. But Lil' Joe, for 28 years, has claimed to have purchased the Subject Albums' copyrights in that bankruptcy. He is thus estopped from challenging 1990 Agreement's transfer.

   The fact the 1990 Agreement was signed after the creation of the Subject Albums, on the other hand, is consistent with Defendants' position. *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc*., 70 F.3d 96, 99 (11th Cir. 1995) (copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer *ab initio*.); SUF ¶ 11. 2 Live Crew executed the 1990 Agreement to memorialize a prior oral transfer to Skyywalker Records. SUF ¶ 11. And both Campbell and Ross testified unequivocally they created the Subject Albums subject to an oral agreement whereby the copyrights would transfer to Skyywalker Records. SUF ¶ 4. And the Wong Won heirs further confirmed this agreement based on their family's business records. AF ¶ 62. Further, after 2 Live Crew recorded the Subject Albums, and *before* 1991, Skyywalker Records released the Subject Albums with album covers expressly stating that Skyywalker Records owns the copyrights. SUF ¶ 8. Then when copyright lawsuits were initiated in 1990,[5] Skyywalker Records was stated to be the copyright holder. SUF ¶ 9. As such, all parties to the 1990 Agreement, the performance of the parties under the 1990 Agreement, the *Acuff Rose* litigation, and the copyright notices on the Subject Albums all confirm Skyywalker Records owned the copyrights *before* 1991.

   Lil' Joe's argument that the 1990 Agreement cannot transfer the rights in the Subject Albums because its term ends in 1988 fails. Plt. Opp. pg. 18. While the 1990 Agreement does not mention the Subject Albums by name[6] it clearly contemplates the transfer of copyright for

---

[5] "On July 15, 1989, 2 Live Crew released its version of 'Oh, Pretty Woman' on record albums, tapes and compact discs, entitled 'As Clean As They Wanna Be'" then on June 18, 1990, Acuff–Rose sued 2 Live Crew and their record company, Luke Skyywalker Records, for copyright infringement. *Acuff-Rose Music, Inc. v. Campbell*, 754 F. Supp. 1150, 1152 (M.D. Tenn. 1991).
[6] The 1990 Agreement does not need to specifically mention the Subject Albums to be an effective transfer "no magic words must be included in a document to satisfy Section 204(a)."

multiple albums within the initial term, as Paragraph 2(b) states:

> "During each Contract Period hereunder, Company will have the following options ("Over-call Options") to increase the Recording Commitment for the Period concerned by the number of Master Recordings set forth below ("Over-call Recordings"). Each Over-call Option may be exercised by Company by sending Artist a notice at any time before the end of the Contract Period concerned." AF ¶ 63.

Paragraph 2(b)(1)(i), 2(b)(1)(ii), 2(b)(1)(iii), and 2(b)(2) taken together allow for a total of three albums under the initial contract term of the 1990 Agreement. AF ¶ 64. One can only conclude that notice was given because 2 Live Crew delivered the Subject Albums and Skyywalker Records released them with its copyright notices and then paid 2 Live Crew. SUF ¶ 20; AF ¶ 65.

Lil' Joe also disputes the 1990 Agreement by attacking the credibility of Campbell and Ross via an affidavit by Skyywalker Records' former counsel Allen Jacobi. PSF ¶¶ 4-5, 11-13, 15, 19-20, 24-25, 28-31, 34, 51. The affidavit states he prepared the 1991 Agreements, and he was told they were the first agreements between the parties. Dkt. 59-2, ¶¶ 3-5. As a threshold matter, Jacobi's affidavit should be stricken or excluded because his knowledge regarding prior agreements between 2 Live Crew and Skyywalker Records is covered by the attorney-client privilege because Jacobi represented Skyywalker Records at the time the information in the affidavit was obtained and it was obtained in the course of legal representation.[1] *Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1414 (11th Cir.)(the privilege "protects the disclosures that a client makes to his attorney, in confidence, for the purpose of securing legal advice or assistance."), opinion modified on reh'g, 30 F.3d 1347 (11th Cir. 1994); *In re Grand Jury* (G.J. No. 87–03–A), 845 F.2d 896, 897 (11th Cir.1988); See also, 2 Live Crew's Objections to Evidence ("Evid. Obj.") 8 Section E. Further, the declaration is based on mere hearsay and lacks the foundation necessary to challenge the 1990 Agreement. See, Evid. Obj. pg. 8 Section E. Even if considered, Jacobi's affidavit is consistent with Defendants' position because Campbell's statement that he needed to obtain a contract would be consistent with a need for a *written* contract in 1990 and in 1991 to obtain forward-looking contracts for future albums.

It is undisputed that in 1995, Skyywalker Records owned the copyrights, PSF pg. 12 ¶ 4, and that in 1995 the copyrights were transferred to Lil' Joe as a result of the Skyywalker bankruptcy. PSF pg. 12 ¶ 5. This chain of events is only possible under 2 Live Crew's chain of

---

*Dellacasa, LLC v. Jown Moriarty & Assocs. of Fla., Inc.,* No. 07-21659-CIV, 2008 WL 299024, at *14-16 (S.D. Fla. Feb. 1, 2008)(citation omitted).

title theory and not Lil' Joe's. All testimony and evidence establish that the 1990 Agreement transferred the Subject Albums' copyrights[7].

### B. Lil Joe's challenge to the 1990 Agreement's fails due to the statute of limitations, laches, estoppel, and lack of standing

Lil' Joe lacks standing[8] to challenge the 1990 Agreement, waited far too long to bring its challenge, and benefited in the interim from the agreement he now challenges. And Lil' Joe's arguments relating to the agreements must be excluded because Lil' Joe refused to testify as to same during deposition. See Evid Obj. pg. 4, Section D. Lil' Joe admits it possessed a copy of the 1990 Agreement since 2000 and never disputed its veracity until this litigation, and that it had access to the Subject Albums, each of which stated Skyywalker Records' copyright ownership for just as long. AF ¶ 66. Thus, the following defenses preclude Lil' Joe's position:

**Statute of Limitations**: The statute of limitations on a copyright claim is three years. 17 U.S.C. § 407(b). And "a claim concerning mainly ownership accrues only once," when a party "learns, or should as a reasonable person have learned, that the defendant was violating his ownership rights[.]" *Webster v. Dean Guitars*, 955 F.3d 1270, 1276 (11th Cir. 2020)(citations omitted). Anyone seeking to challenge Skyywalker' Records' ownership of the Subject Album copyrights learned of this violation when the albums were released with copyright notices, each of which "plainly and expressly repudiated" 2 Live Crew's ownership of the copyrights. 955 F.3d at 1275–77.  **Laches**: Laches precludes Lil' Joe's claims because (1) it delayed in asserting its claims, (2) the delay was not excusable, and (3) Defendants were unduly prejudiced by the delay. *Venus Lines Agency v. CVG America, Inc*., 234 F.3d 1225, 1230 (11th Cir.2000).
**Estoppel**: "Copyright estoppel" applies here because (1) Lil' Joe knew the facts of Skyywalker Records's copyright ownership, (2) Lil' Joe intended its conduct to be acted upon or the acted

---

[7] Assuming, *arguendo*, that the 1990 Agreement did not transfer ownership of the copyrights for one or more of the Subject Albums, the termination is still effective. When a writing fails to effectuate an ownership transfer, a license results, and such a license "may be granted orally," or "may even be implied from conduct." *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997)(citations omitted). Thus, 2 Live Crew granted at the very least a license to Skyywalker Records to exploit the Subject Albums and that license was terminated by the notice at issue. Of course, licenses are not sublicensable and if this is the case then Lil' Joe never obtained any copyrights in the Subject Albums in the 1995 bankruptcy. *Gardner v. Nike, Inc*., 279 F.3d 774, 781 (9th Cir. 2002)(licenses "are only assignable with the consent of the licensor.").
[8] Lil' Joe also fails to address, let alone refute, this argument in its opposition and it is thus conceded. *Bernstein v. Georgia Dep't of Educ.*, 970 F. Supp. 2d 1340, 1355 (N.D. Ga. 2013)("Plaintiff's silence is dispositive as to this argument.")

such that Defendants have a right to believe it was so intended, (3) Defendants were ignorant of Lil' Joe's disputation to the 1990 Agreement, and (4) Defendants relied on the Lil' Joe's conduct to their detriment. *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 875 (11th Cir. 2005)(citations omitted). Notably, a "copyright owner can be estopped not only by words and actions but also by silence and inaction." Id. (citations omitted).

Here, Lil' Joe is precluded from challenging the 1990 Agreement by all three doctrines. Any challenger would have "[known] of the alleged grounds for the ownership claim" when Skyywalker Records released the Subject Albums with its copyright notices. *Santa-Rosa v. Combo Records*, 471 F.3d 224, 228 (1st Cir. 2006), cert. denied, 550 U.S. 926 (2007). If the members of 2 Live Crew, Lil' Joe, or anyone else wanted to challenge Skyywalker Records' copyright ownership, it would have had to make a claim within three years of the release of the Subject Albums. Further, if Lil' Joe truly believed Skyywalker Records did not own the copyrights via the 1990 Agreement (and truly believed that the prospective 1991 Agreements transferred copyrights created before the albums were created), he knew of those facts no later than the early 2000s. AF ¶ 66. He did not and delayed making those claims until this litigation, in an attempt to prejudice 2 Live Crew by depriving them of their termination rights. See *Dellacasa, LLC v. John Moriarty & Assocs. of Fla., Inc.*, No. 07-21659-CIV, 2007 WL 2979865, at *3 (S.D. Fla. Oct. 11, 2007) (finding prejudice if intervention was denied where "[t]he intervenor takes the position that it is the owner of the subject copyrights and seeks declaratory relief as to its ownership rights."). Lil' Joe is thus estopped by the statute of limitations, laches, and estoppel from challenging the 1990 Agreement.

### C. Defendants' termination notice was effective

Lil' Joe does not dispute and thus concedes that 2 Live Crew complied with all technical requirements of Section 203. Plt. Opp. pg. 18-19. It challenges only the validity of the 1990 Agreement. But, as discussed above, the 1990 Agreement is the only possible transfer of 2 Live Crew's copyrights to any record label, and thus the notice to terminate it was valid.

Lil' Joe argues later settlement agreements with Ross and Wong Won "separately relinquished all rights to the copyrights and interested into subsequent assignments in favor of Lil' Joe." Plt. Opp. pg. 17. But the Wong Won settlement only transfers rights he had not already transferred, and the Ross settlement does not purport to transfer anything but is merely an acknowledgement of Lil' Joe Records, Inc.'s already existing ownership via the bankruptcy

purchase. AF ¶ 67, 68. Lil' Joe also contends it owned the copyrights for the Subject Albums since 1995, well *before* the dates of the Ross and Wong Won documents. PSF ¶ 5. No subsequent agreement could have transferred rights that Lil' Joe already claimed to own. Therefore, 2 Live Crew's notice need only terminate the 1990 Agreement to be effective.

### D. Contingent interests avoid the bankruptcy estate

Contingent interests like termination rights do not become property of a bankruptcy estate. The text of the Bankruptcy Code direct courts to determine the present value of the asset at the time of the filing, and, if there is no value to the present asset, exclude the asset from the bankruptcy estate. See *In re Satterwhite*, 271 B.R. 378, 382 (Bankr. W. D. Mo. 2002) (survivor benefits not part of the bankruptcy estate because the debtor could not sue on the date of the petition to get a lump sum of those future benefits); *In re Harter*, 10 B.R. 272, 276 (Bankr. N. D. Ind. 1981) (future pension payments is of not part of estate due to the fact that holder had no right to obtain lump sum distribution).

The Court in *In re: Satterwhite,* opined that payments that are not yet due when the bankruptcy case is filed are not yet owing to the debtor and therefore are not estate property. 271 B.R. at 382. Section 541(a) is not cited, but it follows that assets are not part of the bankruptcy estate under §541(a)(1) if the debtor could not sue to enforce a right to future payments as of the petition date. Termination rights have no present value and are not subject to bankruptcy for this reason. The ownership interest in copyrights that are recovered via termination vest upon notice of termination. If no notice is served by the author or their heir within the appropriate window, the right expires and *never* vests. And while "affirmative action is needed to effect a termination, the right to take this action cannot be waived in advance or contracted away." H.R. REP.NO. 94-1476, at 125 (1976). The termination rights were not part of the bankruptcy estates.

### E. Bankruptcy cannot divest a debtor in their termination right

The Section 203 termination right can never be divested from the author and does not fall within the bankruptcy estate pursuant to section 541(a)(1) of the Bankruptcy Code. [9] Even assuming *arguendo* the contrary, Campbell or Ross still were not divested of their termination rights via bankruptcy. When a bankruptcy plan is confirmed, several significant things occur.

---

[9] Congress explicated as tersely and plainly as it could: "the right [to terminate a transfer] cannot be waived in advance or contracted away." H.R. Rep. No. 94-1476, at 125 (1976), as reprinted in 1976 U.S.C.C.A.N. 5659, 5740; S. Rep. No. 94-473, at 108 (1976).

First, pursuant to § 1141(b), all property of the bankruptcy estate vests in the debtor. This essentially means that there is no longer a bankruptcy estate. 11 U.S.C. § 1141(b) ("except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.") Second, pursuant to § 1141(d), the debtor receives a discharge. *In re Johnston*, 151 B.R. 367, 370 (Bankr. N.D. Miss. 1992). Confirmation of a chapter 11 plan results in the property of the estate vesting in the debtor unless the plan provides otherwise. *In re D & L Nicolaysen*, 228 B.R. 252, 262 (Bankr. E.D. Cal. 1998).

The Bankruptcy Code requires that an entity or custodian in possession of property of the estate account for and turn over such property. 11 U.S.C. §§ 542, 543. Property of the estate becomes available to a debtor if it remains unadministered at the time of closing of the case, at which time it is abandoned to the debtor. 11 U.S.C. § 554(c). In addition, property of the estate revests in the debtor after confirmation of a bankruptcy plan, subject to the obligations imposed by the plan, unless the plan provides otherwise. *In re Miell*, No. BKR 09-01500, 2009 WL 2253256, at *3 (Bankr. N.D. Iowa July 27, 2009), aff'd, No. C09-112-MWB, 2009 WL 2590515 (N.D. Iowa Aug. 19, 2009) citing, 11 U.S.C. § 1141(b); *In re D & L Nicolaysen*, 228 B.R. 252, 260 (Bankr.E.D.Cal.1998).

Campbell and Ross's bankruptcies are closed. AF ¶ 69. And neither Campbell's joint plan[10] nor the Ross settlement agreement have language regarding the right of termination and would be precluded by Section 203[11] from transferring the termination right even if they did contain such language. AF ¶ 70. Therefore, even if the bankruptcy estate did obtain the right of termination, it is precluded from administering, otherwise conveying, or exercising that right, so upon closure the termination right would have vested back in the debtor.

Lil' Joe's authority fails to persuade. Citing *Russ,* it argues that once an asset is part of the bankruptcy estate, all rights held by the debtor are extinguished unless the asset is abandoned back to the debtor pursuant to section 554(d), and if there was no "abandonment" of the termination right the estate still possesses the termination right. Plt. Opp. pg. 7; *Russ v. Jackson Country School Board,* 530 F. Supp 1074, 1082 (N.D. Fla. 2021); 11 U.S.C. § 554(d). However,

---

[10] A Chapter 11 bankruptcy plan is considered a contract and its terms govern the post-confirmation relationship of the reorganized debtor and its creditors. *In re Sundale, Ltd.*, 471 B.R. 300, 303 (Bankr. S.D. Fla. 2012).

[11] A "[t]ermination of the grant may be effected notwithstanding agreement to the contrary." 17 U.S.C. §203.

this analysis ignores both subsection (c) of Section 554 and more importantly Section 1141 of the Bankruptcy Code. Lil' Joe's argument is foreclosed as it is impossible for a bankruptcy estate to maintain possession of a right in perpetuity.

### F. 2 Live Crew did not record the Subject Albums as works for hire

A work-for-hire agreement must be executed **before** the creation of the work. *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 412-13 (7th Cir. 1992)(adopted a bright-line rule requiring that the parties must sign the work-for-hire agreement before the work is created in order for the agreement to be valid.); *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 559 (2nd Cir. 1995) (parties may not enter into work-for-hire agreements years after a work is created) Lil' Joe cites *Playboy Enterprises, Inc.,* but that case dooms Lil' Joe's argument because Lil' Joe can point to no work-for-hire agreement executed before 1991. The 1991 Agreements were clearly entered into *after* the creation of the Subject Albums, the last of which was released in 1989. SUF ¶ 45. Further, there is prior oral work-for-hire agreement that the 1991 Agreements sought to memorialize, as required by *Playboy*, 53 F.3d at 55. Moreover, given that there is no dispute between the label and the artists, it would be bizarre to allow a third-party with no knowledge of the arrangement to challenge the agreement that the works were not for-hire.

Lil' Joe's argument that Campbell's work as a member of 2 Live Crew was within his scope of employment as CEO and founder of Skyywalker Records likewise fails. An owner of a label can also act as an artist for that label as in independent contractor. *Trans-Box Sys., Inc. v. United States*, 225 F.3d 664, 2* (9th Cir. 2000)(employee's relationship with employer in one capacity does not foreclose the possibility that he may independently contract with employer in another capacity.); citing, *Reece v. Commissioner*, T.C. Memo 1992-335, 63 T.C.M. (CCH) 3129 (1992). Here, Campbell had duties as CEO of Skyywalker Records, but recording albums as a member of 2 Live Crew were not part of those duties and he performed them separately as an independent contractor. SUF ¶ 33. A clear manifestation of this situation is that he signed the 1990 and 1991 Agreements on behalf of both himself and Skyywalker Records, which agreements paid him album royalties separate from his salary as CEO. SUF ¶ 33.

Further, Lil' Joe's analysis of the 13-factor test regarding the 2 Live Crew member's employee is deeply flawed. Initially, it is completely speculative as it is not based on *any*

firsthand testimony or evidence.[12] And Lil' Joe again operates under the false assumption that the 1991 Agreements governed the Subject Albums. As these agreements had nothing to do with the recording of the Subject Albums, the "control" factor does not favor employment due to Skyywalker Records involvement in the recording process under the 1991 Agreements. Further, Skyywalker Records is a record company and not an artist and thus did not have the required "skills" to create the Subject Albums as Lil' Joe suggests. SUF ¶¶ 46-47. 2 Live Crew's contributions were even deemed "unique[13]" in the 1990 Agreement, clearly indicating that the works were not for-hire. AF ¶ 71. While Skyywalker Records may have paid for the recording costs under the 1990 Agreement, those costs were *recoupable* from 2 Live Crew's royalties and thus paid for in the end by 2 Live Crew. AF ¶ 72. Thus, the "Source of Tools" factor weighs against an employment relationship.

For the "duration" factor, 2 Live Crew had a nine-year relationship with a label, but that label was ran by numerous different companies and under different names. SUF ¶ 7. Lil' Joe's statement that Skyywalker Records "controlled the recording process" is hearsay and refuted by statements from 2 Live Crew and the owner of Skyywalker Records. Evid. Obj. pg. 9 Section F. Lil' Joe also misconstrues what the "Right to Assign Additional Projects" factor requires. Skyywalker Records had no ability to require the members to do any tasks outside of the contracted for album project. SUF ¶ 51. Campbell may have been Skyywalker Records' CEO and could, in theory, assign himself additional tasks in that role, but as a member of 2 Live Crew he had a designated project and anything outside the scope of that project he performed as the CEO **not** as a member of 2 Live Crew. SUF ¶ 33.

2 Live Crew had discretion to make their schedules, was always considered independent contractors prior to 1991, Wong Won and Ross never received employee benefits, and Campbell received benefits for his work as CEO but not as a member of 2 Live Crew. SUF ¶¶ 29-30, 33, 53. Finally, the members of 2 Live Crew were paid royalties for the Subject Albums, including

---

[12] Lil' Joe cites the Weinberger Decl. as its only evidence to support its claims regarding the 13 work-for-hire factors. But Weinberger was not employed by Skyywalker Records until 1990 and thus has no personal knowledge regarding how the Subject Albums were recorded. Evid. Obj. pg. 9 Section F. These statements must thus be excluded in their entirety.
[13] "The services of the Artist are unique and extraordinary, and the loss thereof cannot be adequately compensated in damages." AF ¶ 71.

Campbell who was not compensated for his work[14] as a member of 2 Live Crew as part of his compensation as CEO but was separately compensated through royalties like the other members of the group. SUF ¶ 30, 33, 50. When taken in their aggregate it is clear the members of 2 Live Crew were not employees of the record company. The company and 2 Live Crew are in agreement on this point.

Finally, Lil' Joe attempts relies on the copyright registrations for the Subject Albums, but almost all of them indicate that the works were *not* made-for-hire and many of them were registered by Lil' Joe years after the fact and still say the albums were not made-for-hire. This shows that Lil' Joe's position is simply a *post-facto* argument fabricated to avoid termination.

### G.   Lil' Joe conceded its copyright and trademark claims were meritless

2 Live Crew's Motion argued that Lil' Joe's second through tenth causes of action for various copyright and trademark infringement claims were meritless. Lil' Joe failed to respond to these arguments, and they are thus deemed conceded. *U.S. Commodity Futures Trading Comm'n v. Ronald Montano, Montano Enterprises, LLC*, No. 618CV1607ORL31GJK, 2020 WL 5534521, at *10 (M.D. Fla. July 14, 2020), report and recommendation adopted sub nom. *Commodity Futures Trading Comm'n v. Montano, No.* 618CV1607ORL31GJK, 2020 WL 5793633 (M.D. Fla. Sept. 29, 2020). When "a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims." *Johns v. CSX Transp., Inc.*, 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016). Lil' Joe's claims #2-10 must thus be adjudicated in Defendants' favor.

### H.   This Motion should be granted

There is no triable issue as to whether the 1990 Agreement controls and whether it was properly terminated.  And even if the bankruptcy estates ever possessed the termination right – they didn't – that right would have returned to Campbell and Ross at the close of those cases. And 2 Live Crew, its label head, and all admissible evidence makes clear that 2 Live Crew were not label employees. Finally, Lil' Joe concedes that its trademark and copyright claims are meritless.  It is respectfully submitted that Defendants should prevail on all claims at issue.

---

[14] Lil' Joe's evidence to support its contention that the 2 Live Crew members were on regular "payroll" is an affidavit by Herman Moskowitz that purports to attached paychecks. However, no paychecks are attached or otherwise in the record. See Evid. Obj. pg. 18 Section G.

I.       **Request for Hearing S.D. Fla. L.R. 7.1(b)(2)**

Defendants hereby request a hearing for oral argument on Defendants' Motion for Summary Judgment. A hearing would be helpful to the Court in addressing the issue of whether the Defendants exercised their termination right exists under 17 U.S.C. § 203, if that notice of termination was effective, whether the bankruptcy estate acquired the termination right, and if so, if the right vested back in the debtors Campbell and Ross, the intricacies of the independent contractor relationship between 2 Live Crew and Skyywalker Records, Inc. and what rights reverted, and will revert, to Defendants as a result of the effective termination notice. Defendants estimate that one hour will be necessary for oral argument.

Dated: January 25, 2023

Respectfully submitted,

By: */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
(admitted *pro hac vice*)
DONIGER / BURROUGHS
237 Water Street, First Floor
New York, New York 10038
(310) 590 – 1820
scott@donigerlawfirm.com

-*with*-

Joel B. Rothman, Esq.
SRIP LAW
21301 Powerline Road, Suite 100
Boca Raton, Florida 3343
(561) 404-4350
joel.rothman@sriplaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25, 2023, a true and authentic copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: */s/ Scott Alan Burroughs*
Scott Alan Burroughs