# EXHIBIT 71

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2

 3             CASE NO. 1:21-CV-23727-DPG

 4
    LIL' JOE RECORDS, INC., a Florida
 5  corporation,

 6       Plaintiffs,

 7  v.

 8  MARK ROSS, CHRISTOPHER WONG
    WON, JR., RODERICK WONG WON,
 9  LETERIUS RAY, ANISSA WONG WON
    and LUTHER CAMPBELL,
10
         Defendants.
11

12  _____/

13
    DEPOSITION OF:     JOSEPH WEINBERGER
14                     (LIL' JOE RECORDS, INC.)

15  TAKEN BY:          DEFENDANTS

16  DATE:              OCTOBER 26, 2022

17  TIME:              10:57 A.M. - 3:46 P.M.

18  PLACE:             ZOOM VIDEOCONFERENCE

19  STENOGRAPHICALLY
    REPORTED BY:       KRISTINA ESSIG, RPR
20                     NOTARY PUBLIC, STATE OF FLORIDA

21

22

23

24

25
```

```
 1              MR. WOLFE:  He's not going to answer any
 2      more questions --
 3              MR. BURROUGHS:  -- multiple copies of the
 4      same agreement to me.  But if you need more
 5      time, please let us know, we're not trying to
 6      rush you.
 7              MR. WOLFE:  But it's not your deposition.
 8              It's his deposition.
 9              You're showing him 86 pages of three
10      different contracts that you're flipping
11      through at a speed that no one can possibly
12      read them and comprehend them.
13              So, therefore, I am instructing him not
14      to answer any questions until he's had the
15      opportunity to review all 86 pages, which I'm
16      willing to print out and give him that
17      opportunity to do so, but you've refused that
18      request, so I am instructing him not to answer
19      any questions at this time under these
20      circumstances.
21   BY MR. BURROUGHS:
22      Q.   Okay.  Now, do you want to go back to any
23   pages or any sections of the agreement to take
24   another look?
25              MR. WOLFE:  Same instruction.
```

```
 1              Don't answer the question.
 2              And, again, I'll repeat, I'm willing to
 3      print out all 86 pages and give him the
 4      opportunity to read it, not as you're flipping
 5      through, and -- and because any answer that he
 6      gives will only misconstrue his response, which
 7      would be inaccurate, unless he had the
 8      opportunity to review the document.
 9   BY MR. BURROUGHS:
10      Q.   Have you ever seen this document before?
11              MR. WOLFE:  Same instruction.
12   BY MR. BURROUGHS:
13      Q.   Okay.  And are you going to take your
14   attorney's instruction and not answer questions about
15   this contract?
16      A.   Yes.
17      Q.   Okay.  Now, earlier you had indicated that
18   one issue with the contract that you did see was that
19   it was missing dates.  What do you mean by that?
20      A.   On the first page of the document, it says
21   blank day of, and the month.  It didn't have the date
22   filled in.
23      Q.   Okay.  And you mentioned that some of the
24   pages appeared to be cut off because they were
25   missing page numbers; is that accurate?
```

```
 1      give.  If you find that --
 2   BY MR. BURROUGHS:
 3      Q.    So do you have a copy of this contract in
 4   your records?
 5            MR. WOLFE:  Same instruction.
 6   BY MR. BURROUGHS:
 7      Q.    Have you ever seen a version of this
 8   contract with any exhibits or schedules?
 9            MR. WOLFE:  Same instruction.
10   BY MR. BURROUGHS:
11      Q.    And do you know which songs or albums this
12   exhibit covers?
13            MR. WOLFE:  Same instruction.
14   BY MR. BURROUGHS:
15      Q.    And do you believe that this contract
16   relates in any way to the works at issue in this
17   case?
18            MR. WOLFE:  Same instruction.
19   BY MR. BURROUGHS:
20      Q.    And, again, you're going to take your
21   attorney's instruction and not answer, correct?
22      A.    Excuse me?
23      Q.    You're taking your attorney's -- he can
24   instruct you, but you have to say that, yes, you're
25   taking the instruction --
```

```
 1      A.    Yes.
 2      Q.    -- in not answering, okay?
 3      A.    Yes.
 4      Q.    Okay.
 5            MR. WOLFE:  And, again, if you want to
 6      give him an opportunity to read the document, a
 7      reasonable opportunity, he'll answer whatever
 8      you'd like put before him.
 9   BY MR. BURROUGHS:
10      Q.    Did you provide any contracts to your
11   attorney in connection with this case?
12      A.    Did I provide?  Just copies that I may have
13   had in my files.
14      Q.    How many contracts did you provide to your
15   attorney?
16      A.    I don't know.
17      Q.    One?
18      A.    I would say there's more than one contract.
19      Q.    What's your best estimate as to how many
20   contracts you provided to your attorney?
21      A.    Recording contracts, or what kind of
22   contracts?
23      Q.    Contracts.
24      A.    A bunch.
25      Q.    Between five and ten?
```

```
 1      Q.    How did the members of 2 Live Crew first
 2   transfer their copyrights in the subject albums?
 3      A.    I don't know.
 4      Q.    Do you know who they transferred them to?
 5      A.    I don't know.
 6      Q.    Do you have any understanding as to how any
 7   record company came to own the copyrights for the
 8   sound recordings to the subject albums?
 9      A.    It was sold to me in the bankruptcy.
10      Q.    By whom?
11      A.    Luke Records and Luther Campbell.
12      Q.    Who sold you the copyrights for the sound
13   recordings for the subject albums?
14      A.    I just told you.  Luther Campbell and Luke
15   Records.
16      Q.    Was it both of them?
17      A.    I believe so.
18      Q.    Do you know which of them owned which
19   rights?
20      A.    I don't know.
21      Q.    Which rights did Luke Records sell you?
22      A.    I don't know.  I -- I don't have the
23   documents in front of me, so I can't tell you.
24      Q.    Which rights did Luther Campbell sell you?
25      A.    I just told you.  I don't have the
```

1   Page No. 4 of the letter, 2 Live Crew IS What We Are
2   is the title, publication date is December 1, 1986.
3           Does that reconcile with your recollection
4   when that album was published?
5       A.  I'm not sure.
6       Q.  Okay.  We're going to put an exhibit in
7   front of you we're going to mark as Exhibit 4.
8           (WHEREUPON, Defendants' Exhibit 4 was
9           marked for identification.)
10  BY MR. BURROUGHS:
11      Q.  I want you to take a look at it and tell me
12  if you recognize it.
13          I'll scroll through it.  If you want us to
14  go faster or slower, let us know.
15          Okay.  Do you need to go back and see any
16  specific pages or look at anything for a longer
17  period of time?
18          MR. WOLFE:  I'm going to object.
19          You've shown him about 40 pages of
20  documents in a scroll-through fashion.  He
21  couldn't possibly take in, comprehend, remember
22  any one of those pages.  It's impossible.
23  BY MR. BURROUGHS:
24      Q.  Do you need any more time to see any of the
25  pages?  We're happy to give you more time, as with

```
 1    all of the exhibits, to -- to review it so you feel
 2    comfortable.
 3              MR. WOLFE:  Sure.  If you want me to
 4    print them out, I'll give him the time to do it.
 5    BY MR. BURROUGHS:
 6         Q.   Do you want to look at any of these pages?
 7              MR. WOLFE:  Same objection.
 8    BY MR. BURROUGHS:
 9         Q.   Go ahead.
10              MR. WOLFE:  How would we know which page
11    to look at when you've flipped through 50 pages
12    of documents?
13              MR. BURROUGHS:  I think it's 32, but,
14    again, if you --
15              (Cross-talk.)
16              MR. WOLFE:  That's my point.
17              How would he be able to calculate?
18    BY MR. BURROUGHS:
19         Q.   Do you want to go to any particular page,
20    or no?
21              MR. WOLFE:  Same objection, and I'm going
22    to instruct him not to answer until you give him
23    the opportunity to read all 32 pages, which I'm
24    happy to do if you want to send me the document,
25    I'll print it out, and I'll give it to him.
```

```
 1    BY MR. BURROUGHS:
 2        Q.    Are you going to take your attorney's
 3    instruction?
 4        A.    Yes.
 5        Q.    All right.  So I'll ask you -- so
 6    understanding that you are refusing to testify about
 7    the matters in Exhibit 4, which appear to me to be
 8    copyright registrations, we'll move on and we won't
 9    ask questions on those.
10              But, of course, we reserve the right --
11              MR. WOLFE:  Object to form.  Live
12        statement.
13              MR. BURROUGHS:  -- to move in limine as
14        mentioned before for the basis given on the
15        record before.
16    BY MR. BURROUGHS:
17        Q.    Were you involved in preparing any
18    copyright registrations at any of the record labels
19    that Mr. Campbell owned?
20        A.    No.
21        Q.    Okay.  Have you received any copy --
22        A.    I don't -- I don't believe so.
23        Q.    Okay.  Have you ever seen any of those
24    copyright registrations?
25        A.    I believe Mr. Black got me copies of them
```

```
 1   copying the forms I had to give to Richard Wolfe.
 2       Q.    Okay.  And were you doing that in
 3   connection with the termination letter and/or this
 4   lawsuit?
 5       A.    Yes.
 6       Q.    So it's fair to say that because of this
 7   lawsuit, you went back and amended this copyright
 8   registration in Exhibit 6?
 9       A.    Yes.
10       Q.    Any other reason?
11       A.    No.
12       Q.    Okay.  I'm going to put another document in
13   front of you I'm going to mark as Exhibit 7.
14             (WHEREUPON, Defendants' Exhibit 7 was
15             marked for identification.)
16   BY MR. BURROUGHS:
17       Q.    Do you recognize this document?
18       A.    Yes.
19       Q.    Okay.  And what's this document?
20       A.    It's a Form SR.
21       Q.    And stopping at Section 5, do you see that
22   section?  "Previous registration:  Has registration
23   for this work or an earlier version of this work
24   already been made in the copyright office?"
25             Do you see that?
```

```
 1              We're going to marking as Exhibit 9 the
 2      agreement reflecting the '87 arrangement.
 3              (WHEREUPON, Defendants' Exhibit 9 was
 4              marked for identification.)
 5              MR. WOLFE:  Give me one second.
 6              Okay.  What you sent to me as Exhibit
 7      10, we're now marking Exhibit 9, and for the
 8      record, it's an undated document that says
 9      Recording Agreement and Skyywalker Records,
10      Inc., correct?
11   BY MR. BURROUGHS:
12      Q.      Are you familiar with this document?
13              MR. WOLFE:  Hold on.
14              Do you have it handy?
15              THE WITNESS:  This one here?
16              MR. WOLFE:  Yes, that's it.
17              THE WITNESS:  Yeah, I see it.
18   BY MR. BURROUGHS:
19      Q.      Okay.  When did you first see this
20   agreement?
21      A.      In the 2000's.
22      Q.      In what context did you first see this
23   agreement?
24      A.      Wong Won produced it in litigation I had
25   with him.
```

```
 1     Q.    Did you review it at the time?
 2     A.    Not really.
 3     Q.    Did you respond to Wong Won and dispute its
 4   voracity or validity at the time?
 5     A.    The case settled when we went to a
 6   mediation.
 7     Q.    So before settling it, it was never
 8   challenged, is that accurate?
 9     A.    I don't recall.  I don't -- I don't know.
10     Q.    As you sit here today, do you have reason
11   to challenge this agreement?
12     A.    Yeah, I told you earlier the different --
13   the different things that I thought were peculiar
14   with it.
15     Q.    Okay.  But other than some of the
16   peculiarities that you mentioned, do you challenge
17   the fact that the individuals transferred their
18   copyrights to the label via this agreement?
19     A.    Well, I don't know if this agreement is a
20   valid agreement because Luther Campbell said that
21   there was never an agreement.
22     Q.    Understood.
23           But do you dispute that the members of
24   2 Live Crew transferred the copyrights of the subject
25   albums to the label?
```

```
 1     Q.    Were you involved with them at all in 1998?
 2     A.    '98, yes.
 3     Q.    What about 1988?
 4     A.    Yes.
 5     Q.    When -- what was your first involvement
 6   with them in 1988?
 7     A.    I had met them.
 8     Q.    Okay.  So other than just meeting them, you
 9   had no involvement with them or their careers,
10   correct?
11     A.    Like, I wasn't managing them.
12           They weren't my clients.
13     Q.    Okay.  They were just people that you had
14   met, correct?
15     A.    Right.
16     Q.    And the same in 1989?
17           Yes.
18     Q.    And the same in 1990?
19     A.    Yes.
20     Q.    Do you contend that the agreement in
21   Exhibit 9 is falsified or altered in any way?
22     A.    I don't believe it's a valid agreement.
23     Q.    Understood.
24           But do you believe that it's been falsified
25   or altered in any way?
```

LIL' JOE RECORDS, INC. vs MARK ROSS, ET AL.
Joseph Weinberger on 10/26/2022                    Page 187

1                CERTIFICATE OF REPORTER

2

3    STATE OF FLORIDA

4    COUNTY OF BROWARD

5

6              I, KRISTINA ESSIG, RPR, Registered

7    Professional Reporter, and Notary Public, State of

8    Florida, do hereby certify that I was authorized to

9    and did stenographically report the deposition of

10   JOSEPH WEINBERGER; that a review of the transcript

11   was requested; and the foregoing transcript is a true

12   and accurate record of my stenographic notes.

13             I FURTHER CERTIFY that I am not a relative,

14   employee, attorney, or counsel of any of the parties,

15   nor am I a relative or employee of any of the

16   parties' attorney or counsel connected with the

17   action, nor am I financially interested in the

18   action.

19

20             Dated this 4th day of November, 2022.

21

22             _____

23             Kristina Essig, Court Reporter
               Notary Public, State of Florida
24

25