# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

_____

LIL' JOE RECORDS, INC.,                    )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )      CASE NO. 1:21-CV-23727-DPG
                                           )
MARK ROSS; et al.,                         )
                                           )
            Defendants.                    )
_____           )

## DEFENDANTS' EVIDENTIARY OBJECTIONS IN SUPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Defendants, Mark Ross, Luther Campbell, Anissa Wong Won, Christopher Wong Won, Jr., Roderick Wong Won, and Leterius Rey ("Defendants"), hereby objects to, and requests to strike all or portions of, the following evidence offered by Plaintiff Lil' Joe Records, Inc. ("Lil' Joe") in its Opposition to Defendants' Motion for Summary Judgment.

The Court cannot consider inadmissible evidence in reviewing a summary judgment motion. *Long-Hall v. USA Ready Mix*, No. 1:08-CV-1546-CAP-AJB, 2010 WL 11496945, at *6 (N.D. Ga. Feb. 2, 2010), *report and recommendation adopted*, No. 1:08-CV-1546-CAP-AJB, 2010 WL 11507392 (N.D. Ga. Mar. 3, 2010); citing *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). So owing, information presented in opposition to summary judgment must be substantively admissible, even if the actual form of the information is not. *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.,* 906 F. Supp. 645, 649 (M.D. Fla. 1995). This view is in accord with several other Courts of Appeal. *See Thomas v. International Business Machines*, 48 F.3d 478, 485 (10th Cir.1995) ("the nonmoving party need not produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible.")(citing *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267–68 (7th Cir.1994); *Garside v. Osco Drug, Inc*., 895 F.2d 46, 50 (1st Cir.1990) (stating that hearsay testimony that would be inadmissible at trial, may not be included in an affidavit to defeat summary judgment). With this framework in mind, the following evidence should be excluded and stricken:

## A.    Hearsay

"The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999). Exhibits based on hearsay or lacking foundation must be disregarded by the Court, and Rule 56 requires that an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). And Rule 56(e) requires that "affidavits" that support or oppose summary judgment motions "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." This

rule also applies to testimony given on deposition." See also *Randle v. LaSalle Telecomms., Inc*., 876 F.2d 563, 570 n.4 (7th Cir.1989). Hearsay is an out-of-court statement of someone other than the person who made the statement used to prove the truth of the matter asserted. FED. R. EVID. 801. The affidavits of Allen Jacobi, Joe Weinberger, and Herman Moskowitz each contain hearsay statements and should be excluded as set forth in the chart below.

### B.      Privilege

Under Federal Rule of Evidence 501, "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir.), opinion modified on reh'g, 30 F.3d 1347 (11th Cir. 1994)**.** The attorney-client privilege protects the disclosures that a client makes to his attorney, in confidence, for the purpose of securing legal advice or assistance. *In re Grand Jury* (G.J. No. 87–03–A), 845 F.2d 896, 897 (11th Cir.1988). Based on the theory that "sound legal advice or advocacy ... depends upon the lawyer's being fully informed by the client," the privilege is designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389, 101 S.Ct. at 682. Allen Jacobi and Joe Weinberger have *both* represented Defendants as legal counsel and both affidavits submit into evidence privileged communications that were communicated from Defendants to Jacobi and Weinberger for the purpose of securing legal advice or assistance. These paragraphs are identified in the chart below and should be excluded.

### C.      Lack of Personal Knowledge

"For a matter to be considered within a witness's personal knowledge, it must be 'derived from the exercise of his own senses, not from the reports of others—in other words, [it] must be founded on personal observation.'" *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co*., No. 18-21365-CIV, 2019 WL 2013136, at *3 (S.D. Fla. Mar. 7, 2019), quoting, *U.S. v. Evans*, 484 F.2d 1178, 1181 (2nd Cir. 1973), quoting 2 Wigmore, Evidence, 3d ed. 1940, § 657. This means that "where there is a strict statutory requirement that an affidavit be based upon personal knowledge, as in Rule 56(e), then an affidavit based on information and belief is insufficient." *Tingley Sysems v. Bay State HMO Management Inc*., 833 F. Supp. 882, 884 (M.D. Fla. 1993). The affidavits of Joe Weinberger, Allen Jacobi, and Herman Moskowitz each contain statements not within their

personal knowledge and based on hearsay. These paragraphs are identified in the chart below and should be excluded.

### D.    Refusal To Testify

Plaintiff, at deposition, refused to testify regarding the contracts at issue in this case, which go to the very heart of the issues before the court. A "corporation must make a conscientious, good faith effort to designate the person having knowledge of the matters sought and to prepare that deponent to answer questions about the subject matter topics 'fully, completely, and unevasively.'" *Wausau Underwriters Ins. Co. v. Danfoss, LLC*, 310 F.R.D. 683, 685 (S.D. Fla.), aff'd, 310 F.R.D. 689 (S.D. Fla. 2015), quoting *In re Brican America LLC Equipment Lease Litigation*, 2013 WL 5519969, *3 (S.D.Fla.2013). And the "Rule 30(b)(6) witness must provide responsive answers **even if the information was transmitted through the corporation's lawyers**. *Don Goyo Aviation Corp. v. Catlin Ins. Co., Inc.*, No. 17-22390-CIV, 2018 WL 11459453, at *3 (S.D. Fla. Sept. 27, 2018)(emphasis added), citing *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012); *citing Great Am. Ins. Co. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008). Lil' Joe's corporate witness – its owner and sole fulltime employee Joe Weinberger - refused to testify about the contracts at issue, how they related to the rights at issue, or how they impacted the claims at bar. He refused to testify regarding the relevant contracts even though it produced them in discovery and has had them in its business records for decades. And he did so despite the Fed.R.Civ.P. 30(b)(6) Notice clearly stating that topics for examination would include "[t]he form substance of the agreements that DEFENDANTS have sought to terminate" and  "Communications regarding the rights to ownership, use, or exploitation of the 2 LIVE CREW WORKS" and  "[a]ll documents which purport to show Lil Joe Records, Inc.'s purported ownership and right to exploit the 2 LIVE CREW WORKS and the trademarks at issue." See Supplemental Declaration of Scott Alan Burroughs ¶ 2, Ex. 71. Weinberger also refused to testify about the manner in which he kept those contracts and refused to identify, let alone discuss, documents that it had produced in discovery related to its maintenance of the contracts. This warrants heavy sanction.

Notably, "noncompliance with its Rule 30(b)(6) obligations can lead to sanctions, such as imposition of costs, preclusion of testimony, and even entry of default." *Don Goyo Aviation Corp. v. Catlin Ins. Co., Inc*., No. 17-22390-CIV, 2018 WL 11459453, at *4 (S.D. Fla. Sept. 27, 2018), citing *QBE Ins. Corp. v. Jorda Enters*., 277 F.R.D. 676, 690 (S.D. Fla. 2012)(remaining

citation omitted). If a company' witness fails to properly testify, the court may bar the party
"from later offering trial testimony on any of the topics for which the corporate representative
was unable to provide adequate deposition testimony[.]" *Wausau Underwriters Ins. Co. v.
Danfoss, LLC,* 310 F.R.D. 683, 687 (S.D. Fla.), aff'd, 310 F.R.D. 689 (S.D. Fla. 2015)(granting
motion). That is because a Rule 30(b)(6) witness who is unable or unwilling to provide
responsive answers is "no more present for the deposition than would be a deponent who
physically appears for the deposition but sleeps through it." *Black Horse Lane Assoc., L.P. v.
Dow Chem. Corp.*, 228 F.3d 275, 305 (3d Cir. 2000). Here, Lil' Joe should be barred from
entering any testimony regarding the 1990 Agreement, the 1991 Agreements, how they were
kept, or how they were interpreted or enforced.

Preclusion is also appropriate because a "corporate designee's response expressing a lack
of knowledge is an answer that binds the corporation at trial -- and therefore prohibits the
corporation from offering evidence at trial expanding on its original answer." *Don Goyo Aviation
Corp. v. Catlin Ins. Co., Inc.,* No. 17-22390-CIV, 2018 WL 11459453, at *4 (S.D. Fla. Sept. 27,
2018), citing *QBE Ins.,* 277 F.R.D. at 690; *Chick-fil-A v. ExxonMobil Corp.*, No. 08-61422, 2009
WL 3763032, at *13 (S.D. Fla. Nov. 10, 2009); *Fraser Yachts Fla., Inc. v. Milne*, No. 05-21168,
2007 WL 1113251, at *3 (S.D. Fla. Apr. 13, 2007). Lil' Joe now attempts to shoehorn testimony
into this matter on issues that he refused to address at deposition. This is improper and his
testimony must be excluded.

The following are excerpts from the Weinberger Deposition in which he refused to testify
regarding the issues mentioned above:

**With respect to Exhibit 2 to Weinberger's deposition which was Exhibit A to Plaintiff's
Complaint see the Deposition Transcript of Weinberger 64:22– 65:16 attached as Exhibit
71 to Supplemental Declaration of Scott Alan Burroughs ¶ 2, Ex. 71:**

Q. Okay. Now, do you want to go back to any pages or any sections of the agreement to
take another look?
MR. WOLFE: Same instruction. ·Don't answer the question. And, again, I'll repeat, I'm
willing to print out all 86 pages and give him the opportunity to read it, not as you're
flipping through, and -- and because any answer that he gives will only misconstrue his
response, which would be inaccurate, unless he had the opportunity to review the
document.
BY MR. BURROUGHS: Have you ever seen this document before?

MR. WOLFE:· Same instruction.

BY MR. BURROUGHS: Okay.· And are you going to take your attorney's instruction and not answer questions about this contract?

A. Yes.

**Page 67:3-68:4**

Q. So do you have a copy of this contract in your records?

MR. WOLFE: Same instruction.

BY MR. BURROUGHS: Have you ever seen a version of this contract with any exhibits or schedules?

MR. WOLFE: Same instruction. 1

BY MR. BURROUGHS: And do you know which songs or albums this exhibit covers?

MR. WOLFE: Same instruction.

BY MR. BURROUGHS: And do you believe that this contract relates in any way to the works at issue in this case?

MR. WOLFE: Same instruction.

BY MR. BURROUGHS: And, again, you're going to take your attorney's instruction and not answer, correct?

A. Excuse me?

Q. You're taking your attorney's -- he can instruct you, but you have to say that, yes, you're taking the instruction --

A. Yes.

Q.  -- in not answering, okay?

A. Yes.

Q. Okay.

**Page 102:6-104:15 regarding Exhibit 4 containing copyright registrations for the works at issue:**

Q. Okay. We're going to put an exhibit in front of you we're going to mark as Exhibit 4.

(WHEREUPON, Defendants' Exhibit 4 was marked for identification.)

BY MR. BURROUGHS: I want you to take a look at it and tell me if you recognize it. I'll scroll through it.· If you want us to go faster or slower, let us know. Okay. Do you need to go back and see any specific pages or look at anything for a longer period of time?

MR. WOLFE:· I'm going to object. You've shown him about 40 pages of documents in a scroll-through fashion. He couldn't possibly take in, comprehend, remember any one of those pages.· It's impossible.

BY MR. BURROUGHS:  Do you need any more time to see any of the pages? We're happy to give you more time, as with all of the exhibits, to -- to review it so you feel comfortable.

MR. WOLFE: Sure. If you want me to print them out, I'll give him the time to do it.

BY MR. BURROUGHS: Do you want to look at any of these pages?

MR. WOLFE:· Same objection.

BY MR. BURROUGHS: Go ahead.

MR. WOLFE:· How would we know which page to look at when you've flipped through 50 pages of documents?

MR. BURROUGHS:· I think it's 32, but, again, if you --

(Cross-talk.)

MR. WOLFE:· That's my point. How would he be able to calculate?

BY MR. BURROUGHS: Do you want to go to any particular page, or no?

MR. WOLFE:· Same objection, and I'm going to instruct him not to answer until you give him the opportunity to read all 32 pages, which I'm happy to do if you want to send me the document, I'll print it out, and I'll give it to him.

BY MR. BURROUGHS: Are you going to take your attorney's instruction?

A. Yes.

Q. All right. So I'll ask you -- so understanding that you are refusing to testify about the matters in Exhibit 4, which appear to me to be ·8· ·copyright registrations, we'll move on and we won't ask questions on those. But, of course, we reserve the right --

MR. WOLFE: Object to form. Live statement.

MR. BURROUGHS: -- to move in limine as mentioned before for the basis given on the record before.

There are other sections in which he similarly refuses to testify. And, as can be seen above, Defendants' counsel provided notice that he would seek to exclude arguments relating to the questions for which only a refusal to testify was provided in response.

E.      **The Jacobi Affidavit must be excluded**

The Jacobi Affidavit must be excluded because Allen Jacobi was an attorney for Defendant Campbell and for Skyywalker Records during the time period that Mr. Jacobi is testifying about. He is testifying about conversations he had while Campbell sought his legal advice during their attorney-client relationship and thus the information disclosed is privileged. This attorney-client relationship is admitted in paragraph 2 of the affidavit which states – "In 1990 and following, I was the transactional lawyer for Luther Campbell and his company; then known as Luke Records Inc." Exhibit B to Plaintiff's Statement of Facts Dkt. 59-2. Lil' Joe uses the Jacobi Affidavit to dispute facts Defendants Statements found in Plaintiff's Response to Statement of Facts Dkt. 59 ¶¶ 4-5, 11-13, 15, 19-20, 24-25, 28-31, 34, 51. Jacobi's affidavit does not sufficiently dispute any of these facts and they should be considered undisputed because Jacobi's testimony is privileged, lacks personal knowledge, and is based on hearsay as described below.

In addition to being privileged, Jacobi's affidavit contains several statements that do not rise to the standards of admissibility under the Federal Rules of Evidence:

| Evidence | Objection |
|---|---|
| 1.  Jacobi's Affidavit Paragraph 3: "[Cambell] specifically said to me that he 'needed to get them under contract,' admitting to me that prior thereto, there was no contract between the company and the members of 2 Live Crew." | Lack of foundation or personal knowledge (FRE 602); No authentication (FRE 901); Hearsay (FRE 802); Privilege (FRE 501). Jacobi did not have personal knowledge of whether the members of 2 Live Crew had a prior contract with Campbell's company but only has knowledge based on hearsay and an inference from a statement that a contracted was "needed." This statement could mean he |

| | |
|---|---|
| | needed a contract for future recordings because a prior agreement had concluded. Further, this communication from Campbell is privileged because it was seeking legal advice during a attorney/client relationship. |
| 2.   Jacobi Affidavit Paragraph 4: <br><br> "I have been shown a contract purportedly made effective, but undated, from 1987 between 'Skyywalker Records Inc.' and the four members of 2 Live Crew. I do not believe this contract is genuinely authentic signed contract for two reasons: 1) the company was not known as 'Skyywalker Records, Inc.' in 1987 but instead 'Luke Skyywalker Records, Inc.' and the name was utilized until 1990, hence the 1991 contract has 'Luke Records, Inc.' the then legal name of the record company; and 2) if this contract was in fact genuine then that would be inconsistent with the statements made by Luther Campbell to me in 1991 that there was no prior contract between the company and the two members of 2 Live Crew." | Lack of foundation or personal knowledge (FRE 602); No authentication (FRE 901); Hearsay (FRE 802); Irrelevant (FRE 403); Privilege (FRE 501). <br><br> Jacobi's opinion on the genuineness of the 1990 Agreement is irrelevant and immaterial, and is based solely on his knowledge regarding the name changes of the Skyywalker entity which have been explained in detail by Campbell. The 1990 Agreement was entered into in 1990 when the name was "Skyywalker Records, Inc." consistent with Jacobi's testimony.  The second portion of Jacobi's statement contains privileged communications as discussed above. It is further inaccurate as there are undisputedly four members of 2 Live Crew not two. |

**F.  The affidavit of Joe Weinberger must be excluded**

The Weinberger Affidavit must be excluded as inadmissible, irrelevant, prejudicial in

violation of Fed. R. Evid. §§ 401-403. Further, it is based on hearsay in violation of Fed. R. Evid. § 802 and privileged communications in violation of Fed. R. Evid. § 501.

The Weinberger affidavit also contains parts that are directly contradicted by his deposition testimony. "[A] district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation." *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 656 (11th Cir. 1984). "When this occurs, the court may disregard the affidavit as a sham." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). The Weinberger's Affidavit is a sham declaration because his previous deposition testimony is contradicted by portions of her declaration. For example: ¶6 "I was its outside counsel from 1988-1991." (See Dkt. 59-5, page 2 ¶2). However, Weinberger's deposition testimony does not say this. He states:

**Weinberger Deposition 132:1-19 attached as Exhibit 71 to Supplemental Declaration of Scott Alan Burroughs ¶ 2, Ex. 71**

Q. Were you involved with them at all in 1998?

A. '98, yes.

Q. What about 1988?

A. Yes.

Q. When -- what was your first involvement with them in 1988?

A. I had met them.

Q. Okay. So other than just meeting them, you had no involvement with them or their careers, correct?

A. Like, I wasn't managing them. They weren't my clients.

Q. Okay. They were just people that you had met, correct?

A. Right.

Q. And the same in 1989?

A. Yes.

Q. And the same in 1990?

A. Yes.

Further, Weinberger states in his declaration that "Pursuant to an Exclusive Recording Agreement dated April 1991, between Luke Records and Chris Wong Won, Exclusive

Recording Agreement dated April 1991, between Luke Records and Mark Ross and David Hobbs, and Exclusive Recording Agreement dated February 1991, between Luke Records and Mark Ross, Chris Wong Won, David Hobbs and Luther Campbell, true and correct copies of each of which are collectively attached to the Complaint as

Exhibit A (collectively, the "1991 Contracts"), each of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs transferred all of their copyright rights to 2 Live Crew's music and trademark rights in 2 Live Crew's cover designs to Luke Records, Inc. f/k/a Skyywalker Records, Inc." However, this is in contradiction with his unambiguous statement that he did not know how the Subject Album copyrights were transferred. This is not a "I do not recall" but a unequivocal "I don't know." His exact testimony is:

**Weinberger Deposition 91:1-3 attached as Exhibit 71 to Supplemental Declaration of Scott Alan Burroughs ¶ 2, Ex. 71**

> Q. How did the members of 2 Live Crew first transfer their copyrights in the subject albums?
>
> A. I don't know.

Finally, the Weinberger's Affidavit contains several statements that do not rise to the standards of admissibility under the Federal Rules of Evidence:

| Evidence | Objection |
|---|---|
| 1.  Weinberger's Affidavit Paragraph 6: "Pursuant to an Exclusive Recording Agreement dated April 1991, between Luke Records and Chris Wong Won, Exclusive Recording Agreement dated April 1991, between Luke Records and Mark Ross and David Hobbs, and Exclusive Recording Agreement dated February 1991, between Luke Records and Mark Ross, Chris Wong Won, David Hobbs and Luther Campbell, true and correct copies of each of which are collectively attached to the Complaint as Exhibit A (collectively, the "1991 Contracts"), each of Luther Campbell, Christopher Wong Won, | lack of foundation or personal knowledge (FRE 602); no authentication (FRE 901); hearsay and double hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403); Privilege (FRE 501). The 1991 Agreements do not state that 2 Live Crew "transferred all of their copyright rights to 2 Live Crew's music and trademark rights in 2 Live Crew's cover designs to Luke Records, Inc. f/k/a Skyywalker Records Inc. The |

| | |
|---|---|
| Mark Ross and David Hobbs transferred all of their copyright rights to 2 Live Crew's music and trademark rights in 2 Live Crew's cover designs to Luke Records, Inc. f/k/a Skyywalker Records, Inc." | Agreement is only prospective looking and for copyrights and records recorded during its forward-looking term. Weinberger has no personal knowledge or foundation regarding the effect of these agreements. He also refused to testify regarding these agreements during deposition and his testimony now is prejudicial and should be stricken. This conflicts with his prior deposition testimony that he does not know how the copyrights were transferred. |
| 2.  Weinberger's Affidavit Paragraph 6: "In these 1991 Contracts, each of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs agreed that the sound recordings at issue in this case are works for hire. Their acknowledgment is accurate, as each of them was an employee of Luke Records and 2 Live Crew's music was prepared within the scope of their employment, as described herein." | lack of foundation or personal knowledge (FRE 602); no authentication (FRE 901); hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403); Privilege (FRE 501).<br><br>The Subject Albums were recorded from 1986-1989 and pre-date the 1991 Agreements. Weinberger did not work for Skyywalker Records until 1991 as stated in paragraph 3 of his declaration and thus has no personal knowledge regarding the employment relationship during the time the Subject Albums were recorded. This conflicts with his prior deposition testimony that he does |

| | |
|---|---|
| | not know how the copyrights were transferred. |
| 3.  Weinberger's Affidavit Paragraph 10: "The 2 Live Crew copyrights transferred to Lil' Joe and me were not abandoned back to Luther Campbell and/or Luke Records." | lack of foundation or personal knowledge (FRE 602); hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403); legal conclusion.   Whether the right of termination was ever part of the estate, and if so, whether it reverted back to the debtor is a legal conclusion and not within the personal knowledge of Weinberger. |
| 4.  Weinberger's Affidavit Paragraph 12: "The 2 Live Crew copyrights transferred to Lil' Joe and me were not abandoned back to Mark Ross." | lack of foundation or personal knowledge (FRE 602); hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403); legal conclusion.   Whether the right of termination was ever part of the estate, and if so, whether it reverted back to the debtor is a legal conclusion and not within the personal knowledge of Weinberger. |
| 5.  Weinberger's Affidavit Paragraph 15: "The Defendants' notice of termination dated November 4, 2020, is defective because: it only refers to an undated contract (transferring the copyrights) supposedly signed in 1990 (the "1990 Contract") not the 1991 Contracts, | lack of foundation or personal knowledge (FRE 602); no authentication (FRE 901); hearsay and (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403); legal conclusion and argument. |

| | |
|---|---|
| and because the 1990 Contract does not mention the transfer of any particular copyrights, as is required by Section 204 of the Copyright Act and nothing was recorded in 1987 which was the only term of the 1990 Contract." | Whether the notice is effective or not is a legal conclusion and not a fact. Weinberger is presenting unlawful argument in his declaration. It also makes misstatements of the law. |
| 6.  Weinberger's Affidavit Paragraph 16: "The members of 2 Live Crew were each "artists for hire" as demonstrated by: (i) the clear language in the 1991 Contracts, (ii) Luke Records' tax and payroll records which show that Luther Campbell was treated as an employee, (iii) Luke Records paid for and controlled all of their recording activities, including the selection of the producers, the studios and paying for all costs associated with same, (iv) as to Luther Campbell, he was the sole owner and CEO of Luke Records, and (v) all of the copyright registrations of the sound recording copyrights at issue (when including the Supplemental Registration) in this case state that the members of 2 Live Crew were artists for hire." | lack of foundation or personal knowledge (FRE 602); no authentication (FRE 901); hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403); legal conclusion and argument. Whether the members of 2 Live Crew were "artists for hire" is a legal conclusion and not a fact. Weinberger is presenting unlawful argument in his declaration. It also makes misstatements of the law. Weinberger does not present the tax and payroll records discussed in the declaration and therefore there is no authentication or personal knowledge. Further, Weinberger was not employed by Skyywalker Records or involved in the recording process or involved in 1986-1989 when the Subject Albums were created so he lacks personal knowledge regarding how recording activities were conduct and the costs were allocated. Thus, he lacks foundation to |

| | |
|---|---|
| | make these statements and they must be based on hearsay. Finally, Weinberger fails to reference or include the copyright registrations of the sound recordings he mentions, and they are thus without authentication or foundation. |
| 7.  Weinberger's Affidavit Paragraph 17:<br>" [The 2 Live Crew members] recorded at studios paid for by Luke Records and controlled by Luke Records. Two of the albums at issue "As Nasty As They Wanna Be" and "As Clean As They Wanna Be" were recorded in a studio owned by Luke Records." | lack of foundation or personal knowledge (FRE 602); no authentication (FRE 901); hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403).<br><br>Weinberger was not employed by Skyywalker Records or involved in the recording process in 1986-1989 when the Subject Albums were created so he lacks personal knowledge regarding how recording activities were conduct, how the costs were allocated, and where the recordings took place. Thus, he lacks foundation to make these statements and they must be based on hearsay. |
| 8.  Weinberger's Affidavit Paragraph 18:<br>"As the in-house attorney and as the tax attorney for Luke Records, I am aware it maintained and treated the members of 2 Live Crew as employees." | lack of foundation or personal knowledge (FRE 602); no authentication (FRE 901); hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403).<br><br>Weinberger was not employed by Skyywalker Records or involved in the |

| | |
|---|---|
| | recording process in 1986-1989 when the Subject Albums were created so his knowledge is limited to 1991 through 1995. Thus, he lacks foundation to make these statements and they must be based on hearsay for the relevant 1986-1989 time period. |
| 9.  Weinberger's Affidavit Paragraph 20: "Luther Campbell personally made every decision on behalf of Luke Records regarding the recording of the 2 Live Crew copyrights at issue in this case, including: the selection of the songs, the studio, the producer, the budget, the expenditure of funds, the mixing, the editing, the album art work, the promotions and the distribution of the records. He maintained regular business hours working from his office within Luke Records' building. The members of 2 Live Crew followed his directions regarding same. All of this is consistent with Luke Records' regular business as a record company, that like 2 Live Crew, it had relationships with other artists in which it controlled the recording, promotion and distribution of recordings." | lack of foundation or personal knowledge (FRE 602); no authentication (FRE 901); hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403). Weinberger was not employed by Skyywalker Records or involved in the recording process in 1986-1989 when the Subject Albums were created so his knowledge is limited to 1991 through 1995. Thus, he lacks foundation to make these statements and they must be based on hearsay for the relevant 1986-1989 time period. Further, it is immaterial what Campbell's role as CEO was when his work as a member of 2 Live Crew was distinct and outside the scope of his duties as CEO. |
| 10.     Weinbeger's Affidavit Paragraph 21: "Luke Records provided extensive employee benefits to Luther Campbell including workers compensation, health care insurance and a profit sharing plan." | lack of foundation or personal knowledge (FRE 602); no authentication (FRE 901); hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403). |

| | Weinberger was not employed by Skyywalker Records or involved in the recording process in 1986-1989 when the Subject Albums were created so he lacks personal knowledge regarding how recording activities were conduct, how the costs were allocated, and where the recordings took place. Thus, he lacks foundation to make these statements and they must be based on hearsay with respect to the relevant time period. |
| --- | --- |
| 11.    Weinberger's Affidavit Paragraph 22: "Luther Campbell regularly signed checks and contracts as the CEO and sole owner of Luke Records, whose signature was binding upon Luke Records." | lack of foundation or personal knowledge (FRE 602); no authentication (FRE 901); hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403). Weinberger was not employed by Skyywalker Records or involved in the recording process in 1986-1989 when the Subject Albums were created so he lacks personal knowledge regarding how recording activities were conduct, how the costs were allocated, and where the recordings took place. Thus, he lacks foundation to make these statements and they must be based on hearsay with respect to the relevant time period. |
| 12.    Weinberger's Affidavit Paragraph 24: | lack of foundation or personal |

| | |
|---|---|
| "Luther Campbell, unlike the other members of 2 Live Crew, was not paid an artist royalty but his compensation was solely as the CEO of Luke Records for which Federal employee income tax, FICA (payroll taxes) and MICA (Medicare taxes) were withheld and unemployment taxes (FUTA and SUTA) were paid to the IRS and the State of Florida." | knowledge (FRE 602); no authentication (FRE 901); hearsay (FRE 802); inadmissible, irrelevant, prejudicial (FRE 401-403). Weinberger was not employed by Skyywalker Records or involved in the recording process in 1986-1989 when the Subject Albums were created so he lacks personal knowledge regarding how recording activities were conduct, how the costs were allocated, and where the recordings took place. Thus, he lacks foundation to make these statements and they must be based on hearsay with respect to the relevant time period. |

### G. Affidavit of Herman Moskowitz

The following evidence in and attached to the Affidavit of Herman Moskowitz in support of Plaintiff's Opposition to Summary Judgment Motion should not be considered by the Court:

| Evidence | Objection |
|---|---|
| 1. Moskowitz's Affidavit Paragraph 4: "Pursuant to an Exclusive Recording Agreement dated April 1991, between Luke Records and Chris Wong Won, Exclusive Recording Agreement dated April 1991, between Luke Records and Mark Ross and David Hobbs, and Exclusive Recording Agreement dated | Lack of foundation or personal knowledge (FRE 602); No authentication (FRE 901); Hearsay (FRE 802).<br><br>The 1991 Agreements do not state that 2 Live Crew "transferred all of their |

| | |
|---|---|
| February 1991, between Luke Records and Mark Ross, Chris Wong Won, David Hobbs and Luther Campbell, true and correct copies of each of which are collectively attached to the Complaint as Exhibit A (collectively, the "1991 Contracts"), each of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs transferred all of their copyright rights to 2 Live Crew's music and trademark rights in 2 Live Crew's cover designs to Luke Records, Inc. f/k/a Skyywalker Records, Inc .. In these agreements, each of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs agreed that their sound recordings are works made for hire." | copyright rights to 2 Live Crew's music and trademark rights in 2 Live Crew's cover designs to Luke Records, Inc. f/k/a Skyywalker Records Inc. The Agreement is only prospective looking and for copyrights and records recorded during its forward-looking term. Moskowitz has no personal knowledge or foundation regarding the effect of these agreements, it is not clear if he has ever even seen these agreements. Moskowitz is neither a lawyer nor a party to the agreement, and thus, has no personal knowledge regarding the agreement's terms or effect. The statement that the parties agreed that their sound recordings are works made for hire is both a legal conclusion without foundation, and again would only refer to future recordings not past recordings. |
| 2. Moskowitz's Affidavit Paragraph 5: "Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs' acknowledgment is accurate, as each of them was an employee of Luke Records and the 2 Live Crew music whose copyright rights were transferred to Luke Records were prepared within the scope of their employment with Luke Records. Attached hereto as Exhibit 2 is a representation sample of payroll | Lack of foundation or personal knowledge (FRE 602); No authentication (FRE 901); Hearsay (FRE 802). Moskowitz's declaration lacks foundation as to how he knows the Luke Records was an employer of the members of 2 Live Crew. He did not have an intimate understanding of their |

| | |
|---|---|
| checks to Luther Campbell, Christopher Wong Won, and Mark Ross from Luke Records. For all payroll checks, Federal income taxes, and the statutory Fica and Medicare taxes were withheld. The company's share of the payroll taxes was paid by Luke Records." | relationship. Further, the "payroll checks" purportedly attached to Exhibit 2 have not been provided or attached and therefore must be disregard including any representation that Federal income taxes, and the statutory Fica and Medicare taxes were withheld because Defendants have no way of knowing what checks he is referring to. Further, the only checks that might possibly exist would be dated after the Subject Albums were created and thus cannot be used as evidence of the parties relationship at the time the Subject Albums were created. |

## H.      Conclusion

For the foregoing reasons, Defendants respectfully request the identified paragraphs from Plaintiffs' supporting affidavits be disregarded or stricken.


Dated: January 25, 2023                          Respectfully submitted,

                                                 By: */s/ Scott Alan Burroughs*
                                                 Scott Alan Burroughs, Esq.
                                                 (admitted *pro hac vice*)
                                                 DONIGER / BURROUGHS
                                                 237 Water Street, First Floor
                                                 New York, New York 10038
                                                 (310) 590 – 1820
                                                 scott@donigerlawfirm.com

                                                 *-with-*

                                                 Joel B. Rothman, Esq.
                                                 SRIP LAW
                                                 21301 Powerline Road, Suite 100

Boca Raton, Florida 3343
(561) 404-4350
joel.rothman@sriplaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 25, 2023, a true and authentic copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:    <u>*/s/ Scott Alan Burroughs*            </u>

Scott Alan Burroughs