UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LIL' JOE RECORDS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:21-CV-23727-DPG |
| | ) |
| MARK ROSS; et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS IN SUPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Defendants, Mark Ross, Luther Campbell, Anissa Wong Won, Christopher Wong Won, Jr., Roderick Wong Won, and Leterius Rey ("Defendants"), hereby respond to and request the court disregard Plaintiff Lil' Joe Records, Inc.'s ("Lil' Joe") objections to Defendants' evidence found in Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

Lil' Joe argues Campbell and Ross lacked personal knowledge in its Motion (Plt. Opp. at 19, Section VII) and disputes the credibility of their statements in its Separate Statement of Material Facts in relation to their deposition testimony (Plaintiff's Response to Statement of Material Fact ¶¶ 4, 5, 10-14[1], 16, 19, 24, 28-32, 45, 50, 55). Lil' Joe's assertion in its Response to Defendants' Separate Statement that Campbell testified he did not recall the terms of the oral agreement during his deposition is false. See Campbell Deposition Transcript 23:9-18 attached to Supplemental Declaration of Scott Alan Burroughs as Exhibit 73:

> Q. Is it fair to say you don't recall any of the terms of the verbal contract between you in one hand and the members of 2 Live Crew on the other?
> A. There was a verbal contract with the members before we went into the studio, as we went in the studio, paid a royalty, the verbal agreements as to how everybody get paid, whether it was performing on a record and performing live.

See also, Ross Deposition Transcript 7:9-23 attached to Supplemental Declaration of Scott Alan Burroughs as Exhibit 72:

> Q. And at that time was there a contract between you and the other members of 2 Live Crew on one hand and Luther Campbell or Luke records on the other?
> MR. BURROUGHS:· Go ahead.
> THE WITNESS: We had a verbal contract.
> BY MR. WOLFE: When did you reach the verbal contract?

---

[1] Lil' Joe disputes Fact 14, stating "Scott Burroughs, as Defendants' counsel, would have no personal knowledge what documents were in Lil' Joe's possession" however, this is a misreading of Defendants' evidence. Defendants cite the Burroughs Declaration paragraphs 67, 69 and Exhibit 70.  These paragraphs state verbatim portions of Weinberger's deposition which Mr. Burroughs took and Exhibit 70 is a highlighted excerpt of the deposition transcript illustrating the same. The fact is not in dispute as the Weinberger stated the fact in deposition, and it is not a statement of fact by Mr. Burroughs.

> A. When we made that record.
> Q. And what were the terms of the verbal contract?
> A. The verbal contract was we were going to make the records and we were going to give it to Luke to put it out, make the record, put it out, get some money.

Ross Deposition Transcript 33:8-19

> Q. So let's talk about this verbal agreement. I already asked you about the terms. Do you know about when the verbal agreement was entered into?
> A. The verbal agreement of our first album, 2 Live Is What We Are.
> Q. So it was before 1986?
> A. Yes.
> Q. And who were the parties to the verbal agreement?
> A. The group.

Lil Joe also disputes these facts in part because it contends Ross didn't recall any transfer of his copyright in his deposition. This is not true as the following deposition excerpts illustrate.

Ross Deposition Transcript 40:15-24

> Q. Did you ever enter into a written agreement with Skyywalker Records confirming those three oral agreements?
> MR. WOLFE: Object to the form.
> THE WITNESS: There was an agreement when he signed -- when he came up with Skyywalker Records. Yes, there was an agreement, I think somewhat after I think the third album. After the Nasty As You Want To Be.

Ross Deposition Transcript 42:3-19

> Q. Does this refresh your recollection as to whether you entered into a written contract with Skyywalker Records confirming the oral agreements related to the first three albums?
> A. Yes.
> Q. Did you enter into a written agreement?
> A. Yes.
> Q. And did that cover the first three albums?
> A. Yes, it did.
> Q. And did that confirm the prior verbal agreements that you reached with the other members of 2 Live Crew and the label?
> MR. WOLFE: Object to the form.
> THE WITNESS: Yes, yes.

Ross Deposition Transcript 43:4-17:

> Q. Does this refresh your recollection that you, Mr. Campbell, and Mr. Wong Won

> entered into an agreement with Skyywalker agreements in or around 1990?
> MR. WOLFE: Object to the form.
> THE WITNESS: Yes.
> BY MR. BURROUGHS: Okay. So did you and the other members of 2 Live Crew enter into a contract with Skyywalker Records in 1990 that confirmed your oral agreement relating to the first three albums?
> A. Yes.

Campbell also confirmed the transfer in his deposition - Campbell Deposition Transcript 27:2-12
> Q. Is there any written agreement between the members of 2 Live Crew and your companies, whether it is Luke Skyywalker, Skyywalker or Luke Records, in which they transferred to your companies, the copyrights to 2 Live Crew Is What We Are?
> A. Yes.
> Q. What contract is that?
> A. That was a contract that we did, I think in 1990. I think in 1990 we did a contract that covered all three of those albums.

Campbell and Ross are the only witnesses identified by either party to have personal knowledge regarding the recording of the Subject Albums, what agreements were made at that time, and when contracts were executed. None of Lil' Joe's witnesses Jacobi and Weinberger were involved until at the earliest 1990 by their own admission (Jacobi Affadavit ¶ 2 (Dkt. 59-2); Weinberger Affadavit ¶ 3; (Dkt. 59-5) and therefore lack personal knowledge to testify regarding any of the events between 1986 and 1989 when the Subject Albums were recorded. Ross and Campbell can competently speak to the terms of the oral agreements and their declarations do not contradict anything stated in their depositions. Lil' Joe's challenge to their testimony fails because a court can only disregard a declaration to the extent it materially and expressly contradicts previous deposition testimony, not simply because a deponent is unable to recollect certain facts during deposition. *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1237 (11th Cir. 2010). The mere fact that they could not recall a fact the day of their deposition does not preclude them from later recollection. *Long-Hall v. USA Ready Mix*, No. 1:08-CV-1546-CAP-AJB, 2010 WL 11496945, at *7 (N.D. Ga. Feb. 2, 2010), report and recommendation adopted, No. 1:08-CV-1546-CAP-AJB, 2010 WL 11507392 (N.D. Ga. Mar. 3, 2010)(Plaintiff's recollection of specific dates in the declaration differing from the deposition testimony about not recalling the date of events, does not create a sham declaration.")

    The Sham Affidavit rule is "sparingly" applied because: (1) the rule has a "harsh effect ...

on a party's case"; and (2) " '[t]o allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the ... affiant ... was stating the truth.' " Id. (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986)). Thus, "[m]ore likely than not, a discrepancy between a party's former and latter testimony goes to the weight, not the admissibility of the evidence." *Dinkins v. Charoen Pokphand USA, Inc.*, 133 F. Supp. 2d 1237, 1248 (M.D. Ala. 2001).

An affidavit may be disregarded only when the party: (1) gives clear answers to unambiguous questions which negate a genuine issue of material fact; and (2) the party subsequently tries to create an issue of material fact with an affidavit that contradicts prior testimony without explanation. *Tippens*, 805 F.2d at 954 (citing *Van T. Junkins & Assocs.*, 736 F.2d at 657). Lil' Joe bears "a heavy burden in order to exclude an affidavit under the sham affidavit rule." *In re Stand 'N Seal, Products Liability Litig.,* 636 F. Supp. 2d 1333, 1335 (N.D. Ga. 2009) (Thrash, J.).

Lil' Joe have not met their heavy burden. Here, Lil' Joe identifies contradictions between Plaintiff's deposition and her affidavit: (1) Defendants didn't recall some terms of their agreements (as illustrated above they recalled more than Lil' Joe presented to the Court) and provided those terms in their declaration; (2) Defendants' didn't recall how they were paid and how much during their deposition, they provided the manner but not the amount in their declaration. Lil' Joe's identification of these inconsistencies/contradictions does not require that either Campbell or Ross' declaration be deemed a sham for the reasons that follow.

First, any inconsistency between their deposition and their declaration regarding the terms of the agreements does not render the declaration a sham. Campbell and Ross' deposition testimony is not clear and unambiguous because they provide various terms as illustrated above of the oral agreement but could not recall others. This is not inconsistent given the agreement was over 30 years ago and it would be quite harsh to expect them to remember every detail, and that their memory would be refreshed as discovery in this case progressed.

Further, Defendants could not recall at deposition but did not contradict or give an inconsistent response regarding the manner in which they were paid under the oral and then 1990 Agreements during deposition, and the details of royalties provided in their declarations.  Tha Defendants were not able to recall the amount or manner of payment during their deposition is

not surprising, and this lack of recollection is not clear or unambiguous testimony about when she complained. See *Rollins*, 833 F.2d at 1530 (noting that not every lapse of memory renders a decision a sham); *Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 & n.14 (11th Cir. 1986) (finding testimony neither clear nor unambiguous where plaintiff could not definitely recall working at an employer during certain years); *Dinkins*, 133 F. Supp. 2d at 1248 (noting that depositions "rarely evince a deponent's sincerity, full memory, or range of perception"). As a result, the Defendants' deposition testimony does not provide unambiguous responses that negate a genuine issue of fact related regarding the manner of payment or the terms of their oral agreement.

Dated: January 25, 2023

Respectfully submitted,

By: */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
(admitted *pro hac vice*)
DONIGER / BURROUGHS
237 Water Street, First Floor
New York, New York 10038
(310) 590 – 1820
scott@donigerlawfirm.com

-*with*-

Joel B. Rothman, Esq.
SRIP LAW
21301 Powerline Road, Suite 100
Boca Raton, Florida 3343
(561) 404-4350
joel.rothman@sriplaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 25, 2023, a true and authentic copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: */s/ Scott Alan Burroughs*
Scott Alan Burroughs