# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23727-DPG

LIL' JOE RECORDS, INC.,

      Plaintiff,

v.

MARK ROSS, CHRISTOPHER WONG
WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON
and LUTHER CAMPBELL,

      Defendants

_____/

## SUR-REPLY TO DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Lil' Joe Records, Inc. ("Lil' Joe"), hereby files this sur-reply to the reply filed by defendants, Mark Ross ("Ross"), Christopher Wong Won, Jr., Roderick Wong Won, Leterius Ray, Anissa Wong Won and Luther Campbell ("Campbell"), which is contained in the Reply in Support of Motion for Summary Judgment [DE 62](the "Reply") and the Evidentiary Objections in Support of their Motion for Summary Judgment [DE 62-13]("Objections"), with regard to Defendants' Motion for Summary Judgment and Request for Oral Argument [DE 53], as follows:

<u>Affirmative Defenses</u>

Defendants raise, for the very first time, the statute of limitations, laches, estoppel, and lack of standing to support their contention that the copyrights at issue were transferred by agreements purportedly signed in 1990, as defendants contend, and not the agreements signed in 1991, as Lil Joe asserts. Reply at p. 4.

Defendants' motion for summary judgment, as to the copyright termination question, is based upon their "first counterclaim for a declaratory judgment validating 2 Live Crew's termination…." Defendants' Motion for Summary Judgment and Request for Oral Argument [DE 53] at p. 1. The defenses that the defendants now raise are defenses to Lil' Joe's count for declaratory relief. Answer and Counterclaim [DE 12] at pp. 10-11, ¶¶ 120, 126 & 127. They do not apply to defendants' counterclaim upon which its summary judgment motion is based, *Center for Individual Rights v Chevaldina,* 2017 U.S. Dist. LEXIS 106476 \*3-4 (S.D. Fla. July 11, 2017)("An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter."); *Hernandez v County of Monterey,* 306 F.R.D. 279, 283 (N.D. Cal. 2015)("An affirmative defense … precludes liability even if all of the elements of the plaintiff's claim are proven."), and therefore have no place here.

Nonetheless, defendants raise these defenses, for the first time, in their Reply. Reply at pp. 4-5. Even IF these defenses applied, they are of no consequence.

(i)      Statute of Limitations

As defendants acknowledge, the limitations period for a copyright claim is 3 years. Reply at p. 4; 17 USC §507(b)(defendants mistakenly cite as 407(b)). For a claim concerning copyright ownership, the "claim accrued when [the plaintiff] knew, or should have known, that his ownership rights … were being violated." *Webster v Dean Guitars,* 955 F.3d 1270, 1276 (11th Cir. 2020). When the issue is whether a Section 203 notice of termination is valid, like here, the claim accrues on the date of the notice of termination. *Baldwin v EMI Feist Catalog, Inc.,* U.S. Dist. LEXIS 201053 \*7 (S.D. Fla. Dec. 11, 2012); Report and Recommendation on the Parties' Motions for Summary Judgment [DE 96], *Finch v Casey,* United States Dist. Ct. So. Dist. Fla. Case No. 22-20144-CIV-GAYLE/TORRES. "**By purporting to serve a valid §203 notice upon Defendant,**

2

which notice Defendant has repudiated, Plaintiffs have created a controversy as to whether 'the future rights that will revert upon termination of the grant have become vested,' as provided by the statute. 17 U.S.C. § 203(b)(2). This controversy is therefore ripe and non-speculative, and the Court has jurisdiction to adjudicate it." *Baldwin,* U.S. Dist. LEXIS 201053 at *7-8. The notice of termination here is dated November 4, 2020, Complaint [DE 1] at p. 6, ¶ 27; Motion for Summary Judgment and Request for Oral Argument [DE 53] at p. 3, and the complaint here was filed on October 21, 2021, Complaint [DE 1], well within the limitations period.

(ii)    Laches

Having brought this claim within the limitations period, laches does not preclude it. "[I]n face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief…" *Petrella v Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 679, 134 S.Ct. 1962, 188 L.Ed. 2d 979 (2014).

Even if laches applied, it would not prevent Lil' Joe's claim. The authority cited by defendants, *Venus Lines Agency, Inc. v CVG International America, Inc.,* 234 F.3d 1225, 1230 (11th Cir. 2000), says "[t]he equitable doctrine of laches will bar a claim when three elements are present: '(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.'" There was no delay here, this action was commenced within one year of defendants' notice of termination. Even if waiting less than one year to bring this claim could conceivably be considered delay, there is not a shred of proof of any undue prejudice to defendants, so much so that  defendants do not even try to show any undue prejudice.

(iii)    Estoppel

Citing to *HGI Associates, Inc. v Wetmore Printing Co.,* 427 F.3d 867 (11th Cir. 2005), defendants claim that copyright estoppel applies here. Defendants twelfth affirmative defense is "the doctrine of estoppel." Answer and Counterclaim at p. 11, ¶ 8. Whether this means copyright estoppel or just plain estoppel is of no consequence, neither applies here.

"Copyright estoppel applies when the alleged infringer can show that (1) the copyright owner knew the facts of the infringement, (2) the copyright owner intended its conduct to be acted upon or the copyright owner acted such that the alleged infringer has a right to believe it was so intended, (3) the alleged infringer is ignorant of the true facts, and (4) the alleged infringer relies on the copyright owner's conduct to his detriment." *HGI,* 427 F.3d at 875. Copyright estoppel existed in *HGI* where Wetmore intentionally misled HGI into believing it was purchasing royalty-free software. *Id.* Here, on the other hand, none of the elements are met. There is no infringement claim here concerning the copyrights subject of the termination notice, so neither Lil' Joe nor defendants knew of any infringement, and no effort to show that this exist was made. Defendants notice of termination is dated November 4, 2020, and defendants proffer no facts to show how Lil' Joe did anything whatsoever after that date to induce defendants to do anything whatsoever to their detriment.

"The essential elements of estoppel are '(1) a representation as to a material fact that is contrary to a later asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *Lloyds Underwriters at London v Keystone Equipment Finance Corp.,* 25 So. 3d 89, 93 (Fla. 4th DCA 2009). None of these elements are shown here, no representation by Lil' Joe, no reliance by defendants and no detriment.

(iv)    Standing

"[T]he standing doctrine requires that a plaintiff have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Mack v USAA Casualty Ins. Co.,* 994 F.3d 1353, 1356 (11th Cir. 2021). "The allegations necessary to establish standing depend on the type of relief sought." *Id.* For "a declaratory judgment, he must 'allege facts from which it appears there is a substantial likelihood that he will suffer in the future." *Id.* at 1357. "And that future injury must be 'real,' 'immediate,' and 'definite.'" *Id.* It is without doubt that absent a declaration whether defendants have Section 203 termination rights, and if they do whether they properly exercised them, all of the parties will suffer real, immediate and definite consequences as there will be competing claims to who controls the copyrights at issue.

Once again, defendants' reply is in support of its motion for summary judgment which, as to the copyright termination question, is based upon their counterclaim for declaratory relief. Defendants' Motion for Summary Judgment and Request for Oral Argument [DE 53] at p. 1 ("Defendants/Counterclaimant's first counterclaim for declaratory judgment validating 2 Live Crew's termination should be adjudicated in Defendants' favor."). On this claim, defendants are the claimant, they need to have standing, not Lil' Joe.

Standing exists for both Lil' Joe's and defendants' mirror image requests for declaratory relief. If standing does not exist for Lil' Joe, then it likewise does not exist for defendants.

Curiously, defendants make no argument, and provide no law, to support their standing contention. Rather, they simply and conclusory say that "Lil' Joe also fails to address, let alone refute, this argument in its opposition and it is thus conceded." Reply at p. 4 n 8. Nowhere does the Defendants' Motion for Summary Judgment and Request for Oral Argument [DE 53] mention

standing, so there was nothing for Lil' Joe to address. In *Bernstein v Georgia Dept. of Education*, 970 F.Supp. 2d 1340, 1354 (N.D. Ga. 2013), cited by defendants, a party failed to address an argument made, which "silence is dispositive as to this argument." Here, there was no argument to address.

### No present value of termination rights

Defendants contend, for the first time in their reply, that because there was no present value to the termination rights at the time of Campbell's and Ross' bankruptcies, they were not assets of their respective bankruptcy estates. Reply at p. 6. The cases defendants cite do not support this contention.

*In re: Satterwhite*, 271 B.R. 378, 379 (Bankr. W.D. Mo. 2002), was a Chapter 13 case, not a Chapter 7 as was Campbell's and Ross' bankruptcies to which different rules apply. The *Satterwhite* court considered how the debtor's right to receive a portion of her former spouse's military pension plays in her Chapter 13 plan. *Id.* at 379-82. The Bankruptcy Code explicitly states that a transfer restriction on the beneficial interest of the debtor in a trust excludes that asset from becoming a part of the debtor's estate. 11 USC §541(c)(2). The *Satterwhite* court concluded that the former spouse's military pension is a qualifying trust so its transfer restriction prevents it from becoming an asset of the debtor's estate. 271 B.R. at 382. *Satterwhite* has nothing to do with the issues here, there is no pension involved so the special rules regarding pensions are of no consequence. The Bankruptcy Code, however, also explicitly provides that, except for this exclusion for trust benefits, "an interest of the debtor in property becomes property of the estate … notwithstanding any provision in … applicable nonbankruptcy law … that restricts or conditions transfer of such interest by the debtor…." 11 USC §541(c)(1)(A). Therefore, the

6

transfer restriction in the copyright act does not prevent a debtor's Section 203 termination rights from becoming an asset of their estate.

To confirm a Chapter 13 plan, the value of the property to be distribute to unsecured creditors must be not less than the amount they would be paid in a Chapter 7 liquidation. *Satterwhite*, 217 B.R. at 379-80 (citing 11 U.S.C. §1325(a)(4)). The *Satterwhite* court alternatively found that, even if the former spouse's military pension was an asset of the debtor's estate, the plan proposed meets this qualifying criteria. *Id.* at 382. The pension payments "only have value when they become due and payable each month." *Id.* "As such, Ms. Satterwhite is not required to pay the present value of her future right to receive these pension benefits to her unsecured creditors." *Id.* Defendants provide no support for their assertion that "Termination rights have no present value…." Reply at p. 6. To the contrary, unvested options are traded for value on markets throughout the world every single day. But this is of no consequence, as the value of the termination rights is of no issue in Campbell's and Ross' bankruptcies, which were not in Chapter 13.

*In re Harter*, 10 B.R. 272, 273 (Bankr. N.D. Ind. 1981), considered a trustee's application for turnover of the debtor's Army retirement benefits to his Chapter 7 bankruptcy estate. "[F]uture wages do not constitute property at the time of the filing of the debtor's petition…." *Id.* at 274. "The military retirement benefits in the case at bar are paid monthly on the contingency that the debtor is alive on the first day of each month." *Id.* Consequently, they were viewed as future wages which are not a part of the debtor's estate. *Id.* at 275.

Neither *Satterwhite* nor *Harter* address whether Section 203 termination rights are property of a bankruptcy estate, nor do they pronounce the broader concept espoused by defendants that "if there is no value to the present asset, exclude the asset from the bankruptcy estate." Reply at p. 6.

<u>Joseph Weinberger's deposition</u>

Defendants complain about certain responses during Joseph Weinberger's ("Weinberger") deposition which occurred on October 26, 2022. First of all, if defendants had any issue with the deposition, they needed to raise it by November 23, 2022. S.D.Fla. L.R. 26.1 (g)(2)(A)(iii). "The local rules promulgated under Rule 83 of the Federal Rules of Civil Procedure have the force of law." *Living Legends Retirement Center, Inc. v Lexington Ins. Co.,* U.S. Dist. LEXIS 50813 *2-3 (S.D. Fla. May 20, 2005). "[S]trict, consistent, 'bright-line' enforcement is essential to obtaining compliance with the rules and to ensuring that long-run aggregate benefits in efficiency inure to district courts" *Id.* at *3. Defendants raise this on January 25, 2023, Objections at p. 4, way too late.

Even if this was timely raised, defendants have nothing to complain about. Weinberger simply insisted on being provided with a copy of an exhibit before being required to answer questions about it.

This deposition was conducted by Zoom. Transcript of October 26, 2022, deposition of Joseph Weinberger ("Weinberger Transcript"), a copy of which is attached hereto as Exhibit _, at pp. 1 & 6. Rather than having a copy of the exhibits defendants used physically present at the location where Weinberger was testifying, defendants chose to show them to Weinberger on the Zoom screen. Weinberger Transcript at pp. 60-64 & 102-103.

Exhibit 2 is _ pages long. Weinberger Transcript at p. 60, Exhibit 2. When scrolling through this __ page exhibit on the Zoom screen, Weinberger noticed "I don't think this is an accurate document. I think it's two documents that are pieced together." Weinberger Transcript at p. 61. Defendants' counsel then told Weinberger "I want you to see the whole exhibit and tell me if you

see any other discrepancies or issues with the agreement." Weinberger Transcript at p. 62. Because

Weinberger did not have the full document to do so, his counsel raised the following objection:

> MR. WOLFE: No. Here's my objection. I would like him to read the whole document, not as to being scrolled. If you'd like, I could print the document, show it to him, and give him an opportunity to read it.
> MR. BURROUGHS: We're going to do that on the record. If you-again, you can take as much time as you need.
> MR. WOLFE: Let me print out the document and give it to him. If you-the first one you showed him was a 29-page document that you scrolled through and didn't give him an opportunity to really read.

Weinberger Transcript at p. 62. Defendants, despite saying they would do so, did not provide

Weinberger with a copy of the exhibit so he could print it out himself, as he repeatedly requested.

Accordingly, Weinberger's counsel informed Defendants' counsel:

> You're showing him 86 pages of three different contracts that you're flipping through at a speed that no one can possibly read them and comprehend them. So, therefore, I am instructing him not to answer the questions until he's had the opportunity to review all 86 pages, which I'm willing to print out and give him that opportunity to do so, but you've refused that request, so I am instructing him not to answer any questions at this time under these circumstances.

Weinberger Transcript at p. 64. It is immediately after these requests to provide Weinberger with

the exhibit he is being asked questions about, which defendants refusal to do, that defendants'

counsel asks the question they complain about, Objections at pp 5-6:

> Q.      Okay. Now do you want to go back to any pages or any sections of the agreement to take another look?
> MR. WOLFE: Same instruction. Don't answer the question. And, again, I'll repeat, I'm willing to print out all 86 pages and give him the opportunity to read it, not as your flipping through....

Weinberger Transcript at p. 65. Defendants would have answers to their questions if they had

followed the protocol in depositions for time immemorial, and required at trial, to show the witness

a document he is being asked questions about. *Collins v International Dairy Queen, Inc.,* 1998

U.S. Dist. LEXIS 8254 *9 (M.D. Ga. June 3, 1998)(a copy of all documents shown to the witness should be provided to the witness and his counsel).

Defendants did the same thing with Exhibit 4, which is 32 pages long, Weinberger Transcript at p. 103, refusing to provide Weinberger with a copy. Once again, Weinberger's counsel complained:

> MR. WOLFE: I'm going to object. You've shown him about 40 pages of documents in a scroll-through fashion. He couldn't possibly take in, comprehend, remember any one of those pages. It's impossible.

Weinberger Transcript at p. 102. The solution to this is patently obvious, give the witness the exhibit, which Weinberger's counsel pleaded for:

> Give him the opportunity to read all 32 pages, which I'm happy to do if you want to send me the document, I'll print it out, and I'll give it to him.

Weinberger Transcript at p. 103. Defendants have no basis to complain – all they had to do was provide Weinberger with the exhibits they were asking questions about, which Weinberger repeatedly asked them to do.

A "Rule 30(b)(6) deposition is not a memory test, and 'absolute perfection is not required of a witness.'" *Fuentes v Classica Cruise Operator Ltd., Inc.,* 32 F.4th 1311, 1322 (11th Cir. 2022). A "deponent does not have to successfully answer every question posed by the opposing party in order to complete a deposition." *Lebron v Royal Caribbean Cruises, Ltd*., 2018 U.S. Dist. LEXIS 151439 *7 (S.D. Fla. Sept. 6, 2018). A witness is not expected to "have computer-like memory." *Id.*

It is illustrative that none of the cases Defendants cite in the Objections even address a witness's obligation to testify about a document without being given the opportunity to review the document. *Wausau Underwriters Ins Co. v Danfoss, LLC,* 310 F.R.D. 683 (S.D. Fla. 2015), *Don Goyo Aviation Corp. v Catlin Ins. Co.,* 2018 U.S. Dist. LEXIS 168100 (S.D. Fla. Sept. 27 2018),

*Fraser Yachts Florida, Inc. v Milne,* 2007 U.S. Dist. LEXIS 27546 (S.D. Fla. April 13, 2007) and *Chick-fil-A v ExxonMobil Corp.,* 2009 U.S. Dist. LEXIS 109588 (S.D. Fla. Nov. 10, 2009), each address who is an appropriate witness under Fed. R.Civ. P. 30(b)(6) and whether that witness was properly prepared. There is no doubt that Weinberger fits the bill. Interestingly, the court in *Wausau* recognized that a deposition is not a memory contest, finding it appropriate for a witness to rely on an outline to recall facts to answer questions. 310 F.R.D. at 688 ("They were complicated subject matters and beyond Ms. Clark's ability to memorize."). Weinberger did not have, and it is unrealistic to expect him to have, all of these documents committed to memory so that he could answer questions concerning what they say without having a copy provided to him. Further, *Chick-fil-A* recognized that "[s]imply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witness." 2009 U.S. Dist. LEXIS 109588 at * 38. This is especially true here where the inability to answer was caused by defendants not providing a copy of the documents.

<u>Conclusion</u>

For the foregoing reasons, this Court should deny Mark Ross, Christopher Wong Won Jr., Roderick Wong Won, Leterius Ray, Anissa Wong Won and Luther Campbell's Motion for Summary Judgment [DE 53].

WOLFE LAW MIAMI PA
175 SW 7th Street, Suite 2410
Miami, Florida 33130
P: 305.384.7370
F: 305.384.7371
Email: <u>rwolfe@wolfelawmiami.com</u>

By:      /s/ Richard C. Wolfe
         Richard C. Wolfe, Esq.
         Florida Bar No.: 355607

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January __, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

Joel Rothman, Esq.
SRIP LAW PA
21301 Powerline Road, Ste 100
Boca Raton, Florida 33433
joel.rothman@sriplaw.com

Scott Burroughs, Esq.
Doniger/Burroughs
237 Water Street, First Floor
New York, NY 10038
scott@donigerlawfirm.com

/s/ Richard C. Wolfe<br>Richard C. Wolfe