UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23727-DPG

LIL' JOE RECORDS, INC.,

     Plaintiff,

v.

MARK ROSS, CHRISTOPHER WONG
WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON
and LUTHER CAMPBELL,

     Defendants

_____/

### RESPONSE TO DEFENDANTS' EVIDENTIARY OBJECTIONS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiff, Lil' Joe Records, Inc. ("Lil' Joe"), hereby responds to the Evidentiary Objections in Support of Their Motion for Summary Judgment [DE 62-13](the "Motion") filed by Defendants, Mark Ross ("Ross"), Christopher Wong Won, Jr., Roderick Wong Won, Leterius Ray, Anissa Wong Won and Luther Campbell ("Campbell"), as follows:

Joseph Weinberger's deposition

Defendants complain about certain responses during Joseph Weinberger's ("Weinberger") deposition which occurred on October 26, 2022. First of all, if defendants had any issue with the deposition, they needed to raise it by November 23, 2022. S.D.Fla. L.R. 26.1 (g)(2)(A)(iii). "The local rules promulgated under Rule 83 of the Federal Rules of Civil Procedure have the force of law." *Living Legends Retirement Center, Inc. v Lexington Ins. Co.,* U.S. Dist. LEXIS 50813 *2-3 (S.D. Fla. May 20, 2005). "[S]trict, consistent, 'bright-line' enforcement is essential to obtaining

compliance with the rules and to ensuring that long-run aggregate benefits in efficiency inure to district courts" *Id.* at *3. The Motion, filed on January 25, 2023, is just way too late.

Defendants have nothing to complain about. Weinberger simply insisted on being provided a copy of an exhibit before being required to answer questions about it.

This deposition was conducted by Zoom. Transcript of October 26, 2022, deposition of Joseph Weinberger ("Weinberger Transcript"), a copy of which is attached hereto as Exhibit 1, at pp. 1 & 6. Rather than having a copy of the exhibits defendants' used physically present at the location where Weinberger was testifying, defendants chose to show them to Weinberger on the Zoom screen. Weinberger Transcript at pp. 60-64 & 102-103.

Exhibit 2 is 29 pages long. Weinberger Transcript at p. 60, Exhibit 2. When scrolling through this 29-page exhibit on the Zoom screen, Weinberger noticed "I don't think this is an accurate document. I think it's two documents that are pieced together." Weinberger Transcript at p. 61. Defendants' counsel then told Weinberger "I want you to see the whole exhibit and tell me if you see any other discrepancies or issues with the agreement." Weinberger Transcript at p. 62. Because Weinberger did not have the full document to do so, his counsel raised the following objection:

> MR. WOLFE: No. Here's my objection. I would like him to read the whole document, not as to being scrolled. If you'd like, I could print the document, show it to him, and give him an opportunity to read it.
> MR. BURROUGHS: We're going to do that on the record. If you-again, you can take as much time as you need.
> MR. WOLFE: Let me print out the document and give it to him. If you-the first one you showed him was a 29-page document that you scrolled through and didn't give him an opportunity to really read.

Weinberger Transcript at p. 62. Defendants, despite saying they would do so, did not provide Weinberger with a copy of the exhibit so he could print it out himself, as he repeatedly requested. Accordingly, Weinberger's counsel informed Defendants' counsel

> You're showing him 86 pages of three different contracts that you're flipping through at a speed that no one can possibly read them and comprehend them. So, therefore, I am instructing him not to answer the questions until he's had the opportunity to review all 86 pages, which I'm willing to print out and give him that opportunity to do so, but you've refused that request, so I am instructing him not to answer any questions at this time under these circumstances.

Weinberger Transcript at p. 64. It is immediately after these requests to provide the witness with the exhibit he is being asked questions about, which defendants refusal to do, that defendants' counsel asks the question they complain about, Objections at pp 5-6:

> Q.      Okay. Now do you want to go back to any pages or any sections of the agreement to take another look?
> MR. WOLFE: Same instruction. Don't answer the question. And, again, I'll repeat, I'm willing to print out all 86 pages and give him the opportunity to read it, not as your flipping through….

Weinberger Transcript at p. 65. Defendants would have answers to their questions if they had followed the protocol in depositions for time immemorial, and required at trial, of showing the witness a document he is being asked questions about.

Defendants did the same thing with Exhibit 4, which is 32 pages long, Weinberger Transcript at p. 103, refusing to provide Weinberger with a copy. Once again, Weinberger's counsel complained:

> MR. WOLFE: I'm going to object. You've shown him about 40 pages of documents in a scroll-through fashion. He couldn't possibly take in, comprehend, remember any one of those pages. It's impossible.

Weinberger Transcript at p. 102. The solution to this is patently obvious, give the witness the exhibit, which Weinberger's counsel pleaded for

> Give him the opportunity to read all 32 pages, which I'm happy to do if you want to send me the document, I'll print it out, and I'll give it to him.

Weinberger Transcript at p. 103. Defendants have no basis to complain – all they had to do was provide Weinberger with the exhibits they were asking questions about, which Weinberger repeatedly asked them to do.

It is illustrative that none of the cases Defendants cite in the Objections even address a witness's obligation to testify about a document without being given the opportunity to review the document.

Jacobi Affidavit

Allen Jacobi ("Jacobi") was an attorney for Luke Records, Inc. ("Luke Records"). Affidavit of Allen Jacobi [DE 59-2]("Jacobi Affidavit") at ¶¶ 1-2. Defendants object to Jacobi's statements about what Campbell said to him and his belief whether a contract is authentic because (i) they believe it is privileged, (ii) lack of personal knowledge, (iii) authenticity, and (iv) hearsay, Objections at pp. 8-9.

(i)     Attorney-client privilege –

Any privilege regarding Jacobi's communications as Luke Records' counsel belongs to Luke Records. *Express Homebuyers USA, LLC v WBH Marketing, Inc.,* 2018 U.S. Dist. LEXIS 235473 *4 (S.D. Fla. Feb. 9, 2018)("it is well established that the attorney-client privilege is available … to corporate entities.").

> "Because application of the attorney-client privilege obstructs the truth-seeking process, it must be narrowly construed." … The burden is on the proponent of the privilege. … The existence of the privilege must be established by the proponent by a preponderance of the evidence. … "A party seeking to pierce the privilege need only establish a *prima facie* showing, the burden shifts back to the proponent to establish, by a preponderance of the evidence, that the privilege is not waived.

*Id.* at *5 (citations omitted).

Luke Records was voluntarily dissolved on December 1, 2020 (a copy of the articles of dissolution are attached hereto as Exhibit 2). "[W]hen a corporation ceases to exist, it can no longer

assert privilege." *Id.* at *5 (applying federal common law, which is used when the cause of action is a federal claim, *id.* at * 5 n 4, which is the situation here); *In re Fundamental Long Term Care, Inc.,* 2012 Bankr. LEXIS 4843 *27 (Bankr. M.D. Fla. Oct. 9, 2012)("a dissolved corporation does not have the right to assert the attorney-client privilege. The same is true for companies that-while not formally dissolved-have ceased operating."). Even if Luke Records was reinstated, it would not change this result. *Express Homebuyers,* 2018 U.S. Dist. LEXIS 235473 at *7.

Campbell sued Jacobi for malpractice. Transcript of November 1, 2002, deposition of Luther Campbell at p. 73 ("I sued Allen Jacobi for malpractice."); *Luther Campbell v Allen Jacobi,* Eleventh Judicial Circuit Court, Miami-Dade County, Florida, Case No. 1992-12252-CA-01. A legal malpractice claim waives the attorney client privilege. *Ferrari v Vining,* 744 So. 2d 480, 481 (Fla. 3rd DCA 1999).

To be privileged, a communication must be confidential. A communication which has been disclosed to third parties does "not meet the definition of 'confidential' communications and are not subject to the attorney-client privilege" *Jenney v. Airdata Wiman, Inc.,* 846 So. 2d 664, 667 (Fla. 2nd DCA 2003). Luther Campbell has publicly stated in his book, *The Book of Luke*, that

> 2 Live Crew never had a contract. There was no written agreement between the group and the label. … It was only after *Banned in the U.S.A.* came out and went gold that those guys started getting worries that they'd get left behind. They came to me before *Sports Weekend* and said, "We want a contract." A short while later we drew one up and signed it.

*The Book of Luke* at p. 191, a copy of which is attached hereto as Exhibit _. Having already disclosed it to the public, any communication with Jacobi that "2 Live Crew never had a contract. There was no written agreement between the group and the label" is not privileged. *Jenney.,* 846 So. 2d at 667.

(ii)     Lacks personal knowledge –

"Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R.Evid. 602. As defendants acknowledge, this is based on "personal observation." Objections at p. 3 (citing *St. Louis Condo. Ass'n., Inc. v Rockhill Ins. Co.,* 2019 U.S. Dist. LEXIS 79802 *9 (S.D. Fla. March 7, 2019). How do defendants know that Jacobi lacks personal knowledge, especially when he says he is relaying what Campbell said to him, they don't say. According to defendants, just because they pronounce that someone doesn't have personal knowledge they can make damaging evidence disappear. No authority stands for that proposition.

(iii)    Authenticity-

Authenticity deals with "an item of evidence", not statements/testimony. Fed. R.Evid. 901(a). This objection is misplaced.

(iv)    Hearsay-

Defendants contend that Campbell's statements to Jacobi are hearsay. "The Rules of Evidence provide that a statement made by a party against whom it is offered is not hearsay. Fed. R. Evid. 801(d)(2)(A). Thus a defendant's own out-of-court statement is not hearsay…." *United States v McGowan,* 552 Fed. Appx. 950, 956 (11th Cir. 2014). It is of no consequence whether Campbell made this statement in an individual or representative capacity. Fed. R. Evid. 801(d)(2)(A).

For all of these reasons, defendants have no basis to preclude the Jacobi Affidavit.

<u>Weinberger Affidavit</u>

Defendants object to the Affidavit of Joseph Weinberger in Opposition to Defendants' Moton for Summary Judgment [DE 59-5]("Weinberger Affidavit"). Objections at pp. 9-18.

First, defendants claim that the Weinberger Affidavit contradicts his deposition testimony, and therefore is a sham. Objections at pp. 9-11.Once again, they are just wrong.

6

Defendants claim the statement in the Weinberger Affidavit that "I was [Luke Records] outside counsel from 1988-1991", Weinberger Affidavit at p. 2, ¶ 3, was contradicted in Weinberger's deposition. To the contrary, Weinberger consistently testified in deposition that:

> Q.    Did you ever work with Luke Skyywalker Records, Inc? (Luke Records was previously named Luke Skyywalker Records, Inc.)
> A.    Yes.
> Q.    Okay. When did you work with them?
> A.    1988.
> Q.    And what did you do in connection with Luke Skyywalker Records, Inc.?
> A.    Me, personally, or when I was at a law firm?
> Q.    You personally.
> A.    Well, I wasn't employes as a person with Campbell at the time. I think I was employed through the law firm that I was with.
> Q.    Okay. So Luke Skyywalker Records, Inc. retained your law firm at some point?
> A.    Yes.
> Q.    And while you were at that law firm-law firm, you did legal work for Luke Skyywalker Records, Inc., is that correct?
> A.    Yes.

Weinberger Transcript at pp. 29-30.

> Q.    When were you given decision-making power at Luke Records, and how?
> A.    When I was employed full time.
> Q.    Okay. When did that take place?
> A.    I think in the spring of 1991. Spring, summer.

Weinberger Transcript at p. 40. Clearly there is no contradiction, Weinberger testified he worked for Luke Records as outside counsel from 1988-1991.

Defendants also claim that the assertion in the Weinberger Affidavit that the copyrights at issue were transferred pursuant to the 1991 Contracts (as such term is defined in the Weinberger Affidavit at p. 2, ¶ 6) is contradicted in Weinberger's deposition. To the contrary, Weinberger testified:

> Q.    And how did Luther Campbell obtain those copyrights?
> A.    I'm not specifically sure.

> Q.     Do you know anything about how he obtained those copyrights?
> A.     Other than what Allen Jacobi told me, that there was a contract that
> he drafted, I believe those contracts in 1991, I – I believe were the only contracts.

Weinberger Transcript at pp. 92-93. Again, there is no contradiction. It is worth noting that the question defendants refer to, Objections at p. 11, which Weinberger couldn't answer, was "How did the members of 2 Live Crew *first* transfer their copyrights in the subject albums? Weinberger Transcript at p. 91 (emphasis added). That is a different question. What is stated in Weinberger's affidavit is consistent with his deposition testimony.

Next, defendants object to Weinberger's statements in the Weinberger Affidavit about the 1991 Contracts, what occurred in Campbell's and Ross' bankruptcies, defendants' notice of termination, whether the members of *2 Live Crew* were employees of Luke Records, what studios were used, what Campbell did as Luke Records' CEO, employee benefits Luke Records provided Campbell and how he was compensated because (i) they believe it is privileged, (ii) lack of personal knowledge, (iii) authenticity, (iv) hearsay, and (v) inadmissible, irrelevant and prejudicial. These grounds are also baseless.

(i)     Attorney-client privilege-

Defendants do not identify what privileged communications they complain about. Since privilege is only asserted regarding items 1 and 2, which concern the 1991 Contracts, Lil' Joe assumes it pertains to Jacobi's comment to Weinberger. As discussed with Jacobi, *supra* at p. 4, the privilege does not prevent the disclosure of that communication.

(ii)    Lacks personal knowledge-

Weinberger explicitly states that his affidavit is "based upon my personal knowledge and my review of Luke Records' business records (for which he provided the necessary predicate, Fed. R. Evid. 803(6)). Weinberger Affidavit at p. 1, ¶ 2. These business records, including the 1991

Contracts, were delivered to him when the copyrights at issue were acquired from the Luke Records/Campbell bankruptcy. Weinberger Affidavit at p. 4, ¶ 14. He further states that he was Luke Records outside counsel from 1988-1991 and in-house counsel from 1991-early 1995 based upon which he was "familiar with Luke Records' contracts, tax treatment and business records and I have personal knowledge of the facts stated herein." Weinberger Affidavit at p. 2, ¶ 3.

"Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R.Evid. 602. This criterion is met by Weinberger's "personal observation." *St. Louis Condo.,* 2019 U.S. Dist. LEXIS 79802 *9. Despite this, and with no facts to back it up, defendants say that "Weinberger has no personal knowledge or foundation regarding the effect of these agreements." Objections at p. 12 (issue 1). Defendants provide nothing at all to support this contention –once again defendants believe they just say a declarant doesn't have personal knowledge and they can make damaging evidence disappear.

Defendants next complain that "Weinberger did not work for Skyywalker Records until 1991 as stated in paragraph 3 of his declaration and thus has no personal knowledge regarding the employment relationship during the time the Subject Albums were recorded." Objections at p. 12 (issue 2). They similarly object to the slew of facts showing that the members of *2 Live Crew* were employees of Luke Records. Objections at p. 14 (issue 6). They also object on the same basis to the fact that the studios where the albums at issue were recorded were paid for and controlled or owned by Luke Records. Objections at p. 15 (issue 7). Defendants just ignore that Weinberger was Luke Records outside counsel from 1988, Weinberger Affidavit at p. 2, ¶ 3, where he could personally observe these facts. What evidence exists to show that Weinberger "has no personal knowledge regarding the employment relationship during the time the Subject Albums were recorded", "lacks personal knowledge regarding how recording activities were conducted and the

costs were allocated", or "lacks personal knowledge regarding how recording activities were conduct[ed], how costs were allocated, and where the recordings took place" is left unsaid. Defendants' bald contention does not make it true - all Weinberger had to do was observe what occurred. *St. Louis Condo.,* 2019 U.S. Dist. LEXIS 79802 *9.

Along the same lines, defendants object to Weinberger's statements that "As the in-house attorney and the tax attorney for Luke Records, I am aware it maintained and treated the members of *2 Live Crew* as employees", Objections at pp. 15-16 (issue 8), "Luke Records provided extensive employee benefits to Luther Campbell including workers compensation, health care insurance and a profit sharing plan", Objections at pp. 16-17 (issue 10), "Luther Campbell regularly signed checks and contracts as the CEO and sole owner of Luke Records, whose signature was binding upon Luke Records", Objections at p. 17 (issue 11)[1], and "Luther Campbell, unlike the other members of 2 Live Crew, was not paid an artist royalty but his compensation was solely as the CEO of Luke Records for which Federal employee income tax, FICA (payroll taxes) and MICA (Medicare taxes) were withheld and unemployment taxes (FUTA and SUTA) were paid to the IRS and the State of Florida", Objections at pp. 17-18 (issue 12). Defendants' contention that Weinberger's knowledge is limited to 1991 and thereafter is inaccurate. Weinberger Affidavit at p. 2, ¶ 3. Their supposition that "he lacks foundation to make these statements", Objections at pp. 16-18, is groundless. Again, all Weinberger had to do was observe what occurred. *St. Louis Condo.,* 2019 U.S. Dist. LEXIS 79802 *9.

Defendants similarly complain about Weinberger's observations about Campbell's activities running Luke Records. Objections at p. 16 (issue 9). Defendants additionally argue that

---

[1]     Defendants do not dispute that this occurred. Response to Plaintiff's Response to Statement of material Facts in Support of Defendants' Motion for Summary Judgment [DE 62-1] at p. 8, ¶ 18.

"it is immaterial what Campbell's role as CEO was when his work as a member of 2 Live Crew was distinct and outside the scope of his duties as CEO." *Id.* While defendants are free to make that argument, it doesn't mean Weinberger did not observe these facts, and cannot state what he observed.

Weinberger was involved in both Campbell's and Ross' bankruptcies. Weinberger Affidavit at pp. 3-4, ¶¶ 8 & 12. It is undisputed that the *2 Live Crew* copyrights at issue were transferred to Lil' Joe in the Luke Records/Campbell bankruptcy. From his observations of these bankruptcy proceedings, Weinberger is aware that these copyrights were not abandoned back to Campbell, Luke Records or Ross, nonetheless, without citation to any evidence, defendants say this is "not within the personal knowledge of Weinberger." Objections at p. 13 (issues 3 & 4). That statement, by fiat, does not make Weinberger's observations inadmissible.

Illustrative of their unsubstantiated assertions, defendants say the 1991 Contracts "is only prospective looking and for copyrights and records recorded during its forward-looking term." Objections at p. 12 (issue 1). That is simply untrue, section 20 of the 1991 Contracts provides:

> 20. (a) ARTIST hereby sell, transfers and assigns to COMPANY irrevocably all right, title and interest in and to the masters embodying ARTISTS' performances the titles of which are listed on Schedule "A" annexed hereto and made a part . from the inception of the recordings thereof (hereinafter in this Paragraph 20 referred to as the "Masters"), including, without limitation, the COMPANY"S (or its designee's) name as employer-for-hire such copyrights and all renewals and extensions thereof, perpetually and throughout the Territory.
> (b) ARTIST will facilitate the Masters to COMPANY at its offices in Miami, Florida not later than simultaneously with the execution of the Agreement, unless said masters are already in the possession of COMPANY.
> (c) The Masters will be deemed to have been recorded under this Agreement during the Initial Period of the Term of this Agreement.

Simply put, defendants' assumptions throughout the Objections are inaccurate.

(iii)    Authenticity-

Authenticity is provided by "[t]estimony that an item is what it is claimed to be." Fed. R.Evid. 901(b)(1). The only documents referenced that require authentication are the 1991 Contracts, and Weinberger provides this testimony. Weinberger Affidavit at p. 2, ¶ 6.

(iv)   Hearsay-

Defendants object to the statements in issues 6-12 as hearsay, but do not identify a single communication they contend is hearsay.[2] Rather, defendants simply make the conclusory assertion that "they must be based on hearsay." Objections at pp. 15-18. If this references comments by any of the defendants (including the 1991 Contracts, which they admit they signed), it is not hearsay. Fed. R.Evid. 801(d)(2). Perhaps it is intended to reference materials which are part of Luke Records business records, but they are hearsay exceptions, Fed. R.Evid. 803(6), provide the necessary predicate is provided, which Weinberger did, Weinberger Affidavit at p. 1, ¶ 2. Simply put, defendants fail to identify any inadmissible hearsay to exclude any part of the Weinberger Affidavit.

(v)   Inadmissible, irrelevant and prejudicial-

"Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Haney v. Mizell Memorial Hospital,* 744 F.2d 1467, 1475 (11th Cir. 1984); Fed. R. Evid. 401. "The standard for finding evidence relevant is thus very broad." *Jones v Carnival Corp.,* 2006 U.S. Dist. LEXIS *2 (SD Fla. Jan. 11, 2006). Everything in the Weinberger Affidavit is relevant to the issues before this Court – and defendants have not even tried to show how they are irrelevant.

---

[2]   By way of comparison, Lil' Joe provided deposition testimony to show how Leterius Ray's declaration was based on hearsay. Response to Defendants Motion for Summary Judgment [DE 58] at p. 20.

"Rule 403 is an extraordinary remedy which the district court should invoke sparingly. … The balance under Rule 403 should be struck in favor of admissibility." *United States v Elkins,* 885 F.2d 775, 784 (11th Cir. 1989). "The 'major function' of Rule 403 'is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *United States v Dean,* 221 Fed. Appx. 849, 852 n 3 (11th Cir. 2007). Again, defendants have wholly failed, they haven't even tried, to show how anything in the Weinberger Affidavit falls within these confines – because they don't.

For all of these reasons, there is no basis to preclude any part of the Weinberger Affidavit

<u>Moskowitz Affidavit</u>

Herman Moskowitz ("Moskowitz") was Luke Records' CPA. Affidavit of Herman Moskowitz, etc. [DE 33] ("Moskowitz Affidavit") at p. 1, ¶ 1. Defendants object to Moskowitz' statements authenticating the 1991 Contracts, discussing what they say, and stating that the members of *2 Live Crew* were employees of Luke Records due to (i) lack of personal knowledge, (ii) authenticity, and (iii) hearsay. Objections at pp. 18-19.

(i)      Lacks personal knowledge –

Moskowitz explicitly states that his affidavit is "based upon my personal knowledge and my review of Luke Records' business records (for which he provided the necessary predicate, Fed. R. Evid. 803(6)). Moskowitz Affidavit at p. 1, ¶ 2. "Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R.Evid. 602. Despite this, and with no facts to back it up, defendants say that "Moskowitz has no personal knowledge or foundation regarding the effect of these agreements, it is not clear if he has ever seen these agreements. Moskowitz is neither a lawyer nor a party to the agreement, and thus has no personal knowledge regarding the agreement's terms or effect." Objections at p. 19. Defendants provide nothing at all to support this

contention – how do they know what Moskowitz knows, what he has observed, which is admittedly sufficient, *St. Louis Condo.,* 2019 U.S. Dist. LEXIS 79802 *9, defendants don't say. Once again defendants believe they just say a declarant doesn't have personal knowledge and they can make damaging evidence disappear.

Defendants also assert that "Moskowitz's declaration lacks foundation as to how he knows the [sic] Luke Records was an employer of the members of 2 Live Crew." Objections at p. 19. Moskowitz was Luke Records' CPA. If defendants doubted his knowledge they could have taken his deposition to weigh it, but they didn't.

(ii)     Authenticity-

Again, authenticity is provided by "[t]estimony that an item is what it is claimed to be." Fed. R.Evid. 901(b)(1). Moskowitz provides this testimony. Moskowitz Affidavit at p. 2, ¶ 4.

(iii)     Hearsay-

Business records are hearsay exceptions, Fed. R.Evid. 803(6), provide the necessary predicate is provided, which Moskowitz did, Moskowitz Affidavit at p. 1, ¶ 2.

For all of these reasons, defendants provide no basis to preclude any part of the Moskowitz Affidavit.

<u>Conclusion</u>

For the foregoing reasons, this Court should deny Mark Ross, Christopher Wong Won Jr., Roderick Wong Won, Leterius Ray, Anissa Wong Won and Luther Campbell's Evidentiary Objections in Support of Their Motion for Summary Judgment [DE 62-13].

WOLFE LAW MIAMI PA
175 SW 7th Street, Suite 2410
Miami, Florida 33130
P: 305.384.7370
F: 305.384.7371
Email: rwolfe@wolfelawmiami.com

14

By:      /s/ Richard C. Wolfe
Richard C. Wolfe, Esq.
Florida Bar No.: 355607

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

Joel Rothman, Esq.
SRIP LAW PA
21301 Powerline Road, Ste 100
Boca Raton, Florida 33433
joel.rothman@sriplaw.com

Scott Burroughs, Esq.
Doniger/Burroughs
237 Water Street, First Floor
New York, NY 10038
scott@donigerlawfirm.com

/s/ Richard C. Wolfe
Richard C. Wolfe