UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| LIL' JOE RECORDS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-CV-23727-DPG |
| | ) | |
| MARK ROSS; et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION IN LIMINE**

Defendants Mark Ross, Luther Campbell, Anissa Wong Won, Christopher Wong Won, Jr., Roderick Wong Won, and Leterius Rey (collectively "Defendants"), move this Court for the entry of an order precluding introduction of certain arguments and evidence at trial and as grounds therefore states.

**I.      Legal Standard**

The purpose of a motion in limine is to "give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007). A court should exclude evidence on a motion in limine when "it is clearly inadmissible on all potential grounds*." Ctr. Hill Cts. Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 19-CV-80111, 2020 WL 496065, at *1 (S.D. Fla. Jan. 30, 2020). A

district court may exclude even relevant evidence if "its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." *Id.* at 2, citing Fed. R. Evid. 403.

## II. Matters to be Excluded

### a. Affidavit and testimony of Allen Jacobi

The Affidavit and testimony of Allen Jacobi ("Jacobi") should be excluded because they concern matters protected by attorney client privilege, amount to inadmissible hearsay, and Jacobi lacks the personal knowledge necessary to testify.

Jacobi provided an affidavit in this case ("Jacobi Affidavit") in which he testifies as the former counsel to Defendant Luther Campbell and Skyywalker Records, Inc. ("Skyywalker"). The Jacobi Affidavit includes (1) Jacobi testifying on communications with Campbell which he claims amounted to an admission that no contract existed between Skyywalker and the members of 2 Live Crew, and (2) Jacobi testifying that he believes a contract produced by Defendants between Skyywalker and the members of 2 Live Crew is not genuine. **Ex A**, pps. 3-4. This affidavit, and any testimony by Jacobi at trial on the same matters, should be excluded for the following reasons.

First, Jacobi's affidavit and testimony at trial must be excluded to the extent that they will violate attorney-client privilege. It is well established that the attorney client privilege protects from disclosure "communications made in confidence to an attorney by that attorney's client for the purpose of securing legal advice or assistance." *In re Grand Jury Investigation*, 842 F.2d 1223, 1224 (11th Cir. 1987). Furthermore, "the client is the holder of the attorney-client privilege and, while an attorney may assert the privilege on her client's behalf, the privilege is solely for

the client's benefit." *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 620 (S.D. Fla. 2013).

Jacobi admits in his affidavit that he had an attorney-client relationship with Campbell at the time of the communications he testified about. **Ex. A**, pp. 2.[1] Jacobi testified on the precise substance of the communications between himself and Campbell. Jacobi claims Campbell was consulting him regarding the status of contracts relevant to Campbell and Skyywalker. *Id.* at 3-4.[2] Such a communication plainly amounts to securing legal advice or assistance, and thus is covered by privilege. Campbell has at no time waived privilege concerning these communications, and Defendants have not and cannot present any evidence to the contrary. Because Jacobi is expressly testifying on the substance of communications made to him by his then-client, which were made for the purpose of securing legal advice or assistance, the Jacobi Affidavit must be excluded, and any testimony by Jacobi at trial on any such communications must be precluded.

Second, the Jacobi Affidavit and Jacobi's further testimony on the same matters at trial must also be excluded for lack of personal knowledge. Under Fed. R. Evid. 602, the Court should "not permit a lay witness to testify on matters of which he or she has no personal knowledge." *Pineda v. Pescatlantic Grp., LLC*, No. 16-25291-CIV, 2018 WL 11346674, at *4 (S.D. Fla. Aug. 16, 2018). "For a matter to be considered within a witness's personal knowledge, it must be 'derived from the exercise of his own senses, not from the reports of others—in other

---

[1] "In 1990 and following, I was the transactional lawyer for Luther Campbell and his company; then known as Luke Records Inc."
[2] "[Campbell] specifically said to me that he 'needed to get them under contract,' admitting to me that prior thereto, there was no contract between the company and the members of 2 Live Crew"; "if this contract was in fact genuine then that would be inconsistent with the statements made by Luther Campbell to me in 1991 that there was no prior contract between the company and the two members of 2 Live Crew."

words, [it] must be founded on personal observation.'" *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 18-21365-CIV, 2019 WL 2013136, at *3 (S.D. Fla. Mar. 7, 2019), quoting, *U.S. v. Evans*, 484 F.2d 1178, 1181 (2nd Cir. 1973), quoting *2 Wigmore*, Evidence, 3d ed. 1940, § 657.

Jacobi relies almost exclusively on information and belief rather than personal knowledge for the substance of the Jacobi Affidavit. While Jacobi testifies that "there was no contract between [Skyywalker] and the members of 2 Live Crew," he bases this conclusion only on an inference derived from a purported communication with Campbell, and Campbell did not state that no contract existed in this communication.[3] **Ex. A**, pp. 3. Jacobi has no personal knowledge of the genuineness of the 1990 Agreement discussed in the Jacobi Affidavit, and instead bases his opinion on information and belief derived from other sources.[4] *Id.* at 4. Jacobi did not personally observe the signing of the contract on which he testifies, and only offers testimony resulting from his interpretations of the reports of others such as Campbell. Accordingly, the Jacobi Affidavit and any testimony at trial over this matter must be excluded for lack of personal knowledge.

Finally, the Jacobi Affidavit and any similar testimony at trial should be excluded as inadmissible hearsay. Hearsay "is generally defined as statement, other than one made by declarant while testifying at trial or hearing, offered in evidence to prove truth of matter asserted." *United States v. Caraballo*, 595 F.3d 1214 (11th Cir. 2010), citing Fed. R. Evid. 801. Hearsay is inadmissible unless the proponent can demonstrate that it is not hearsay or that it falls under one of the hearsay exceptions. *Id.* Jacobi relies heavily on out of court statements he claims were made by Campbell, including "statements made by Luther Campbell to me in 1991

---

[3] See *supra* note 2.
[4] "I do not **believe** this contract is genuinely authentic signed contract for two reasons:" (emphasis added)

that there was no prior contract." **Ex. A**, pp. 4. These statements were made out of court, and Plaintiff is offering them to prove that no contract existed between Skyywalker and 2 Live Crew. As Jacobi relies on out of court statements to prove the truth of the matter asserted, the Jacobi Affidavit and any future testimony relying on this hearsay must be excluded.

### b. Affidavit and testimony of Joseph Weinberger

The affidavit of Plaintiff's owner and sole full-time employee, Joseph Weinberger ("Weinberger"), is a sham, directly contradicting his prior testimony at deposition, and his testimony at trial must be precluded to the extent that Weinberger intends to testify about matters on which he refused to testify at deposition.

First, Weinberger's Affidavit ("Weinberger Affidavit") must be excluded for directly contradicting his deposition testimony. "[A] district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation." *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 656 (11th Cir. 1984). "When this occurs, the court may disregard the affidavit as a sham." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987).

In the Weinberger Affidavit, Weinberger testifies that he was outside counsel to 2 Live Crew from 1991 to 1995, and claims that each of the members of 2 Live Crew transferred all of their copyrights at issue to Skyywalker through various exclusive recording agreements. **Ex. B**, pp. 3. However, both of these claims directly contradict Weinberger's prior deposition testimony. Weinberger testified at deposition that as of 1988, 1989, and 1990, 2 Live Crew were not his clients, and he had no involvement with them beyond having simply met them. **Ex. E** at 131:23-

132:19.[5] And despite testifying in the Weinberger Affidavit that the members of 2 Live Crew each transferred their rights at issue to Skyywalker in exclusive recording agreements, Weinberger previously gave unequivocal deposition testimony that he did not know how any members of 2 Live Crew transferred the rights at issue. **Ex. E,** at 91:1-3. Weinberger's Affidavit directly contradicts his deposition testimony in an effort to paint the evidence in a more favorable light for Plaintiff, and Weinberger provides no valid explanation for the plain contradictions in his sworn statements. Accordingly, the Court should exclude the Weinberger Affidavit as a sham.

Second, Weinberger should be precluded from giving any testimony at trial concerning the 1991 Agreements at issue, as he refused to testify on same at deposition. When a witness "refused to answer deposition questions, then he would not be permitted to testify at trial about those same issues." *United States v. Twenty-Nine Pre-Columbian & Colonial Artifacts from Peru*, No. 13-21697-CIV, 2015 WL 457903, at *3 (S.D. Fla. Feb. 3, 2015). And "[i]f a company' witness fails to properly testify, the court may bar the party from later offering trial testimony on any of the topics for which the corporate representative was unable to provide adequate

---

[5] Q. Were you involved with them at all in 1998?
A. '98, yes.
Q. What about 1988?
A. Yes.
Q. When -- what was your first involvement with them in 1988?
A. I had met them.
Q. Okay. So other than just meeting them, you had no involvement with them or their careers, correct?
A. Like, I wasn't managing them. They weren't my clients.
Q. Okay. They were just people that you had met, correct?
A. Right.
Q. And the same in 1989?
A. Yes.
Q. And the same in 1990?
A. Yes.

deposition testimony[.]" *Wausau Underwriters Ins. Co. v. Danfoss, LLC*, 310 F.R.D. 683, 687 (S.D. Fla.), aff'd, 310 F.R.D. 689 (S.D. Fla. 2015)(granting motion)(internal quotes omitted). Indeed, a "corporate designee's response expressing a lack of knowledge is an answer that binds the corporation at trial -- and therefore prohibits the corporation from offering evidence at trial expanding on its original answer." *Don Goyo Aviation Corp. v. Catlin Ins. Co., Inc.*, No. 17-22390-CIV, 2018 WL 11459453, at *4 (S.D. Fla. Sept. 27, 2018) (internal citations omitted).

Weinberger, as Plaintiff's corporate designee and Rule 30(b)(6) witness, repeatedly failed to properly testify on contracts at issue, refusing to identify or discuss numerous contracts even as they were presented to him at deposition, refusing to testify on the manner in which he kept such contracts, and refusing to testify on the maintenance of such contracts. **Ex. E** at 64:22-65:16, 67:3-68:4, 91:1-3, 102:6-104:4, 131:23-132:19, 152:3-1157:24.[6] Weinberger further

---

[6] The Following are exemplars of Weinberger's failure to answer questions concerning the contracts at issue:
**Page 64:22-65:16**
Q. Okay. Now, do you want to go back to any pages or any sections of the agreement to take another look?
MR. WOLFE: Same instruction. ·Don't answer the question. And, again, I'll repeat, I'm willing to print out all 86 pages and give him the opportunity to read it, not as you're flipping through, and -- and because any answer that he gives will only misconstrue his response, which would be inaccurate, unless he had the opportunity to review the document.
BY MR. BURROUGHS: Have you ever seen this document before?
MR. WOLFE:· Same instruction.
BY MR. BURROUGHS: Okay.· And are you going to take your attorney's instruction and not answer questions about this contract?
A. Yes.
**Page 67:3-68:4**
Q. So do you have a copy of this contract in your records?
MR. WOLFE: Same instruction.
BY MR. BURROUGHS: Have you ever seen a version of this contract with any exhibits or schedules?
MR. WOLFE: Same instruction.
BY MR. BURROUGHS: And do you know which songs or albums this exhibit covers?
MR. WOLFE: Same instruction.

refused to answer any questions concerning a contract produced by Plaintiff, claiming for the first time at deposition that the document was inadvertently produced.[7] Despite this complete

---

BY MR. BURROUGHS: And do you believe that this contract relates in any way to the works at issue in this case?
MR. WOLFE: Same instruction.
BY MR. BURROUGHS: And, again, you're going to take your attorney's instruction and not answer, correct?
A. Excuse me?
Q. You're taking your attorney's -- he can instruct you, but you have to say that, yes, you're taking the instruction --
A. Yes.
Q.  -- in not answering, okay?
A. Yes.
Q. Okay.
**Page 91:1-3**
Q.· · How did the members of 2 Live Crew first transfer their copyrights in the subject albums?
A.· · I don't know.
[7] **Page 152:3-154:10**
Q.· · Okay.· Let me put an exhibit in front of you we're going to mark as Exhibit 12.
(WHEREUPON, Defendants' Exhibit 12 was marked for identification.)
BY MR. BURROUGHS: Q.· · I want you to take a look at this and tell me if you recognize it. Do you recognize that folder?
A.· · No.
Q.· · Have you ever seen it before?
A.· · I don't -- I don't know where that came from.
Q.· · Okay.· Do you recognize the form of the label on that folder?
MR. WOLFE:· Scott, it was inadvertently produced to you. We'd appreciate it if you dispose it.
BY MR. BURROUGHS:
Q.· · Go ahead. Are you still thinking or...
MR. WOLFE:· No, no.· You -- no, it was inadvertently produced, so he's not going to ask any questions about it.
MR. BURROUGHS:· How was it inadvertently produced?· It's Bates stamped and it looks -- appears to reference this disputed -- the heart of this dispute.
MR. WOLFE:· I just explained to you, it was inadvertently produced.· It was sent together with a stack of documents to be copied. It should have been pulled out.
BY MR. BURROUGHS: Q.· · Okay.· Are you going to take you attorney's instruction?
MR. WOLFE:· No.· I assume you're going to take my instructions and do the ethical thing and not ask him questions about a document that was inadvertently produced.
MR. BURROUGHS:· I need some sort of proffer, so sort of information about why. To me, from looking at it, it appears to be extremely relevant.
MR. WOLFE:· It was produced to my office. When my office sent out a stack of documents, it should have been but was not removed.

refusal to testify at deposition about the contracts at issue, Weinberger now intends to offer testimony at trial on same. Because Weinberger, as Plaintiff's corporate designee, refused to testify on the Disputed Contract at deposition, he should be precluded from testifying on the matter at trial, and Plaintiff should be precluded from offering any evidence at trial which expands on Weinberger's non-answers from his deposition.

### c. Affidavit and testimony of Herman Moskowitz

The affidavit of Herman Moskowitz ("Moskowitz"), and any testimony by Moskowitz at trial on the same matters, must be excluded for lack of any personal knowledge and reliance on hearsay.

Moskowitz has offered an affidavit ("Moskowitz Affidavit") stating (1) the members of 2 Live Crew, including Defendants, each transferred all of the rights at issue to Skyywalker, and that each contract established that 2 Live Crew sound recordings were works made for hire, and (2) that 2 Live Crew were each employees of Skyywalker, purportedly supported by payroll checks as to each member of 2 Live Crew from Skyywalker. **Ex. C** pp. 4-5. Defendants believe that Moskowitz will testify to the same at trial.

Moskowitz's Affidavit, and any following testimony, must be excluded as Moskowitz has no foundation of personal knowledge on which to testify. As discussed, "[a]n affidavit or declaration based on anything less than personal knowledge is insufficient," and "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *S. Broward Hosp. Dist. v. Coventry Health &*

---

MR. BURROUGHS:· Are you saying your office generated this particular document?
MR. WOLFE:· I'm not going to go any further.· And he's not going to answer any questions about.
BY MR. BURROUGHS: Q.· · All right.· And you're going to take your attorney's instruction?
A.· · Yes.

*Life Ins. Co.*, No. 14-61157-CIV, 2015 WL 12532580, at *3 (S.D. Fla. June 10, 2015).

Moskowitz introduces no evidence that he has any personal knowledge of the matters on which he testifies. Moskowitz is not a lawyer nor a party to the recording agreement on which he testifies, he was an accountant to Skyywalker. **Ex. C** at 2. Moskowitz provides no basis on which he personally observed or was involved in the agreement at issue, and indeed he has provided no evidence that he has even seen it. Moskowitz's lack of any personal knowledge of the agreement is emphasized by his inaccurate characterization of it, as he claims that the agreement conveyed all of 2 Live Crew's rights at issue to Skyywalker, despite the fact that agreement is only forward-looking, and does not purport to convey any existing rights. See **Ex. D**.

Additionally, Moskowitz provides no evidence that he has personal knowledge of 2 Live Crew's alleged status as employees of Skyywalker. Moskowitz had no intimate involvement with 2 Live Crew or Skyywalker, and gives no other explanation as to where his knowledge on the matter would come from. Indeed, even the payroll checks Moskowitz points to as evidence were never attached to his Affidavit, and thus cannot serve as any basis for his testimony. As Moskowitz fails to establish any basis of personal knowledge for his testimony, the Moskowitz Affidavit should be excluded, and any testimony at trial by Moskowitz on the same issues should be precluded.

### III.  Conclusion

Fore the reasons set forth herein, Defendants respectfully ask this Honorable Court to grant its Motion in Limine precluding Lil' Joe from presenting evidence of, eliciting testimony, or making any reference to any of the foregoing matters at trial.

| | |
|---|---|
| Dated: February 13, 2023 | Respectfully submitted, |
| | By: */s/ Joel B. Rothman, Esq.* |

Scott Alan Burroughs, Esq.
(admitted *pro hac vice*)
DONIGER / BURROUGHS
237 Water Street, First Floor
New York, New York 10038
(310) 590 – 1820
scott@donigerlawfirm.com

*-with-*

Joel B. Rothman, Esq.
SRIP LAW
21301 Powerline Road, Suite 100
Boca Raton, Florida 3343
(561) 404-4350
joel.rothman@sriplaw.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 13, 2023, a true and authentic copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: _/s/ Joel B. Rothman_
Joel B. Rothman