UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-CV-23727-DPG

LIL' JOE RECORDS, INC.,

    Plaintiff,

v.

MARK ROSS, CHRISTOPHER WONG
WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON
and LUTHER CAMPBELL,

    Defendants.
_____/

### PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE 11 VERSUS DEFENDANTS AND THEIR COUNSEL

Plaintiff, LIL' JOE RECORDS, Inc. ("Plaintiff"), by and through undersigned counsel, files this motion pursuant to Fed. R.Civ. P. 11 for sanctions in the form or attorney's fees and costs incurred by Plaintiff against Defendants, MARK ROSS, CHRISTOPHER WONG WON, JR., RODERICK WONG WON, LETERIUS RAY, ANISSA WONG WON and LUTHER CAMPBELL (collectively, "Defendants") and their attorneys, Scott Burroughs, Esq., the law firm of Doniger/Burroughs, Joel B. Rothman, Esq. and his firm Sriplaw, P.A., and in support thereof states as follows:

**I.    OVERVIEW**

Defendants have no facts nor law supporting their claim to valid Section 203 termination because: 1) they cannot show that they (3 of 4 members of the group 2 Live Crew) have proper rights because 2 members (Mark Ross and Luther Campbell) each filed for bankruptcy and hence

they lost their rights of termination by operation of law; and 2) Luther Campbell was an artist-for-hire (employee of Luke Records) and thus, he has no termination rights. For either of these reasons, Defendants have no valid rights to terminate the transfer of copyrights. Plaintiff provided notice to Defendant and their counsel and gave them 21 days to comply. They have no done so.

## II.   FACTS

Through their summary judgment filings, the following facts are uncontroverted:

1. *2 Live Crew* was a rap group comprised of Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs.

2. Luther Campbell, Christopher Wong Won, Mark Ross and David Hobbs transferred all of their copyright rights to *2 Live Crew*'s music to Luke Records, Inc. f/k/a Skyywalker Records, Inc. f/k/a Luke Skyywalker Records, Inc.("Luke Records")..

3. In 1995, Luther Campbell and Luke Records became the subject of bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of Florida which were jointly administered (the "Luke Bankruptcy").

4. Pursuant to the Joint Plan of Reorganization in the Luke Bankruptcy, all of the copyright rights to *2 Live Crew*'s music and compositions were transferred to Lil' Joe and Joseph Weinberger ("Weinberger") "free and clear of any and all liens, claims, encumbrances, charges, setoffs or recoupments of any kind", thereafter "no royalties, whether as artist, producer, writer, publisher, or in any other capacity, on any of the masters or compositions" are due to Luther Campbell or Luke Records, and Luther Campbell released, among others, Lil' Joe and Weinberger, including "for royalties to be paid in the future" as a result of this transfer.

5. The 2 Live Crew copyrights transferred to Lil' Joe and Weinberger were not abandoned

back to Luther Campbell and/or Luke Records.

6. On November 22, 2000, Mark Ross filed a bankruptcy in the U.S. Bankruptcy Court for the Northern District of Alabama (the "Ross Bankruptcy"). In the Ross Bankruptcy, an adversary proceeding was commenced by Lil' Joe against Mark Ross and, in settling that claim Mark Ross acknowledged that, other than writer's performance rights which are not relevant to this proceeding, "he has no rights (master or publishing) to any previous recordings owned by Lil' Joe Records, Inc. and Lil Joe Wein Music, Inc. and The 2 Live Crew name which were previously owned by Luther Campbell and Luke Records…. Additionally, Debtor [( Mark Ross)] has no rights (master or publishing) in any other recordings owned by Lil' Joe Records, Inc."

7. The 2 Live Crew copyrights transferred to Lil' Joe and Weinberger were not abandoned back to Mark Ross.

### III.   MEMORANDUM OF LAW

#### A.   Standard For Motion

Rule 11(b), Federal Rules of Civil Procedure, imposes a duty upon attorneys to refrain from filing or pursuing frivolous claims. *Rueter v. Merrill Lynch*, 440 F.Supp.2d 1256, 1266 (N.D. Ala.2006). Rule 11 stresses the need for prefiling inquiry. *Mike Ousley Productions, Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir.1992). A court has discretion to award Rule 11 sanctions: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). Here, Defendants and their counsel filed counterclaims asserting their rights to

Section 203 terminations, based upon a "valid" notice made on November 4, 2020 however as a matter of clear law they had no valid rights due to the bankruptcies and due to Luther Campbell being an artist for hire.

I. **Campbell's and Ross' Bankruptcies Divested Them of Any Right to Terminate**

"In the case of a grant executed by two or more authors of a joint work, *termination of the grant may be effected by a majority of the authors who executed it....*" 17 USC §203 (a)(1)(emphasis added). The sound recordings of *2 Live Crew* were each joint works. That means 3 of the 4 members of *2 Live Crew* must execute the termination notice and each must possess valid rights to do so.

Campbell and Luke Records became the subject of bankruptcy proceedings which were jointly administered (the "Luke Bankruptcy") and assigned pursuant to court order to Lil' Joe and its owner, Joseph Weinberger ("Weinberger"), "free and clear of any and all liens, claims, encumbrances, charges, setoffs or recoupments of any kind", that "no royalties, whether as artist, producer, writer, publisher, or in any other capacity, on any of the masters or compositions" are due to Campbell, and Campbell separately released, among others, Lil' Joe and Weinberger, including "for royalties to be paid in the future" as a result of this transfer. At no time did any of the Defendants object to the transfer or file a claim in the Luke Bankruptcy asserting that they owned or were entitled to any Section 203 termination rights. The 2 Live Crew Copyrights were not abandoned back to Campbell and/or Luke Records.

*Ross also filed a bankruptcy (the "Ross Bankruptcy").* In the Ross Bankruptcy, an adversary proceeding was commenced by Lil' Joe against Ross and, in settling that claim, Ross acknowledged (just like Campbell did in the Luke Bankruptcy) that, other than writer's

performance rights (which are not relevant to this proceeding), "he has no rights (master or publishing)" to any of *2 Live Crew*'s recordings, which he acknowledged was owned by Lil' Joe. The 2 Live Crew Copyrights were not abandoned back to Ross.

As a result of these bankruptcies, Campbell and Ross were divested of all rights they had at the time of their bankruptcy filings, which included any termination rights. This occurs by operation of law.

The commencement of a [bankruptcy] case … creates an estate. Such estate is comprised of *all the following property*, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests of the debtor in property as of the commencement of the case….*" 11 U.S.C. §541(a)(1)(emphasis added); *Mission Product Holdings, Inc. v Tempnology, LLC,* 139 S.Ct. 1652, 1658 (2019)("The filing of a petition creates a bankruptcy estate consisting of *all the debtor's assets and rights*.")(emphasis added); *Cardwell v Bankruptcy Estate of Joel Spivey (In re Douglas Asphalt Co.),* 483 BR 560, 571 (Bankr. S.D. Ga. 2012). Termination rights pursuant to 17 USC §203 are not among these "exceptions." 11 USC §541(b) & (c). Thus, Section 203 makes no mention of bankrupty and the Bankruptcy Code makes no mention of Section 203 rights. The creation of this bankruptcy estate and transfer of all of the debtor's assets to it occurs "upon commencement of a bankruptcy case…." *Schwab v Reilly,* 560 U.S. 770, 774 & 785 (2009). "As the Supreme Court has noted, 'Congress intended a broad range of property to be included in the estate." *Goldstone v. U.S. Bancorp.,* 811 F. 3d 1133, 1139 (9th Cir. 2015). "Indeed, the legislative history indicates that §541(a) would 'bring anything of value that the debtors have into the estate." *Id.* Bankruptcy Code "Section 541(a)(1) 'is all-encompassing, and Congress meant for it to be construed commensurately.'" *Russ v. Jackson County School Board,* 530 F. Supp. 3d 1074, 1079 (N.D. Fla. 2021). "The Bankruptcy Code defines a bankrupt's estate broadly to encompass all kinds of property,

including intangibles…" *Id.* at 1080. Put simply, all means all and includes Section 203 rights. Campbell's and Ross' termination rights pursuant to 17 USC §203, therefore, became part of their respective bankruptcy estates immediately upon the commencement of their respective bankruptcy case by operation of law.

The transfer restriction in section 203 does not prevent it from becoming an asset of Campbell's and Ross' bankruptcies. The Bankruptcy Code explicitly provides that, except for an exclusion for trust benefits (which does not apply here), "an interest of the debtor in property becomes property of the estate … notwithstanding any provision in … applicable nonbankruptcy law … that restricts or conditions transfer of such interest by the debtor…." 11 USC §541(c)(1)(A). Therefore, the transfer restriction in section 203 of the copyright act ("applicable nonbankruptcy law… that restricts or conditions transfer of such interest by the debtor") does not prevent a debtor's interest in section 203 termination right from becoming an asset of its bankruptcy estate. That means Campbell's and Ross' section 203 termination rights at issue are an asset of their bankruptcies. As the United States Supreme Court acknowledged, "[a] debtor's property does not shrink by happenstance of bankruptcy…." *Mission Product,* 139 S.Ct at 1663.

"Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code." *Russ,* 530 F.Supp 3d at 1082. The copyrights at issue were not abandoned back to Campbell or Ross. "After the bankruptcy case has been closed, 'property of the estate that is not administered in the bankruptcy proceedings remains the property of the estate.'" *Russ,* 530 F.Supp 3d at 1082. Consequently, as a result of their bankruptcies, whatever interest Campbell or Ross had in the copyrights at issue, including, but not limited to, any termination rights pursuant to 17 USC §203, are not theirs to exercise.

"Moreover, the bankruptcy code recognizes that only in limited circumstances (of which this is not one) are non-transferability restrictions to be respected in bankruptcy. 11 U.S.C.§541(c)." *Denadai v Preferred Capital Markets, Inc.,* 272 B.R. 21, 385 (D. Mass. 2001). To be considered for exclusion from becoming an asset of a bankruptcy estate, there must be evidence that Congress intended the statute at issue to serve as a general exemption from creditor process. *Id.* at 40. There is no such evidence here that Congress intended copyright termination in accordance with 17 USC §203 to serve as a general exemption from creditor process. An author's copyright termination rights may be his most valuable, or perhaps his only, asset.The United States Supreme Court has directed that "in interpreting a statute a court should always turn first to one, cardinal cannon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what is says there." *Connecticut National Bank v Germain,* 503 U.S. 249, 253-54, 112 S.Ct. 1146 (1992). Put another way, a Court is to "follow the text of the statute." *Unicolors, Inc. v H&M Hennes & Mauritz, L.P.,* 142 S.Ct. 941, 946 (2022). This is done by "examin[ing] the language of the provision itself." *Korman v HBC Florida, Inc.,* 182 F.3d 1291, 1295 (11th Cir. 1999). "When the words of a statute are unambiguous, then the first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l.,* 503 U.S. at 254. <u>Defendants have presented no facts nor legal precedent in support of their position.</u>

The Section 203 termination section of the Copyright Act says that "[t]ermination of the grant may be effected notwithstanding *any agreement* to the contrary, including an agreement to make a will or to make any future grant." 17 U.S.C. §203(a)(5)(emphasis added). As the plain text states, an author cannot give away his termination rights by "agreement." An agreement is a mutual understanding between two parties about their relative rights and duties involving the exchange of consideration. Black's Law Dictionary, 8th Ed., 2004; Corbin on Contracts §1.9. Completely absent from Section 203

is any language whatsoever saying that a bankruptcy has no effect on Section 203 termination rights. The Bankruptcy Code, however, does address this scenario, saying that "an interest of the debtor in property becomes property of the estate … notwithstanding any provision in … applicable nonbankruptcy law … that restricts or conditions transfer of such interest by the debtor...." 11 USC §541(c)(1)(A). This plain language governs, that is the end of the "judicial inquiry." *Connecticut Nat'l.*, 503 U.S. at 254.

## II. As To Luther Campbell The 2 Live Crew Copyrights Were Each Works Made for Hire Whose Transfer Cannot Be Terminated

The transfer of a copyright in a "work made for hire" is not subject to termination. 17 USC §203(a); *Ennio Morricone Music Inc. v Bixio Music Group Ltd.,* 936 F.3d 69, 73 (2nd Cir. 2019). "A 'work made for hire' is … a work prepared by an employee within the scope of his or her employment...." 17 USC §101. This requirement to qualify a work as a 'work made for hire' is straightforward and easy to apply. *Ennio,* 936 F.3d at 73.

Campbell, who was the sole-owner and CEO of Luke Records, WAS CELARLY AN EMPLOYEE OF Luke Records and acting within the scope of his employment, If Campbell was an "artist for hire," then there is not a majority of the joint authors exercising the Section 203 rights. Defendants have presented no facts nor law to support their position that Luther Campbell as the owner and CEO of Luke Records, was not an employee of his company.

First, Campbell, agreed in the 1991 recording contracts at issue that the 2 Live Crew Copyrights were works "made for hire." "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 USC §201(b).

Although the 1991 contracts state that Luther Campbell was am "artist for hire", Lil' Joe acknowledges this does not end the inquiry. *Cmty For Creative Non Violence v Reid,* 490 US 730, 737 (1989).

*Horror Inc. v Miller,* 15 F.4th 232 (2nd Cir. 2021), explains the test for determining whether one is an employee for purposes of establishing artist for hire status. Thirteen non-exhaustive factors were identified in *Reid* to aid in this inquiry. *Id.* at 243-44. These factors are not to be applied "in a mechanistic fashion" there is "no direction concerning how the factors were to be weighed." *Id.* at 248., 12 of the 13 factors favor the finding that Campbell was an employee of his company, Luke Records:

| Factor | Test | Evidence |
|---|---|---|
| 1 | Luke Records Right to Control | The 1991 Contracts specifically gives Luke Records complete control over the recording process. |
| 2 | The Skill Required. | Both Luke Records and the members of 2 Live Crew were skillful in the recordings process |
| 3 | Source of Instrumentalization and Tools | Luke Records paid for and provided the studio, picked the times when the studio would be used, and paid for all costs of production including the producers, instruments and tapes. Two of the albums at issue were recorded in studios owned by Like Records |
| 4 | Location of Work | Luke Records selected and paid for the studios, or owned the studios. |
| 5 | Duration of Relationship | The parties worked together on an exclusive basis from 1986 until 1995. |
| 6 | Right to Assign Additional Projects | Luke Records controlled the recording process. Campbell: Worked full time as CEO on a myriad of projects. |
| 7 | Extent of Discretion Over When and How Long Work | Luke Records controlled access to the studio and therefore when and how long work would occur. |
| 8 | Method of Payment | Luke Records paid them by check deducting payroll taxes.. |

|  |  | Campbell: compensated as owner with taxes withheld |
|---|---|---|
| 9 | 2 Live Crew's Role | The group was deemed employees. |
| 10 | Whether the Work is Part of Luke Records' Regular Business | Luke Records was a record company. Hence its regular business was recordings. |
| 11 | Whether Luke Records is in Business | Luke Records was in business at the time of the recordings. |
| 12 | Provisions of Employee Benefits | Campbell: Received employee benefits. |
| 13 | Tax Treatment | Luke Records treated the members as employees for payroll and tax purposes. |

Of these 13 factors, five "should be given more weight in the analysis, because they will usually be highly probative of the true nature of the employment relationship." *Horror,* 15 F.4th at 249, i.e. factors 3,4, 11-12. These factors likewise indicate that Campbell was an employee of Luke Records and therefore the 2 Live Crew Copyrights were "works for hire." As to the first factor, the right to control, the 1991 Contracts explicitly give Luke Records complete control and Campbell, Luke Records' CEO, controlled the entire process. Lil' Joe Statement at pp. 11-12, ¶ 3. Put simply, Campbell was the CEO of Luke Records as to factors 12 and 13. Campbell was provided employee benefits and was treated as an employee for tax purposes, meeting the 11th and 12th factors. Lil' Joe Statement at pp. 14-15, ¶¶ 12-20. These two factors in particular, "the parties' tax treatment of their relationship is, along with employee benefits, 'highly indicative' of whether a worker should be treated as a conventional employee for copyright purposes." *Horror,* 15 F.4th at 253. As to the final highly probative factor, Campbell performed numerous functions for Luke Records, as its CEO, beyond performing for *2 Live Crew*, including overseeing other acts. Lil' Joe Statement at p. 15, ¶¶ 15-19. As to the 2nd factor, the skill required (second factor), is a push – the same person, Campbell, is both the employer and the employee.

Lil' Joe is unaware of any authority holding the sole owner of a business to be an independent contractor, not an employee, just because he is a "skilled worker." (this proposition doesn't even make logical sense, as it would mean that a doctor or lawyer could never be an employee of his sole owned practice) The remaining seven of the 13 factors, which are "less significant in the copyright context", *Horror,* 15 F.4th at 255, also favor Campbell's status as an employee.

There are numerous cases supporting a finding that Campbell was acting within the scope of his employment. *See* e.g. *Sterpetti v. E-Brands Acquisition, LLC,* 2006 US Dist. LEXIS 21407 *20-22 (M.D. Fla. April 20, 2006)(an employee was an artist for hire who created a fresh pasta manual, within the scope of his employment even though there was no assignment nor contract; finding 3 elements must be present to show employee status if the work: a) is of the kind he is employed to perform; b) it occurs substantially with the authorized time and space limited; and c) it is activated at least in part by a purpose to serve the master.). Each of these three factors show that Campbell was acting within the scope of his employment with Luke Records.

Finally, Defendants can show no facts nor law supporting their position that Campbell not an employee of Luke Records.

### LR 7.1 Verification

I hereby verify that I met and conferred with opposing counsel and was unable to reach an agreement with respect to this motion.

_____

### III. CONCLUSION

Defendant have not properly asserted Section 203 termination rights; because:

a) Ross and Campbell (representing 2 of the 4 members of 2 Live Crew) do not have any Section 203 termination rights as a result of filing for personal bankruptcy.

b) Campbell was an artists-for-hire and as such, does not hold section 203 termination rights.

Respectfully submitted,

**WOLFE LAW MIAMI, P.A.**
*Counsel for Plaintiff Lil Joe Records*
175 SW 7 Street, Suite 2410
Miami, Florida 33130
Telephone:    (305) 384.7370
Facsimile:    (305) 384.7371

_____
RICHARD WOLFE, ESQ.
Fla. Bar No: 0355607
rwolfe@wolfelawmiami.com

## SERVICE LIST

I hereby certify that on March 9, 2023 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.