## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

LIL' JOE RECORDS, INC.,

        Plaintiff,

v.

MARK ROSS, CHRISTOPHER WONG
WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON,
AND LUTHER CAMPBELL,

        Defendants.

**CASE NO.:  1:21-CV-23727-DPG**

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 11 MOTION

i

## TABLE OF CONTENTS

MEMORANDUM OF LAW……………………………………………………………...1

A.     The Motion violates Federal Rule 11……………………………………………...1

B.     Plaintiff failed to meet and confer………………………………………………...3

C.     Plaintiff's motion is untimely……………………………………………………..3

D.     The Motion identifies no pleading that violates Rule 11…………………………4

E.     Defendants have not violated Rule 11……………………………………………5

        1.  Defendants' claims are not "objectively frivolous"………………………5

            a.  Bankruptcy does not divest authors of their termination

               rights………………………………………………………………6

               i.   The termination rights did not vest or accrue until

                    at least 2020 and are exercisable only by an author or

                    heir……………………………………………………...6

               ii.  Section 541(c)(2) of the Bankruptcy Code precludes

                    Plaintiff's argument……………………………………7

               iii.  Termination rights avoid the bankruptcy estate………………10

            b.  The works were not works-for-hire…………………………………10

        2.  No party was aware of any frivolous claim after a reasonable inquiry…………14

F.     Defendants should recover costs and fees…………………………………………15

CERTIFICATE OF SERVICE……………………………………………………………...17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Adams v. Taylor*,
  2022 WL 17330775 (W.D.N.Y. Nov. 29, 2022)..........................................................4

*Baldwin v. EMI Feist Catalog, Inc.*,
  2012 WL 13019195 (S.D. Fla. Dec. 11, 2012) ........................................................6, 9

*Barber v. Miller*,
  146 F.3d 707 (9th Cir. 1998).....................................................................................4

*Buster v. Greisen*,
  104 F.3d 1186 (9th Cir. 1997)...................................................................................5

*Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*,
  101 F. Supp. 2d 236 (S.D.N.Y. 2000)......................................................................15

*Clackamas Gastroenterology Assocs., P.C. v. Wells*,
  538 U.S. 440 (2003)................................................................................................12

*Cmty. for Creative Non–Violence v. Reid*,
  490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) ..........................................12

*Creasy v. Coleman Furniture Corp.*,
  763 F.2d 656 (4th Cir.1985).....................................................................................10

*Davis v. Blige*,
  505 F.3d 90 (2d Cir. 2007).........................................................................................7

*Heimerdinger v. Collins*,
  2009 WL 1743764 (D. Utah June 18, 2009).............................................................13

*Holgate v. Baldwin*,
  425 F.3d 671 (9th Cir.2005).......................................................................................3

*In re Davis*,
  110 B.R. 573 (Bankr. M.D. Fla. 1989).......................................................................8

*In re Farmers Markets, Inc.*,
  792 F.2d 1400 (9th Cir.1986).....................................................................................9

*In re FCX, Inc.*,
  853 F.2d 1149 (4th Cir. 1988)...............................................................................9, 10

*In re Harter*,
  10 B.R. 272 (Bankr. N. D. Ind. 1981) ......................................................................10

*In re Hilsen*,
  405 B.R. 49 (Bankr. E.D.N.Y. 2009).........................................................................8

*In re Moore*,
  907 F.2d 1476 (4th Cir. 1990)....................................................................................8

*In re Napster, Inc. Copyright Litig.*,
  191 F. Supp. 2d 1087 (N.D. Cal. 2002) ...................................................................14

*In re Pennie & Edmonds LLP*,
  323 F.3d 86 (2d Cir. 2003).........................................................................................4

*In re Polycorp Assocs., Inc.*,
  47 B.R. 671 (Bankr. N.D. Cal. 1985)..........................................................................7

*In re Satterwhite,*
    271 B.R. 378 (Bankr. W. D. Mo. 2002)....................................................................10
*Jules Jordan Video, Inc. v. 144942 Canada Inc.,*
    617 F.3d 1146 (9th Cir. 2010).................................................................................13
*Korman v. HBC Fla., Inc.,*
    182 F.3d 1291 (11th Cir. 1999)..................................................................................6
*Leevson v. Aqualife USA Inc.,*
    770 F. App'x 577 (2d Cir. 2019)..............................................................................13
*Lemon v. Myers Bigel, P.A.,*
    2021 WL 161978 (4th Cir. 2021).............................................................................12
*Marin v. Alvarez, Armas & Borron, P.A.,*
    2010 WL 338839 (S.D. Fla. Jan. 28, 2010) .........................................................5, 15
*Moody v. Amoco Oil Co.,*
    734 F.2d 1200 (7th Cir.1984)..................................................................................10
*Nakash v. U.S. Dep't of Justice,*
    708 F. Supp. 1354 (S.D.N.Y. 1988).........................................................................15
*Operating Eng'rs Pension Trust v. A-C Co.,*
    859 F.2d 1336 (9th Cir. 1988)...................................................................................5
*Playboy Enterprises, Inc. v. Dumas,*
    53 F.3d 549 (2d Cir. 1995)................................................................................11, 14
*Ridder v. City of Springfield,*
    109 F.3d 288 (6th Cir.1997)...................................................................................3, 4
*Roundtree v. United States,*
    40 F.3d 1036 (9th Cir. 1994)....................................................................................5
*Schiller & Schmidt, Inc. v. Nordisco Corp.,*
    969 F.2d 410 (7th Cir. 1992)..................................................................................13
*Smith v. Casey,*
    741 F.3d 1236 (11th Cir. 2014)...............................................................................12
*Solon v. Kaplan,*
    398 F.3d 629 (7th Cir. 2005)..................................................................................12
*Sterpetti v. E-Brands Acquisition, LLC,*
    2006 WL 1046949 (M.D. Fla. Apr. 20, 2006) ....................................................10, 11
*Taft v. O'Connell (In re Taft),*
    184 B.R. 189 (E.D.N.Y.1995)....................................................................................8
*Truesdell v. S. Cal. Permanente Med. Grp.,*
    293 F.3d 1146 (9th Cir. 2002)...................................................................................2
*Upstate Shredding, LLC v. Ne. Ferrous, Inc.,*
    2016 WL 865299 (N.D.N.Y. Mar. 2, 2016)...............................................................3
*von Kaenel v. Armstrong Teasdale, LLP,*
    943 F.3d 1139 (8th Cir. 2019).................................................................................12
*White v. Brenner,*
    2011 WL 4633783 (M.D. Fla. Aug. 30, 2011)........................................................2, 4
*Worldwide Primates, Inc. v. McGreal,*
    87 F.3d 1252 (11th Cir.1996)....................................................................................5

**Statutes**

11 U.S.C. § 541 ............................................................................................................7, 9
11 U.S.C. § 541(a) .............................................................................................................9
11 U.S.C. § 541(c)(1)(A) ...................................................................................................7
11 U.S.C. § 541(c)(2) ................................................................................................7, 8, 9
17 U.S.C. § 101 ................................................................................................................14
17 U.S.C. § 201 ................................................................................................................14
17 U.S.C. § 203 ..................................................................................................................6
17 U.S.C. § 203(a)(5) ...............................................................................................6, 8, 9
17 U.S.C.A. § 203 (a)(4) ...................................................................................................7
17 U.S.C.A. § 203 (b)(2) ...................................................................................................6
17 U.S.C.A. § 203(a)(1) ..............................................................................................7, 10

**Rules**

Fed. R. Civ. P. 11(b) .........................................................................................................4
Fed. R. Civ. P. 11(c)(1) ...................................................................................................15
Fed. R. Civ. P. 11(c)(2) .................................................................................................2, 4
Fed. R. Civ. P. 11 ...................................................................................................Passim

**Other Authorities**

5A Wright & Miller, Federal Practice and Procedure, § 1337.2 (2010) ..........................4
Renegotiating the Copyright Deal in the Shadow of the "Inalienable" Right to Terminate,
   62 Fla. L. Rev. 1329 (2010) ..........................................................................................9
Restatement (Second) of Agency § 228 (1958)...............................................................11

## MEMORANDUM OF LAW

Plaintiff, Lil' Joe Records, Inc.'s ("Li'l Joe"), Motion for Sanctions Pursuant to Federal Rule 11 ("Motion") fails both procedurally and on the substance.

**First**, Li'l Joe violated the notice and safe harbor requirement set forth in Federal Rule of Civil Procedure 11.

**Second**, Li'l Joe failed to meet-and-confer as required by the Local Rules. If he had, Defendants would have made him aware of his failure to satisfy Rule 11's prefiling requirements.[1]

**Third**, the Motion is untimely given that it was filed long after Defendants' deadline to amend the pleadings was required and, indeed, after summary judgment briefing had been completed.

**Fourth**, the Motion fails to challenge any specific writing or filing, as is required by Rule 11 and instead addresses, in general, Plaintiff's legal positions.

**Fifth**, the arguments set forth in the Motion are simply rehashed versions of the arguments Li'l Joe makes in its summary judgment briefs, which are currently pending. While the parties disputed a number of factual and legal positions in their legal briefs, none of Defendants' positions come close to meeting the Rule 11 standard for lack of merit. To the contrary, Defendants' arguments are supported by the record and relevant authority and address novel and complex areas of copyright law. The Motion should be denied, as follows.

### A.    The Motion violates Federal Rule 11

Plaintiff failed to comply with the express language of Rule 11, which requires the following before a party may move for relief under Rule 11:

---

[1] This Motion appears to be an attempt to distract from Plaintiff's own clear violations of the Federal Rules, as addressed in Defendants' pending Rule 11 Motion.

The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2)

The safe harbor provision requires a party to "*formally serve the offending party with **a copy of the proposed motion** for sanctions at least twenty-one (21) days prior to filing the motion for sanctions with the court.*" *White v. Brenner*, No. 6:10-CV-134-ORL-28, 2011 WL 4633783, at *8 (M.D. Fla. Aug. 30, 2011), report and recommendation adopted, No. 6:10-CV-134-ORL-28, 2011 WL 4633703 (M.D. Fla. Oct. 5, 2011)(italics by Court, bolding added), citing Fed. R. Civ. P. 11(c)(2). Courts regularly deny Rule 11 motions when movants fail to "comply with the safe harbor requirements." Id. at *9.

Plaintiff filed the Motion without complying with the above rule. Defendants provided notice to Plaintiff of this violation but Plaintiff refused to withdraw the Motion, which, itself, is a violation of Rule 11 given the clear text of Rule 11(c)(2). When pressed, and despite filing its filing of the Rule 11 Motion in March of 2023, Plaintiff claimed to have served the Rule 11 Motion back in October of 2022. But that claim is plainly false. While Plaintiff served a copy of a *different* motion back in October of 2022, that was motion was materially different from what has been filed and he never served, for purposes of the safe harbor, a "copy of the proposed motion" that he filed in March of 2023. *Compare* **Ex. A** (October 2022 emailed motion) with the instant Motion.

It is settled that the movant must serve "the allegedly offending party with a **filing-ready motion** as notice that it plans to seek sanctions." *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1150 (9th Cir. 2002)(emphasis added). And "strict compliance with Rule 11's safe

harbor provision" is required before a Rule 11 motion may be filed. See *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir.2005) (holding that courts "enforce [Rule 11's] safe harbor provision strictly"); see also *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir.1997) (noting that "Rule 11 cases emerging in the wake of the 1993 amendments [to Rule 11] have found [compliance with] the 'safe harbor' provision to be an absolute requirement."). Plaintiff did not comply with the "strict" and 'absolute' service requirement and thus violated the safe harbor provision. Its Motion thus fails.

### B.    Plaintiff failed to meet and confer

Plaintiff violated Local Rule 7.1 by failing to meet and confer and then submitting a false verification. When pressed about the lack of a meet-and-confer, Plaintiff's counsel claimed to have met and conferred back in October of 2022 but, even if that is true, that meet and confer would have concerned the draft motion he served at that time, which, as noted above, was a *different* motion. And the substance of the current Motion appears to address numerous issues that were directly addressed in discovery and elsewhere *after* October of 2022, so the subject matter could not have been covered back in October. Plaintiff's counsel failed to comply with Local Rule 7.1.

### C.    Plaintiff's motion is untimely

Plaintiff appears to challenge the allegations in Defendants' counterclaims. But, even if that challenge had any merit, the Court-ordered deadline to amend those counterclaims expired way back on May 15, 2022. *See* Dkt. No. 17. The Motion is thus untimely because Rule 11 motions are to be "disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." *Upstate Shredding, LLC v. Ne. Ferrous, Inc*., 2016 WL 865299, at *3 (N.D.N.Y.

Mar. 2, 2016), citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003). Here, Plaintiff's Motion fails because it is far too late under the Court's scheduling order for Defendants to amend their counterclaims.

Indeed, Plaintiff  waited until *after* the parties' summary judgment motions were filed to bring this Motion. But the "clear language and intent of the amended Rule" makes clear that "a party cannot wait until after summary judgment to move for sanctions under Rule 11." *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998), citing  *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir.1997), *cert. denied*, 522 U.S. 1046, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998). To be sure, the "purpose of the safe harbor is to encourage parties to abandon questionable contentions by allowing them to avoid sanctions with the timely withdrawal of meritless claims[.]" Id., citing Fed. R. Civ. P. 11; Adv. Comm. Notes, 1993. Plaintiff's Motion was filed after full summary judgment briefing and far too late for the "timely withdrawal" of the claims. It thus must fail.

### D.      The Motion identifies no pleading that violates Rule 11

Rule 11 applies to "pleading[s], written motion[s], or other paper[s]," which an attorney "present[s] ... by signing, filing, submitting, or later advocating." Fed. R. Civ. P. 11(b). The "purpose of the safe harbor provision is to allow the party against whom sanctions are sought to withdraw the challenged document(s)." *White*, 2011 WL 4633783, at *8, citing 5A Wright & Miller, Federal Practice and Procedure, § 1337.2 (2010). And any Rule 11 Motion "must describe the specific conduct that allegedly violates Rule 11(b)." *Adams v. Taylor*, No. 6:21-CV-06056 EAW, 2022 WL 17330775, at *3 (W.D.N.Y. Nov. 29, 2022), citing Fed. R. Civ. P. 11(c)(2).

Plaintiff's Motion fails because it identifies no pleading, motion or paper that Defendants submitted in violation of that Rule. Plaintiff instead references generally references the

"counterclaims" and argues that Defendants' legal theories are flawed, but that is an issue to be addressed via summary judgment motions. Indeed, Defendants make the very same arguments it makes in this Motion in its summary judgment briefing. The Motion fails because it does not identify any specific statement or language in any document that was improperly presented.

### E.    Defendants have not violated Rule 11

Setting aside the above flaws in the Motion, it still fails because Defendants' arguments on the merits are strong. Rule 11 sanctions are reserved for the "rare and exceptional case[s] where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). Because awarding sanctions is "an extraordinary remedy," id. at 1345, it is best reserved for the most egregious cases of misconduct. See, e.g., *Roundtree v. United States*, 40 F.3d 1036 (9th Cir. 1994); *Buster v. Greisen*, 104 F.3d 1186 (9th Cir. 1997).

In the "Eleventh Circuit, a court considering a motion for Rule 11 sanctions must conduct a two-step inquiry and determine whether the claims were objectively frivolous in view of the facts or of the law, and if they were, whether the person who signed the pleadings should have been aware that they were frivolous had he or she made a reasonable inquiry. *Marin v. Alvarez, Armas & Borron, P.A.*, No. 08-60821-CIV, 2010 WL 338839, at *4 (S.D. Fla. Jan. 28, 2010), citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir.1996). This inquiry leads to the ineluctable result that this Motion is meritless.

### 1.    Defendants' claims are not "objectively frivolous"

Defendants have  provided the Court, in connection with the summary judgment briefing, copious evidence in support of their claims.[2] This evidence includes a written contract signed in

---

[2] Defendants incorporate the arguments, evidence, and positions from its summary judgment briefing into this response to avoid redundancy.

1990, images of vinyl albums reflecting the copyright ownership referenced in that agreement, a formal copyright termination letter relating to that copyright ownership, and testimony from all parties to that agreement other than one (who is not part of this litigation) attesting to Defendants' interpretation of that agreement. Plaintiff's arguments lack merit and certainly do not establish that Defendants have violated Rule 11.

> **a.** **Bankruptcy does not divest authors of their termination rights**
>
> **i.** **The termination rights did not vest or accrue until at least 2020 and are exercisable only by an author or heir**

The Copyright Act's text clearly states that the termination right set forth at 17 U.S.C. § 203 does not "become vested" until "the date the notice of termination has been served[.]" 17 U.S.C.A. § 203 (b)(2). And "regardless of the effective date, under § 203(b)(2)," the "future rights that will revert upon termination of the grant become vested *on the date the notice of termination has been served*." *Baldwin v. EMI Feist Catalog, Inc.*, No. 11-81354-CIV, 2012 WL 13019195, at *2 (S.D. Fla. Dec. 11, 2012) (emphasis added by Court, internal quotations removed). The relevant notice of termination was served in 2020, well after the bankruptcy proceedings. As an unvested right, the termination right was not part of any bankruptcy estate.

Moreover, the termination right can only be "exercised" via the service of a termination notice on a date "after 35 and before 40 years have elapsed" from the date of the original transfer. *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1295 (11th Cir. 1999), citing 17 U.S.C. § 203(a)(5) ("Termination of the grant may be effected notwithstanding any agreement to the contrary....") (remaining citations omitted). Here, the exercise window did not open until well after any bankruptcy proceedings and the termination rights thus did not exist at the time of the

bankruptcy proceedings. They simply were not part of the bankruptcy estate because the rights can only be "effected by serving an advance notice in writing[.]" 17 U.S.C.A. § 203 (a)(4).

Also, the termination right is not transferrable to another party in bankruptcy because it can only be exercised by the "author or, if the author is dead," their heirs. 17 U.S.C.A. § 203(a)(1). Li'l Joe, as a matter of law, was unable to exercise the termination right because he did not author the works and is not an heir of an author. It thus could not have obtained the right as a nullity in bankruptcy.

It is settled under the Copyright Act that a grantor cannot validly "convey more than he owns[.]" *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007). No Defendant owned termination rights until well after the bankruptcy proceedings and as such could not have conveyed those rights as part of any such proceedings. Plaintiff admits as much, conceding that at the time of the Mark Ross bankruptcy Ross had "no rights" in regard to the recordings. See Dkt. 78, ECF pg. 5 (Plaintiff failed to number the pages of his Motion).

### ii.     Section 541(c)(2) of the Bankruptcy Code precludes Plaintiff's argument

Plaintiff now relies on the 11 USC §541(c)(1)(A) to argue that Defendants lost their termination rights in bankruptcy, but that argument is terminally flawed. While 11 U.S.C. § 541 "greatly expanded the concept of property entering a bankruptcy estate[,]" it "must be cautiously applied and not expanded into a concept of the creation of property where none existed under state law. While the bankruptcy code defines the interest which becomes property of the estate, the nature and extent of the debtor's *interest* in the property is still determined by non-bankruptcy laws. *In re Polycorp Assocs., Inc*., 47 B.R. 671, 673 (Bankr. N.D. Cal. 1985)(emphasis by Court), citing COLLIER ON BANKRUPTCY, 15th Ed. (MB), ¶ 541.061. Here, the Copyright Act would establish the "nature and extent" of Campbell's and Ross's

copyright interests and the Copyright Act's express language makes clear that any copyright interests that would be a part of a bankruptcy estate would **<u>not</u>** include the Section 230 termination right, which did not exist at the time of the bankruptcy *and* which is inalienable *and* which can only be exercised by an author or their heirs.

Section 541(c)(2) of the Bankruptcy Code precludes Plaintiff's argument, as it "places a boundary on property of the estate in accordance with applicable nonbankruptcy law" so that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law <u>is enforceable in a case under this title</u>." *In re Hilsen*, 405 B.R. 49, 56 (Bankr. E.D.N.Y. 2009)(emphasis added), citing 11 U.S.C. § 541(c)(2), *Taft v. O'Connell (In re Taft)*, 184 B.R. 189, 190 (E.D.N.Y.1995); see also *In re Davis*, 110 B.R. 573, 574–75 (Bankr. M.D. Fla. 1989)("Section 541(c)(2) of the Code requires that the property which is subject to restriction on a transfer of a beneficiary interest of a debtor is a trust which is enforceable under nonbankruptcy law to be recognized and is equally enforceable in a case filed under Title 11.")

Section 541(c)(2), which Plaintiff fails to cite, defeats Plaintiff's argument in full. Section 203 of the Copyright Act places a "restriction on the transfer of a beneficial interest of the debtor" and must be enforced. 11 U.S.C. § 541(c)(2). "Applicable nonbankruptcy law" means "precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable." *In re Moore*, 907 F.2d 1476, 1477 (4th Cir. 1990).

Here, the Copyright Act is the "non-bankruptcy" law that restricts the transfer of Section 230 termination rights and establishes that they cannot be alienated. See 17 U.S.C.§ 203 (a)(5) ("Termination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant."). Indeed, to "protect authors

from permanently losing the rights to their works before they are able to determine the work's value, Congress created an **inalienable** right to terminate a prior grant of an interest in a copyright." *Baldwin,* 2012 WL 13019195, at *2, citing, generally Lydia Pallas Loren, Renegotiating the Copyright Deal in the Shadow of the "Inalienable" Right to Terminate, 62 Fla. L. Rev. 1329, 1333-42 (2010). As Section 230 rights cannot be alienated and Campbell's and Ross' termination rights did not even exist at the time of the bankruptcies, there was no "interest" that could have been transferred to the bankruptcy estates.

To the extent that Plaintiff argues that Luther Campbell and Ross (or the bankruptcy court) agreed or decided that Campbell's and Ross's Section 230 termination rights would be included as assets in their respective bankruptcy proceedings, those agreements and decisions constitute "agreements to the contrary" that are ineffective as a matter of law under 17 U.S.C. § 203(a)(5). And this "restriction on the transfer" applies here under 11 U.S.C. § 541(c)(2).

To be sure, "neither § 541(a), nor any other Bankruptcy Code provision, answers the threshold questions of whether a debtor has an interest in a particular item of property and, if so, what the nature of that interest is." *In re FCX, Inc*., 853 F.2d 1149, 1153 (4th Cir. 1988), citing *In re Farmers Markets, Inc*., 792 F.2d 1400, 1402 (9th Cir.1986); see also 4 Collier on Bankruptcy ¶ 541.02, at 541-11 (15th ed. 1985) (The Bankruptcy Code does not "provide[ ] any rules for determining whether the debtor has an interest in property...."). As Section 541 does not dictate whether Ross or Campbell had an interest in any Section 230 rights or the nature of that interest, Section 541 actually proves that the termination rights were *not* part of any bankruptcy estate.

Moreover, since the bankruptcy estate under § 541(a) succeeds "only to those interests that the debtor had in property *prior* to commencement of the bankruptcy case[,]" and the

Section 230 rights did not vest, accrue, or become effective until long after the bankruptcy

filings, those termination rights were not part of any bankruptcy. *In re FCX, Inc.*, 853 F.2d 1149,

1153 (4th Cir. 1988), citing *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 662 (4th

Cir.1985); see also *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.1984) ("[W]hatever

rights a debtor has in property at the commencement of the case continue in bankruptcy-no more,

no less.").

### iii.    Termination rights avoid the bankruptcy estate

The text of the Bankruptcy Code directs courts to determine the present value of the asset

at the time of the filing, and, if there is no value to the present asset, exclude the asset from the

bankruptcy estate. See *In re Satterwhite*, 271 B.R. 378, 382 (Bankr. W. D. Mo. 2002) (survivor

benefits not part of the bankruptcy estate because the debtor could not sue on the date of the

petition to get a lump sum of those future benefits); *In re Harter*, 10 B.R. 272, 276 (Bankr. N. D.

Ind. 1981) (future pension payments are not part of estate due to the fact that holder had no right

to obtain lump sum distribution). Here, there was not only no value to the present asset, but no

value to asset *at all*, as only an artist or their heir can exercise the termination right, as discussed

above, and Li'l Joe was neither. See 17 U.S.C.A. § 203(a)(1).

### b.    The works were not works-for-hire

Plaintiff, in arguing that the works at issue were for-hire, must prove "two elements,"

namely "(1) the author must be an employee, and (2) the work must be prepared within the scope

of the servant's employment." *Sterpetti v. E-Brands Acquisition, LLC*, No. 6:04-CV-1843-ORL-

3DA, 2006 WL 1046949, at *4 (M.D. Fla. Apr. 20, 2006)(citation omitted). An employee's

conduct is within the scope of his or her employment "only if: (a) it is of the kind he is employed

to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is

10

actuated, at least in part, by a purpose to serve the master." Id. at *5, citing Restatement (Second) of Agency § 228 (1958)(remaining citation omitted). And this is a "conjunctive test, and thus the **party asserting that the work in question was made for hire must satisfy all three elements**." Id. (citation omitted, emphasis added).

Plaintiff argues that "Defendants have presented no facts nor law to support their position" in this regard, but that argument misplaces the burden of proof. See Dkt. No. 78, ECF pg. 8 (bolding and underlining removed). It is Plaintiff who must come forward with evidence to prove each of the above elements and it simply has not and cannot do so.

Plaintiff argues without force that the recordings at issue were works-for-hire for the Skyywalker Records label because 2 Live Crew were employees of the label. This is false and contrary to all evidence. Plaintiff fails to acknowledge that *not a single party* to the agreement between 2 Live Crew and Skyywalker Records claims that the agreement was a work-for-hire. To the contrary, both the owner of the label and three out of the four[3] artists that signed the agreement all agree that 2 Live Crew's members were not employees and the works were not for-hire. Three of the four 2 Live Crew members and Campbell on behalf of the label have all submitted declarations affirming that the group's members were not employees and that the works were not works for hire. There is no competent evidence to rebut this proof and this is terminal as the intent of the parties must be given effect. See *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 559 (2d Cir. 1995)("the 1976 Act requires that the parties agree before the creation of the work that it will be a work made for hire.").

Indeed, *none* of the parties to that contract have asserted that the works were for-hire. Such a position would be nonsensical because if the works were for-hire there would be no need

---

[3] The fourth individual has not participated in these proceedings.

for a contract and it is undisputed that 2 Live Crew signed one contract in 1990 and another in 1991 (the latter of which is unchallenged by Plaintiff). If 2 Live Crew's members were employees, these agreements would be unnecessary and superfluous. And, notably, there are no employment agreements of any kind in the record.

Plaintiff argues that Campbell was an "employee" of Luke Records because he owned the company. Notably, the "term 'employee' " refers "to a hired party in a conventional employment relationship," and the question of employment is analyzed under traditional principles of agency. *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). Campbell was never "hired" by the record label. And owners are not necessarily employees. See *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 450 (2003) ("The mere fact that a person has a particular title—such as partner, director, or vice president—should not necessarily be used to determine whether he or she is an employee or a proprietor[.]"); *Solon v. Kaplan*, 398 F.3d 629 (7th Cir. 2005) (owner was as not an employee for purposes of Title VII); *Lemon v. Myers Bigel, P.A.*, No. 19-1380, 2021 WL 161978 (4th Cir. 2021)(same); *von Kaenel v. Armstrong Teasdale, LLP*, 943 F.3d 1139 (8th Cir. 2019) (owners was not an employee for purposes of the ADEA). And Campbell, like the other members of the group, at least for a time, continued to receive his writer's and performer's royalties in connection with the songs at issue, which would not be the case if he were an employee. See *Smith v. Casey*, 741 F.3d 1236, 1242 (11th Cir. 2014) (plaintiff was a beneficial copyright owner because he had parted with legal title in exchange for the right to receive royalties).

And even if Campbell was an employee of the record label for purposes of running the label, he was an independent contractor for purposes of acting as a performance artist. Indeed, it is settled law that a "worker can be both an employee and an independent contractor

concurrently for one employer." *Leevson v. Aqualife USA Inc.*, 770 F. App'x 577, 582 (2d Cir. 2019) Thus, Campbell's "scope of employment" as an employee, if he was one, would be running the record label, paying vendors, renting office space, and completing tasks related to the management of the company. It would not include recording music as that type of creative project is outside of the scope of a label owner's standard scope of business. And given that Campbell owned the record label, if Campbell "intended that his creative work be outside the scope of his employment with [the label], there was no one to disagree." *Jules Jordan Video, Inc. v. 144942 Canada Inc*., 617 F.3d 1146, 1156 (9th Cir. 2010). That was clearly the intent here given that Campbell signed the contracts both on behalf of the label and behalf of himself as an individual recording artist and testified unequivocally on this point.

The factors here "overwhelmingly" weigh against finding a work for hire: "authorship requires great skill; the authorship did not occur at a [label]-owned location; there is no evidence that the [label] had the right to assign additional projects; [plaintiff] had full discretion over when and how long to work." *Heimerdinger v. Collins*, No. 2:07 CV 00844 DN, 2009 WL 1743764, at *5 (D. Utah June 18, 2009). In *Heimerdinger*, the court held that a company co-owner's work was not a work-for-hire because the "acts of authorship were not within the scope of any employment for the [company]." Id. at *3. The same result inures here, particularly because it was and is undisputed between Campbell and the label (via Campbell) that his work was not for-hire.

Li'l Joe also argues that a 1991 contract states that copyrights to be created in the future were "works for hire." This is irrelevant to this case because the works at issue in this case were created **before** 1991 and a work-for-hire agreement must be executed **before** the creation of the work. *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 412-13 (7th Cir. 1992)(adopted

13

a bright-line rule requiring that the parties must sign the work-for-hire agreement before the work is created in order for the agreement to be valid.); *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 559 (2nd Cir. 1995) (parties may not enter into work-for-hire agreements years after a work is created). As such the 1991 agreement has no impact on the prior works and Plaintiff's unexplainable reliance on the 1991 agreement is misguided.

Even if the 1991 agreement was not too late to be applicable, "sound recordings" are not included in the types of works that can be "specially commissioned" works for hire under the plain reading of 17 U.S.C. § 101. *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1097 (N.D. Cal. 2002) "Works for hire" are considered "specially commissioned" when (a) the work is specially ordered or commissioned; (b) the parties agree in writing in advance that work will be a "work for hire"; and (c) when the work fits within one of nine statutorily drawn categories. Id., citing 17 U.S.C. § 201. Sound recordings are **not** one of the nine listed works. Id. As such, any contract purporting to convert the works to "for-hire" status fails.

Finally, in the chart in its Motion, Plaintiff makes numerous arguments regarding work-for-hire but cites to and includes no evidence. And Plaintiff fails to acknowledge the signed contracts to which Campbell and the record label are **both** parties. If Campbell was an employee, those agreements would be unnecessary. As all parties involved that have weighed in on the recording of the songs and transfer of the relevant rights to the label agree that the songs were not works-for-hire, Defendants' position is well taken.

## 2. No party was aware of any frivolous claim after a reasonable inquiry

To the extent that the documents and testimony do not establish that Defendants' claim is meritorious, there is no evidence that any party did not make a reasonable inquiry or was aware that this evidence was insufficient to present a colorable claim. The reasonableness of the inquiry

"may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for the facts underlying the [violative document]; ... or whether he depended on forwarding counsel or another member of the bar." *Marin*, 2010 WL 338839, at *4 (remaining citation omitted). The agreements, evidence, and issues addressed in this case at issue in this case date back to the 1980s and the parties' positions rely in part on the memories of witnesses. The vast weight of the evidence, though, supports Defendants' positions. So, while Plaintiff may dispute Defendants' claims, they violate no Rule. It is respectfully submitted that this Motion should be denied.

      **F.**    **Defendants should recover costs and fees**

      This Motion is untimely and meritless and was filed in violation of Rule 11(c)(2). Defendants should thus recover their costs and fees in connection with this Opposition. The "court may award to the prevailing party [on a Rule 11 motion] the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(1). Indeed, "requests for sanctions seek court orders and are, therefore, subject to the same Rule 11 analysis as all other motions." *Nakash v. U.S. Dep't of Justice*, 708 F. Supp. 1354, 1368 (S.D.N.Y. 1988). Here, Plaintiff clearly violated Rule 11 by failing to abide by the notice and safe harbor provision. And the motion is clearly untimely and meritless.

      The Motion is also suspect being that it was only filed *after* Defendants met-and-conferred over their own Rule 11 motion. A request for sanctions under Rule 11 is not a tactical device" and Plaintiff's Motion is no more than an attempt to distract from its own clear rule violations and increase the burden of this case. Id. at 1370; see also *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 101 F. Supp. 2d 236, 246 (S.D.N.Y. 2000). It is obvious that the spirit of Rule 11,which looks to encourage the withdrawal of meritless claims at an early juncture

in the litigation, is not furthered here. As such, Defendants respectfully request that they be allowed to recover the fees incurred in opposing this Motion, in an amount to be set by the Court.

DATED: March 23, 2023                    Respectfully submitted,

*/s/  Angela M. Nieves*
ANGELA M. NIEVES
Florida Bar Number:  1023760
Angela.nieves@sriplaw.com
JOEL B. ROTHMAN
Florida Bar Number:  98220
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*-with-*

SCOTT ALAN BURROUGHS
(admitted *pro hac vice*)
scott@donigerlawfirm.com

**DONIGER / BURROUGHS**
237 Water Street
First Floor
New York, NY 10038
(310) 590-1820 – Telephone

*Counsel for Defendants*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on March 23, 2023 a true and correct copy of the foregoing document was submitted to the Clerk of Court CM/ECF System to all parties listed below on the Service List.

                                         */s/ Scott Alan Burroughs*
                                         Scott Alan Burroughs