**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

LIL' JOE RECORDS, INC.,

Plaintiff,

v.

MARK ROSS, CHRISTOPHER WONG WON, JR., RODERICK WONG WON, LETERIUS RAY, ANISSA WONG WON, AND LUTHER CAMPBELL,

Defendants.

**CASE NO.: 1:21-CV-23727-DPG**

**DEFENDANTS' OPPOSITION TO MOTIONS IN LIMINE**

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION

Plaintiff's motions in lime ("MIL") should be denied. A court should "exclude evidence in limine only when it is clearly inadmissible on all potential grounds" and Plaintiff "has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). In general, such motions "are disfavored; admissibility questions should be ruled upon as they arise at trial. Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." *Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007). Each of Plaintiff's MILs fails, as follows:

**A. The MILs are improper because they do not address specific pieces of evidence or are disguised summary adjudication motions**

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered*." Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). Such motions "should be limited to specific pieces of evidence and not serve as reinforcement regarding the various rules governing trial, or (re)-addressing substantive motions such as motions for summary judgment." *Ctr. Hill Cts. Condo. Ass'n, Inc. v. Rockhill Ins. Co*., No. 19-CV-80111, 2020 WL 496065, at *2 (S.D. Fla. Jan. 30, 2020)(citation omitted).

**B. Each MIL is insufficient**

Plaintiff cannot meet its burden on any of its challenges to Defendants' evidence, as follows:

**(1) The oral contract**

Plaintiff seeks to exclude the "alleged oral contract" at issue in this case, which was later memorialized in writing. Plaintiff argues that it should be excluded but then addressed not its admissibility but its substance and whether it was binding. A motion in limine is "inappropriate for resolving substantive issues [and] is not the mechanism by which we address or narrow the issues to be tried." *Ctr. Hill Cts. Condo. Ass'n, Inc. v. Rockhill Ins. Co*., 2020 WL 496065, at *3 (S.D. Fla. 2020). The questions of whether the oral contract was reached is a substantive issue for the court and jury.

Plaintiff in essence seeks a ruling on the existence of the oral contract but a motion in limine "is not the proper vehicle for seeking a dispositive ruling on a claim." *Whidden v. Roberts*, 334 F.R.D. 321, 324 (N.D. Fla. 2020), citing *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013). And it cannot "be used to resolve factual disputes or weigh evidence." *Id*., citing *C & E Servs., Inc. v. Ashland Inc*., 539 F. Supp. 2d 316, 323 (D. D.C. 2008); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D. N.J. 2008) (noting that motions in limine should be used to "address evidentiary questions and are inappropriate devices for resolving substantive issues, such as the sufficiency of the evidence to support a claim or defense").

Here, the factual issues pertaining to a "meeting of the minds" as to the contract terms is a "factual issue" for which the court must "weigh evidence." An oral contract will be binding even if the terms are indefinite if there is a meeting of the minds. *Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc*., 2009 WL 1046135, at *4 (M.D. Fla. Apr. 19, 2009), aff'd, 356 F. App'x 221 (11th Cir. 2009), citing *Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp*., 302 So.2d 404, 408 (Fla.1974) ("Even though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and

seriously understand and intend the agreement to be binding on them.”). Given that the parties reached an agreement on the essential terms and performed under those terms for years, there is no doubt that a contract was formed. And the fact that the parties to the agreement could not recall at deposition each term of a 35-year-old agreement does not make evidence of that agreement inadmissible. This is particularly true given that no party to the oral agreement disputes that it was reached and is binding. There is no basis to exclude all evidence of the oral agreement.

Finally, this MIL, which apparently seeks to exclude all evidence of an oral contract also fails because it is “overbroad” in that it “lacks the necessary specificity with respect to the evidence to be excluded.” *Ctr. Hill Cts. Condo. Ass’n, Inc.*, 2020 WL 496065, at *2. The MIL fails. Indeed, Plaintiff does not challenge any specific evidence, as is required, but objects to the entirety of the oral contract at issue. That is insufficient.

**(2) The Wong Won heirs’ testimony**

Plaintiff challenges the Wong Won testimony as hearsay but it is not hearsay because it is not always offered for the truth of the matter asserted and even if it is, the evidence is within an exception.

The Wong Won testimony is based, in part, on their review of the Wong Won business records.[1] Leterius Ray, the heir who testified on behalf of the estate, testified that he located his father’s records, and reviewed them after his father’s death. Declaration of Scott Alan Burroughs

[1] *See,* Declaration of Leterius Ray in Support Of Motion For Partial Summary Judgment (Dkt. 53-75) – “A review of the estate records reflects that my father Christopher Wong Won was never an employee of the record labels and did not create the albums at issue as a work-for-hire.

¶2, Ex. 1 Ray Transcript, pg. 50:6-51:5[2] pg. 51:25-52:10[3] pg. 52:2-53:11[4].

An "[a]n authenticated document is admissible as a business record if it 'was made at or near the time by — or from information transmitted by — someone with knowledge'; if it 'was

[2] Q. Other than these 26 pages of documents, did you or your siblings, find any other documents among your father's possessions that were related to 2 Live Crew?
A. I don't recall.
Q. So how did you find these 26 pages?
A. He had them with his personal possessions.
Q. And where did he keep his personal possessions?
A. His residence.
Q. And where was his residence?
A. In Florida.
Q. What was the address?
A. I don't recall the address at the time.
Q. Where within the residence were these documents?
A. He had a tote.
Q. A tote?
A. Uh-huh.
Q. Like a little bag?
A. No. Like a tub, like a --
Q. A plastic tub of documents? And were there documents in there other than these 26 pages? ·
A. Yes.

[3] Q. So I'm going to go up to document 220. Okay. I am showing you a document. Do you see down on the bottom it says 2LiveCrew0220?
A. Where are we at? Show me.
Q. Right here.
A. Oh, okay.
Q. Do you see that?
A. Yes.
Q. Do you know what this document is?
A. That is the receipts. That -- the particular document there, yes.

[4] Q. No, that's not my question. My question is: Does the reference as No. 17 on this page, 220, indicate that Lil' Joe Records gave your father on February 2, 2016, the April 1991 contract?
MR. BURROUGHS: Objection, calls for speculation. But if you have an answer, go ahead.
THE WITNESS: Yes, that's the receipt for the documents that were produced.
BY MR. WOLFE: Q. And did you find the April 1991 contract with Luke Records among your father's possessions?
A. All these documents were together. ·
Q. And would that include the April 1991 contract?
A. Yes.

kept in the course of a regularly conducted activity'; and if 'making the record was a regular practice of that activity.' " *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1267 (11th Cir. 2015), quoting Fed. R. Evid. 803(6)(A)-(C). If these conditions are met and the opponent does not show the material indicates a lack of trustworthiness, the business record is admissible. Fed. R. Evid. 803(6)(E). "[W]hen deciding whether an exception to the rule against hearsay applies, the court may consider any unprivileged evidence — even hearsay." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d at 1268. Rule 803(6) requires the testimony of a qualified witness who can explain the record-keeping and it is not necessary for the person who actually prepared the documents to testify so long as there is other circumstantial evidence to suggest the trustworthiness of the documents." *United States v. Dreer*, 740 F.2d 18, 19–20 (11th Cir. 1984) And "[t]he testifying witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d at 1268.

Moreover, the Wong Won heirs' testimony will include "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan)" which is an exception to the rule against hearsay. Fed. R. Evid. 803(3). The testimony is not inadmissible.

**(3) The Jacobi testimony**

Jacobi's testimony is inadmissible because Jacobi represented the Defendants and his testimony is precluded by privilege. The attorney-client privilege protects the disclosures that a client makes to his attorney, in confidence, for the purpose of securing legal advice or assistance. *In re Grand Jury* (G.J. No. 87–03–A), 845 F.2d 896, 897 (11th Cir.1988). Federal Rule of Evidence 501 provides that "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed.

2d 584 (1981). The "attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." Id., citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). And its "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Id. Any first-hand knowledge that Jacobi may have would be due to his communications with Defendants, who were his clients at the time, and would resultantly be covered by the privilege. They must be excluded.

**(4) The Weinberger testimony**

Weinberger's misconduct as Defendants' counsel is relevant to these proceedings because it goes to the weight of Weinberger's testimony. Weinberger does not dispute that he represented Luke Records, the company previously owned by Defendant Luther Campbell, and Campbell himself. See MIL, Ex. A, pg. 3. And he can't dispute that the representation was itself an issue of dispute, as reflected in the "Malpractice or Malfeasance Claims by Luther Campbell or Luke Records Against Defendant Weinberger" that Plaintiff sought to exclude in another case. *Thompkins v. Lil' Joe Recs., Inc.*, 2003 WL 25719229, at *1 (S.D. Fla. 2003). Weinberger's involvement in malpractice committed by Nicholas Manzini and the rest of the process by which Luke Records was pushed into bankruptcy is highly relevant to this case, as the rights at issue were obtained by Weinberger via those bankruptcy proceedings.

Weinberger's testimony is inadmissible on topics for which he refused to testify at deposition, including the contracts at issue.[5] Federal Rule of Civil Procedure 37(c)(1) states that,

---

[5] From the Deposition Transcript of Weinberger, 64:22– 65:16, attached as Exhibit 71 to Supplemental Declaration of Scott Alan Burroughs ¶ 2, Ex. 71, filed with Defendants' Reply in Support of their Motion for Summary Judgment:

"[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). And the "burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co*., 318 F. App'x 821, 824 (11th Cir. 2009)(quotation omitted).

It is axiomatic that a "corporation must make a conscientious, good faith effort to designate the person having knowledge of the matters sought and to prepare that deponent to answer questions about the subject matter topics 'fully, completely, and unevasively.'" *Wausau Underwriters Ins. Co. v. Danfoss, LLC*, 310 F.R.D. 683, 685 (S.D. Fla.), aff'd, 310 F.R.D. 689 (S.D. Fla. 2015), quoting *In re Brican America LLC Equipment Lease Litigation*, 2013 WL 5519969, *3 (S.D.Fla.2013). And the "Rule 30(b)(6) witness must provide responsive answers **even if the information was transmitted through the corporation's lawyers**. *Don Goyo Aviation Corp. v. Catlin Ins. Co., Inc.*, No. 17-22390-CIV, 2018 WL 11459453, at *3 (S.D. Fla. Sept. 27, 2018)(emphasis added)(citations omitted). Lil' Joe's corporate witness – its owner and

---

Q. Okay. Now, do you want to go back to any pages or any sections of the agreement to take another look?
MR. WOLFE: Same instruction. ·Don't answer the question. And, again, I'll repeat, I'm willing to print out all 86 pages and give him the opportunity to read it, not as you're flipping through, and -- and because any answer that he gives will only misconstrue his response, which would be inaccurate, unless he had the opportunity to review the document.
BY MR. BURROUGHS: Have you ever seen this document before?
MR. WOLFE: Same instruction.
BY MR. BURROUGHS: Okay.· And are you going to take your attorney's instruction and not answer questions about this contract?

A. Yes.

sole fulltime employee Weinberger - refused to testify about the contracts at issue, how they related to the rights at issue, or how they impacted the claims at bar. He refused to testify regarding the relevant contracts even though it produced them in discovery and has had them in its business records for decades. And he did so despite the Fed.R.Civ.P. 30(b)(6) Notice clearly stating that topics for examination would include "[t]he form substance of the agreements that DEFENDANTS have sought to terminate" and "Communications regarding the rights to ownership, use, or exploitation of the 2 LIVE CREW WORKS" and "[a]ll documents which purport to show Lil Joe Records, Inc.'s purported ownership and right to exploit the 2 LIVE CREW WORKS and the trademarks at issue." See Supplemental Declaration of Scott Alan Burroughs ¶ 2, Ex. 71, filed with Defendants Reply in Support of their Motion for Summary Judgment. Weinberger also refused to testify about the manner in which he kept those contracts and refused to identify, let alone discuss, documents that it had produced in discovery related to its maintenance of the contracts. This warrants heavy sanction.

Notably, "noncompliance with its Rule 30(b)(6) obligations can lead to sanctions, such as imposition of costs, preclusion of testimony, and even entry of default." *Don Goyo Aviation Corp. v. Catlin Ins. Co., Inc.*, No. 17-22390-CIV, 2018 WL 11459453, at *4 (S.D. Fla. Sept. 27, 2018)(citations omitted). If a company' witness fails to properly testify, the court may bar the party "from later offering trial testimony on any of the topics for which the corporate representative was unable to provide adequate deposition testimony[.]" *Wausau Underwriters Ins. Co. v. Danfoss, LLC,* 310 F.R.D. 683, 687 (S.D. Fla.), aff'd, 310 F.R.D. 689 (S.D. Fla. 2015)(granting motion).

Here, Lil' Joe should be barred from entering any testimony regarding the 1990 Agreement, the 1991 Agreements, how they were kept, or how they were interpreted or enforced.

Preclusion is appropriate because a "corporate designee's response expressing a lack of knowledge is an answer that binds the corporation at trial -- and therefore prohibits the corporation from offering evidence at trial expanding on its original answer." *Don Goyo Aviation Corp. v. Catlin Ins. Co., Inc.,* 2018 WL 11459453, at *4 (S.D. Fla. 2018)(citations omitted).

Weinberger's testimony is also inadmissible to the extent it is based on communications he had as a lawyer for any of the Defendants' or their businesses, such as Luke Records, for the same reasons as discussed above in the Jacobi section. It is beyond dispute that "Weinberger, prior to starting his own recording business as Lil' Joe Records, served as in-house counsel to Luke Records, and that Weinberger was ostensibly involved in at least some of Luke Records' dealings[.]" *Thompkins v. Lil' Joe Recs., Inc*., 476 F.3d 1294, 1314, fn. 22 (11th Cir. 2007).

**(5) BMG's response to the termination notice**

BMG did not challenge the termination notice, which is evidence of its sufficiency. Evidence is relevant if it has "any tendency to prove or disprove a fact of consequence." *Ctr. Hill Cts. Condo. Ass'n, Inc*., 2020 WL 496065, at *2 (S.D. Fla. 2020), citing Fed. R. Evid. 401, 402; Advisory Comm. Notes, Fed. R. Evid. 401 ("The standard of probability under the rule is 'more probable than it would be without the evidence.'"). BMG's response is evidence that Defendants created the songs at issue and terminated its transfer of the copyright for those songs and that the transfer was sufficient to provide notice and terminate the rights at issue.

**(6) Lil Joe's monetization of the copyrights**

Lil' Joe has profited greatly from the Defendants' artistry and has not shown that this evidence is "clearly inadmissible for any purpose." *Soto v. Geico Indem. Co*., No. 6:13-CV-181-ORL-40KR, 2014 WL 3644247, at *1 (M.D. Fla. 2014) (explaining that "a trial court should only exclude evidence in limine where the evidence is clearly inadmissible for any purpose.").

**C. Plaintiff failed to meet and confer**

Plaintiff did not meet and confer or include the certification of the meet and confer as required by L.R. 7.1(a)(3). This is also grounds to deny the MILs.

**D. The MILs should be denied**

There is no basis for the MILs and they should be denied. At the very least, the Court should reserve the right to address the issues at trial.

Dated: March 27, 2023

Respectfully submitted,

*/s/ Scott Alan Burroughs*

SCOTT ALAN BURROUGHS
(admitted *pro hac vice*)
scott@donigerlawfirm.com
**DONIGER / BURROUGHS**
237 Water Street, First Floor
New York, New York 10038
(310) 590-1820

JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com
**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on March 27, 2023 a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorneys of record via the CM/ECF system.

*/s/ Scott Alan Burroughs*
Scott Alan Burroughs