# EXHIBIT 1

```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF FLORIDA
              CASE NO. 1:21-CV-23727-DPG
```

LIL' JOE RECORDS, INC., a
Florida corporation,

                Plaintiffs,
V.

MARK ROSS, CHRISTOPHER WONG
WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON
and LUTHER CAMPBELL,

                Defendants.
_____/

              VIDEOTAPED DEPOSITION OF
                    LETERIUS RAY
                 Pages 1 through 97


             Friday, November 4, 2022
                    9:35 A.M.
         VIA VIDEOCONFERENCE BY ALL PARTIES
                    VIA ZOOM


             Stenographically Reported By:
                   Debra L. Stark,
              Notary Public State of Florida

```
 1            MR. BURROUGHS: Objection, vague, compound.
 2       But if you understand, please respond.
 3            THE WITNESS:  I don't -- what's the
 4       question?
 5  BY MR. WOLFE:
 6       Q.   Other than these 26 pages of documents,
 7  did you or your siblings, find any other documents
 8  among your father's possessions that were related
 9  to 2 Live Crew?
10       A.   I don't recall.
11       Q.   So how did you find these 26 pages?
12       A.   He had them with his personal possessions.
13       Q.   And where did he keep his personal
14  possessions?
15       A.   His residence.
16       Q.   And where was his residence?
17       A.   In Florida.
18       Q.   What was the address?
19       A.   I don't recall the address at the time.
20       Q.   Where within the residence were these
21  documents?
22       A.   He had a tote.
23       Q.   A tote?
24       A.   Uh-huh.
25       Q.   Like a little bag?
```

```
 1     A.    No.  Like a tub, like a --
 2     Q.    A plastic tub of documents?
 3           And were there documents in there other
 4   than these 26 pages?
 5     A.    Yes.
 6     Q.    Is there any reason why you haven't
 7   turned over those other documents?
 8     A.    Have we not?  I mean, I don't know.
 9           MR. BURROUGHS:  Yeah, I believe that I
10     have turned over to you, Mr. Wolfe, what we
11     found and was responsive to the discovery
12     requests.
13 BY MR. WOLFE:
14     Q.    All right.  So let's back up.  Your father
15   died in 2018, and you said you were with them the
16   day before?
17     A.    Correct.
18     Q.    Were all the siblings there?
19     A.    Where?
20     Q.    When you found these documents?
21     A.    No, not all of us.
22     Q.    Who was there?
23     A.    I mean I don't recall.  It was a while
24   ago.
25     Q.    So I'm going to go up to document 220.
```

```
 1            Okay.  I am showing you a document.  Do
 2   you see down on the bottom it says 2LiveCrew0220?
 3       A.   Where are we at?  Show me.
 4       Q.   Right here.
 5       A.   Oh, okay.
 6       Q.   Do you see that?
 7       A.   Yes.
 8       Q.   Do you know what this document is?
 9       A.   That is the receipts.  That -- the
10   particular document there, yes.
11       Q.   Okay.  And do you see that among them,
12   No. 17, is the agreement, April, 1991, Luke
13   Records, Inc.
14            Do you see that?
15       A.   I see that line, yes.
16       Q.   Do you know if, in fact, Lil' Joe Records
17   gave to your father that April 1991 agreement that
18   we have previously marked as Exhibit 2?
19       A.   That's with these 26 documents?
20       Q.   No, that's not my question.  My question
21   is:  Does the reference as No. 17 on this page,
22   220, indicate that Lil' Joe Records gave your
23   father on February 2, 2016, the April 1991
24   contract?
25            MR. BURROUGHS:  Objection, calls for
```

```
 1     speculation.  But if you have an answer, go
 2     ahead.
 3            THE WITNESS:  Yes, that's the receipt for
 4     the documents that were produced.
 5  BY MR. WOLFE:
 6     Q.   And did you find the April 1991 contract
 7  with Luke Records among your father's possessions?
 8     A.   All these documents were together.
 9     Q.   And would that include the April 1991
10  contract?
11     A.   Yes.
12     Q.   How did you find Mr. Burroughs?
13          MR. BURROUGHS:  It's not relevant, but
14     you can -- yeah, tell him that.
15          MR. WOLFE:  Relevance is not an objection.
16          MR. BURROUGHS:  You can give me a short
17     answer.
18          MR. WOLFE:  I want a complete answer.
19          MR. BURROUGHS:  I will instruct the
20     witness not to answer based on privilege.
21          MR. WOLFE:  How he met you could not
22     possibly be privileged.
23          MR. BURROUGHS:  I absolutely disagree.
24          MR. WOLFE:  You weren't his lawyer yet.
25          MR. BURROUGHS:  As you know, the privilege
```

```
 1                C E R T I F I C A T E
 2   STATE OF  FLORIDA:
 3   COUNTY OF BROWARD:
 4              I, DEBRA L. STARK, certify that I was
 5   authorized to and did stenographically remotely
 6   report by audio and visual means the deposition of
 7   LETERIUS RAY; duly sworn by me;
 8   pages 1 to and including 105; and that the
 9   transcript is a true record of my stenographic
10   notes.
11              I further certify that I not a relative,
12   employee, attorney, or counsel of any of the
13   parties, nor am I a relative or employee of any of
14   the parties' attorneys or counsel connected with
15   the action, nor am I financially interested in the
16   action.
17              Signed and sealed on this date of
18   November 15, 2022.
19
20
21   _____
     DEBRA L. STARK, Court Reporter
22   and NOTARY PUBLIC, State of Florida
     at Large
23
24   MY COMMISSION EXPIRES:
     MARCH 28, 2025
25
```