UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23727-DPG

LIL' JOE RECORDS, INC.,

      Plaintiff

v.

MARK ROSS, CHRISTOPHER WONG
WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON
and LUTHER CAMPBELL,

      Defendants

_____/

## **PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

      This case was tried on ____, 2023. The issue of whether the filing of bankruptcy by defendants Luther Campbell ("Campbell") and Mark Ross ("Ross") divested them of the ability to terminate the copyright transfer at issue in accordance with 17 USC §203 as part of each of the parties' requests for declaratory relief is a question of law which is hereby decided by this Court. This Court makes the following finding of fact and conclusions of law:

Findings of Fact

      *2 Live Crew* was a rap group comprised of 4 members: Campbell, Ross, Christopher Wong Won and David Hobbs. Campbell, Ross, Christopher Wong Won and David Hobbs transferred all of their copyright rights to *2 Live Crew*'s music including, but not limited to, the albums ____, to Luke Records, Inc. f/k/a Skyywalker Records, Inc. f/k/a Luke Skyywalker Records, Inc. ("Luke Records").

      In 1995 (years after Campbell, Ross, Christopher Wong Won and David Hobbs transferred all of their copyright rights to *2 Live Crew*'s music to Luke Records), Campbell and Luke Records

became the subject of bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of Florida which were jointly administered (the "Luke Bankruptcy"). Pursuant to the Joint Plan of Reorganization in the Luke Bankruptcy, all of the copyright rights to *2 Live Crew*'s music and compositions (the "2 Live Crew Copyrights") were transferred to Lil' Joe Records, Inc. ("Lil' Joe") and its owner, Joseph Weinberger ("Weinberger"), "free and clear of any and all liens, claims, encumbrances, charges, setoffs or recoupments of any kind", thereafter "no royalties, whether as artist, producer, writer, publisher, or in any other capacity, on any of the masters or compositions" are due to Campbell or Luke Records, and Campbell released, among others, Lil' Joe and Weinberger including "for royalties to be paid in the future" as a result of this transfer. At no time did Christopher Wong Won, Mark Ross or David Hobbs file a claim in the Luke Bankruptcy asserting that they owned or were entitled to any rights to any of the 2 Live Crew Copyrights transferred to Lil' Joe and Weinberger. The 2 Live Crew Copyrights were not abandoned back to Campbell or Luke Records. Lil Joe has enjoyed these copyrights ever since.

On November 22, 2000, Ross filed a bankruptcy in the U.S. Bankruptcy Court for the Northern District of Alabama (the "Ross Bankruptcy"). In the Ross Bankruptcy, an adversary proceeding was commenced by Lil' Joe against Ross and, in settling that claim, Ross acknowledged that, other than writer's performance rights (which are not relevant to this proceeding), "he has no rights (master or publishing) to any previous recordings owned by Lil' Joe Records, Inc. … Additionally, Debtor [(Ross)] has no rights (master or publishing) in any other recordings owned by Lil' Joe Records, Inc." The 2 Live Crew Copyrights were not abandoned back to Ross.

On or about November 4, 2020, each of the defendants provided notice that they were

purporting to terminate their copyright grants in the 2 Live Crew Copyrights pursuant to 17 U.S.C. §203 (the "Termination Notice.").

Conclusions of Law

The interpretation of a statutory provision is a purely legal issue that is resolved by the court. *Cox Enter. v Pension Benefit,* 666 F. 3d 697 (11th Cir. 2012). "In the case of any work other than a work made for hire, the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright … is subject to termination under the following conditions…" 17 USC §203 (a). "In the case of a grant executed by two or more authors of a joint work, termination of the grant may be effected by a majority of the authors who executed it…." 17 USC §203 (a)(1). Accordingly, since there were four members of *2 Live Crew,* three of them must terminate the copyright transfer in order for it to be effective. Campbell and Ross are among the three members who seek to terminate the transfer of copyrights that are presently owned by Lil' Joe. The question for this Court is whether they lost the ability to exercise that right in their respective bankruptcy.

"The commencement of a [bankruptcy] case … creates an estate. Such estate is comprised of *all the following property*, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests of the debtor in property as of the commencement of the case*…." 11 U.S.C. §541(a)(1)(emphasis added); *Mission Product Holdings, Inc. v Tempnology, LLC,* 139 S.Ct. 1652, 1658 (2019)("The filing of a petition creates a bankruptcy estate consisting of *all the debtor's assets and rights*.")(emphasis added); *Cardwell v Bankruptcy Estate of Joel Spivey (In re Douglas Asphalt Co.),* 483 BR 560, 571 (Bankr. S.D. Ga. 2012). Termination rights pursuant to 17 USC §203 are not among these "exceptions." 11 USC §541(b) & (c). "Under section 541(a)(1), the debtor's bankruptcy estate is comprised of 'all

legal or equitable interests of the debtor in property as of the commencement of the case.' 11 USC §541(a)(1). Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, both tangible and intangible, vest in the bankruptcy estate upon the filing of a bankruptcy petition." *Russ,* 530 F.Supp 3d at 1079-80. "A debtor's failure to list a claim or cause of action 'on a bankruptcy schedule leaves that interest in the bankruptcy estate.'" *Id.* at 1082.

"As the Supreme Court has noted, 'Congress intended a broad range of property to be included in the estate." *Goldstone v. U.S. Bancorp.,* 811 F. 3d 1133, 1139 (9th Cir. 2015). "Indeed, the legislative history indicates that §541(a) would 'bring anything of value that the debtors have into the estate." *Id.* Bankruptcy Code "Section 541(a)(1) 'is all-encompassing, and Congress meant for it to be construed commensurately.'" *Russ v. Jackson County School Board,* 530 F. Supp. 3d 1074, 1079 (N.D. Fla. 2021). "The Bankruptcy Code defines a bankrupt's estate broadly to encompass all kinds of property, including intangibles…" *Id.* at 1080. Put simply, all means all and includes Section 203 rights. Campbell's and Ross' termination rights pursuant to 17 USC §203, therefore, became part of their respective bankruptcy estates.

The creation of this bankruptcy estate and transfer of all of the debtor's assets to it occurs "upon commencement of a bankruptcy case…." *Schwab v Reilly,* 560 U.S. 770, 774 & 785 (2009). "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code." *Russ,* 530 F.Supp 3d at 1082. The *2 Live Crew* copyrights were not abandoned back to Campbell, Ross or Luke Records, to the contrary, they were transferred to Lil' Joe. "After the bankruptcy case has been closed, 'property of the estate that is not administered in the bankruptcy proceedings remains the property of the estate.'" *Russ,* 530 F.Supp 3d at 1082. Consequently, as a result of their bankruptcies, whatever interest Campbell or Ross had in the *2 Live Crew* copyrights,

4

including, but not limited to, any termination rights pursuant to 17 USC §203, are not theirs to exercise.

Defendants contend that termination rights did not become an asset of Campbell's and Ross' bankruptcy proceedings because the termination section of the Copyright Act says that "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant." 17 U.S.C. §203(a)(5). That argument is explicitly rejected by the Bankruptcy Code, which states that, except for an exclusion for trust benefits, which does not apply here, "an interest of the debtor in property becomes property of the estate … notwithstanding any provision in … applicable nonbankruptcy law … that restricts or conditions transfer of such interest by the debtor…." 11 USC §541(c)(1)(A). Defendants concede that section 203 termination rights are among such "nonbankruptcy law." Defendants' Response to Plaintiff's Notice of Supplemental Authority [DE 77] at p. 2; Defendants' Opposition to Plaintiff's Rule 11 Motion [DE 86] at p. 8. Therefore, the transfer restriction in the Copyright Act did not prevent Campbell's and Ross' Section 203 termination rights from becoming an asset of their bankruptcy estates.

In *Denadai v Preferred Capital Markets, Inc.,* 272 B.R. 21, 28-30 (D. Mass. 2001), summary judgment was granted holding that unvested stock options were assets of the estate, even though they contained a transfer restriction, like 17 USC §203(a)(5). To be considered for exclusion from becoming an asset of a bankruptcy estate, there must be evidence that Congress intended the statute at issue to serve as a general exemption from creditor process. *Id.* at 40. There is no such evidence here that Congress intended copyright termination in accordance with 17 USC §203 to serve as a general exemption from creditor process-to the contrary Congress has explicitly

stated that only transfer restrictions in trust, which we do not deal with here, preclude a right from becoming an asset of a bankruptcy estate. 11 USC §541(c).

Consistent with this statutory interpretation, each of Campbell and Ross acknowledged, in writing, that as a result of the Luke Bankruptcy and the Ross Bankruptcy, they no longer had any rights related to the copyrights the transfer of which they now seek to terminate. The Joint Plan of Reorganization in the Luke Bankruptcy acknowledged that the transfer of the *2 Live Crew* copyrights was "free and clear of any and all liens, claims, encumbrances, charges, setoffs or recoupments of any kind", thereafter "no royalties, whether as artist, producer, writer, publisher, or in any other capacity, on any of the masters or compositions" are due to Campbell or Luke Records. Campbell separately released any claim "for royalties to be paid in the future…." In settling an adversary proceeding by Lil' Joe against him in the Ross bankruptcy, Ross acknowledged that he had "no rights (master or publishing) to any previous recordings owned by Lil' Joe Records, Inc. [and] has no rights (master or publishing) in any other recordings owned by Lil' Joe Records, Inc." Until they sent the Termination Notice, Campbell and Ross, time and again, acknowledged that they had no rights in the *2 Live Crew* copyrights they now claim the right to recover.

The United States Supreme Court has directed that "in interpreting a statute a court should always turn first to one, cardinal cannon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what is says there." *Connecticut National Bank v Germain,* 503 U.S. 249, 253-54, 112 S.Ct. 1146 (1992). Put another way, a Court is to "follow the text of the statute." *Unicolors, Inc. v H&M Hennes & Mauritz, L.P.,* 142 S.Ct. 941, 946 (2022). This is done by "examin[ing] the language of the provision itself." *Korman v HBC Florida, Inc.,* 182 F.3d 1291, 1295 (11th Cir. 1999). "When

the words of a statute are unambiguous, then the first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l.*, 503 U.S. at 254.

The Bankruptcy Code says, except for an exclusion for trust benefits which does not apply here, "an interest of the debtor in property becomes property of the estate … notwithstanding any provision in … applicable nonbankruptcy law … that restricts or conditions transfer of such interest by the debtor…." 11 USC §541(c)(1)(A).This succinctly says a debtors' interest becomes property of his estate even if nonbankruptcy law, which includes the Copyright Act, restricts transfer of that interest. When applied her, it means that section 203 termination rights become  an asset of a bankruptcy estate despite section 203's transfer restriction. "[J]udicial inquiry is complete." *Connecticut Nat'l.*, 503 U.S. at 254.

Evaluation of the termination section of the Copyright Act also reaches this conclusion. It says that "[t]ermination of the grant may be effected notwithstanding *any agreement* to the contrary, including an agreement to make a will or to make any future grant." 17 U.S.C. §203(a)(5)(emphasis added). As the plain text states, an author cannot give away his termination rights by "agreement." An agreement is a mutual understanding between two parties about their relative rights and duties involving the exchange of consideration. Black's Law Dictionary, 8th Ed., 2004; Corbin on Contracts §1.9. The Copyright Act requires transfers to be in writing. 17 USC §204(a). That is the "agreement" which Section 203 mentions. A transfer pursuant to a bankruptcy is a transfer "by operation of law." *Taylor Corp. v Four Seasons Greetings, LLC,* 403 F.3d 958, 963-64 (8th Cir. 2005). According to the Copyright Act itself, a transfer by "agreement" and "by operation of law" are distinct, and divestiture of Campbell's and Ross' termination rights in bankruptcy is not a transfer by "agreement" but "by operation of law."

Against this clear backdrop, defendants ask this Court to read into the language of Section 203, the words "bankruptcy", but "[i]t is not the business of courts to rewrite statutes…." *Korman,* 182 F.3d at 1296. "[I]nterpretation of section 203 requires no rewriting. We take the provisions as Congress wrote it, and neither add words to nor subtract them from it." *Id.* Accordingly, in *Korman* it was determined to be impermissible to "read[] into the language of the statute the word 'only,' a word that changes the meaning of the provision, and a word Congress did not put there." *Id.*

None of the cases cited by defendants support the contention that section 203 termination rights are not assets of a bankruptcy estate.

*Wornick v Gaffney,* 544 F.3d 486 (2nd Cir. 2008), is well wide of the mark. "The only question this appeal presents is whether in a joint bankruptcy case of spouses who own reciprocal life insurance policies the bankruptcy estate of the beneficiary spouse is entitled to the case surrender value of an insurance policy taken out by and insuring the other spouse." *Id.* at 488. Nothing like that is raised here. A beneficiary of a life insurance policy may be removed at any time against its will. *Id.* at 490. Therefore, "the revocable beneficiary of a life insurance policy has 'a mere expectancy or an inchoate right in the policy depending entirely upon the will of the insured.'" *Id.* "As such, the beneficiary has no legal or equitable interest in the policy that could be made part of the property of the beneficiary's bankruptcy estate." *Id.* Section 203 termination rights, on the other hand, may not be given away by agreement. 17 U.S.C. §203(a)(5). There is no mention of Section 203 copyright termination rights, nor mention of a transfer by operation of law, let alone an evaluation of them, in *Wornick.*

*In re McKay,* 143 F. 671 (W.D. N.Y. 1906), has absolutely nothing to do with copyrights or termination rights pursuant to 17 USC §203. It examined whether trust assets became property of a bankruptcy estate under the Bankruptcy Act of 1889. *Id.* at 672-73. "[T]he Bankruptcy Act of

1889… was abrogated by the adoption of the Bankruptcy Code in 1978." *Goldstone,* 811 F.3d at 1140. "The scope of §541(a) of the Bankruptcy Code is much greater than that of the prior Bankruptcy Act of 1889." *Id.* at 1139. Even the Bankruptcy Code distinguishes between transfer restrictions in trust and all other transfer restrictions. 17 USC §203(a)(5).

Next, defendants attempt to scrabble an argument that the termination rights had not yet vested, and that somehow means they are not an asset of a bankruptcy estate. This argument is unavailing. First, even if the termination rights had not yet vested, they were still assets of Campbell's and Ross' bankruptcy estates. "Courts consistently have concluded that contingent interests should be included within the bankruptcy estate." *Denadai,* 272 B.R. at 29 n 5; *Russ,* 530 F.Supp 3d at 1079-80 ("Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, both tangible and intangible, vest in the bankruptcy estate upon the filing of a bankruptcy petition."). Unvested and contingent options are assets of a bankruptcy estate. *Stoebner v Wick (In re Wick),* 276 F.3d 412, 415 (8th Cir 2001). *Denadai* considered whether "options that are unvested as of the petition date" are assets of a bankruptcy estate. 272 B.R. at 28. It was observed that "[a]lthough Debtor here did not become entitled to exercise all of the stock options until after filing his petition, he did possess at that time the contingent right to exercise the options in the future." *Id.* at 29. Likewise, here Campbell and Ross were not entitled to exercise their termination rights pursuant to 17 USC §203 until after filing their bankruptcies, but they possessed at the time of their bankruptcies the right to do so in the future. This is an asset of their bankruptcy estates.

*Rodriguez v Rodriguez,* 218 F.3d 432, 425 (5th Cir. 2000), belies Defendants' contention that the termination rights had not yet vested by acknowledging that a "copyright 'vests' in the author…." Defendants claim to be the author of the copyrights at issue from which the termination

9

rights emanate, thus they had "vested." "'To vest' means to give an immediate, fixed right of present or future enjoyment…." *Id.* at 436.

The remaining cases cited by defendants likewise do not help their cause, as none of them address the impact of an author's bankruptcy, nor transfers as a matter of law, hence they do not answer the question presented here -- Campbell's and Ross' loss of their copyright termination rights *in bankruptcy*. For example: *Stillwater Ltd. v Basilotta*, 2017 U.S. Dist LEXIS 170176 * 1-2, 2017 WL 2906056 (C.D. Cal. March 17, 2017), considered a motion to dismiss a complaint seeking a declaration that Basilotta did not validly terminate transfer of her copyright. In evaluating the allegations of the complaint, the court observed that "[t]his right is non-transferrable and can only be exercised by the author or his/her heirs." *Id.* at * 8. That is true in the context of a voluntary agreement, but it does not account for a transfer "by operation of law", which includes bankruptcy. 17 USC §204(a); *Taylor Corp.*, 403 F.3d at 963-64. Because no bankruptcy occurred there, *Stillwater* does not discuss the impact of bankruptcy on the ability to exercise a termination right – the issue here.

In *Stewart v Abend,* 495 U.S. 207, 211 (1990), "[t]he author of a pre-existing work agreed to assign his rights in the renewal copyright term to the owner of the derivative work, but dies before the commencement of the renewal period. The question presented is whether the owner of the derivative infringed the rights of the successor owner of the pre-existing work by continued distribution and publication of the derivative work during the renewal term of the pre-existing work." *Stewart* has nothing to do with the question presented here – whether copyright termination rights are assets of a bankruptcy estate.

*Everly v Everly,* 2020 U.S. Dist. LEXIS 173698 *1-11, 2020 WL 5642359 (M.D. Tenn. Sept. 22, 2020), evaluated whether Phil Everly's agreement to give his brother Don sole rights to

a song extinguished Phil's termination right. Again, there is no indication that either of the Everly brothers filed bankruptcy, so no discussion about the impact of bankruptcy on termination rights.

*Fred Ahlert Music Corp. v Warner/Chappell Music, Inc.,* 155 F.3d 17, 18 (2nd Cir. 1998), "consider[ed] the scope of the 'Derivative Works Exception' of the Copyright Act of 1976." While no question was posed as to the effect of bankruptcy on Section 203 termination rights, the court did observe, contrary to defendants' assertion here, that "*an author's termination rights are not unlimited*." *Id.* at 19 (emphasis added).

*Baldwin v EMI Feist Catalog, Inc.,* 2012 U.S. Dist LEXIS 201053 * 1-2; 2012 WL 13019195 (S.D. Fla. Dec. 11, 2012), evaluated a motion to dismiss a declaratory judgment action as to the validity of a copyright termination notice. The declaratory judgment was held to be ripe, but was dismissed for lack of personal jurisdiction. *Id.* at *3-13. The *Baldwin* court, like in *Stewart* and *Everly*, only generally discussed termination rights. *Baldwin* did not consider what happens to that termination right when the author files bankruptcy, nor when a transfer occurs by operation of law, the issue here.

*Brown-Thomas v Hynie,* 441 F.Supp. 3d 180, 192-93 (D. S.C. 2019), considered a motion to dismiss a claim that certain heirs of the singer James Brown were deprived of their copyright termination rights by a secret agreement. Just like the other cases, there was no bankruptcy, so no consideration of what happened to the termination rights at issue upon bankruptcy.

Because Campbell and Ross lost their termination rights in their bankruptcies, at best, only one of *2 Live Crew's* members effectively gave notice of termination, Christopher Wong Won's children, so the Notice cannot terminate the transfer of the 2 Live Crew Copyrights to Lil' Joe. "[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not

11

further relief is or could be sought." 28 USC §2201(a). "The purpose behind the Declaratory Judgment Act is to afford a form of relief from uncertainty and insecurity with respect to rights, status and other legal relations." *Rozier v Hartford Insurance Co. of the Midwest,* 2014 U.S. Dist. LEXIS 166461 * 10 (S.D. Fla. Dec. 1, 2014). Declaratory relief is justified when "it will serve a useful purpose to clarify and settle the parties' rights." *Id.* Here, declaratory relief will resolve the parties' dispute over whether the Termination Notice is effective to terminate the transfer of the 2 Live Crew Copyrights. Defendants acknowledge that declaratory relief is appropriate, having sought it themselves on the same question. Answer and Counterclaim [DE 12] at pp. 13-17.

For the foregoing reasons, this Court declares that (i) Luther Campbell and Mark Ross no longer possess the capacity to terminate any copyright they had an interest in prior to their respective bankruptcy, consequently (ii) defendants have not terminated the transfer to Lil' Joe Records, Inc. and Joe Weinberger of the copyright rights to *2 Live Crew*'s music by the Termination Notice.