**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

LIL' JOE RECORDS, INC.,

    Plaintiff,

v.

MARK ROSS, CHRISTOPHER WONG WON, JR., RODERICK WONG WON, LETERIUS RAY, ANISSA WONG WON, AND LUTHER CAMPBELL,

    Defendants.

**CASE NO.:  1:21-CV-23727-DPG**

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES IN CONNECTION WITH PLAINTIFF'S RULE 11 MOTION**

i

**TABLE OF CONTENTS**

MEMORANDUM OF LAW……………………………………………………………...1

1. The Motion violates Federal Rule 11……………………………………………...1

2. Plaintiff failed to meet and confer……………………………………………...3

3. Plaintiff's motion is untimely……………………………………………..3

4. The Motion identifies no pleading that violates Rule 11…………………………….4

5. Defendants have not violated Rule 11…………………………………………….5

6. Defendants' claims are not "objectively frivolous"……………………………….5

7. Bankruptcy does not divest authors of their termination rights……………………………………………………………………….6

8. The termination rights did not vest or accrue until at least 2020 and are exercisable only by an author or heir……………………………………………………………………...6

9. Section 541(c)(2) of the Bankruptcy Code precludes Plaintiff's argument…………………………………………….7

10. Termination rights avoid the bankruptcy estate………………….10

11. The works were not works-for-hire…………………………………10

**12.** **No party was aware of any frivolous claim after a reasonable inquiry………….14**

**13.** **Defendants should recover costs and fees……………………………………………….15**

## NOTICE OF MOTION AND MEMORANDUM OF LAW

TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

Please take notice that Defendants hereby move to recover the costs and fees they incurred prevailing on Plaintiff's Rule 11 Motion. Defendants respectfully move for costs and fees under Federal Rule of Civil Procedure 11. The basis for this motion is that Defendants prevailed on Plaintiff's Rule 11 Motion, and said Motion was filed without a good faith basis, proper diligence, or compliance with the applicable rules, as set forth below. Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues. My signature is set forth at the end of this motion.

## MEMORANDUM OF LAW

On March 9, 2023, Plaintiff, Lil' Joe Records, Inc.'s ("Lil' Joe") filed Motion for Sanctions Pursuant to Federal Rule 11 ("Rule 11 Motion"). Dkt. No. 78.  Defendants' counsel *immediately* contacted Plaintiff's counsel relating to the Rule 11 Motion's various violations. See **Exhibit 1.**  But Lil' Joe refused to withdraw the motion in response to that correspondence. Lil' Joe, in making the motion:

- failed to meet and confer before filing the motion;
- violated the safe-harbor requirement set forth in Federal Rule 11;
- filed the motion well after the time to do so had expired; and
- based the motion on arguments that are highly contested and at issue in the parties' summary judgment motions.

1

On March 23, 2023, Defendants filed their opposition to Defendant's Rule 11 Motion. See Dkt. No. 78.  On March 28, 2023, Plaintiff withdrew its Rule 11 Motion. Id. at 89. Defendants thus prevailed in connection with that motion.

### A.     Defendants should recover their costs and fees

Defendants were forced to expend time, resources, and fees in connection with Plaintiff's Rule 11 Motion. This Motion was untimely and meritless and was filed in violation of Rule 11(c)(2), which sets forth the 21-day safe harbor. Defendants should thus recover their costs and fees in connection with this Motion. The "court may award to the prevailing party [on a Rule 11 motion] the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(1).  Indeed, "requests for sanctions seek court orders and are, therefore, subject to the same Rule 11 analysis as all other motions." *Nakash v. U.S. Dep't of Justice*, 708 F. Supp. 1354, 1368 (S.D.N.Y. 1988). Here, Plaintiff clearly violated Rule 11 by failing to abide by the notice and safe harbor provision. And the motion was untimely and meritless. Fee recovery is thus proper.

The Rule 11 Motion is also suspect being that it was only filed *after* Defendants met-and-conferred over their own Rule 11 motion. A request for sanctions under Rule 11 is not a tactical device and Plaintiff's Rule 11 Motion was no more than an attempt to distract from its own clear rule violations and increase the burden of this case. *See Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 101 F. Supp. 2d 236, 246 (S.D.N.Y. 2000) (denying a Rule 11 motion because it was being used "as a mere tactic to bolster a response . . . to a motion or pleading"). There can be no question that Lil' Joe's Rule 11 Motion was substantively and procedurally meritless, as follows.

### 1.     Plaintiff's Rule 11 Motion was procedurally improper

     **a.**     **Plaintiff failed to meet the notice requirement under Rule 11**

Plaintiff failed to comply with the express language of Rule 11, which requires the following before a party may move for relief under Rule 11:

> The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2)

The safe harbor provision requires a party to "*formally serve the offending party with **a copy of the proposed motion** for sanctions at least twenty-one (21) days prior to filing the motion for sanctions with the court*." *White v. Brenner*, No. 6:10-CV-134-ORL-28, 2011 WL 4633783, at *8 (M.D. Fla. Aug. 30, 2011), *report and rec. adopted*, No. 6:10-CV-134-ORL-28, 2011 WL 4633703 (M.D. Fla. Oct. 5, 2011) (italics by Court, bolding added), citing Fed. R. Civ. P. 11(c)(2). Courts regularly deny Rule 11 motions when movants fail to "comply with the safe harbor requirements." *Id*. at *9.

It is settled that the movant must serve "the allegedly offending party with a **filing-ready motion** as notice that it plans to seek sanctions." *Truesdell v. S. Cal. Permanente Med. Grp*., 293 F.3d 1146, 1150 (9th Cir. 2002) (emphasis added).  "[A]n informal warning, in the form of a letter or other document, without service of a separate Rule 11 motion is almost universally regarded as insufficient to trigger the 21–day safe harbor period." *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd*., No. 20-21630-CIV, 2022 WL 1203562, at *5 (S.D. Fla. Mar. 29, 2022), *report and rec. adopted in part*, No. 20-21630-CIV, 2022 WL 1793573 (S.D. Fla. June 2, 2022), citing *L.B. Foster Co. v. Am. Piles, Inc*., 138 F.3d 81, 89–90 (2d Cir. 1998) (request for sanctions in letter without separate service of motion did not comply with Rule 11's requirement that sanctions

motion be made separately); *accord Roth v. Green*, 466 F.3d 1179, 1191–93 (10th Cir. 2006); *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1029–30 (8th Cir. 2003); *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001).

"Nearly every federal appellate court in the county has held that a Rule 11 motion can be granted only where the movant demonstrates strict compliance with the safe harbor provision." *Rocket Real Est., LLC v. Maestres*, No. 15-62488-CIV, 2017 WL 4303783, at *4 (S.D. Fla. Apr. 10, 2017), *report and rec. adopted*, No. 15-62488-CIV, 2017 WL 4303784 (S.D. Fla. May 18, 2017), *aff'd*, 749 F. App'x 952 (11th Cir. 2019). As such, "strict compliance with Rule 11's safe harbor provision" is required before a Rule 11 motion may be filed. *See Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir.2005) (holding that courts "enforce [Rule 11's] safe harbor provision strictly"); *see also Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997) (noting that "Rule 11 cases emerging in the wake of the 1993 amendments [to Rule 11] have found [compliance with] the 'safe harbor' provision to be an absolute requirement."); *see also Rocket Real Est., LLC v. Maestres*, No. 15-62488-CIV, 2017 WL 4303783, at *5 (S.D. Fla. Apr. 10, 2017), *report and rec. adopted*, No. 15-62488-CIV, 2017 WL 4303784 (S.D. Fla. May 18, 2017), aff'd, 749 F. App'x 952 (11th Cir. 2019) (holding because the prior Rule 11 motions filed by opposing party were not identical to the Rule 11 motion currently before the Court, the prior notice given for the prior Rule 11 motions were insufficient to satisfy the Rule 11 safe harbor requirement for the current Rule 11 motion before the Court).

Plaintiff filed its Rule 11 Motion in violation of the above rule. Defendants provided notice to Plaintiff of this violation, and Plaintiff refused to withdraw the Motion, which, itself, is a violation of Rule 11 given the clear text of Rule 11(c)(2). See **Exhibit 1 to the Declaration of Scott Burroughs**. When pressed, and despite already filing the Rule 11 Motion, Plaintiff falsely

4

claimed to have served the Rule 11 Motion in October of 2022. However, Plaintiff served a *materially different* motion in October of 2022. *See* Defendants' Opposition to Plaintiff's Rule 11 Motion, Exhibit A. As such, Plaintiff never served, for purposes of strict compliance with the safe harbor rule, a "copy of the proposed motion" that he filed in March of 2023. Because Plaintiff did not comply with the "strict" and "absolute" service requirement, Plaintiff violated Rule 11.

  **b. Plaintiff failed to comply with the meet and confer requirement under Local Rule 7.1**

Plaintiff violated Local Rule 7.1 by failing to meet and confer and then submitting a false verification. When pressed about the lack of a meet-and-confer, Plaintiff's counsel claimed to have met and conferred back in October of 2022. There was no meet-and-confer, but, even if there had been, that meet and confer would have concerned the draft motion he served at that time, which, as noted above, was a *different* motion. See **Exhibit 1**. Importantly, the substance of Plaintiff's Rule 11 Motion appeared to address numerous issues that were directly addressed in discovery and elsewhere *after* October of 2022, so the subject matter could not have been addressed in October. Plaintiff's counsel violated Local Rule 7.1 when it filed the Rule 11 Motion.

  **c. Plaintiff failed to timely bring its Rule 11 Motion**

Even if Plaintiff's Rule 11 Motion had merit, the Motion was procedurally deficient in that it was untimely. Plaintiff waited until *after* the parties' summary judgment motions were filed to bring its Rule 11 Motion. But the "clear language and intent of the amended Rule" makes clear that "a party cannot wait until after summary judgment to move for sanctions under Rule 11." *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998), citing *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997), *cert. denied*, 522 U.S. 1046, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998). To be sure, the "purpose of the safe harbor is to encourage parties to abandon questionable contentions

5

by allowing them to avoid sanctions with the timely withdrawal of meritless claims[.]" *Id.*, citing Fed. R. Civ. P. 11; Adv. Comm. Notes, 1993. Plaintiff's Motion was filed after full summary judgment briefing and far too late for the "timely withdrawal" of the claims. As such, Plaintiff's Rule 11 Motion was filed months too late and in violation of the rules.

Further, even when giving Plaintiff the benefit of the doubt, and considering the later court-ordered deadlines, Plaintiff's Rule 11 Motion was still untimely. The Court-ordered deadline to amend the counterclaims giving rise to Plaintiff's Rule 11 motion expired on May 15, 2022, nearly a year before the filing of Plaintiff's Rule 11 motion in March of 2023. *See* Dkt. No. 17. Rule 11 motions are "disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." *Upstate Shredding, LLC v. Ne. Ferrous, Inc.*, 2016 WL 865299, at *3 (N.D.N.Y. Mar. 2, 2016), citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003). As such, Plaintiff's Rule 11 Motion, filed nearly a year after the deadline for Defendant to amend the counterclaim, was undoubtedly untimely under the Court's scheduling order.

      **2.**       **Plaintiffs Rule 11 Motion was substantively without merit**

Setting aside the above-mentioned procedural flaws, Plaintiff's Rule 11 Motion was improper because the claims that Plaintiff asserted were without a reasonable basis are in fact meritorious. Rule 11 sanctions are reserved for the "rare and exceptional case[s] where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). Plaintiff failed to come even close to this standard.

In the "Eleventh Circuit, a court considering a motion for Rule 11 sanctions must conduct a two-step inquiry and determine whether the claims were objectively frivolous in view of the facts

6

or of the law, and if they were, whether the person who signed the pleadings should have been aware that they were frivolous had he or she made a reasonable inquiry. *Marin v. Alvarez, Armas & Borron, P.A.*, No. 08-60821-CIV, 2010 WL 338839, at *4 (S.D. Fla. Jan. 28, 2010), citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir.1996). Both steps of this inquiry reveal that the Rule 11 Motion was wholly without basis.

      **a.**    **Defendants' claims are not "objectively frivolous"**

Defendants have provided the Court, in connection with the summary judgment briefing, copious evidence in support of their claims.[1] This evidence includes a written contract signed in 1990, images of vinyl albums reflecting the copyright ownership referenced in that agreement, a formal copyright termination letter relating to that copyright ownership, and testimony from all parties to that agreement other than one (who is not part of this litigation) attesting to Defendants' interpretation of that agreement. Plaintiff relied on two substantively meritless arguments in arguing that Defendants violated Rule 11, each of which is briefly addressed and disposed of below.

      **b.**    **Bankruptcy does not divest authors of their termination rights**

Plaintiff argued that Defendants violated Rule 11 because they lost their termination rights in bankruptcy. But, the termination right is inalienable and personal and was in any event unvested and contingent at the time of the bankruptcies at issue. Plaintiff's Rule 11 arguments were meritless because:

      **1.**    **The right is personal.** As an elective personal right, the termination rights cannot pass to the bankruptcy estate. *In re Brand*, 251 B.R. 912, 915 (Bankr. S.D. Fla. 2000). Importantly,

---

[1] Defendants incorporate the arguments, evidence, and positions from its summary judgment briefing into this response to avoid redundancy.

akin to other election rights, the right to exercise termination rights "does not become a property interest until the right is exercised". *Id*. at 916 ("Florida case law supports the conclusion that the right of election is personal in nature and can only be exercised by those expressly authorized") (citations omitted); see also *In re McCourt*, 12 B.R. 587, 589 (Bankr. S.D.N.Y. 1981) ("Until the debtor exercises his personal statutory right to the election, no rights in his deceased wife's property are ascribable to the debtor."). As neither Plaintiff nor any bankruptcy court could exercise the termination right on behalf of Defendants, it did not pass into the bankruptcy estate. *In re Brand*, 251 B.R. at 915 ("the bankruptcy trustee could not force the debtor to exercise the right of election or exercise the right on behalf of the debtor.").

2. **The right was unvested.** The termination right was unvested at the time of bte bankruptcies because it did not "become vested" until "the date the notice of termination has been served[.]" 17 U.S.C.A. § 203 (b)(2). And "regardless of the effective date, under § 203(b)(2)," the "future rights that will revert upon termination of the grant become vested *on the date the notice of termination has been served*." *Baldwin v. EMI Feist Catalog, Inc*., No. 11-81354-CIV, 2012 WL 13019195, at *2 (S.D. Fla. Dec. 11, 2012) (emphasis added by Court, internal quotations removed). The relevant notice of termination was served in 2020, well after the bankruptcy proceedings in 1995. Indeed, the termination right can only be "exercised" via the service of a termination notice on a date "after 35 and before 40 years have elapsed" from the date of the original transfer. *Korman v. HBC Fla., Inc*., 182 F.3d 1291, 1295 (11th Cir. 1999), citing 17 U.S.C. § 203(a)(5) ("Termination of the grant may be effected notwithstanding any agreement to the contrary....") (remaining citations omitted). Here, the exercise window did not open until 2020, well after the 1995 bankruptcy proceedings. Accordingly, the termination rights simply were not

8

and importantly, could not be, a part of the bankruptcy estate. *Accord* 17 U.S.C.A. § 203(a)(4) (termination rights "can only be effected by serving an advance notice in writing").

      **3.**      **The right was contingent.** The termination right was contingent because the party filing bankruptcy cannot exercise it unless he or she lives until the window opens; if he or she fails to do so, the right passes to the heirs. See 17 U.S.C.A. § 203(a)(1)(right can be exercised by the "author or, if the author is dead," their heirs.).

      4.      **The right was inalienable because the Copyright Act says so.** 17 U.S.C.§ 203 (a)(5) make clear that the "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant." Indeed, to "protect authors from permanently losing the rights to their works before they are able to determine the work's value, Congress created an **<u>inalienable</u>** right to terminate a prior grant of an interest in a copyright." *Baldwin,* 2012 WL 13019195, at \*2, citing, *generally* Lydia Pallas Loren, Renegotiating the Copyright Deal in the Shadow of the "Inalienable" Right to Terminate, 62 Fla. L. Rev. 1329, 1333-42 (2010). And Section 541(c)(2) of the Bankruptcy Code "places a boundary on property of the estate in accordance with applicable nonbankruptcy law" so that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law **<u>is enforceable in a case under this title</u>**." *In re Hilsen*, 405 B.R. 49, 56 (Bankr. E.D.N.Y. 2009) (emphasis added), citing 11 U.S.C. § 541(c)(2), *Taft v. O'Connell (In re Taft)*, 184 B.R. 189, 190 (E.D.N.Y.1995); see also *In re Davis*, 110 B.R. 573, 574–75 (Bankr. M.D. Fla. 1989) ("Section 541(c)(2) of the Code requires that the property which is subject to restriction on a transfer of a beneficiary interest of a debtor is a trust which is enforceable under nonbankruptcy law to be recognized and is equally enforceable in a case filed under Title 11.").

The Copyright Act's restriction on the transfer of the Section 203 right precludes it being alienated in bankruptcy and fully defeats Plaintiff's argument.

### f. The albums were not works-for-hire

Plaintiff's second basis for the Rule 11 Motion was that Luther Campbell created the albums at issues as a work-for-hire. But this is false. In "cases where the hired party is also an owner or partner of the company asserting ownership, courts have declined to find a work made for hire because of the company's lack of control over the owner." *Clancy v. Jack Ryan Enterprises, Ltd.*, No. CV ELH-17-3371, 2021 WL 488683, at *26 (D. Md. Feb. 10, 2021) see also *Donaldson Publishing Co. v. Bregman, Vocco & Conn, Inc.*, 375 F.2d 639, 643 (2d Cir. 1967) (where author was the dominant person in the corporation, court could not find that his work was for-hire), *cert. denied*, 389 U.S. 1036 (1968).

Campbell performed as an artist **and** owned the label that obtained the rights to his performance and as such he "could certainly agree as to the scope of the employee's employment" and who owned the copyrights. *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010)("Since JJV was Gasper, JJV intended whatever Gasper intended, and if Gasper intended that his creative work be outside the scope of his employment with JJV, there was no one to disagree.")(citation omitted). Here, Luther has stated without equivocation that the albums were **not** works-for-hire. And, in or around 1990, he signed a contract that reflected as much, on the part of himself as a performer and also on the part of the label. This precludes any work-for-hire argument by Plaintiff, a third party that didn't even exist at the time the albums were created.

Indeed, *none* of the parties to that contract have asserted that the albums were for-hire. Such a position would nonsensical because if the albums were created for-hire there would be no

10

need for a contract and the undisputed evidence establishes that 2 Live Crew signed one contract in 1990 and another in 1991 (the latter of which is unchallenged by Plaintiff). If any of 2 Live Crew's members were employees, these agreements would be unnecessary and superfluous. And, notably, there is no employment agreement of any kind in the record.

Even if Campbell was an employee of the record label for purposes of running the label, he was an independent contractor for purposes of acting as a performance artist. Indeed, it is settled law that a "worker can be both an employee and an independent contractor concurrently for one employer." *Leevson v. Aqualife USA Inc.*, 770 F. App'x 577, 582 (2d Cir. 2019). Plaintiff's assertion that Defendants violated Rule 11 by challenging its "work-for-hire" argument is meritless.

### 3. Defendants should recover costs and fees

#### a. The Defendants should be awarded attorney's fees under Rule 11

The situation here is somewhat unique. Plaintiff filed its Rule 11 Motion, in violation of Rule 11, and then **refused** to withdraw it after Defendants' counsel advised Plaintiff's counsel of the various violations. Defendants then attempted to withdraw the Motion **after** Defendants filed their Opposition. This makes clear that the Rule 11 Motion was filed to inflict unnecessary costs and fees on Defendants. But the withdrawal came too late, after Defendants expended time and resources defending against the Motion. As such, Defendants should be awarded attorney's fees under Rule 11 as the prevailing party.

The "court may award to the prevailing party [on a Rule 11 motion] the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(1). Based on the previously addressed procedural and substantive deficiencies, and the ultimate withdrawal of

the Rule 11 Motion, Defendants are the prevailing party. As such, Defendants should be awarded attorney's fees because Defendants successfully defeated Plaintiff's Rule 11 Motion.

Plaintiff did not meet and confer with Defendants, did not provide notice to Defendants, and did not timely file the Rule 11 Motion. And the Motion was noncompliant with the most well-established procedural requirements, the safe harbor and timeliness. Allowing "adversaries an unrestricted ability to initiate a process in which competent attorneys must justify, under the threat of sanctions, actions taken in good faith, does not serve the purposes of Rule 11." *Nakash v. U.S. Dep't of Just.*, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988). The Rule was intended to reduce, rather than contribute to, such abuse of the legal system. *Id*. As such, requests for sanctions must be treated seriously and controlled appropriately. *Id*. Based on the foregoing procedural and substantive deficiencies in Plaintiffs Rule 11 Motion, Plaintiff clearly intended to engage "[i]n a tactic becoming all too familiar" where one party attempts to bolster their claims "with an utterly frivolous and unwarranted request for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure." *Id.* In doing so, Plaintiffs have "contravened the very standards that they have accused the [Defendants] of violating." *Id*.

Defendants should recover their costs and fees in connection with this Opposition because they were forced to expend time, resources, and fees in connection with Plaintiff's Rule 11 Motion, despite Plaintiff's failure to comply with any of the legal requirements before filing. The spirit of Rule 11, which looks to encourage the withdrawal of meritless claims at an early juncture in the litigation, is furthered by awarding Defendants their fees. A "request for sanctions under Rule 11 is not a tactical device" and Plaintiff's Rule 11 Motion was no more than an attempt to distract from its own clear rule violations and increase the burden of this case. *Nakash*, 708 F. Supp. at 1370; see also *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 101 F. Supp. 2d 236, 246

(S.D.N.Y. 2000). Accordingly, the Court should award Defendants sanctions for attorney's fees and costs expended in its response to such a frivolous filing.

### b. Alternatively, Defendants should be awarded attorney's fees under 28 U.S.C. §1927

As an alternate basis, fee recovery is proper here under Section 1927. Any attorney admitted in any court of the United States who multiplies the proceedings in any case "unreasonably and vexatiously" may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C.A. § 1927. Outside of Rule 11, the court may impose sanctions if a motion was filed in "bad faith." *Lechter v. Aprio, LLP*, 622 F. Supp. 3d 1297 (N.D. Ga. 2022); s*ee also Chambers v. NASCO, Inc*., 501 U.S. 32, 33, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power to sanction bad faith conduct in the course of litigation"). "Bad faith is an objective standard that is satisfied when an attorney *knowingly or recklessly* pursues a frivolous claim." *Lechter v. Aprio, LLP*, 622 F. Supp. 3d 1297 (N.D. Ga. 2022) (emphasis added).

Plaintiff knowingly or recklessly pursued a frivolous Rule 11 claim when it filed the Rule 11 Motion against Defendants. Plaintiff's claim was procedurally and substantively meritless, and Plaintiff could not have concluded to the contrary, in good faith, or otherwise. Plaintiff's Rule 11 Motion was filed in violation of the well-established procedural requirements under the Rule 11(c)(2) safe harbor provision. As previously addressed, and commonly known throughout the legal profession, there can be no meritorious claim under Rule 11 without procedural compliance. A cursory reading of the statute would have put Plaintiff on notice of the required procedures before filing under Rule 11. *See* Fed. R. Civ. P. 11(c)(2). And Plaintiff knew of the safe harbor

13

requirements and yet filed the present Rule 11 Motion without complying with the statutory requirements. Such intentional noncompliance certainly could not have led Plaintiff to conclude, in good faith, that the Rule 11 Motion had merit.

Further, Plaintiff clearly did not consider, in good faith, the substantive merits of its Rule 11 Motion before filing. "[A]n attorney who contemplates filing a Rule 11 motion must consider the very liberal standards that will govern the court's review of the validity of the substantive motion under attack." *Nakash*, 708 F. Supp. at 1368; Fed. R. Civ. P. 11(b); *Feise v. N. Broward Hosp. Dist.*, No. 14-CV-61556, 2017 WL 10410470, at *2 (S.D. Fla. Aug. 7, 2017). The failure to do so would cause Rule 11 to potentially "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985). Conversely, "[t]here is no reason to encourage creativity in formulating Rule 11 requests." *Nakash*, 708 F. Supp. at 1369. Plaintiff failed to abide by these standards.

Even under the most creative construction, Plaintiff's Rule 11 Motion lacked merit. There is no indication that Plaintiff made any inquiry, and certainly not a reasonable inquiry, into the legal and factual basis of its Rule 11 Motion prior to filing. Plaintiff's own withdrawal of the Rule 11 Motion after its filing establishes its Rule 11 Motion was baseless. Further, the Motion is suspect because it was only filed *after* Defendants met-and-conferred with Plaintiff over their own Rule 11 motion. The foregoing is evidence of bad faith. Plaintiff has once again caused Defendants to expend time and resources defending meritless arguments that were advanced in bad faith in a clear attempt to cause delay and prejudice to Defendants.

Plaintiff's Rule 11 Motion was a triple threat – untimely, substantively meritless, and procedurally deficient. Plaintiff violated the applicable rules and standards in filing its Rule 11 Motion and Defendants should recover their fees as incurred in responding to a meritless motion.

Moreover, Plaintiff's misconduct should be sanctioned by this Court to deter future malfeasance. It is respectfully submitted that Defendants recover their fees in the amount set forth in the accompanying Declarations.

DATED: July 6, 2023　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/  Scott Alan Burroughs*
　　　　　　　　　　　　　　　　　　　　SCOTT ALAN BURROUGHS
　　　　　　　　　　　　　　　　　　　　(admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　**DONIGER / BURROUGHS**
　　　　　　　　　　　　　　　　　　　　237 Water Street, First Floor
　　　　　　　　　　　　　　　　　　　　New York, New York 10038
　　　　　　　　　　　　　　　　　　　　(310) 590-1820
　　　　　　　　　　　　　　　　　　　　scott@donigerlawfirm.com

　　　　　　　　　　　　　　　　　　　　JOEL B. ROTHMAN
　　　　　　　　　　　　　　　　　　　　Florida Bar Number:  98220
　　　　　　　　　　　　　　　　　　　　joel.rothman@sriplaw.com
　　　　　　　　　　　　　　　　　　　　**SRIPLAW, P.A.**
　　　　　　　　　　　　　　　　　　　　21301 Powerline Road
　　　　　　　　　　　　　　　　　　　　Suite 100
　　　　　　　　　　　　　　　　　　　　Boca Raton, FL  33433
　　　　　　　　　　　　　　　　　　　　561.404.4350 – Telephone
　　　　　　　　　　　　　　　　　　　　561.404.4353 – Facsimile

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants*