UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23727-DPG

LIL' JOE RECORDS, INC.,

      Plaintiff,

v.

MARK ROSS, CHRISTOPHER WONG
WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON
and LUTHER CAMPBELL,

      Defendants

_____/

**PLAINTIFF'S RESPONSE TO NOTICE OF CASE LAW RELIED UPON AND
MOTION TO STRIKE THE NOTICE AND REFERENCES AT HEARING ON
MOTIONS FOR SUMMARY JUDGMENT TO MATTERS OUTSIDE
AND INCONSISTENT WITH THE BRIEFS AND RECORD**

      Plaintiff, Lil' Joe Records, Inc. ("Lil' Joe"), hereby responds to the Defendants' Notice of

Case Law Relied Upon at the June 20, 2023[1] Hearing and Other Relevant Material and Request to

File a Supplemental Brief [DE 147](the "Notice") and moves this Court to strike the Notice and

references by Defendants at the hearing conducted on July 7, 2023, on the parties' motions for

summary judgment to matters which are outside of and inconsistent with the briefs and/or the

record as follows:

---

[1] The hearing actually occurred on July 7, 2023. [DE 133 & 148].

<u>Cases not previously disclosed and arguments not previously made should be stricken.</u>

Having observed this Court's reaction to the arguments which they extensively briefed, and apparently lacking confidence that they will succeed[2], Defendants now  pivot and  want to make new arguments, and they cite to 30 new authorities[3], in a desperate attempt to avoid an adverse summary judgment.

Additional briefing (and, by inclusion, defendants' references at the July 7, 2023, hearing to authorities not included in their briefs) is impermissible. S.D. Fla. L.R. 7.1 (c)(1). "The local rules promulgated under Rule 83 of the Federal Rules of Civil Procedure have the force of law. … One purpose of the local rules is to aid in the administration of justice by requiring motions for summary judgment to be properly briefed." *Living Legends Retirement Center, Inc. v Lexington Ins. Co.,* U.S. Dist. LEXIS 50813 *2-3 (S.D. Fla. May 20, 2005). "[S]trict, consistent, 'bright-line' enforcement is essential to obtaining compliance with the rules and to ensuring that long-run aggregate benefits in efficiency inure to district courts" *Id.* at *3. Because additional briefing is

---

[2] Defendants' desperation is displayed by their mischaracterization of Plaintiff's Notice of Response to Defendants' Motion in Limine [DE 146] as "a 35-page brief addressing the issues after the hearing…." This notice is not "a 35 page brief", it is all of 1 sentence, 5 lines long. It makes no argument whatsoever, but simply confirms in the record what Lil' Joe represented at the hearing in response to this Court's inquiry: "Plaintiff, Lil' Joe Records, Inc., as stated at the hearing conducted on July 7, 2023, hereby confirms its notice to this Court that, because Defendants' Evidentiary Objections in Support of Their Motion for Summary Judgment [DE 62-13] raises the same issues as Defendants' Motion in Limine [DE 71], the Response to Defendants' Evidentiary Objections in Support of Their Motion for Summary Judgment [DE 69] also responds to Defendants' Motion in Limine [DE 71]." For some unknown reason, Plaintiff's Proposed Jury Instructions, which have nothing to do with the foregoing notice, were filed with it. These proposed jury instructions obviously have nothing to do with the notice.

[3] Only two of the 32  authorities cited in the Notice (*Baldwin v EMI Feist Catalog, Inc.,* 2012 WL13019195 *1 (S.D. Fla. Dec. 11, 2012), and *Stewart v Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed. 2d 184 (1990)), were previously disclosed in any of defendants' briefs addressing the parties' summary judgment motions: Defendants' Opposition to Plaintiff's Motion for Summary Judgment [DE 36], Defendants' Motion for Summary Judgment [DE 53], or Defendants' Reply in Support of Their Motion for Summary Judgment [DE 62].

inappropriate, the Notice (including, but not limited to its reference to arguments and authorities which are outside the briefs and the record) as well as Defendants' reference and at the hearing conducted on July 7, 2023, to matters which are outside of and inconsistent with the briefs and/or the record should be stricken.

<u>Defendants' new arguments do not save the day since none of the cited cases are on point</u>

In the Notice, Defendants throw words up against the wall, oftentimes out of context, many times addressing questions not posed here, apparently in an effort to confuse this Court into believing something that does not exist. While magic may work in a theater, it doesn't in a courtroom. None of the authorities cited in the Notice preclude, and some even support, summary judgment in Lil' Joe's favor.

(i)     <u>Elective share</u>

Defendants spend a great amount of effort discussing whether a debtor's elective share interest is an asset of the debtor's bankruptcy estate. The problem for Defendants is that this case has nothing to do with an elective share, an interest which has far differing characteristics from a copyright termination interest. Hence these cases are of no consequence.

*In re Brand*, 251 B.R. 912 (Bankr. S.D. Fla. 2000), is among the cases Defendants referenced at the hearing (but not mentioned in their briefs). "The issue before the Court is whether a bankruptcy trustee may exercise a debtor's right of election to take an elective share in a decedent's estate in place of the debtor (surviving spouse) for the benefit of the bankruptcy estate." *Id.* at 914. An elective share "is a right to choose to take a share of the decedent's estate against the express provisions of the will." *Id.* at 915. "[T]he Supreme Court of Florida has recognized that the right of election is a personal right of the surviving spouse." *Id.* at 914. *Smail v Hutchins*, 491 So. 2d 301, 302 (Fla. 3rd DCA 1986), recognized that "an election is personal and may only

3

be exercised by the surviving spouse during his or her lifetime." *In re: Estate of Anderson*, 394 So. 2d 1146 (Fla. 4th DCA 1981), *Bakst v Miller (In re Miller),* 441 B.R. 154 (Bankr. S.D. Fla. 2010), stand for the same thing. An elective share is a personal right of the surviving spouse, because only the surviving spouse (or one appointed to represent the surviving spouse's best interest, after court approval) may exercise the right of election. *Brand,* 251 B.R. at 914. The surviving spouse will get something from the deceased spouse, either from the devise in the will or the elective share, and only the spouse can decide which to take. Nobody else, including a bankruptcy trustee, can force the debtor to exercise the elective share. *Id.* at 915.

Here, on the other hand, it is undisputed that copyright termination interests are "*owned*, and may be exercised" after an author's death by the author's widow, children[4] and grandchildren. 17 U.S.C. §203(a)(2)(emphasis added). It is important to note that unlike the elective share mentioned in *Brand, Smail, Anderson* and *Miller,* which can only be exercised by a spouse, an author's termination interest may not only be exercised by his heirs, but his heirs *own* that right after his death.

*In re McCort,* 12 B.R. 587 (Bankr. S.D. N.Y. 1981), is another case Defendants referenced at the hearing. There, a bankruptcy trustee sought an order directing the debtor to cooperate with the trustee and exercise an elective share under New York law. *Id.* at 588. "The personal nature of a surviving spouse's privilege to elect against a will has been uniformly stressed." *Id.* at 590. Like the Florida elective share, the New York version must be exercised by the surviving spouse or, in

---

[4] Defendants equivocated at the hearing on this clear provision. Within a span of literally a minute, Defendants first told this Court that only the author may exercise his copyright termination interest, and that the author needs to survive to exercise the right, but then acknowledging that the author's heirs may also exercise that right, and then went back-and-forth two more times. This position is mind-boggling because Christopher Wong Won is dead, and among the Defendants are his children who seek to exercise his termination interest after his death.

case of disability or incompetence, by a guardian or committee with court approval. *Id. Cora v Jahrling (In re Jahrling),* 514 B.R. 565 (Bankr. N.D. Ill. 2014), held that an Illinois elective share is a personal right not included in bankruptcy. Once again, these elective shares, which may only be exercised by a surviving spouse, are not the same as a copyright termination interest, which is owned by and may be exercised by people other than the author. 17 U.S.C. §203(a)(2).

*In re Whitt,* 534 B.R. 320 (Bankr. N.D. Ohio 2015), shows that there is no uniform approach to an elective share. In Ohio "[i]t is undisputed that a debtor's inchoate dower interest as determined under Ohio law becomes property of the bankruptcy estate." *Id.* at 324. "An inchoate dower interest in real property is property of the bankruptcy estate of the debtor who holds the interest." *Id.* at 322.

*Henry v Casey,* 2023 Tenn. App. LEXIS 181 (Tenn. Ct. App. 2023), addressed whether an unexercised Tennessee elective share is included in surviving spouse's probate estate. This case has nothing to do with probate, let alone an elective share.

(ii)     The termination interest exists at the time of an author's bankruptcy and the new cases cited by Defendants do not change the analysis

Section 203 explicitly states that an author's "termination interest is *owned"* by his heirs following death so they may exercise that interest. 17 U.S.C. §203(a)(2)(emphasis added). If an author's heirs "own" his termination interest following the author's death, then the author must have "owned" his termination interest before his death.

Defendants argue that an author's section 203 termination interest does not exist at the time of his bankruptcy. However, none of the cases cited say so.

*Classic Media, Inc. v Mewborn,* 532 F.3d 978, 979 (9th Cir.2008), addressed the impact of termination rights on a post-1978 re-grant of rights assigned before 1978. 1978 is significant because different rules, including different termination rights (pursuant to 17 USC §304 instead of

5

§203), apply to transfers which occurred before 1978. *Id.* at 982-85. Defendants accurately point out that "once a copyright grant is terminated and the right has reverted to an author or his statutory heirs may the reverted copyright interest be effectively assigned." No where in the opinion does it say the copyright termination interest did not exist if the author files bankruptcy.

*Baldwin v EMI Feist Catalog, Inc.,* 2012 WL13019195 *1 (S.D. Fla. 2012), considered whether a declaratory action, considering whether a §203 notice is valid, was sufficiently ripe to give the court subject matter jurisdiction. That is not the question posed here. In evaluating ripeness, the *Baldwin* court observed that "the future rights that will revert upon termination of the grant become vested on the date the notice of termination has been served." *Id.* at *2. Here, we are not talking about "the future rights that will revert upon termination of the grant"-in other words the copyright rights that will or will not revert back to the author. We are talking about the termination interest itself, an interest that the author and his heirs own. 17 U.S.C. §203(a)(2). *Baldwin* adds nothing to this analysis.

*Brand, Miller* and *McCourt* all address an elective share, not a termination interest.

(iii)     The cases now cited does not change the nature of the bankruptcy plan and order

Defendants contend that a bankruptcy plan is a contract which is an agreement prohibited by section 203. Defendants cite to *In re: Page,* 118 B.R. 456, 460 (Bankr. N.D. Tx. 1990), where it was observed that "in essence, the plan becomes a binding contract between the debtor and the creditors and controls their rights and obligations." Defendants conveniently leave "in essence" out of their quote. Notice at p. 6. "In essence" is vital to the analysis, because clearly there is no contract as creditors are compelled to take less than what they are owed, even if they don't agree.

Further, and more importantly, Defendants conveniently ignore the impact of the bankruptcy court order confirming the plan or reorganization proposed by Defendant Luther

Campbell. "[C]onfirmation of a Chapter 11 plan discharges the debtor from his pre-confirmation debts, it … marks the beginning of the reorganized debtor's new financial life. New legal relationships are established and old ones are modified or terminated." *Page,* 118 B.R. at 460. A confirmation order is much more than an agreement.

*Paul v Monts,* 906 F.2d 1468, 1469 (10th Cir. 1990), "presents the issue of whether a failed Chapter 11 reorganization plan gives rise to a cause of action which the Chapter 7 trustee can enforce against proposed participants to the plan who were not themselves creditors and who did not acquire property under the plan." That is nothing near what the issues are here. The *Paul* court did observe that "confirmation of a plan also binds creditors and other parties in interest even if such entities have not accepted the plan. … A party in interest is bound by the terms of the plan when confirmed, even if the plan ultimately provides it with less than that to which it is otherwise legally entitled." *Id.* at 1471 (citation omitted). Again, this is much more than an agreement.

*Official Committee of Unsecured Creditors of Toy King Distributors, Inc. v Liberty Savings Bank, FSB (In re Toy King Distributors, Inc.),* 256 B.R. 1, 85-86 (Bankr. M.D. Fla. 2000), acknowledged that Liberty is "bound by the terms of the confirmed plan just as the other parties described in Section 1141(a) would be bound." Yet another question not posed here. Defendants also cite to *United States v Shepherd Oil, Inc. (In re Shepherd Oil, Inc.),* 118 B.R. 741 (Bankr. D. AZ 1990), for the same thing. The *Toy King c*ourt did, however, observe that "the parties had ten days to take an appeal from the confirmation order pursuant to part VII of the Federal Rules of Bankruptcy Procedure or to seek to alter or amend the confirmation order pursuant to F.R.B.P. 9023 and F.R.Civ.P. 59. No party took any such action. Accordingly, the confirmation order became final." 256 B.R. at 84. As Lil' Joe told this Court at the hearing, the same is true here; the

confirmation of Luther Campbell's, Luke Records, Inc.'s and Mark Ross' bankruptcies occurred 26 years and 18 years ago, respectively, without objection.

    (iv)    <u>None of the new cases cited state a business owner cannot be an employee for hire</u>

    As a preliminary note, Lil' Joe wishes to point out, as this Court observed during the hearing, that the record is devoid of anything refuting the facts presented by Lil' Joe establishing Luther Campbell's status as an employee of Luke Records, Inc. Luther Campbell's self-serving, conclusory declaration, is of no consequence to create an issue of material contested fact. The "Eleventh Circuit 'has consistently held that conclusory allegations without specific supporting facts have no probative value." *Gordon v Target Corp.,* 2008 WL 2557509 *4 (S.D. Fla. June 23, 2008). This is especially egregious here, where each of the Defendants, including Luther Campbell, professed to be "without sufficient information to admit or deny" a request for admissions asking them to "[a]dmit that Luther Campbell was an employee of Luke Records." Response to Statement of Material Facts, etc. [D.E. 59] at p. 10, ¶ 50. Such gamesmanship has no place here.

    Defendants now contend that an owner of an entity cannot be an employee for purposes of creating copyrighted works. None of the cases cited by Defendants in the Notice support that definitive contention.

    *Clancy v Jack Ryan Enterprises, Ltd.,* 2021 U.S. Dist. LEXIS 26553 (D. Md. Feb. 10, 2021), actually supports Luther Campbell's status as an employee for hire. It acknowledges exactly what Lil' Joe told the Court at the hearing that "Courts do not apply the *Reid* factors mechanistically and only consider the factors that are relevant in each case." *Id.* at * 70. "[T]he ultimate determination, on settled facts, of whether a work qualifies as a work-for-hire is a question of law." *Id.* at * 71. Three factors were particularly relevant in *Clancy,* the right to control,

provision of employee benefits and tax treatment. *Id.* at * 72. In considering the control factor, the *Clancy* court observed that "in cases where the hired party is also an owner or partner of the company asserting ownership, courts have declined to find a work made for hire because of the company's lack of control over the owner." *Id.* While Defendants insinuate that this is the end of the inquiry, and this Court must find that Campbell is not an employee for hire, the *Clancy* court explicitly rejected that position, observing that "the right to control the product is not necessarily dispositive. … In fact, courts often find that the control factor is not determinative in cases involving artists with specialized skills, like Clancy." *Id.* at * 74 (citation omitted). The control factor was overcome, and employee for hire status found to exist, when the hired parties "received salaries and employee benefits and were treated as employees for purposes of taxation." *Id.* "Notably, courts have generally stressed the probative value of a hired party's employee benefits and tax treatment in regard to the *Reid* analysis." *Id.* While there was no evidence that "Clancy received a regular salary or the tax treatment of an employee", *id.,* here, to the contrary, Campbell (who at deposition professed to have no knowledge how the members of *2 Live Crew* were paid, Response to Statement of Material Facts, etc. [D.E. 59] at p. 10, ¶ 50), was paid and treated by his employer, Luke Records, Inc., as an employee including receipt of employee benefits and payment of regular checks for which employee tax treatment was applied, Response to Statement of Material Facts, etc. [D.E. 59] at p. 15, ¶¶ 15, 17 & 20. Thus, according to *Clancy*, "[t]he control factor was overcome, and employee for hire status found to exist…." 2021 U.S. Dist. LEXIS 26553 *74.

*Woods v Resnick,* 725 F.Supp. 2d 809, 824 (W.D Wisc. 2010), pointing out that an agency relationship was conceded in *Reid,* observed that "as a co-owner of the company, Woods does not have an agency relationship with F&I Source. Unlike an employee or independent contractor, an

owner has an inherent right to control the business." Again, control is only one of the *Reid* factors, and not dispositive. *Clancy,* 2021 U.S. Dist. LEXIS 26553 at *72-74.

*Brown v Flowers*, 297 F.Supp. 2d 846, 848 (M.D. N.C. 2003), considered a motion to dismiss for failure to state a cause of action. "Partners are not generally regarded as employees of partnerships", *id.* at 852, but we do not deal with a partnership here. Utilizing *Reid*, *id.* at 852 n 3, "Mr. Brown has not alleged any relationship between the parties other than that of equal partners with separate duties, and hence has not alleged an employer/employee relationship", *id.* at 852. That is not the case here, where a myriad of significant factors support Luther Campbell's employee status.

While *Donaldson Publishing Co. v Bregman, Vocco & Conn, Inc.,* 375 F.2d 639, 643 (2nd Cir. 1967), long predates *Reid,* it does recognize the control factor in determining employee status. "Donaldson's dominant role in the corporation" was a factor indicating that he was not an employee, but so was the absence of any fixed salary and the terms of his agreement, *id.,* factors not present here.

In *Jules Jordan Video, Inc. v 144942 Canada Inc.,* 617 F.3d 1146, 1156 (9th Cir. 2010), "JJV was a one-man shop. Gasper was the sole officer … It was all Gasper all the time." The Court was compelled to accept Gasper's version because "there was no one to disagree." *Id.* This concept is bizarre-taken to its illogical extreme it would mean that nobody can contradict anything a sole business owner/employee says, no matter how unbelievable it is. But we do not even have to consider this rationale because that is not the case here – Luke Records, Inc. had many employees including a CFO who provided unrefuted facts showing that Campbell was an employee, which facts were bolstered and confirmed by Luke Records, Inc.'s CPA. Response to Statement of Material Facts, etc. [D.E. 59].

Hence, none of the new cases cited by Defendant supports their position in opposition to Lil Joe's Motion for Summary Judgment.

(v)     While royalties weigh toward independent contractor status, no royalties were shown to have been accounted for or paid.

*Siegel v Time Warner Inc.,* 496 F.Supp. 2d 1111, 1138 (C.D. Cal 2007), recognizes that royalty payments "*generally* weighs against finding a work-for-hire-relationship." The problem for the Defendants is that they have offered no proof of any royalty accounting or payment from Luke Records, Inc.[5] Response to Statement of Material Facts, etc. [DE 59] at p. 7, ¶ 31 ("Campbell professed to have no recollection how the members of *2 Live Crew* were paid, Campbell Transcript at pp 24-25[6] & 52[7], Ross does not know what he was paid, Ross Transcript at p. 8, and **Ray is not competent to provide evidence to support or oppose summary judgment** since all he knows is

---

[5]   When Defendants were asked by this Court at the hearing where in the record there is evidence that any of the members of *2 Live Crew* received royalties from Luke Records, Inc., Defendants' counsel only referenced paragraph 43 of the Declaration of  Luther Campbell in Support of Motion for Partial Summary Judgment [DE 53-2]. However, there is no mention whatsoever to royalties from Luke Records, Inc., what Campbell said is that "2 Live Crew had the right to receive royalties from, at the very least, BMI…." BMI collects and pays royalties to songwriters regarding composition copyrights. This case is only about the sound recording copyrights, not composition copyrights, so, what BMI does, has nothing to do with this case, so this is nothing more than a red herring.

[6] Q.     How were they to be paid pursuant to this verbal contract?
   A.     I don't recall how they were being paid.
   …
   Q.     Was any money paid to the other members of 2 Live Crew pursuant to the verbal contract?
   A.     I don't recall how the money was disbursed, what was paid to them, based on the verbal contract that we had of them recording these records.

[7] Q.     Did you, in fact, reach an agreement with the members of 2 Live Crew to pay them a royalty of 15 percent?
   A.     I don't recall.

hearsay relayed to him by his deceased father, Ray Transcript at pp. 25[8] & 39[9]."). What was shown, as Defendants acknowledged at the hearing, were periodic payments of a sum certain. Response to Statement of Material Facts, etc. [DE 59] at p. 7, ¶ 31. "[R]egular, periodic payments of a sum certain bear the hallmark of the wages of an employee required to the work in question for his or her employer…." *Siegel,* 496 F.Supp. 2d at 1138. *Siegel* doesn't help Defendants at all, to the contrary it supports Lil' Joe since the record evidence shows that Luther Campbell was paid wages as an employee.

*Twentieth Century Fox Film Corp. v Entertainment Distributing,* 429 F.3d 869, 881 (9th Cir. 2005), examined at whose expense a work was prepared considering whether a lump sum or royalty was paid. It adds nothing to the analysis here.

(vi)     Defendants' new assertion does not support their contention that this <u>declaratory judgment action is barred by the Statute of Limitations</u>

*Finch v Casey,* 2023 U.S. Dist. LEXIS 20635 *7-8 (S.D. Fla. Feb. 7, 2023), examined whether a "declaratory judgment action under §203 of the Copyrights Act falls outside the act's three-year limitations period" There, a notice of termination was sent to Casey on August 30, 2012, with an effective date of October 28, 2018. *Id.* at * 4. On May 7, 2015, Finch sent a letter to Casey regarding the notice of termination, which Casey responded to on May 26, 2015, directly

---

[8] Q.     Okay. And I'm asking you. Other than what you spoke with your father, do you have any personal knowledge of anything else involving the 2 Live Crew copyrights or your father's relationship with Lil' Joe Records?
     A.     Just our conversations.
     Q.     With your father, correct?
     A.     Correct.

[9] Q.     Did your father ever tell you how he was paid money by Luke Records from the first three albums?
     …
     THE WITNESS: To my understanding that there was – being my royalty.

challenging the validity of the notice of termination. *Id.* at \*4-5. Finch did not file his action until November 11, 2022. *Id.* at \*2. The limitations period commences when the claim accrued, which is when the plaintiff knew or should have known that his rights were being violated. *Id.* at \*15-16. Finch's claim accrued when Casey sent his May 26, 2015, letter, calling into question Finch's right to effectuate termination under §203. *Id.* at 20-21.

Defendants' notice of termination is dated November 4, 2020. Complaint [DE 1] at p. 6, ¶ 27; Motion for Summary Judgment and Request for Oral Argument [DE 53] at p. 3. The complaint here was filed on October 21, 2021, Complaint [DE 1], well within the three-year limitations period. To accept Defendants' position, the time period to file an action contesting the validity of a notice of termination would begin *before* the notice of termination is sent-essentially turning Plaintiffs into fortune tellers. It also disregards the Defendants' counterclaim seeking a declaration on the same question posed by Lil' Joe (certainly Defendants' did not intentionally file a time-barred claim). *Finch* does not support the Defendants' proposition.

(vii)   Bankruptcy Code §541(c)(2) pertains to a debtor's interest in a trust – something we do not deal with here

Bankruptcy Code §541(c)(2) pertains to an exception for "a restriction on the transfer of a beneficial interest of the debtor in a trust…." This exception does not apply here, because no trust is involved. Nonetheless, Defendants cite to cases applying this exception. *In re Putnam,* 110 B.R. 783, 786-87 (Bankr. E.D. Va. 1990), considered whether the debtor's interest in profit sharing accounts with her employer, Xerox, were exempt pursuant to Bankruptcy Code §541(c)(2). *In re Mosley,* 42 B.R. 181 (Bankr. D. N.J, 1984), also considered whether the debtor's interest in savings plans provided by her employer were excluded pursuant to Bankruptcy Code §541(c)(2). This case has nothing to do with a trust, not even Defendants claim so, hence Bankruptcy Code §541(c)(2), and these cases, do not even apply.

Precisely because we do not deal in this case with "a beneficial interest of the debtor in a trust", "an interest of the debtor in property becomes property of the estate … notwithstanding any provision in … applicable nonbankruptcy law … that restricts or conditions transfer of such interest by the debtor…." 11 USC §541(c)(1)(A). Therefore, the transfer restriction in section 203 of the copyright act ("applicable nonbankruptcy law… that restricts or conditions transfer of such interest by the debtor") does not prevent a debtor's interest in a section 203 termination interest from becoming an asset of its bankruptcy estate. That means Luther Campbell's and Mark Ross' section 203 termination interest were assets of their respective bankruptcies, and they do not now have the right to exercise them.

In *Stewart v Abend,* 495 U.S. 207, 211, 110 S.Ct. 1750, 109 L.Ed. 2d 184 (1990), "[t]he author of a pre-existing work agreed to assign his rights in the renewal copyright term to the owner of the derivative work, but died before the commencement of the renewal period. The question presented is whether the owner of the derivative work infringed the rights of the successor owner of the pre-existing work by continued distribution and publication of the derivative work during the renewal term of the pre-existing work." *Stewart* has nothing to do with the question presented here – whether a copyright termination interest is an asset of a bankruptcy estate. In a lengthy dissertation of a history of the copyrights, the *Stewart* court observed that the "1976 Copyright Act … provides an inalienable termination right." *Id.* at 230. It did not consider the impact of bankruptcy on a copyright termination interest, and says nothing about whether that termination interest is an asset of a debtor's bankruptcy estate.

(viii)   Bankruptcy Code §365(c) pertains to assumption or assignment of executory contracts – something else we do not deal with here

In *In re Patient Education Media, Inc.,* 210 B.R. 237, 239 (Bankr. S.D. N.Y. 1997), "[t]he issue presented is whether the debtor … can transfer its nonexclusive license to use the copyrighted

14

work over the copyright owner's objection." "Under section 365(a), a trustee may, subject to court approval, assume and assign an executory contract." *Id.* at 241. A nonexclusive copyright license is an executory contract subject to Bankruptcy Code §365. *Id.* The ability to assume and assign an executory contract, however, is precluded by section 365(c) if "applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance from or rendering performance to an entity other than the debtor" unless such other party consents. *Id.* at 241-42.

*In re Golden Books Family Entertainment, Inc.,* 269 B.R. 300, 748 (Bankr. D. Del. 2001), considered the same question, assumption and assignment of a copyright license. *Perlman v Catapult Entertainment, Inc. (In re: Catapult Entertainment, Inc.),* 165 F.3d 747 (9th Cir. 1998), considered the assignment of patent licenses.

Does this sound like anything in our case here? -not at all. This case does not involve a copyright license, exclusive or nonexclusive, a patent license, assumption or assignment of an executory contract, or whether that is permissible. *Patient Education, Golden Books* and *Perlman* simply do not apply to this case.

As Lil' Joe noted at the hearing, the Luther Campbell/Luke Records, Inc. jointly administered bankruptcy cases commenced in 1995, and concluded in 1996, with an order by Bankruptcy Judge Robert Mark approving, among other things, the sale of the copyrights at issue to Lil' Joe. Statement of Material Facts, etc. [DE 31] at p. 4, ¶ 5; Response to Statement of Material Facts, etc. [DE 59] at p. 12, ¶ 5. All of the Defendants were participants in that proceeding and, as creditors, benefitted from it. None of them raised any objection, and the time to do so expired decades ago and in furtherance of that order, Luther Campbell executed a separate assignment of all copyrights in favor of Lil Joe. In contrast, in *Patient Education,* 210 B.R. at 240, *Golden Books,*

15

269 B.R. at 303, and *Perlman,* 165 F.3d at 749, an objection was timely raised or appeal timely pursued. Nobody disputes that the time to challenge whatever occurred in the Luther Campbell/Luke Records, Inc. bankruptcy expired decades ago and no such objection was made.

*Integrated Solutions, Inc. v Service Support Specialties, Inc.,* 124 F.3d 487, 492 (3rd Cir. 1997), recognized that "once a property interest has passed to the estate, it is subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law." This concept accurately assumes that the "property interest", here the §203 termination interest, has "passed to the estate." *Gumport v Sterling Press (In re: Transcon Lines),* 58 F.3d 1432, 1438 (9th Cir. 1995), observed that "nonbankruptcy law defines the nature, scope, and extent of the property rights that come into the hands of the bankruptcy estate." Again, we are talking about "property rights that come into the hands of the bankruptcy estate." *In re: Sanders,* 969 F.2d 591, 593 (7th Cir. 1992), likewise says "a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition." None of these cases supports Defendants' contention that Luther Campbell's and Mark Ross' termination interest never became an asset of their respective bankruptcy.

This Court (and not a jury) is to decide whether Campbell's and Ross'
termination interests were divested in bankruptcy

When asked by this Court at the hearing whether it would decide the question of the impact of Luther Campbell's and Mark Ross' bankruptcies if summary judgment was denied, Defendants' counsel indicated that they had demanded a jury trial and therefore this question would be submitted to the jury. Because determination of this issue is simply the application of law to an undisputed set of facts, and therefore there is no factual issue for the jury to decide, its determination is within the province of this Court. Accordingly, the parties have stipulated that among the "issues of law which remain for determination by the Court" is "Did Campbell and

Ross divest themselves of termination rights pursuant to 17 U.S.C. §203 in their respective bankruptcy." Pretrial Stipulation [DE 97] at pp. 13-14, ¶ 8(b).

Conclusion

For the reasons set forth herein, Plaintiff, Lil Joe Records Inc., asks this Court to strike: (1) those cases and arguments not previously disclosed in the briefs properly filed with this Court in advance of the hearing, and (2) arguments not previously made in the briefs and contrary to the record, and (3) to otherwise enter final summary judgment in favor of Lil Joe Records, Inc. on Count 1 --- claim for declaratory relief and to award such further relief as may be consistent herewith.

WOLFE LAW MIAMI PA
175 SW 7th Street, Suite 2410
Miami, Florida 33130
P: 305.384.7370
F: 305.384.7371
Email: rwolfe@wolfelawmiami.com

By:      /s/ Richard C. Wolfe
         Richard C. Wolfe, Esq.
         Florida Bar No.: 355607

CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

Joel Rothman, Esq.
SRIP LAW PA

21301 Powerline Road, Ste 100
Boca Raton, Florida 33433
joel.rothman@sriplaw.com

Scott Burroughs, Esq.
Doniger/Burroughs
237 Water Street, First Floor
New York, NY 10038
scott@donigerlawfirm.com

/s/ Richard C. Wolfe
Richard C. Wolfe