UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| LIL' JOE RECORDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARK ROSS, CHRISTOPHER WONG WON, JR., RODERICK WONG WON, LETERIUS RAY, ANISSA WONG WON, AND LUTHER CAMPBELL, <br><br> Defendants. | CASE NO.: 1:21-CV-23727-DPG |

**DEFENDANTS' REPLY AND OPPOSITION TO MOTION TO STRIKE DEFENDANTS' NOTICE OF CASE LAW AND REQUEST TO FILE SUPPLEMENTAL BRIEF**

Defendants hereby reply to Plaintiff, Lil' Joe Records, Inc.'s ("Lil Joe"), opposition to Defendants' Notice of Case Law Relied Upon at the June 20, 2023, Hearing and Other Relevant Material and Request to File a Supplemental Brief and Motion to Strike.

**I.  The cases cited by Defendants' are directly on point and leave to supplement should be granted**

**a.  Termination rights are analogous to elective share rights**

Plaintiff takes issue with Defendants comparison of termination rights to elective share rights but fails to substantively distinguish the two. The only distinction loosely made by Plaintiff

1

included the fact that termination rights are "owned." However, that distinction is immaterial to the analysis because it does not change the fundamental nature of either right.

As stated, the issues presented here are of first impression. Accordingly, there is no case law determining whether termination rights are elective, but as argued, termination rights are analogous to elective share rights that a spouse has in probate. Amongst the similarities between the two are (1) they are both non-transferrable, (2) they are both personal rights, and (3) the holder cannot be compelled to exercise either. Because these factors were heavily relied on by the bankruptcy court in concluding that the election rights could <u>not</u> enter the bankruptcy estate, this Court, too, should conclude termination rights cannot enter the bankruptcy estate for the same reasons.

\*      *In re Brand*, lends support to the Defendants' position that termination rights cannot be transferred to the bankruptcy estate because termination rights are personal in nature. 251 B.E. 912, 916 (Bankr. S.D. Fla. 2000). *In re Brand* held that elective share rights cannot become a part of the bankruptcy estate ***because the elective share rights were personal in nature***. *Id*. Similarly, termination rights cannot become a part of the bankruptcy estate because termination rights are personal in nature.

\*      Nonexistent rights cannot become a part of the bankruptcy estate. *In re Miller*, 441 B.R. 154, 156 (Bankr. S.D. Fla. 2010), citing *In re Brand*, 251 B.R. 912, 915-916 (Bankr.S.D.Fla.2000); see also <u>In re McCourt</u>, 12 B.R. 587, 589 (Bankr.S.D.N.Y.1981) ("Until the debtor exercises his personal statutory right to the election, no rights in his deceased wife's property are ascribable to the debtor."). Contrary to Plaintiffs position, *Baldwin* does add to the analysis in that it supports Defendants' position that, at the time of bankruptcy, the termination rights did not exist and therefore could not pass to the bankruptcy estate. Termination rights ***do not vest until a notice of***

2

***termination is served.*** *Baldwin v. EMI Feist Catalog, Inc.,* No. 11-81354-CIV, 2012 WL 13019195, at *2 (S.D. Fla. Dec. 11, 2012). A non-existent interest cannot pass to a bankruptcy estate.

\*      The fact that termination rights are "owned" does not change the conclusions cited above because each hinge on the *nature* of the right (e.g., personal, vested, inalienable), not the status of ownership. Simply put, despite ownership, the nature of the right itself remains consistent. Neither of the two are the kind of "property" a bankruptcy estate can reach because of its fundamental nature, not because of ownership. *See In re Miller*, 441 B.R. 154, 156 (Bankr. S.D. Fla. 2010), citing *Harmon v. Williams*, 615 So.2d 681, 682 (Fla. 1993).

\*      Both termination and elective share rights continue to exist after bankruptcy. As Plaintiff's counsel states, "[n]o where in [cases cited in Defendants' Motion] does it say the copyright termination interest did not exist if the author files bankruptcy." *See* Dkt. No. 149 at 6. Truly, no court has ever held that the termination interest does not exist after bankruptcy *because the termination interest **does** exist after bankruptcy*. And that interest, remains with the author ***even after bankruptcy*** because it cannot enter the bankruptcy estate due to its personal and inalienable nature. Just as an elective share right continues to exist and belong to a spouse even after bankruptcy.

    **b.      The bankruptcy plan is an agreement and could not include termination rights**

Plaintiff argues that Defendants' argument is irrelevant because the case law cited concerns the existence of a cause of action for those who did not acquire property in the bankruptcy plan and contests the validity of the bankruptcy plan. Plaintiff misunderstands Defendants' argument. The case law is intended to resolve whether the bankruptcy plan is an agreement. And, if so,

whether the termination rights can be exercised *despite any contrary agreement in the bankruptcy plan*.

Defendants' cited case law is clear that a bankruptcy plan *is an agreement*. Plaintiffs even acknowledge that the court views bankruptcy plans as contracts. *See* Dkt. No. 149 at 6. Copyright law is equally clear that termination rights can be exercised *despite any agreement to the contrary*. 17 U.S.C. § 203(a)(5). Where there are applicable restrictions on transfers in nonbankruptcy law, as is the case here with copyright law, the bankruptcy code enforces those restrictions. 11 U.S.C. § 541 (c)(2). Thus, bankruptcy code must concede to Section 203(a)(5) restrictions on transfers. And there is no case law supporting Plaintiff's position that "any agreement" excludes bankruptcy agreements.

\*        To reiterate, *Paul v. Monts*, 906 F.2d 1468 (10th Cir. 1990), supports Defendants' position because the case hinges its legal conclusion on the fact that bankruptcy orders *are contracts*. In *Paul*, the court confirms that a Chapter 11 Plan *creates a binding contract* which may be enforced in state court. Just as in *Paul*, and countless other bankruptcy cases, bankruptcy plans are considered binding contracts.

\*        Similarly, In re *Toy King Distributors, Inc.*, 256 B.R. 1, 86 (Bankr. M.D. Fla. 2000), citing In re *Page*, 118 B.R. 456, 460 (Bankr. N.D. Tex. 1990), the court agreed that the bankruptcy plan was a "binding *contract*". (emphasis added). Plaintiff's citation to the courts quote, "bound by the terms of the confirmed plan just as other parties described in Section 1141(a) would be bound" supports Defendants' position that bankruptcy plans are contracts. Such language certainly suggests the existence of a contract.

\*        The Bankruptcy Code requires the Court to apply 17 U.S.C. § 203(a). Contrary to Plaintiffs argument, 11 U.S.C. § 541(c)(2) pertains to the property that enters the estate during the

4

bankruptcy. And, where there is a nonbankruptcy restriction on the property's transfer, such restriction is enforceable, and the property does not enter the estate. 11 U.S.C. § 541(c)(2). Each case cited by Defendants involves the restriction on property transfer to an estate where nonbankruptcy law prohibited such transfer. *See* In re *Mosely*, (prohibiting the transfer of interest in savings plan because of exclusions contained in ERSA).

\*      Because bankruptcy plans are contracts, bankruptcy plans cannot be used to transfer termination rights under Section 203(a)(5). *See* 17 U.S.C. § 203(a)(5) ("Termination of the grant may be effected ***notwithstanding any agreement*** to the contrary, including an agreement to make a will or to make any future grant." (emphasis added); 2 AGREEMENT, Black's Law Dictionary (11th ed. 2019), citing Stephen's Commentaries on the Laws of England 5 (L. Crispin Warmington ed., 21st ed. 1950) ("Every contract is an agreement[.]").

\*      Just as 11 U.S.C. 541(c)(2) requires the application of copyright law to the bankruptcy plan, so does 11 U.S.C. 365(c) of the bankruptcy code. In re *Patient Educ. Media, Inc*., is relevant because the court held that where there is applicable nonbankruptcy law, the court must consider the applicable law. 210 B.R. 237, 242 (Bankr. S.D.N.Y. 1997). And in In re *Golden Books Fam. Ent., Inc.*, the court applied copyright law in consideration of the applicable nonbankruptcy law. 269 B.R. 300, 309 (Bankr. D. Del. 2001). Accordingly, when considering whether the bankruptcy agreement includes the termination rights, this Court must consider the copyright law, which prohibits the transfer of termination rights.

### c.      Work for hire

Plaintiff misconstrues the cases cited by Defendants to lend support to his position that an owner can also be an employee. The cases cited by Defendant do not support such conclusion and noticeably absent from Plaintiffs response is any authority to the contrary.

\*       Contrary to Plaintiff's argument, *Clancy v. Jack Ryan Enterprises, Ltd*., **did** consider each of the *Reid* factors, despite agreeing that the most important factors were control, taxation, and benefits received. No. CV ELH-17-3371, 2021 WL 488683, at \*28 (D. Md. Feb. 10, 2021). And, while control, taxation, and benefits received "weigh[ed] against work for hire status," the other *Reid* factors weighed in favor of the opposite. *Id.* at \*26. Therefore, the court denied summary judgment, concluding that "[o]n balance, [the Court] cannot conclude, as a matter of law that Clancy was an employee of the JR Entities and that his books were made for hire." *Id*. at 28. In sum, the Court did **not** find that work for hire existed. However, unlike the *Clancy* facts, control, taxation, benefits, in addition to several other *Reid* factors, weigh against work for hire status. Specifically, Campbell did **not** have an employment contract with Luke Records, there is **no** evidence showing that Campbell had an intent to form an employee relationship with Luke Records, Campbell **never** received employee benefits, and Campbell's work extended well beyond the regular business of Luke Records. Where *Clancy* had an equal balance of factors in both directions, Campbell's situation is much clearer, with nearly every *Reid* factor weighing **against** work for hire.

\*       *Woods v. Resnick*, focused on the fact that work for hire is conceded where the author is also an owner because because of the inherent power that comes with "ownership". 725 F. Supp. 2d 809, 824 (W.D. Wis. 2010). Plaintiffs completely missed the mark when interpreting the Court's analysis in this case and its comparison to *Reid*. The *Woods* Court expressly rejected the consideration of the *Reid* factors. The Court agreed that "neither *Reid* nor [plaintiffs] concession that he was not an independent contractor bears on the question whether the [work] was a work for hire." *Id*. The Court concluded that a work for hire relationship is conceded where the author is an owner of the company, just like the existence of an agency relationship was conceded in *Reid*

6

because an employee relationship cannot exist simultaneously with ownership. *Id*. Thus, just as in *Woods*, the work for hire argument is conceded due to Campbell's status as an owner of Luke Records.

\*      *Jules Jordan Video Inc. ("JJV") v. 144942 Canada Inc.* also supports *Woods* conclusion that work for hire cannot exist where the artist is also the sole owner of the company. 617 F.3d 1146 (9th Cir. 2010). In *Jules Jordan Video, Inc.*, the Ninth Circuit addressed whether Gasper's creative work was within the scope of his employment as owner of JJV. The Court agreed that Gasper was an employee of JJV for some purposes; however, Gasper's testimony that his artistic creations at JJV was not for hire could not be reasonably disputed considering his status as owner. The Court stated, "JJV as employer and Gasper as employee could certainly agree as to the scope of the employee's employment and could agree that Gasper should retain all copyrights. Since JJV was Gasper, JJV intended whatever Gasper intended, and if Gasper intended that his creative work be outside the scope of his employment with JJV, there was no one to disagree." *Id*. at 1156. The court continued "[t]he typical work for hire dispute involves disagreement between the commissioning party or employer and the commissioned party or employee over who owns the copyright… In the instant case, the only two parties with any possible claim to ownership, JJV and Gasper, both believed and intended that Gasper own the copyright." *Id*. at 1156.  Just as the case at JJV, both Campbell and Luke Records both intended that Campbell own the copyright. Campbell was the sole owner of Luke Records and had the final say on all business decisions – those business decisions included what ownership interest Luke Records obtained over an artist's copyrights. Thus, whatever Campbell intended the status of his artistic work at Luke Records to be is the status of the work at Luke Records – simply put, there are only two parties who can claim ownership, Luke Records and Campbell. Campbell represents the intent of both at the time the

Work was created. And, for what it's worth, the Court found against a work for hire relationship despite Gasper's receipt of salary and year-end bonuses from JJV. *Id*.

Finally, Plaintiff challenges the documentary evidence that exists in support of Campbell's argument that he was an independent contractor. In doing so, it overlooks **Exhibit 4** to Defendants' Motion for Summary Judgment (attached hereto as **Exhibit A**). This document is a series of "Popular Songwriter Contracts" between Pac-Jam Publishing and the member of 2 Live Crew, including Luther Campbell. These contracts relate to the compositions for the same songs as those at issue in this case (the case addresses the sound recordings for these songs). These contracts also relate to the same time period. Of course, if Campbell was an employee of Skyywalker Records, as Plaintiff claims, then the label would own the rights for these compositions and Campbell would not have entered into these contracts as an individual "Popular Songwriter." Notably, these contracts came from Plaintiff's files and make clear that Plaintiff has been aware that Campbell was not an employee of the label for decades. This further proves that Campbell was not an employee of Skyywalker Records or the related entities.

## II.     The Motion to Strike should be denied

In the initial Notice, Plaintiff sought leave to submit the material at issue. Plaintiff objects to the Notice and moves to strike, ignoring that that the request was made. And, instead of simply moving to strike, Plaintiff submitted a fulsome opposition that went beyond Defendants' Notice – which provided case citations and parentheticals – to make substantive arguments. Given that opportunity to respond and the nature of the response, it is respectfully requested that the Court consider these submissions.

## III.    Conclusion

For the reasons set forth herein, Defendants ask this Court to grant Defendants leave to supplement and consider the case law and evidence addressed as part of this briefing.

DATED: August 2, 2023

Respectfully submitted,

*/s/ Scott Alan Burroughs*
SCOTT ALAN BURROUGHS
(admitted *pro hac vice*)
**DONIGER / BURROUGHS**
237 Water Street, First Floor
New York, New York 10038
(310) 590-1820
scott@donigerlawfirm.com

JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com
**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Defendants*