# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

_____

LIL' JOE RECORDS, INC.,                     )
                                            )
        Plaintiff,                     )
                                            )
        v.                              )          CASE NO. 1:21-CV-23727-DPG
                                            )
MARK ROSS; *et al*.,                        )
                                            )
        Defendants.                    )
_____)

**DEFENDANTS' MOTION TO STRIKE AND RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY (DKT. NO. 163) AND MOTION FOR RECONSIDERATION (DKT. NO. 164)**

i

**TABLE OF CONTENTS**

I.    Plaintiff's motion fails……………………………………………………………1

      A.  The motion for reconsideration is baseless……………………………………..2

          1.  The motion is premature…………………………………………………...2

          2.  The Court's stated decision accurately reflects the law…………………2

               a.  The Supreme Court considered and rejected the idea that the termination right is included in bankruptcy estates………………3

               b.  The Section 203 right is a "personal right" and thus not part of the bankruptcy estate…………………………………………...4

               c.  The Section 203 right was unvested at the time of bankruptcy and thus not part of the bankruptcy estate………………………..7

               d.  The Section 203 rights were never part of any bankruptcy estate………………………………………………………………9

               e.  If the Section 203 rights ever entered the bankruptcy estates, they were returned to 2 Live Crew once those bankruptcies ended………………………………………………………..10

               f.  Judicial estoppel precludes Lil' Joe's arguments………………...12

      B.  An immediate appeal would be Improper………………………………………13

II.    Lil' Joe's recent filings should be stricken or a briefing schedule set…………………..15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Zurich Ins. Co.*,
 667 F.2d 1162 (4th Cir. 1982) ................................................................ 13

*Arthur v. King*,
 500 F.3d 1335 (11th Cir. 2007) ................................................................ 2

*Baldwin v. EMI Feist Catalog, Inc.*,
 2012 WL 13019195 (S.D. Fla. Dec. 11, 2012) ...................................... 10

*Bottom v. Fultz*,
 124 Ky. 302, 98 S.W. 1037 (1907) ........................................................ 6

*Brown-Thomas v. Hynie*,
 441 F. Supp. 3d 180 (D.S.C. 2019) ........................................................ 4

*Cover v. Wal–Mart Stores, Inc.*,
 148 F.R.D. 294 (M.D. Fla. 1993) ........................................................... 2

*Curtiss–Wright Corp. v. Gen. Elec. Co.*,
 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)................................. 14

*DeNadai v. Preferred Cap. Markets, Inc.*,
 272 B.R. 21 (D. Mass. 2001) .................................................................. 8

*Florida Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc.*,
 12 F. Supp. 2d 1306 (M.D. Fla. 1998)..................................................... 2

*Harmon v. Williams*,
 596 So.2d 1139 (Fla. 2d DCA 1992) ...................................................... 9

iii

*Henry v. Casey*,

    682 S.W.3d 171 (Tenn. Ct. App. 2023) ................................................................... 6

*Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*,

    997 F.2d 581 (9th Cir.1993) ....................................................................................... 10

*In re Belize Airways, Ltd.*,

    5 B.R. 152 (Bankr.S.D.Fla.1980) ................................................................................ 7

*In re Brand*,

    251 B.R. 912 (Bankr.S.D.Fla.2000) ..................................................................... 5, 6, 7

*In re Chattanooga Wholesale Antiques, Inc.*,

    930 F.2d 458 (6th Cir.1991) ....................................................................................... 11

*In re D & L Nicolaysen*,

    228 B.R. 252 (Bankr. E.D. Cal. 1998) ....................................................................... 11

*In re Davis*,

    110 B.R. 573 (Bankr. M.D. Fla. 1989) ......................................................................... 9

*In re D'Lites of Am., Inc.*,

    66 B.R. 558 (Bankr. N.D. Ga. 1986) ............................................................................ 7

*In re Estate of Strohe*,

    2004 WL 2903616  (N.Y. Sur. Ct. Dec. 13, 2004) ...................................................... 5

*In re Fleming's Est.*,

    217 Pa. 610, 66 A. 874 (1907) ..................................................................................... 6

*In re Foreman*,

    378 B.R. 717 (Bankr. S.D. Ga. 2007) ........................................................................... 9

*In re Gucci,*

    202 B.R. 686 (Bankr. S.D.N.Y. 1996) ................................................................ 7

*In re Hilsen,*

    405 B.R. 49 (Bankr. E.D.N.Y. 2009) ............................................................. 5, 9

*In re Jahrling,*

    514 B.R. 565 (Bankr. N.D. Ill. 2014) ............................................................... 6

*In re Linsenmeyer,*

    92 F. App'x 101 (6th Cir. 2003) ............................................................... 10, 11

*In re Little & Ives Co.,*

    262 F.Supp. 719 (S.D.N.Y.1966) ..................................................................... 5

*In re Martin,*

    490 F.3d 1272 (11th Cir. 2007) ..................................................................... 10

*In re McCourt,*

    12 B.R. 587 (Bankr. S.D.N.Y. 1981) ......................................................... 5, 6, 7

*In re Meehan,*

    102 F.3d 1209 (11th Cir. 1997) ....................................................................... 9

*In re Miller,*

    441 B.R. 154 (Bankr. S.D. Fla. 2010) ..................................................... 6, 7, 8, 9

*In re Moore,*

    907 F.2d 1476 (4th Cir. 1990) ...................................................................... 10

*In re Se. Banking Corp.,*

    69 F.3d 1539 (11th Cir. 1995) ...................................................................... 15

*In re W.T. Grant Co.*,

    699 F.2d 599 (2d Cir.1983) ................................................................................................ 10

*Jetton v. University of the South*,

    208 U.S. 489, 28 S.Ct. 375, 52 L.Ed. 584 (1908) ............................................................. 5

*Kearley v. Crawford*,

    112 Fla. 43, 151 So. 293 (1933) ........................................................................................ 6

*Korman v. Iglesias*,

    2018 WL 4410226 (S.D. Fla. June 28, 2018) ................................................................... 13

*Lex Tex Ltd. v. Unifi, Inc. (In re Yarn Processing Patent Validity Litig.)*,,

    680 F.2d 1338 (11th Cir.1982) ........................................................................................ 14

*Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*,

    483 F.3d 773 (11th Cir. 2007) ................................................................................... 14, 15

*Mills Music, Inc. v. Snyder*,

    469 U.S. 153, 105 S. Ct. 638, 83 L. Ed. 2d 556 (1985) ................................................ 3, 4

*O'Neal v. Kennamer*,

    958 F.2d 1044 (11th Cir. 1992) ........................................................................................ 2

*Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*,

    834 F.2d 208 (1st Cir. 1987) ........................................................................................... 13

*Peden v. Stephens*,

    50 F.4th 972 (11th Cir. 2022) .......................................................................................... 15

*Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*,

    916 F. Supp. 1557 (N.D. Ga. 1995) .................................................................................. 3

*Preserve Endangered Areas v. U.S.A.C.E*,

    87 F.3d 1242 (11th Cir. 1996) ........................................................................ 3

*Reed v. City of Arlington*,

    650 F.3d 571 (5th Cir. 2011) ........................................................................ 11

*Rissetto v. Plumbers and Steamfitters Local 343*,

    94 F.3d 597 (9th Cir.1996) ........................................................................ 12

*Robertson v. Schard*,

    142 Iowa 500, 119 N.W. 529 (1909) ........................................................ 6

*Russ v. Jackson Cnty. Sch. Bd.*,

    530 F. Supp. 3d 1074 (N.D. Fla. 2021) ................................................ 5, 11

*Stewart v. Abend*,

    495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990)............................ 4

*Taft v. O'Connell (In re Taft)*,

    184 B.R. 189 (E.D.N.Y.1995) .................................................................. 9

*United Kingdom v. United States*,

    238 F.3d 1312 (11th Cir. 2001) .............................................................. 12

*Vazquez-Klecha v. Bickerstaff*,

    2023 WL 5321308 (11th Cir. Aug. 18, 2023) ........................................ 15

**Statutes**

17 U.S.C. § 201......................................................................................... 10

17 U.S.C. § 203....................................................................................Passim

17 U.S.C. § 203(a)(1).............................................................................. 4, 5

17 U.S.C. § 203(a)(5)................................................................................ 10

11 U.S.C. § 541 ...................................................................................................... 5

11 U.S.C. § 1141(b) ............................................................................................... 11

11 U.S.C.A. § 541(a) .............................................................................................. 7

11 U.S.C.A. § 541(a)(1) .......................................................................................... 8

11 U.S.C.A. § 541(a)(5) .......................................................................................... 8

11 U.S.C.A. § 541(c)(2) .......................................................................................... 9

28 U.S.C. § 1481 .................................................................................................... 6

**Other Authorities**

Judicial Resistance to Copyright Law's Inalienable Right to Terminate Transfers,

    33 COLUM. J.L. & ARTS 227 (2010) ................................................................ 4

Renegotiating the Copyright Deal in the Shadow of the "Inalienable" Right to Terminate,

    62 Fla. L. Rev. 1329 (2010) ............................................................................. 10

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendants, Mark Ross, Luther Campbell, Anissa Wong Won, Christopher Wong Won, Jr., Roderick Wong Won, and Leterius Rey ("Defendants"), hereby move to strike Plaintiff Lil' Joe Records, Inc.'s ("Lil' Joe") Notice of Supplemental Authority (see Dkt. No. 163) and Motion for Reconsideration and/or Alternatively, Rule 54(B) Certification. See Dkt. No. 64. Should the Court not strike both filings, Defendants respectfully request 14 days from the date of the Court's ruling on this motion to strike to submit an opposition and response to Plaintiff's two recent filings.[1]

It is respectfully submitted, however, that they should both be stricken, as set forth below. Each document is a transparent attempt to influence the Court to depart from its recent ruling, as delivered from the bench during the March 18, 2024 hearing. The Court set forth numerous bases for its bankruptcy-issue decision, each of which accurately reflected the law. Despite this, Lil' Joe files two new documents that fail to cite to any evidence and simply rehash previous arguments. The filings fail to provide any basis for the Court to depart from its ruling.

## I.    Plaintiff's motion fails

There is no basis to reconsider the Court's ruling or to delay trial in this matter.

---

[1] Lil' Joe also violated Local Rule 7.1 with this filing. Its counsel contacted my office on Tuesday, March 26, 2024 and demanded to immediately meet-and-confer. I requested the basis for the motion and the next day he sent to me that basis. I then offered to meet-and-confer at 2:45 pm EST on March 29, 2024. He repeated his demand that I immediately meet-and-confer. I noted that I was in meetings and unavailable until Friday. Instead of waiting an additional day to meet-and-confer, he filed this motion without complying with Local Rule 7.1. When asked as to the basis for the exigency of his request, he provided no response.

### A.      The motion for reconsideration is baseless

A "motion for reconsideration must demonstrate why the court should reconsider its prior decision and 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" *Florida Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998), quoting *Cover v. Wal–Mart Stores, Inc*., 148 F.R.D. 294, 295 (M.D. Fla. 1993). Courts generally recognize three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. Id. None apply here. Lil' Joe cites no "intervening change" in the law or "new evidence." Nor is there any "clear error" or "manifest injustice" evident in the Court's stated ruling.

### 1.      The motion is premature

Lil' Joe filed this motion before the Court issued the written decision that the motion challenges. Thus, it is premature, as the parties have not yet had an opportunity to review the substance and analysis of that decision. And Lil' Joe cites no law that allows it to challenge a decision before the written opinion has been issued. The motion fails for that reason alone.

### 2.      The Court's stated decision accurately reflects the law

The court's stated determination regarding the effect of bankruptcy on an unvested personal termination right is supported by all applicable law. Lil' Joe, in its challenge, simply restates arguments that have already been considered and rejected by the Court. Notably, a motion for reconsideration should not be used to present the Court with arguments already rejected or to offer new legal theories or evidence that could have been presented previously. See *Arthur v. King*, 500 F.3d 1335, 1343-44 (11th Cir. 2007); *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992); *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp.

1557, 1560 (N.D. Ga. 1995), aff'd 87 F.3d 1242 (11th Cir. 1996) ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time."). Yet, this is all Lil' Joe offers, and the motion thus fails.

   a.   **The Supreme Court considered and rejected the idea that the termination right is included in bankruptcy estates**

*Snyder* makes clear that no termination rights are lost in bankruptcy. In *Snyder* the copyright holder "went into bankruptcy in 1929, and in 1932 the trustee in bankruptcy assigned the copyright to Mills." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 156–57, 105 S. Ct. 638, 641, 83 L. Ed. 2d 556 (1985). Although "Mills had acquired ownership of the original copyright from the trustee in bankruptcy, it needed the cooperation of Snyder in order to acquire an interest in the 28-year renewal term." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 157, 105 S. Ct. 638, 641–42, 83 L. Ed. 2d 556 (1985). Like Campbell here, Snyder had transferred his copyrights to the record label. When Mills bought those rights in bankruptcy, it did not also acquire the Section 203 rights. Thus, Mills needed Snyder to cooperate in exercising those rights. Indeed, if Mills had also obtained the Section 203 rights in bankruptcy, it would not "need the cooperation of Snyder" as the Supreme Court concludes.

   Similarly, here, Lil' Joe argues that it obtained all copyrights, including the Section 203 rights, from Luke Records during the Luke Records bankruptcy. But, as the Court concluded in *Snyder*, such rights do not transfer in bankruptcy. Lil' Joe attempts to distinguish the case by arguing that Campbell and Ross also declared bankruptcy, but this is irrelevant because Snyder, like Campbell and Ross, had transferred the copyrights in his music to the label before the bankruptcy proceedings. Indeed, Lil' Joe has consistently maintained that Luke Records obtained all of Campbell and Ross's copyrights and then Lil' Joe acquired those rights from Luke Records

(and not Campbell or Ross) during the bankruptcy proceedings. To argue otherwise would conflict with Lil' Joe's sworn assertion that Campbell and Ross were "employees" of Luke Records. If they were "employees," the albums would be "works-for-hire" not subject to termination, and thus their individual bankruptcies could not possibly include termination rights. See 17 U.S.C. § 203(a)(1) (works-for-hire not subject to termination right).

*Snyder* establishes that Section 203 rights are unaffected by bankruptcy. This "right was expressly intended to relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product." *Mills Music, Inc.*, 469 U.S. 153, 172–73, (1985) (footnote omitted); see also Peter S. Menell & David Nimmer, Judicial Resistance to Copyright Law's Inalienable Right to Terminate Transfers, 33 COLUM. J.L. & ARTS 227, 227 (2010) ("For a century, Congress has sought to protect authors and their families by allowing them to grant their copyrights for exploitation and then, decades later, recapture those same rights."). Should there be any confusion, the "United States Supreme Court has noted that the Copyright Act of 1976 "provides an **inalienable** termination right" for both authors and his or her statutory heirs." *Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 191 (D.S.C. 2019)(emphasis added), quoting *Stewart v. Abend*, 495 U.S. 207, 230, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990), citing 17 U.S.C. §§ 203, 304. Bankruptcy proceedings cannot alienate a right that the Supreme Court has held to be inalienable.

**b.     The Section 203 right is a "personal right" and thus not part of the bankruptcy estate**

The Section 203 right is a personal right because it can only be exercised by the author (or the author's heir). 17 U.S.C. § 203 (a)(1). Section 541 expresses that the bankruptcy estate includes "all legal or equitable interests of the debtor in **property** as of the commencement of the case[,]"

thus making clear that the estates hold only "the debtor's interests in **property**." *In re McCourt*, 12 B.R. 587, 589 (Bankr. S.D.N.Y. 1981)(emphasis added), quoting 11 U.S.C. § 541. There is an important distinction between a "property interest," which would become part of the bankruptcy estate, and the personal ability to exercise a right to obtain an interest, and that distinction applies with force here to confirm that Section 203 rights do not become part of a bankruptcy estate. *In re McCourt,* 12 B.R. 587, 589 (Bankr. S.D.N.Y. 1981).

The Section 203 right is "more closely akin to a personal right rather than a property right" because it can only be exercised by the holder. *In re Hilsen*, 405 B.R. 49, 60 (Bankr. E.D.N.Y. 2009), citing *In re Estate of Strohe*, 2004 WL 2903616, at *2 (citations omitted). And such "a personal right, unlike a full property right, is **generally not transferable**." Id. (citation omitted), citing *Jetton v. University of the South*, 208 U.S. 489, 500, 28 S.Ct. 375, 52 L.Ed. 584 (1908) (a tax-exempt university may not transfer its tax-exempt status to its lessee); *In re Little & Ives Co*., 262 F.Supp. 719, 722 (S.D.N.Y.1966) (a trustee may not transfer the debtor's contract right to use copyrighted material); *In re McCourt*, 12 B.R. 587, 590 (Bankr.S.D.N.Y.1981) (a trustee may not exercise the debtor's personal right of election to take his share of his deceased spouse's estate); *In re Brand*, 251 B.R. 912, 915–16 (Bankr.S.D.Fla.2000) (unexercised personal rights, unlike property rights, are not property of the estate).[2]

Given that the Section 203 right is a "personal right that" 2 Live Crew "may choose to exercise or not, such unexercised right cannot constitute an asset or property" of the estate. *Henry*

---

[2] Lil' Joe relies heavily *Russ v. Jackson Cnty. Sch. Bd.*, 530 F. Supp. 3d 1074, 1078 (N.D. Fla. 2021), but that case involved a claim that the "plaintiff's employment-discrimination claims" were assets of a **Chapter 7** bankruptcy estate. Here, the proceedings were under **Chapter 11**, which vests ownership of untransferred property in the *debtor* at the end of the bankruptcy, and the Section 203 right is very different from a discrimination claim in exercise, ownership, and transferability.

*v. Casey*, 682 S.W.3d 171, 184 (Tenn. Ct. App. 2023), appeal denied (Oct. 13, 2023)(citations omitted). Certainly, the Section 203 right cannot be exercised by either the trustee or a buyer of the bankruptcy estate's assets and is thus a personal right. To be sure, under Florida law, a "personal right" is "not a property interest of the debtor, and thus, not property of the estate." *In re Miller*, 441 B.R. 154, 156 (Bankr. S.D. Fla. 2010), quoting *In re Brand*, 251 B.R. 912, 916 (Bankr.S.D.Fla.2000). Because the Section 203 may only be exercised by its holder, at the holder's sole election, the right never enters the bankruptcy state.[3]

If the Section 203 right entered the estate, it would be rendered valueless and thus forfeited because any party that bought the rights out of bankruptcy would be unable to exercise the right. Under "28 U.S.C. § 1481, bankruptcy courts are courts of equity, and equity abhors a forfeiture." *In re D'Lites of Am., Inc.*, 66 B.R. 558, 560 (Bankr. N.D. Ga. 1986), citing, e.g., *In re Belize Airways, Ltd.*, 5 B.R. 152, 154 (Bankr.S.D.Fla.1980). Lil' Joe argues that "it is the trustee of the Luke Bankruptcy, not Luther Campbell, who can elect to terminate the 2 Live Crew Copyrights." Plaintiff's Motion for Summary Adjudication, Dkt. No. 30, pg. 9. But this grossly misstates the

---

[3] Last year a court surveyed the state of play in this regard and found "persuasive several cases from federal bankruptcy courts and other state courts" that held that personal rights do not become part of a bankruptcy estate. *Henry v. Casey*, 682 S.W.3d 171, 183–84 (Tenn. Ct. App. 2023), *appeal denied* (Oct. 13, 2023), citing *In re Jahrling*, 514 B.R. 565, 575 (Bankr. N.D. Ill. 2014), *aff'd sub nom. Jahrling v. Est. of Cora*, 530 B.R. 679 (N.D. Ill. 2015), *aff'd sub nom. In re Jahrling*, 816 F.3d 921 (7th Cir. 2016) (holding that because the elective share right is a personal right belonging to the surviving spouse, until the spouse makes the election, "the property that he could receive cannot be claimed by his creditors or become property of his bankruptcy estate"); *In re McCourt*, 12 B.R. 587, 589 (Bankr. S.D.N.Y. 1981) (holding that a bankruptcy trustee could not compel the bankruptcy debtor to exercise his statutory elective share right with respect to his deceased wife's estate because "the unexercised statutory right is not a property interest" but is rather a personal right pursuant to state law); *Kearley v. Crawford*, 112 Fla. 43, 151 So. 293, 294 (1933) ("[E]lection to take under or against a will is a personal right of the legatee or devisee, and that it is one that cannot be controlled by his creditors."); *Robertson v. Schard*, 142 Iowa 500, 119 N.W. 529, 531 (1909) (holding that a surviving spouse cannot be compelled by creditors to exercise his elective share right even though, under the will, he would take nothing); *Bottom v. Fultz*, 124 Ky. 302, 98 S.W. 1037, 1038 (1907) (holding that a surviving spouse could not be compelled to elect to take against his deceased spouse's will to benefit his creditors because the right to renounce the will "is a personal privilege given to the husband, and it is one which he may exercise or not, at his pleasure"); *In re Fleming's Est.*, 217 Pa. 610, 66 A. 874, 876 (1907) (holding that "the right of the husband to elect to take against the provisions of his wife's will is simply a personal privilege, and is not an asset for the payment of his debts, or a right which he can be compelled to exercise so as to discharge his trust liabilities").

law as only authors or their heirs can exercise the right per Section 203's text. Transferring the right to a trustee would thus constitute a forfeiture. The Section 203 rights did not transfer via bankruptcy.

> **c.**     **The Section 203 right was unvested at the time of bankruptcy and thus not part of the bankruptcy estate**

The Section 203 right was not property of the bankruptcy estates because Section 541(a) only applies to a property interest that exists as of the date of the bankruptcy filing. Under "section 541(a) the estate is normally comprised only of property and interests therein belonging to the debtor at the time the petition is filed. In general, property not then owned but subsequently acquired by the debtor does not become property of the estate, but becomes the debtor's, clear of all claims that are discharged by the bankruptcy proceeding." *In re Gucci*, 202 B.R. 686, 689 (Bankr. S.D.N.Y. 1996), quoting L. King, Collier on Bankruptcy, ¶ 541.05 (15th Edition, 1996).

At the time of the relevant bankruptcies, no 2 Live Crew member had exercised their Section 203 right (it would have been impossible given that the temporal exercise window had not yet opened). Thus, the Section 203 right was not part of the bankruptcy estate because the Section 203 right "does not exist until [the right] is properly exercised." *In re Miller*, 441 B.R. 154, 156 (Bankr. S.D. Fla. 2010), quoting *In re Brand* at 915–16; citing *In re McCourt*, 12 B.R. 587, 589 (Bankr.S.D.N.Y.1981) ("Until the debtor exercises his personal statutory right to the election, no rights in his deceased wife's property are ascribable to the debtor."). Given that the Section 203 rights were unvested at the time of the bankruptcy proceedings, Section 541(a)(1) does not apply to the Section 203 rights, which are not "property interests" under Section 541(a)(1). *In re Miller*, 441 B.R. 154, 157 (Bankr. S.D. Fla. 2010) ("Section 541(a)(1) does not apply because the Elective Share did not exist as of the Petition Date. The Trustee's argument that the Debtor was entitled to

acquire the Elective Share on the Petition Date simply restates the fact that the Debtor had the personal right of election on the Petition Date. The Debtor's right of election, however, is not a property interest under § 541(a)(1).").

Lil' Joes relies on *DeNadai v. Preferred Cap. Markets, Inc*., 272 B.R. 21, 24 (D. Mass. 2001), to argue to the contrary, but, again, that case address a Chapter 7 bankruptcy, which is not at issue here. It also addresses stock options that could be exercised by anyone and for which the debtor had a "contractual right" at the time of the bankruptcy. *DeNadai v. Preferred Cap. Markets, Inc*., 272 B.R. 21, 30 (D. Mass. 2001). Here, the Section 203 rights can only be exercised by 2 Live Crew (or their heirs), there was no "contractual right" to termination at the time of the bankruptcies, and the termination right simply did not exist until the 35-year window opened. This case, and the others cited by Lil' Joe, are inapposite.

Indeed, a future interest can *only* possibly become part of the bankruptcy estate if it is acquired 180 days after the bankruptcy estate is formed *and* is acquired "by bequest, devise, or inheritance"[4] *In re Miller*, 441 B.R. 154, 157 (Bankr. S.D. Fla. 2010), citing 11 U.S.C.A. § 541(a)(5). The termination rights were exercised years after the 180-day deadline and were *not* obtained via bequest, devise, or inheritance. As such, the termination rights were not part of the estate. Id. Surely, unless and until 2 Live Crew "exercised the right of election, they were "not entitled to acquire" the copyrights that resulted from its exercise. *In re Miller,* 441 B.R. 154, 157 (Bankr. S.D. Fla. 2010), citing *Harmon v. Williams*, 596 So.2d 1139, 1141–42 (Fla. 2d DCA 1992) (failure to timely, properly file election resulted in forfeiture of elective share), aff'd, 615 So.2d 681 (Fla.1993).

And the law in the "Eleventh Circuit is settled that assets acquired post-confirmation are

---

[4] There are other means involving divorce or insurance that do not apply here.

not property of the bankruptcy estate unless they are necessary to maintain the plan." *In re Foreman*, 378 B.R. 717, 721–22 (Bankr. S.D. Ga. 2007)(collecting cases). Here, there was no indication whatsoever in any of the bankruptcies that the Section 203 rights were ever transferred and certainly no evidence that they were necessary for the reorganization plan. The Section 203 rights were not part of the bankruptcy estates.

**d.      The Section 203 rights were never part of any bankruptcy estate**

The bankruptcy statute provides that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." *In re Meehan*, 102 F.3d 1209, 1210 (11th Cir. 1997), quoting 11 U.S.C.A. § 541(c)(2). Section 541(c)(2) of the Bankruptcy Code precludes Plaintiff's argument, as it "places a boundary on property of the estate in accordance with applicable nonbankruptcy law" so that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." *In re Hilsen*, 405 B.R. 49, 56 (Bankr. E.D.N.Y. 2009), citing 11 U.S.C. § 541(c)(2), *Taft v. O'Connell (In re Taft)*, 184 B.R. 189, 190 (E.D.N.Y.1995); see also *In re Davis*, 110 B.R. 573, 574–75 (Bankr. M.D. Fla. 1989)("Section 541(c)(2) of the Code requires that the property which is subject to restriction on a transfer of a beneficiary interest of a debtor is a trust which is enforceable under nonbankruptcy law to be recognized and is equally enforceable in a case filed under Title 11.")  "Applicable nonbankruptcy law" means "precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable." *In re Moore*, 907 F.2d 1476, 1477 (4th Cir. 1990).

Here, the Copyright Act is the "nonbankruptcy" law that restricts the transfer of Section 203 termination rights and establishes that they cannot be alienated. See 17 U.S.C.§ 203 (a)(5) ("Termination of the grant may be effected notwithstanding any agreement to the contrary,

including an agreement to make a will or to make any future grant."). Indeed, to "protect authors from permanently losing the rights to their works before they are able to determine the work's value, Congress created an **<u>inalienable</u>**[5] right to terminate a prior grant of an interest in a copyright." *Baldwin v. EMI Feist Catalog, Inc*., No. 11-81354-CIV, 2012 WL 13019195, at *2 (S.D. Fla. Dec. 11, 2012), citing, generally Lydia Pallas Loren, Renegotiating the Copyright Deal in the Shadow of the "Inalienable" Right to Terminate, 62 Fla. L. Rev. 1329, 1333-42 (2010).[6] The inalienable Section 203 rights never entered the bankruptcy estate.

e.     **If the Section 203 rights ever entered the bankruptcy estates, they were returned to Campbell and Ross once those bankruptcies ended**

Lil' Joe advances a material falsehood by arguing, "[a]fter the bankruptcy case has been closed, 'property of the estate that is not administered in the bankruptcy proceedings remains the property of the estate.'" Dkt. No. 164, pg. 6, citing *Russ v. Jackson Cnty. Sch. Bd.,* 530 F. Supp. 3d 1074, 1082 (N.D. Fla. 2021)[7].  This falsehood is material because, per Lil' Joe's argument, the

---

[5] Lil' Joe argues, incorrectly, that the Joint Reorganization Plan that the parties agreed to in Campbell's bankruptcy proceeding is not an "agreement." This is irrelevant because the 203 right was not part of the plan and also wrong, as, while the agreement is subject to court approval, the "Plan is to be construed as a contract[.]" *In re Linsenmeyer*, 92 F. App'x 101, 102–03 (6th Cir. 2003), citing *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n,* 997 F.2d 581, 588 (9th Cir.1993)("A reorganization plan resembles a consent decree and therefore, should be construed basically as a contract."). While bankruptcy courts can and do approve settlement agreements, that does not make those agreements anything other than agreements. *In re Martin*, 490 F.3d 1272, 1275–76 (11th Cir. 2007)("we note that the bankruptcy court did not err in approving the settlement agreement because it did not fall below the lowest point in the range of reasonableness."), citing *In re W.T. Grant Co*., 699 F.2d 599, 608 (2d Cir.1983). Finally, the Ross bankruptcy document is clearly labeled as a "Settlement Agreement." See Dkt. 32-6.

[6] Lil' Joe argues that 17 U.S.C. § 201 somehow allows the termination right to be alienated but that provision pertains to copyright-ownership-transfers and has nothing to do with the termination right set forth in 17 U.S.C. §203, which includes its own limitation on transfer.

[7] Lil' Joe also cites *Russ* for numerous other legal positions, but this case related to "a Chapter 7 debtor" and there are no Chapter 7 debtors here.

Section 203 rights would remain with the estate if not administered. But, the law is the exact opposite as applied here. *Russ* is a **Chapter 7** case.[8] Campbell and Luke Records filed **Chapter 11** cases (and Ross's bankruptcy was dismissed). Chapter 11's language precludes Lil' Joe's argument, stating "[i]n a Chapter 11 case, upon confirmation of a plan of reorganization, the property of the **estate vests in the debtor** and the estate terminates—that is, unless the plan provides otherwise. *In re Linsenmeyer*, 92 F. App'x 101, 102 (6th Cir. 2003)(emphasis added), citing 11 U.S.C. § 1141(b)("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."); see also *In re Chattanooga Wholesale Antiques, Inc*., 930 F.2d 458, 462 (6th Cir.1991). Confirmation of a Chapter 11 plan results in the property of the estate vesting in the debtor unless the plan provides otherwise. *In re D & L Nicolaysen*, 228 B.R. 252, 262 (Bankr. E.D. Cal. 1998). Here, the Plan said nothing of the 203 rights so if they were in the estates they vested in Campbell and Ross.

As the Court noted at the hearing, there is no evidence that Campbell or Ross ever conveyed the Section 203 termination right in any bankruptcy proceeding or that the plan included a transfer of the Section 203 right.[9] As such, even if the Section 203 rights were ever part of a bankruptcy estate (they were not), they were never transferred during the pendency of the bankruptcy estates and thus would have returned to Campbell and Ross once the bankruptcy estates closed per Chapter 11's text.

### f. Judicial estoppel precludes Lil' Joe's arguments

---

[8] Lil' Joe engages in this same misdirection throughout the brief, citing Chapter 7 cases, which are inapplicable to the Chapter 11 bankruptcies at issue here, for important legal principles. See, e.g., Dkt. No. 164, pg. 5, which cites *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011), a Chapter 7 case.

[9] Notably, the Campbell Joint Plan does not include copyrights as transferred Assets. See Dkt. 32-2, pg. 47.

Judicial estoppel is "applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *United Kingdom v. United States*, 238 F.3d 1312, 1324 (11th Cir. 2001)(citations omitted). Judicial estoppel can be invoked whether a party takes inconsistent positions in the same action or in two different actions. See *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir.1996). Here, Lil' Joe submitted in this case a sworn declaration in 2022 attesting to the fact that 2 Live Crew were "employees" of the record label. See Weinberger Declaration, Dkt. No. 32, ¶ 5. Lil' Joe argues, over Defendants' objections, that as a result of this putative employment the record label has at all times owned the copyrights as "works-for-hire" and that Campbell and Ross, as employees, would have no termination rights per 17 U.S.C. 203. Yet, Lil' Joe now argues that Campbell and Ross *did* have such termination rights and somehow transferred or lost those rights in bankruptcy. There is no evidence of such a transfer or loss and even if there were Lil' Joe is estopped from arguing factually inconsistent positions.

In connection with copyright ownership, Courts do not allow parties to take inconsistent factual positions. Lil' Joe seeks to take advantage of "the exigencies of the moment" to claim that Campbell and Ross were *not* employees of the record label and thus did possess Section 203 rights and that those rights were somehow transferred or lost in bankruptcy. *Korman v. Iglesias*, No. 18-21028-CV, 2018 WL 4410226, at *4 (S.D. Fla. June 28, 2018), *report and recommendation adopted,* No. 18-21028-CV, 2018 WL 4409973 (S.D. Fla. Aug. 7, 2018), *aff'd,* 778 F. App'x 680 (11th Cir. 2019)(citations omitted). But Lil' Joe's prior statement, under oath in a sworn declaration, that Campbell and Ross were employees, "directly contradicts" its current position – that Campbell and Ross were not employees – and because "[b]oth conclusions cannot be true" Lil' Joe is estopped from taking this position. Id. (citation omitted). Also important, Lil' Joe's

inconsistent prior positions were made under oath, which suffices to apply estoppel. See Dkt. 32, ¶5.

To be sure, Court have specifically addressed the exact factual inconsistency at issue here and precluded a party from claiming an individual was both an employee and not an employee of the defendant. *Korman v. Iglesias*, No. 18-21028-CV, 2018 WL 4410226, at *4 (S.D. Fla. June 28, 2018), report and recommendation adopted, No. 18-21028-CV, 2018 WL 4409973 (S.D. Fla. Aug. 7, 2018), aff'd, 778 F. App'x 680 (11th Cir. 2019), citing *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 214 (1st Cir. 1987)("In *Allen*, the court prevented a party from claiming that he was both an employee and not an employee of the defendant."), citing *Allen v. Zurich Ins. Co*., 667 F.2d 1162, 1167 (4th Cir. 1982). Lil' Joe is judicially estopped from claiming that Campbell and Ross transferred their personal, unvested Section 203 rights in bankruptcy.

## B.       An immediate appeal would be improper

An "order adjudicating fewer than all the claims in a suit, or adjudicating the rights and liabilities of fewer than all the parties, is not a final judgment from which an appeal may be taken." *Lloyd Noland Found., Inc. v. Tenet Health Care Corp*., 483 F.3d 773, 777 (11th Cir. 2007), citing *Lex Tex Ltd. v. Unifi, Inc. (In re Yarn Processing Patent Validity Litig.),* 680 F.2d 1338, 1339 (11th Cir.1982) (per curiam). Under such circumstances, appellate jurisdiction lies only when the district court properly certifies as "final," under Rule 54(b), a judgment on fewer than all claims or parties. Id.

A district court "must follow a two-step analysis in determining whether a partial final judgment may properly be certified under Rule 54(b)." Id. It must first determine there to be a "judgment" and that it is "final." Id., citing *Curtiss–Wright Corp. v. Gen. Elec. Co*., 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980). That is, it must conclude that the "judgment" is "final"

in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action," and a "'judgment' in the sense that it is a "decision upon a cognizable claim for relief." Id. (citations omitted). Only after this is satisfied should the district court "determine that there is no "just reason for delay" in certifying it as final and immediately appealable." Id. (citation omitted). The district court must "exercise its discretion in certifying partial judgments in consideration of judicial administrative interests—including the historic federal policy against piecemeal appeals—and the equities involved." Id. at 778 (citations and internal quotations omitted).

Lil' Joe only gestures at these requirements. It cannot meet them.

The first requirement is a showing of a "final" judgment, which is one that "disposes entirely of a separable claim or dismisses a party entirely[.]" *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 779 (11th Cir. 2007)(citation omitted). A "partial or interlocutory adjudication of a claim cannot be certified merely because it is labeled a "partial summary judgment" even if the requisite "express determination" has "been made." *In re Se. Banking Corp.*, 69 F.3d 1539, 1547 (11th Cir. 1995); see also *Brandt v. Bassett (In re Southeast Banking Corp.)*, 69 F.3d 1539, 1547 (11th Cir.1995) ("A judgment properly may be certified under the terms of Rule 54(b) only if it possesses the requisite degree of finality. That is, the judgment must completely dispose of at least one substantive claim." (citation omitted)).

Lil' Joe cites no claim or party that has been addressed "entirely." Lil' Joe seeks to challenge the Court's bankruptcy-issue determination, but that conclusion did not entirely address Lil' Joe's claim that the Section 203 rights were not properly exercised. As the Court noted, Lil' Joe has remaining arguments, such as that 2 Live Crew were employees and the songs at issue were works-for-hire, which would impact the termination right. As no claim has been addressed

"entirely," the motion fails. *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.,* 483 F.3d 773, 781 (11th Cir. 2007) ("So long as that count remains unresolved, the first requirement for entry of partial judgment under Rule 54(b) is unsatisfied because there is no "final judgment" on any one "claim for relief."). This request should be denied.

There is also a just reason for delay in certifying this case for immediate appeal. The federal policy disfavoring piecemeal appeals allows for certification only when the "costs and risks of risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Vazquez-Klecha v. Bickerstaff*, 2023 WL 5321308, at *2 (11th Cir. Aug. 18, 2023) quoting *Peden v. Stephens*, 50 F.4th 972, 978 (11th Cir. 2022). Here, Defendants are eager to bring their claims to trial in the fall, as they have been waiting years to bring finality to this matter. Lil' Joe identifies no pressing need – other than its belief that it is right – for an early and separate judgment as to a portion of one of the claims at issue. Certification would be improper here.

## II.     Lil' Joe's recent filings should be stricken or a briefing schedule set

Defendants respectfully request that the Court grant this motion and strike Lil' Joe's recent filings or set a briefing schedule allowing Defendants 14 days from the date of the Court's ruling on this motion to file responses to Lil' Joe's two recent filings.

Dated: March 29, 2024                         Respectfully submitted,

By: */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
(admitted *pro hac vice*)
DONIGER / BURROUGHS
237 Water Street, First Floor
New York, New York 10038
(310) 590 – 1820
scott@donigerlawfirm.com

*-with-*

Joel B. Rothman, Esq.
SRIP LAW
21301 Powerline Road, Suite 100
Boca Raton, Florida 3343
(561) 404-4350
joel.rothman@sriplaw.com