## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

_____

| | |
|---|---|
| LIL' JOE RECORDS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )          CASE NO. 1:21-CV-23727-DPG |
| | ) |
| MARK ROSS; et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

### DEFENDANTS' PRE-TRIAL MEMORANDUM OF LAW

Per Local Rule 16.1(j), Defendants Raven Ross ("Ross"), Christopher Wong Won, Jr.,

Roderick Wong Won, Leterius Ray, Anissa Wong Won (collectively, "Wong Won Heirs") and

Luther Campbell ("Campbell") herewith submit their Pre-Trial Memorandum of Law.

### I.      QUESTIONS OF LAW

The question of law to be determined at trial is:

 Did Defendants 2 Live Crew's formal notice, sent under 17 U.S.C. § 203, terminate the

copyright transfer for the five albums at issue ("Subject Albums") and return those copyrights to

Defendants? The answer is an unequivocal "yes."

#### A.      The 1990 Agreement

Before 1990, the members of 2 Live Crew recorded the five Subject Albums and entered

into an oral agreement with Campbell's record label that transferred the copyrights for said

albums to Campbell's record label and authorized his label to release the albums. Campbell's

label then released the albums and distributed royalties per that agreement. 2 Live Crew and Campbell's record label then memorialized that agreement in writing and signed it in 1990 (the "1990 Agreement"). Notably, the 1990 Agreement is the only Agreement that provides for any transfer of rights in the Subject Albums to any record label. Plaintiff, Lil' Joe Records, Inc. ("Lil' Joe") cannot point to any other contract through which any other label obtained the copyright for the Subject Albums from 2 Live Crew.

### B.    The termination of the 1990 Agreement

Defendants, through counsel, served a Section 203 notice ("Notice") on Lil Joe and others that terminated the transfer set forth in the 1990 Agreement and formally returned the copyrights in the Subject Albums to 2 Live Crew. Section 203 states that "a copyright owner can terminate an exclusive license of copyrighted material 'at any time during a period of five years beginning at the end of thirty-five years from the date of the grant' of the license." *CENAPS Corp. v. Cmty. of Christ*, 371 F. Supp. 3d 1024, 1028 (M.D. Fla. 2019); citing 17 U.S.C. § 203(a)(3). This "provision gives the author of a work the right to terminate any copyright transfer or license still in effect after 35 years, provided she exercises that right after 35 and before 40 years have elapsed." *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1295 (11th Cir. 1999), citing *Walthal v. Rusk*, 172 F.3d 481, 484 (7th Cir. 1999). Crucially, the United States Supreme Court has noted that the Copyright Act "provides an **inalienable** termination right" for both authors and his or her statutory heirs." *Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 191 (D.S.C. 2019)(emphasis added), quoting *Stewart v. Abend*, 495 U.S. 207, 230, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990), citing 17 U.S.C. §§ 203, 304.

Here, the Notice was sent on November 4, 2020, over two years before the earliest date of effective termination (November 7, 2022) and less than 10 years from the last date of effective

termination (May 1, 2024). Furthermore, the grant at issue expressly covered the right of publication for the Subject Albums, and the Notice provided a date of effective termination for each of the Subject Albums over 35 years from the respective date of publication and within the 5-year window beginning on December 1, 2021. 17 U.S.C. § 203(a)(3). The Notice was thus effective as to each of the Subject Albums.

Section 203 states that termination "shall be effected by serving an advance notice in writing, signed by the number and proportion of owners of termination interests required under clauses (1) and (2) of this subsection, or by their duly authorized agents upon the grantee or the grantee's successor in title." 17 U.S.C. § 203(a)(4). "[A] grant executed by two or more authors of a joint work… may be [terminated] by a majority of the authors who executed it" 17 U.S.C. § 203(a)(1). And if, as in this case, any of the authors is deceased, the author's heirs may execute the termination instead. *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 32 (2d Cir. 2015), citing 17 U.S.C. § 203(a)(1), (2). The statute also requires that the notice be recorded with the Copyright Office before the effective date of termination. See 17 U.S.C § 203(a)(4)(A).

2 Live Crew met these requirements. The Notice was served in writing to all possible rights holders, including Lil Joe, signed by the three of the four original 2 Live Crew members and/or their heirs, and a copy of the Notice was recorded in the Copyright Office before the effective date of termination. The Notice thus met § 203's requirements and recovered the copyrights for the Subject Albums. 2 Live Crew has thus owned the copyrights for the Subject Albums since fall of 2022 and the Court should conclude as much at the end of these proceedings.

C.     **The challenges to the termination**

Lil Joe challenged the termination by claiming that (1) 2 Live Crew lost their Section 203 rights in bankruptcy; (2) that the 1990 Agreement is somehow invalid; and (3) that 2 Live Crew created the Subject Albums as works-for-hire. The Court disposed of the bankruptcy argument at the summary judgment stage. The remaining two arguments similarly lack merit.

1.      **The 1990 Agreement is the only agreement that could have transferred copyrights from 2 Live Crew to Campbell's (or any other) record label**

The 1990 Agreement is signed by all members of 2 Live Crew and by Campbell on behalf of his record label. The parties at all times performed under the 1990 Agreement, with Campbell's label releasing the Subject Albums (with copyright notices and other indicia of ownership) and paying royalties to 2 Live Crew's members.[1] And Lil Joe has had the 1990 Agreement in its records since the 1990s and never challenged or even questioned it until this litigation arose.

Lil Joe now challenges the 1990 Agreement because it was initially oral and only later reduced to writing. While it is generally true that copyright ownership transfers must be in writing, it is settled Eleventh Circuit law that this "writing" requirement "can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer." *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995), quoting *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1532–33 (11th Cir.1994). Such a later writing need not "be the Magna Carta a one-line pro forma statement will do." *Vergara Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 744098, at *3 (S.D. Fla.

---

[1] It appears that there was a dispute as to whether these royalties were paid in full that matured into litigation in 1990, which further establishes that the 1990 Agreement is valid and applicable. Indeed, suing to enforce the agreement is proof positive that it existed and was entered into by the parties.

Feb. 23, 2011), aff'd sub nom. *Hermosilla v. Coca-Cola Co.*, 446 F. App'x 201 (11th Cir. 2011);

see also *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1212 (10th Cir. 2009). And where, as here

"there is no dispute between transferor and transferee regarding the ownership of a copyright,

there is little reason to demand that a validating written instrument be drafted and signed

contemporaneously with the transferring event." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822,

830 (3d Cir. 2011).

The 1990 Agreement satisfies Section 204. It clearly demonstrates the parties' intent to

transfer their copyrights, which is further confirmed by the fact that the parties to the Agreement

performed under those terms at all relevant times and that the 1990 Agreement went

unchallenged for decades. It is only now being challenged by Lil Joe in an attempt to deprive 2

Live Crew of its termination rights.

Lil Joe's challenge is peculiar because the 1990 Agreement is the only agreement

whereby Campbell's record company (the assets of which Lil Joe later bought out of bankruptcy)

could have obtained copyrights for the Subject Albums. If the 1990 Agreement is invalid, then

Lil Joe has never owned any rights to any of the Subject Albums. While Lil Joe has cited the

existence of a 1991 Agreement between 2 Live Crew and Campbell's record label, that

Agreement on its face has a "Term" that began in 1991 and language that makes clear that it only

addresses albums to be created after its signing. At the time that 1991 agreement was signed, all

of the Subject Albums had already been created and released under the terms of the 1990

Agreement.[2]

---

[2] The 1991 agreement is only relevant, if at all, to show that 2 Live Crew were not "employees" of the record label, as discussed in full below. Each member signed as an individual, which would not have been the case had they been employees.

5

Moreover, when 2 Live Crew engaged in litigation in connection with the Subject Albums, they did so in the name of Campbell's record label, Luke Skyywalker Records, which further establishes both that the label owned the copyrights and that world, Lil Joe included, was on notice of the same. See, e.g., *Acuff-Rose Music, Inc. v. Campbel*l, 754 F. Supp. 1150, 1152 (M.D. Tenn. 1991)("On July 15, 1989, 2 Live Crew released its version of 'Oh, Pretty Woman' on record albums, tapes and compact discs, entitled 'As Clean As They Wanna Be'" then on June 18, 1990, Acuff–Rose sued 2 Live Crew and their record company, Luke Skyywalker Records, for copyright infringement.").

In sum, the 1990 Agreement was signed by the parties, never challenged, performed under, and later validly terminated.

### 2.    2 Live Crew did not create the Subject Albums as works-for-hire

The Subject Albums can only be works-for-hire if 2 Live Crew were employees of Campbell's record label at the time they recorded the Subject Albums **and** such creation was in the "scope" of their employment.[3] *Horror Inc. v. Miller*, 15 F.4th 232, 243 (2d Cir. 2021) (to be a work-for-hire the work must be "made by an employee within the scope of his employment"), citing 17 U.S.C. § 101; see *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 738 (1989). 2 Live Crew were not employees at the time they recorded and transferred the Subject Albums to Campbell's record label. And there is no evidence that even if they were that the albums were created within the "scope" of their employment.

The 1990 Agreement itself may well be the best evidence establishing that 2 Live Crew were not employees as it would be wholly unnecessary if the albums were works-for-hire such

---

[3] Lil Joe seemed to abandon the work-for-hire argument during oral arguments on the parties' summary judgment motions, but we address it here out of an abundance of caution.

that the record label would have owned them outright at the time of creation. *LaJoie v. Pavcon, Inc.*, 146 F. Supp. 2d 1240, 1248, n.5 (M.D. Fla. 2000); 17 U.S.C. § 201(b) (in "the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright"). That the 1990 Agreement was executed to transfer the copyrights is, in effect, an admission between the interested parties that 2 Live Crew owned the copyrights. And while the 1990 Agreement addresses certain rights to the works (which it would not do if the works were for-hire) it says nothing about "employment" or "work-for-hire." Almost equal in persuasion is the fact that both 2 Live Crew and Campbell on behalf of the record label all agree that 2 Live Crew were not employees.

Judicial estoppel also precludes this work-for-hire argument. This doctrine is "applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *United Kingdom v. United States*, 238 F.3d 1312, 1324 (11th Cir. 2001)(citations omitted). Here, Lil Joe has consistently maintained that Ross and Campbell lost their Section 203 rights, and perhaps other copyrights, through their individual bankruptcy proceedings. And Lil Joe has also argued that it entered into numerous other deals to obtain 2 Live Crew copyrights from its members. Both positions are inconsistent with the Subject Albums being "works for hire" since there would be no rights for Ross or Campbell to lose in bankruptcy, or for the members to sell, license, or transfer, if the record label owned all of the rights from the outset.

In connection with copyright ownership, Courts do not allow parties to take inconsistent factual positions. Now that the Court has rejected Lil Joe's claim that Campbell and Ross lost

their Section 203 rights in bankruptcy (which would have been impossible if they were employees because employees do not have Section 203 rights), Lil Joe may not take advantage of "the exigencies of the moment" to claim that Campbell and Ross are employees of the record label and thus lacked Section 203 rights. *Korman v. Iglesias*, No. 18-21028-CV, 2018 WL 4410226, at *4 (S.D. Fla. June 28, 2018), *report and recommendation adopted,* No. 18-21028-CV, 2018 WL 4409973 (S.D. Fla. Aug. 7, 2018), *aff'd,* 778 F. App'x 680 (11th Cir. 2019)(citations omitted). Courts have specifically addressed the exact factual inconsistency at issue here and precluded a party from claiming in the same action that an individual was both an employee and not an employee of the defendant. *Korman v. Iglesias*, No. 18-21028-CV, 2018 WL 4410226, at *4 (S.D. Fla. June 28, 2018), report and recommendation adopted, No. 18-21028-CV, 2018 WL 4409973 (S.D. Fla. Aug. 7, 2018), aff'd, 778 F. App'x 680 (11th Cir. 2019), citing *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.,* 834 F.2d 208, 214 (1st Cir. 1987)("In *Allen*, the court prevented a party from claiming that he was both an employee and not an employee of the defendant."), citing *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir. 1982).

Moreover, because Campbell owned the record label he was not an employee even though he was also a recording artist signed to the label. Courts regularly find that the owner of a company is not an employee for purposes of work-for-hire. This was confirmed in a recent case involving the *Jack Ryan* books. There, the court rejected the exact same argument Lil Joe makes here, finding that "Clancy [the author] 'was a co-owner of both entities.'" *Clancy v. Jack Ryan Enterprises, Ltd.*, No. CV ELH-17-3371, 2021 WL 488683, at *26 (D. Md. Feb. 10, 2021). "And, in cases where the hired party is also an owner or partner of the company asserting ownership, courts have declined to find a work made for hire because of the company's lack of control over the owner." Id.; see also *Woods v. Resnick*, 725 F. Supp. 2d 809, 824 (W.D. Wis.

8

2010)(company owner, who had "an inherent right to control the business," was not "under control of" the LLC, and therefore his work could not be considered to be made for hire.). Campbell, as a recording artist, was not an employee.

All other evidence similarly establishes that 2 Live Crew did not create the Subject Albums as works-for-hire: (a) 2 Live Crew entered into a separate publishing deal with Pac-Jam, that they each signed as individuals, which would have been impossible if they were employees because those rights would belong to Campbell's record label; (b) 2 Live Crew were not under the direction or control of the label; and (c) Lil Joe entered into numerous additional intellectual property agreements with 2 Live Crew's members, none of which would have been necessary if the label and not the member owned the copyrights.

### 3. Lil Joe lacks standing to challenge the 1990 Agreement or claim that the Subject Albums were works-for-hire

Lil Joe, decades after the 1990 Agreement was signed, now challenges the existence or effect of that agreement. But it lacks standing to do so. Under the Copyright Act, where there is "no dispute between the copyright owner and the transferee," it would be "unusual and unwarranted to permit a third-party" to challenge the transfer. See *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (addressing infringement), citing *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2nd Cir.1982). Thus, in cases where the parties to an agreement agree that it effected a transfer, a challenger may not challenge a transfer by invoking section 204(a). See Id., citing, *Great S. Homes, Inc. v. Johnson & Thompson Realtors*, 797 F. Supp. 609, 611 (M.D. Tenn. 1992). Because there is no dispute between 2 Live Crew and Campbell's record label that the 1990 Agreement confirmed the assignment of the Subject Album copyrights, Lil Joe cannot challenge the validity of that transfer

because it was a third party uninvolved in the agreement. Indeed, Lil Joe as a company did not even exist at that time and its owner was not involved in the 1990 Agreement, though it possessed and acted in compliance with said agreement since the 1990s.

Lil Joe also lacks standing to claim that 2 Live Crew were employees of Campbell's record label. Both 2 Live Crew and Campbell's record label have unequivocally stated that 2 Live Crew were not employees for purposes of creating the Subject Albums. As mentioned above, it "would be unusual and unwarranted to permit a third-party infringer to" challenge copyright ownership to avoid liability. *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)(citation omitted). And while *Imperial Residential Design* did not specifically address work-for-hire arguments, the "reasoning of *Imperial Residential Design* is nonetheless applicable [because the work-for-hire doctrine] is designed to establish ownership of a work as between a commissioning party or employer on the one hand and the commissioned party or employee on the other." *Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1157 (9th Cir. 2010).

That is particularly true here because Campbell speaks both as a recording artist and the owner of the record label, a business entity. Such an entity "cannot literally discuss anything. ... Only [the corporation's principal] could have had discussions on behalf of [the corporation], and [the corporation's principal] consistently testified that he and [the corporation] intended that he be the owner of the copyrights." *Jules Jordan*, 617 F.3d at 1156 (citations omitted). So true here. Campbell testified both as an artist and the label head that the label owned the copyrights.

Given the above, it would thus be "unusual and unwarranted to permit" Lil Joe decades after the fact to now claim that 2 Live Crew were employees in an attempt to defeat 2 Live Crew's termination right. Id.

4.      **Lil Joe waited too long and is otherwise estopped from challenging the 1990 Agreement's copyright transfer**

The 1990 Agreement was signed in 1990. Campbell's record label released the Subject Albums before 1990 with copyright notices and indicia of ownership. The Subject Albums were also registered in his label's name. No member of 2 Live Crew or Lil Joe or Lil Joe's sole owner ever challenged the 1990 Agreement or Campbell's record label's ownership of the copyrights for the albums at any time until this litigation. These challenges come too late.

Indeed, had 2 Live Crew or Lil Joe or its owner or anyone in the world had a reason to challenge the label's copyright ownership in 1990, they were required to bring copyright ownership claims in the 1990s. An "express assertion of sole authorship or ownership" like the Subject Albums' releases here "trigger[] the accrual of an ownership claim." *Finch v. EMI Consortium Songs, Inc*., No. 23-10554, 2023 WL 4743753, at *1 (11th Cir. July 25, 2023), *cert. denied sub nom. Finch v. Casey*, 144 S. Ct. 560, 217 L. Ed. 2d 298 (2024). Nobody filed a claim challenging Campbell's labels ownership claims within three years of those release dates. It is now too late.

Notably, an "ownership claim accrues when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his ownership rights[.]" *Webster v. Dean Guitars*, 955 F.3d 1270, 1276 (11th Cir. 2020), citing *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990) (stating that federal claims generally "accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action"); *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1236 (11th Cir. 2002) (Birch, J., concurring) (noting that a copyright infringement claim's "limitations period may be triggered when a plaintiff knows or, in the exercise of reasonable diligence, should have known about an infringement"). If any of the 2

Live Crew members (or anyone else) believed at any time that 2 Live Crew had not transferred the Subject Albums' copyrights to Campbell's record company, then said issue with the record company's claim of ownership would have had to have been addressed within three years of the album release dates. No complaints were filed in that period or ever. No party can now challenge Campbell's record company's ownership via the 1990 Agreement.

Moreover, the 1990 Agreement is the only agreement in the record that could possibly cover the copyrights for the Subject Albums. If it did not transfer the copyrights, as Lil Joe now claims, then the record label and Lil Joe never had any rights in the albums. If the 1990 Agreement did not transfer the Subject Albums' copyrights, then the individual members owned the rights all along. But Lil Joe enjoyed the benefits of 2 Live Crew transferring the copyrights for the Subject Albums to Campbell's record label via the 1990 Agreement.

When Lil Joe bought all of Campbell's record label's copyrights out of bankruptcy, it began exploiting those copyrights by distributing and collecting monies due to the Subject Albums' owner. In doing so it ratified the 1990 Agreement by receiving benefits thereunder and is estopped from now challenging its enforceability. And it is settled that party receiving the benefit of a contract cannot seek to escape its contractual obligations. *Bhusan v. Loma Alta Towers Owner's Ass'n, Inc.*, 148 F. App'x 882, 885–86 (11th Cir. 2005) ("A party who accepts the benefits of a contract cannot avoid its burdens."); *Cassidy & Assocs. of Winter Haven, Inc. v. Bright House Networks, LLC*, No. 8:10-CV-488-T-26TGW, 2010 WL 11507560, at *5 (M.D. Fla. Nov. 30, 2010) (reaffirming that parties cannot avoid their contractual obligations while enjoying the benefits). Here, Lil Joe benefited from the 1990 Agreement for decades and cannot now disavow same.

Surely, "[r]atification is conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or voidable." *Citron v. Wachovia Mortg. Corp.*, 922 F. Supp. 2d 1309, 1321 (M.D. Fla. 2013), citing *Still v. Polecat Indus., Inc.,* 683 So.2d 634 (Fla.Dist.Ct.App.1996). Here, Lil Joe was aware of the 1990 Agreement when it purchased Campbell's label's copyrights and exploited those copyrights per the 1990 Agreement. At the very least it has ratified or otherwise waived the ability to now claim the 1990 Agreement is invalid.

"Copyright estoppel" also applies here because (1) Lil Joe knew the facts of Campbell's label's copyright ownership, (2) Lil Joe intended its conduct to be acted upon or the acted such that Defendants have a right to believe it was so intended, (3) Defendants were ignorant of Lil Joe's disputation to the 1990 Agreement, and (4) Defendants relied on the Lil Joe's conduct to their detriment. *HGI Assocs., Inc. v. Wetmore Printing Co*., 427 F.3d 867, 875 (11th Cir. 2005)(citations omitted). Notably, a "copyright owner can be estopped not only by words and actions but also by silence and inaction." Id. (citations omitted). Lil Joe operated under the 1990 Agreement for decades and now claims it to be invalid. Estoppel precludes any argument that Campbell's label did not obtain the Subject Albums' copyrights through the 1990 Agreement.

**D.    Defendant's declaratory relief claim should be adjudicated in their favor**

As set forth above, 2 Live Crew has established that they created the Subject Albums, transferred the Subject Album's copyrights to Campbell's record label, and, 35 years or so later, terminated that transfer, which resulted in those copyrights returning to 2 Live Crew.

Dated: September 25, 2024

Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com

SRIPLAW, P.A.
21301 Powerline Road
Suite 100
Boca Raton, FL 33434
561.404.4350 - Telephone

and

SCOTT ALAN BURROUGHS
(admitted *pro hac vice*)
DONIGER / BURROUGHS
237 Water Street, First Floor
New York, New York 10038
(301) 590-1820
scott@donigerlawfirm.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 25, 2024, a true and authentic copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:     */s/ Joel Rothman*_____

Joel Rothman