## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

_____

LIL' JOE RECORDS, INC.,  )

                  )

          Plaintiff,  )

                  )

         v.  )     CASE NO. 1:21-CV-23727-DPG

                  )

MARK ROSS; et al.,  )

                  )

          Defendants.  )

_____  )

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 50, 59 & 60 MOTION

## <u>TABLE OF CONTENTS</u>

A.     Applicable law...……………………………………………………….….…..5

B.     There is no newly discovered evidence…………………..………………………….6

C.     There are no errors of law or fact……………………………………………….6

1.     The jury properly concluded that the 1990 agreement transferred the relevant

copyrights……………….…………………………………..………………….6

D.     Defense counsel did not proffer improper statements or argument during the trial or at

closing……………………………………………………………………..10

1.     Lil Joe fails to establish any timely objects to these allegedly improper arguments or

questions……………..……………………………………………………..11

2.     Defense counsel's statements and questions were rule

complaint………………………………………………..…………..12

E.     The instruction regarding the transfer was in accord with

Eleventh Circuit precedent………………………………………………21

F.     The motion should be denied……………………………………………23

## <u>TABLE OF AUTHORITIES</u>

Case(s):                                                                                           Page(s):

*Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*,
    37 F.3d 1460 (11th Cir. 1994)……………………………………………………18, 19

*Allstate Ins. Co. v. James*,
    845 F.2d 315 (11th Cir. 1988) ......................................................................... 17

*Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*,
    29 F.3d 1529 (11th Cir.1994) ....................................................................... 7, 22

*BankAtlantic v. Blythe Eastman Paine Webber, Inc.*,
    955 F.2d 1467 (11th Cir. 1992) ....................................................................... 17

*Brough v. Imperial Sterling Ltd.*,
    297 F.3d 1172 (11th Cir. 2002) ....................................................................... 15

*Buck v. Davis*,
    137 S. Ct. 759 (2017) ......................................................................................... 5

*Chaney v. City of Orlando*,
    483 F.3d 1221 (11th Cir.2007) .......................................................................... 5

*Clapper v. American Realty Investors, Inc.*,
    95 F.4th 309 (5th Cir. 2024) ........................................................................... 19

*Columbia Data Prods., Inc. v. Symantec Corp.*,
    2008 WL 516748 (M.D. Fla. Feb. 22, 2008) ................................................. 10

*Cooley v. Penguin Grp. (USA) Inc.*,
    31 F. Supp. 3d 599 (S.D.N.Y. 2014) ................................................................ 9

*Cooper v. Firestone Tire & Rubber Co.*,
    945 F.2d 1103 (9th Cir.1991) .......................................................................... 11

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
    747 F. App'x 3 (2d Cir. 2018) ........................................................................... 9

*Davis v. Blige*,
    505 F.3d 90 (2d Cir. 2007) .............................................................................. 21

*Dellacasa, LLC v. John Moriarty & Assocs. of Fla., Inc.*,

2008 WL 299024 (S.D. Fla. Feb. 1, 2008) ................................................................. 8

*Doe v. Drummond Co.*,

    782 F.3d 576 (11th Cir. 2015) ................................................................................. 6

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,

    697 F.2d 27 (2nd Cir.1982) ................................................................................... 23

*Edwards v. Sears, Roebuck and Company*,

    512 F.2d 276 (5th Cir. 1975) ................................................................................. 18

*Galbert v. W. Caribbean Airways*,

    715 F.3d 1290 (11th Cir. 2013) .............................................................................. 6

*Goldsmith v. Bagby Elevator Co.*,

    --- F.3d ----, 2008 WL 150585 (11th Cir. Jan.17, 2008) ..................................... 11

*Gonzalez v. Crosby*,

    545 U.S. 524 (2005) ............................................................................................... 6

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*,

    70 F.3d 96 (11th Cir. 1995) ........................................................................ 6, 21-23

*In re Kellogg*,

    197 F.3d 1116 (11th Cir.1999) ............................................................................... 5

*Michael Linet, Inc. v. Village of Wellington, Fla.*,

    408 F.3d 757 (11th Cir.2005) ................................................................................. 5

*Mincey v. Head*,

    206 F.3d 1106 (11th Cir. 2000) ............................................................................. 5

*Neal v. Toyota Motor Corp*,

    823 F. Supp. 939 (N.D. Ga. 1993) ...................................................................... 17

*Oxford Furniture v. Drexel Heritage Furnishings*,

    984 F.2d 1118 (11th Cir.1993) ....................................................................... 12, 14

*Puerto Rico Aqueduct & Sewer Auth. v. Constructora Lluch, Inc.*,

    169 F.3d 68 (1st Cir.1999) ................................................................................... 11

*Radio Television Espanola, S.A. v. New World Entertainment, Ltd.*,

    183 F.3d 922 (9th Cir.1999) ................................................................................... 8

*Rosa v. City of Fort Myers*,

    2008 WL 398975 (M.D.Fla. Feb.12, 2008) ........................................................ 10

*Ruiz v. Wing*,

    991 F.3d 1130 (11th Cir. 2021) ........................................................................... 12-14

*Scharff v. Wyeth*,

    2012 WL 3149248 (M.D. Ala. 2012) ...................................................................... 5

*SCO Grp., Inc. v. Novell, Inc.*,

    578 F.3d 1201 (10th Cir. 2009) ............................................................................... 8

*Twachtman v. Connelly*,

    106 F.2d 501 (6th Cir. 1939) ................................................................................. 19

*Spinelli v. Nat'l Football League*,

    903 F.3d 185 (2d Cir. 2018) .................................................................................. 21

*United States v. Vasquez*,

    225 F. App'x 831 (11th Cir. 2007) ......................................................................... 12

*Vineyard v. County of Murray*, Ga.,

    990 F.2d 1207 (11th Cir.) ...................................................................................... 11

*Woods v. Burlington N. R.R. Co.*,

    768 F.2d 1287 (11th Cir.1985) .............................................................................. 12

Statutes:

17 U.S.C. § 204(a) ................................................................................................... 8, 22

Rules:

Fed.R.Civ.P. 50(a)(1) .................................................................................................. 5

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Defendants Raven Ross, Luther Campbell, Anissa Wong Won, Christopher Wong Won, Jr., Roderick Wong Won, and Leterius Ray ("Defendants") hereby oppose Plaintiff, Lil' Joe Records, Inc.'s ("Lil Joe") Rule 50, 59 & 60 Motion. It is meritless and should be denied.

### A. Applicable law

Lil Joe's motion fails to specifically address any of the relevant standards. It cannot do so. "The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion [under 50(a)]." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir.2007) (alteration in original) (citation omitted). Thus, the question before a district court confronting a renewed Rule 50(b) motion is whether the evidence is "legally sufficient ... to find for the party on that issue." Fed.R.Civ.P. 50(a)(1). Lil Joe's Rule 50 motions have already been rejected.

"The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir.1999). A "Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir.2005). "A party moving the court to alter or amend its judgment pursuant to Rule 59(e) faces an extremely heavy burden." *Scharff v. Wyeth*, 2012 WL 3149248 at *1 (M.D. Ala. 2012). Moreover, "Rule 59(e) was not constructed 'to give the moving party another bite at the apple[.]" *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000).

"[R]elief under Rule 60(b)(6) is available only in "extraordinary circumstances." *Buck v.*

5

*Davis*, 137 S. Ct. 759, 777–78 (2017), quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005))".
To warrant relief under Rule 60(b)(6), not only must the Plaintiff show "sufficiently
extraordinary" circumstances, but also "that absent such relief, an 'extreme' and 'unexpected'
hardship will result." *Doe v. Drummond Co.*, 782 F.3d 576, 612 (11th Cir. 2015), quoting
*Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1294–95 (11th Cir. 2013) (internal quotation
marks omitted).

Lil Joe fails to meet these standards.

**B.      There is no newly discovered evidence**

Plaintiff cites no new evidence as to the following issues: (i) that 2 Live Crew were
employees of Luther Campbell's label and created the five subject albums at issue within the
scope of that employment, resulting in the albums being owned by Campbell's label as "works
for hire"; and (ii) that 2 Live Crew's termination notice was invalid because the 1990 agreement
did not transfer any copyrights. The motion thus fails on this front.

**C.      There are no errors of law or fact**

Lil Joe also fails to show any material issue error pertaining to law or fact.

**1.      The jury properly concluded that the 1990 agreement transferred the
relevant copyrights**

There was ample evidence supporting Defendants' position. The facts and inferences
evinced at trial were sufficient for a reasonable juror to conclude that the 1990 Agreement
identified in 2 Live Crew's Section 203 termination notice was the relevant agreement and thus
terminated.

As established at trial, the 1990 Agreement memorialized a prior oral transfer covering
the albums created between 1986 and 1990 (i.e. the Subject Albums). See *Imperial Residential*

*Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995), quoting *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1532–33 (11th Cir.1994). The undisputed evidence shows that the 1990 Agreement was signed by all members of 2 Live Crew and by Campbell on behalf of his record label, that the parties at all times performed under the 1990 Agreement including by Campbell's label releasing the Subject Albums and paying royalties to 2 Live Crew's members, and that the agreement includes language expressly confirming the label's ownership of the sound recordings and other copyrights in the albums covered. **D50**.

Lil Joe argued at trial that the 1990 Agreement did not transfer the copyrights in the Subject Albums because it is a "phony" agreement fabricated by some or all of the members of 2 Live Crew, but its case in chief failed entirely to cast doubt on the agreement's validity or relevancy. After. Weinberger told the jury that he believes this agreement was somehow a phony, he was impeached by his own sworn affidavit that attestedto the validity of the 1990 Agreement and confirming that his company relied upon it to receive its rights to the Subject Albums. **Ex. D146**. And Weinberger confirmed not only that he was not involved with 2 Live Crew between 1986 and 1990, and thus could not have any personal knowledge of what agreement the members entered into at the time the Subject Albums were recorded, but also that Lil Joe continuously held a copy of the 1990 Agreement in its records since no later than 2002, filed and labeled it as the first 2 Live Crew Recording Agreement, and never once contested the validity of the Agreement until after Lil Joe filed this lawsuit. **Exs. D52, D53**. Indeed, even Lil Joe's own witness, Moskowitz, admitted that he signed an affidavit confirming the veracity of the 1990 Agreement and upon reviewing the 1990 Agreement at trial testified under oath that he did not believe the agreement was a "phony." Lil Joe's argument that the 1990 Agreement was invalid or irrelevant was rightly rejected by the jury.

Lil Joe also challenges the 1990 Agreement's transfer of the copyrights in the Subject Albums, arguing that it lacks specific language relating to the transfer. This argument fails. It is axiomatic in effecting a written copyright transfer "[n]o magic words must be included in a document to satisfy § 204(a). Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." *Radio Television Espanola, S.A. v. New World Entertainment, Ltd.*, 183 F.3d 922, 927 (9th Cir.1999), citing 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 10.03[A][2] at 10-37); see also, *Dellacasa, LLC v. John Moriarty & Assocs. of Fla., Inc.*, No. 07-21659-CIV, 2008 WL 299024, at \*14–16 (S.D. Fla. Feb. 1, 2008). As such, the writing does not "have to be the Magna Carta; a one-line pro forma statement will do." Id. (citations omitted); see also *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1212 (10th Cir. 2009) ("Section 204(a), by its terms, imposes only the requirement that a copyright transfer be in writing and signed by the parties from whom the copyright is transferred; it does not on its face impose any heightened burden of clarity or particularity."). Lil Joe's attempts to argue over what specific language appears in the 1990 agreement are thus baseless.

And the 1990 Agreement plainly does contain sufficient language of transfer. Specifically, in paragraph 2(d) the agreements state that ownership the copyrights for the master recordings and performances embodied thereof are transferred to Skyywalker Records and that the label will own all such rights. **Ex. D50, ¶¶2(d).** Indeed, Lil Joe acknowledges this language but claims that the work cannot be transferred upon its creation. This is absurd. This writing confirmed the parties' prior oral agreement, which was that the rights would be transferred to the label, the label would release the albums, and the label would collect and disburse the revenues. And this is the agreement that the parties followed and then confirmed in writing.  Lil Joe cites no authority establishing that oral agreements cannot be confirmed in writing or that copyright

transfers cannot be affected upon a work's creation. To the contrary, courts regularly acknowledge agreements providing for exactly such transfers. See *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, 747 F. App'x 3, 5–6 (2d Cir. 2018)(acknowledging written copyright transfer from musical artist to record label that assigned rights in the work "from the time of its creation."); see also *Cooley v. Penguin Grp. (USA) Inc.*, 31 F. Supp. 3d 599, 602–03 (S.D.N.Y. 2014), as corrected (July 14, 2014)(acknowledging a written transfer that assigned company all of artists' copyrights in the work "upon creation"). The jury correctly concluded that the 1990 Agreement included language assigning ownership of the copyrights in the Subject Album's Sound Recordings to Skyywalker Records, and Lil Joe cannot prove that the clear weight of the evidence contradicts the jury's well-reasoned verdict. The motion fails.

Lil Joe similarly failed to adduce evidence that the 1991 Agreement had anything to do with the Subject Albums. The undisputed facts at trial showed that 2 Live Crew recorded and released each of the Subject Albums before 1991, that the term of the 1991 Agreement only began in 1991, and that there is nothing in the 1991 Agreement that discusses the Subject Albums or any time period in which they were recorded. Indeed, Weinberger conceded that he was only "assuming" that the 1991 Agreement covered the Subject Albums and that it could instead apply to, as Defendants assert, other 2 Live Crew albums recorded and released after the Subject Albums such as *Banned in the USA* and *Sports Weekend*.

Furthermore, the alleged drafter of the 1991 Agreements, Allen Jacobi, confirmed that each of the 1991 Agreements contained provisions confirming that none of the songs or albums covered by these agreements had ever been reduced to records and distributed, but it undisputed that all of the Subject Albums were released as records prior to 1991. **Ex. P1, P2, P3, D57, D57A, D57B**. Jacobi further conceded that each of the 1991 Agreements contained a provision

specifically stating that the agreement was not effective unless signed by all parties, but none of the 1991 Agreements are signed by all the members of 2 Live Crew. And the members signed materially different versions of the 1991 Agreements. There is thus no evidence that the 1991 Agreements transferred any rights in the Subject Albums to Campbell's label.

The evidence thus shows that the 1990 Agreement was validly signed by all parties, applied to the time periods when the Subject Albums were released and recorded, was never challenged until this lawsuit, and was performed under by all parties. In contrast, the 1991 Agreement was signed after Campbell's label released the Subject Albums, makes no mention of said albums or the years in which they were produced, and could not transfer the copyrights in the Subject Albums regardless after the 1990 Agreement already did so. Because the evidence is sufficient for a reasonable jury to conclude that the 1990 Agreement was valid and related to the albums at issue, the motion fails.

**D.      Defense counsel did not proffer improper statements or argument during the trial or at closing**

Lil Joe baselessly argues that allegedly improper and inflammatory arguments and questions proffered by Defendants' counsel are grounds for a new trial. In truth, defense counsel properly presented its closing arguments and examined Lil Joe's witnesses about the very issues Lil Joe itself raised during its case-in-chief. Lil Joe cannot carry its heavy burden of providing that any such remarks or questions warrant disposing of the jury's verdict and ordering a new trial.

To justify a new trial for allegedly inflammatory arguments by counsel, "the challenged argument must be plainly unwarranted and clearly injurious." *Columbia Data Prods., Inc. v. Symantec Corp.*, 2008 WL 516748, at *3 (M.D. Fla. 2008), citing *Rosa v. City of Fort Myers*,

No. 2:05-cv-481, 2008 WL 398975, at *3 (M.D.Fla. Feb.12, 2008), quoting *Goldsmith v. Bagby Elevator Co.*, No. 06-14440, --- F.3d ----, 2008 WL 150585, at *16 (11th Cir. Jan.17, 2008)). And even where the court concludes that counsel engaged in some form of misconduct, a new trial is only warranted where "the conduct was such as to impair gravely the calm and dispassionate consideration of the case by the jury." Id. quoting id. (internal quotation marks and remaining citations omitted). *Vineyard v. County of Murray*, Ga., 990 F.2d 1207, 1213 (11th Cir.), cert. denied, 510 U.S. 1024, 114 S.Ct. 636, 126 L.Ed.2d 594 (1993).

Courts make such a finding only in extreme cases after weighing "the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself." *Puerto Rico Aqueduct & Sewer Auth. v. Constructora Lluch, Inc.*, 169 F.3d 68, 82 (1st Cir.1999); *see also Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir.1991) (declining to find reversible error where "the alleged misconduct occurred only in the argument phase of the trial ... the remarks were isolated rather than persistent, ... most of counsel's comments were not objected to at trial and appellants did not move for a mistrial at the end of the argument"). The circumstances here do not justify such an extreme remedy.

1.      **Lil Joe failed to timely object to these allegedly improper arguments or questions**

Crucially, Lil Joe failed to object at trial to most of the challenged statements, and otherwise fails to identify such objections in its motion, as is required. Lil Joe cannot carry the heavy burden applicable to its challenges. It is well established that "a timely objection is necessary to bring to the district court's attention errors in counsel's arguments," including

allegedly "prejudicial and improper statements" made in closing. *Oxford Furniture v. Drexel Heritage Furnishings*, 984 F.2d 1118, 1128 (11th Cir.1993), see also *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021)("A party must raise an objection to errors in the opposing party's argument"). This is true even where the court determines the argument was inflammatory, prejudicial and improper. *Woods v. Burlington N. R.R. Co.*, 768 F.2d 1287, 1292 (11th Cir.1985), *rev'd on other grounds*, 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987). Without a timely objection, the court reviews allegedly improper arguments "for plain error 'but a finding of plain error 'is seldom justified in reviewing argument of counsel in a civil case.'" *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021), quoting *Oxford Furniture*, 984 F.2d at 1128. This same standard applies to allegedly improper questioning of witnesses by counsel. See *United States v. Vasquez*, 225 F. App'x 831, 833 (11th Cir. 2007).

While Lil Joe points to a number of allegedly "objectionable" statements made in Defense counsel's closing, it fails to identify where, when, or how its counsel objected to each of the statements. Likewise, Lil Joe does not and cannot identify when or how it objected to the questioning of its witnesses on the topics of the missing Schedule A and non-existent audit documents as improper or erroneous. It cannot as these were important issues addressed at trial. Because Lil Joe cannot establish that raised proper and timely objections to the statements and questions of Defense counsel, can only raise the issue now under the strict standard of clear error. None of counsel's statements were clearly erroneous, and Lil Joe's motion must be denied.

**2.      Defense counsel's statements and questions were rule-compliant**

Even if proper objections were made, Lil Joe does not and cannot establish that any of defense counsel's statements substantially impaired its rights such that they would justify a new trial.

This is particularly true given Lil Joe's counsel's propensity for misstating the facts and law. During closing, for example, Lil Joe's counsel argued that the 2 Live Crew's [1] "employment tax returns" were in the record when not only were they not introduced at trial but were never produced in discovery and do not exist. Lil Joe's counsel later argued that Weinberger claimed never to have heard of attorney Milton Rothman when he had testified to the *opposite*. DE 278, Trial. Tr. Vol. 5, pg. 54, lns. 6-9. These are two representative, material misstatements of the evidence by Lil Joe's counsel. Those cited by Lil Joe as grounds for a new trial are insufficient.

When reviewing counsel's statements for impropriety, the court considers ""the entire argument, the context of the remarks, the objection raised, and the curative instruction." *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021). Generally, courts are "reluctant to set aside a jury verdict because of an argument made by counsel during closing arguments." *Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1214 (11th Cir. 1993). None of the arguments or statements of counsel, regarding in their proper context, justify departure from this well reasoned reluctance.

First, Lil Joe complains of statements made by Defendants' counsel, Scott Burroughs, during closing arguments that it believes inflamed the jury's passions but none of the statements approached the requisite level of impropriety to justify a new trial and indeed were justified in context. And the court gave curative instructions noting that the jury should "rely on [their] own recollection of what the evidence was." DE 278, Trial Tr. Vol. 5, pg. 57, 17-19.

A new trial is not justified simply because counsel makes statements with some emotional or prejudicial effect or because counsel disagrees with characterizations of their client

---

[1] Lil Joe's counsel: "You have also seen, and it's in evidence, the employment tax returns. And you will see them. They are all in evidence. All of the -- the returns that were filed with the IRS says that the members of 2 Live Crew are employees. MR. BURROUGHS: Objection. Objection, Your Honor. He is arguing evidence that was not on the record. There were no employee tax returns." DE 278, Trial Tr. Vol. 5, pg. 50, lns. 3-9.

or the evidence. In *Oxford Furniture*, the court denied a motion for a new trial over "statements for which there was no supporting evidence, outright misstatements of the evidence, expressions of counsel's personal opinions, comments on counsel's own involvement with Oxford and Oxford's witnesses, appeals to local prejudice against out-of-state corporations," affirming the district court's conclusion that no new trial was warranted where such commentary "certainly [was] not the most inflammatory argument I ever heard by any means. It is nowhere close. I think it was curable." *Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1129 (11th Cir. 1993). And in *Ruiz v. Wing* the court found that opposing counsel's statements were not sufficiently improper even where they concerned defendant's usage of crack cocaine, appealed to negative media coverage about him, and characterized the police officers who apprehended him as "heroes" where much of the underlying information was already public or pertained to issues the defendant testified to. See 991 F.3d 1130, 1141 (11th Cir. 2021).

Here, Lil Joe argues that defense counsel used supposedly inflammatory language such as describing the case as "a tale of deceit and dishonesty," and commenting that Weinberger "infected" 2 Live Crew got a good deal on and making lots of money from acquiring the Subject Album's copyrights in Bankruptcy. (Brief, pg. 15.) This statement was accurate and reflected the evidence. Weinberger repeatedly testified to his acquisition of the copyrights out of bankruptcy and making millions of dollars exploiting them, and even bragged about getting the 2 Live Crew copyrights for cheap. Defense counsel's statements were thus far from sufficiently inflammatory to substantially affect Lil Joe's rights and were not erroneous but supported by the evidence. This motion must be denied.

Even if the limited discussion on how much Lil Joe spent and made on the copyrights

were found to be improper, *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1179 (11th Cir. 2002) makes clear that a court's evidentiary ruling on statements like these regarding a party's financial status will only be overturned when the movant establishes they seriously "affect[ed] the fairness, integrity, or public reputation of the proceeding." *Id.* Here, Lil Joe fails to establish how these few comments made in closing seriously compromised the fairness of these proceedings beyond bare conjecture that the jury afforded these statements greater weight than the five days worth of evidence they reviewed. Lil Joe's motion fails.

And whether these statements "were engineered to impassion the jury" made no difference given that Lil' Joe was given the opportunity to rebut them during closing, and the fact that the jury was presented with five days of testimony and evidence to reach their decision. Claiming that the jury ignored the evidence and ruled for the Defendants out of pity (Brief, pg. 16) is not only insulting to the jury, it accords Burroughs' closing argument more weight than it deserves.

Neither can Lil Joe justify a new trial by pointing to Burroughs' questioning Lil Joe on the absence of documents supporting its claims regarding the alleged IRS Audit and purported Schedule A. To be sure, Lil Joe made the substance of these documents pivotal to its case and yet failed to produce any documents supporting its claims, something any reasonable attorney would question Lil Joe on. That Lil Joe conjectures, without a shred of evidence, that its failure to adduce any documents from this audit or the purported schedule A results from some scheme by Luther Campbell does not suddenly immunize it from having to answer any questions about its lack of documentary evidence for the core of its case.

And to be sure, counsel's questions on this matter were ordinary and proper. Defense counsel simply asked questions examining  Lil Joe's claims about the existence and substance of

Schedule A and the audit including "Did you ever ask Mr. Rothman or Mr. Levenson or any of the other label attorneys for that missing Schedule A?" (DE 276 at 110); "In fact, you have never had a copy of the Schedule A, this missing Schedule A in your records. Isn't that correct?" (DE 276 at 111); "Did you talk to anyone or ask anyone for a copy of the Schedule A before 2 Live Crew tried to recover their copyrights?" (DE 276 at 113); "Did you take any other steps to locate the Schedule A before 2 Live Crew attempted to recover the copyrights?" (DE 276 at 114); "I am confirming that between 1995, when you obtained all of 2 Live Crew's copyrights in this bankruptcy, and 2 Live Crew in 2020 seeking to recover their copyrights, you didn't take a single action to obtain a copy of this Schedule A, this integral document, according to your position?" (DE 276 at 114-115), all in a span of about five minutes. Lil Joe made just two objections to this questioning that it now classifies as "improper grilling" and "patently improper and inexcusable." (Brief, pg. 20). One of those objections was simply that Burroughs seemed to be speaking over Weinberger. (DE 276 at 113). Such ordinary questioning of a witness does not and cannot justify a new trial.

Lil Joe itself made the audit and the substance of Schedule A issues at trial, testified as to both, and now cries foul that Defense counsel took the opportunity to cross examine its witnesses on the subject. This is not improper conduct amounting to clear error by Defense counsel, and the motion must be denied.

There was also ample evidence about Weinberger's personal and professional relationship with 2 Live Crew's members and Weinberger's involvement in the bankruptcy filings and resolution. Trial Tr. Vol 4, pg. 61, ln. 20 – pg. 70, ln. 13. And the jury could draw inferences as to each of these issues given the timing of Weinberger's arrival at the label, his legal and oversight roles at the label, the label's collapse, and Weinberger's eventual ownership

of all of the label's rights and property.

Finally, Lil Joe's cited authority is readily distinguishable or else favor Defendants.

In *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, the court denied a new trial motion, finding that allegedly improper remarks depicting a witness in a negative light or invoking his revenues related to the case's subject matter were not sufficient because they arose from the record and spoke to the witness's "bias or interest in the outcome of the case." 955 F.2d 1467, 1474–75 (11th Cir. 1992). But statements regarding Joe Weinberger's involvement with the bankruptcy and his acquisition of copyrights were drawn from testimony and evidence as to these topics in the record, and it was undisputed that Weinberger realized millions in profits from the Subject Albums and drove his desire to block 2 Live Crew's termination.

In *Allstate Ins. Co. v. James*, the remarks in question went far beyond engendering sympathy toward one party or slighting another because counsel there "in effect, identified the jurors with the group of persons who might be adversely affected by a decision for the James, implying that the jurors had a financial stake in the outcome of the trial." 845 F.2d 315, 319 (11th Cir. 1988). Lil Joe does not and cannot claim that Defendants ever implied to the jury that they had any personal stake in the outcome of the trial, and *Allstate* is this inapplicable.

Similarly, the improper comments in *Neal v. Toyota Motor Corp.*, demonstrate that none of Defense counsel's statements are sufficient to justify a new trial.  There, plaintiff's counsel's "improperly attempted to incite the jury into a xenophobic rage and switch the burden of proof from the Plaintiffs to Defendant" and even when "the Court sustained Defendant's proper objection" to these statements, counsel "continued to argue with the Court" to the point that he was directly reprimanded to advised of his improper conduct. 823 F. Supp. 939, 943 (N.D. Ga. 1993). Defense counsel made no statements of this sort. Nor did they ever ignore a curative

instruction from the judge about making improper statements. *Neal* favors denial here.

The *Edwards v. Sears, Roebuck and Company*, 512 F.2d 276, 284-285 (5th Cir. 1975) case is also distinguishable. There, plaintiff's counsel falsely asserted that a defendant had made an admission and the court found that the nature of this false admission was so extreme, grossly improper, and prejudicial that it denied the defendants a fair trial. *Id.* Nothing of the sort occurred here. And in *Shaps v. Provident Life & Accident Ins*, a case concerning the payment of disability benefits, counsel argued that comments as to the plaintiff's financial condition were improper but the court found otherwise because the plaintiff had had "opened the door" by initiating a discussion of her own financial situation. *Id*.

Here, Lil Joe complains that the testimony elicited from Weinberger about the amount he paid for the subject copyrights in the bankruptcy, and the amount of money he has made from the subject copyrights, was improper. (Brief, pg. 17-19, 25). But Weinberger himself opened the door to these discussions during his testimony by repeatedly testifying about how financially difficult he claimed it had been to obtain the copyrights with long narratives on how he struggled to come up with the funds, borrowing money from multiple relatives, obtaining several mortgages, and even liquidating his pension plan, in an effort to get ahead of Defendants' forthcoming questioning and endear himself to the jury. DE 275 at 57-58; DE 276 at 132; DE 278 at 40. As in *Shaps*, Lil Joe cannot complain that Defendants spoke to the wealth he earned from exploiting the copyrights at issue where he first testified at length about the financial hardship, he claimed he endured to obtain those copyrights.

Lil fails to even address the facts in *Ad-Vantage Tel. Directory Consultants v. GTE Directories Corp*. when claiming it supports the proposition that even a few errors can warrant a new trial where it is unclear if they substantially swayed the jury, presumably because the facts

there demonstrate that Lil Joe's motion is hollow. In *Ad-Vantage*, the court found that repeated a irrelevant questioning regarding an expert witness's personal financial troubles and decades old disciplinary actions were prejudicial.. *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1463–64 (11th Cir. 1994). Lil Joe cites no analogous clear errors in questioning any of Lil Joe's witnesses because none were made.

The *Twachtman v. Connelly* case also supports Defendants, noting that new trials based on prejudiction remarks should be ordered only in the rarest of circumstances. 106 F.2d 501, 508-09 (6th Cir. 1939). The court in *Clapper v. American Realty Investors, Inc.*, 95 F.4th 309, 314 (5th Cir. 2024), agreed, noting that they often affirm "the denial of a motion for new trial where sparse prejudicial remarks, viewed in the context of the entire trial, were unlikely to inflame the passions of the jury." *Id.* at 317. The court explained that "[t]hough improper, the isolated remarks in those cases, when examined in the aggregate, did not affect the fairness of the trial."[2] *Id.* This Court considered all of Defendants' statements and conduct at trial and ruled accordingly. Lil Joe fails to provide any reason to revisit the Court's and the jury's well-reasoned determinations.

Incredibly, Lil Joe asserts Defendants' closing argument primarily addressed Weinberger's payments as made in the bankruptcy and "said nothing about the Copyrights,

---

[2] The *Clapper* court found the conduct at issue extreme: "There is no doubt that these remarks, considered collectively, extend far beyond permissible hyperbole or 'expressive language,' and were designed to bias the jury against Clapper and his counsel. Khoury's and Shamoun's improper statements pervaded closing argument. As noted above, they employed nearly every type of improper argument identified by our court, including highly improper and personal attacks against opposing counsel, remarks about Clapper's wealth, a discussion of matters not in the record, insinuations that Clapper had lower moral standards because he was from Michigan, and suggestions of Clapper's bad motives through counsels' opinion. These attacks 'unquestionably tarnish[ed] the badge of evenhandedness and fairness that normally marks our system of justice.'" *Clapper*, 95 F.4th at 316.

nothing about how they were transferred, and not a word about whether the group members were Luke Records employees. Only that Mr. Weinberger was a scoundrel who somehow swindled them." (Brief, pg. 15). This is wholly and transparently false, as a simple review of defense counsel's closing makes clear that he covered each issue before the jury.

Defense counsel, in his closing, discussed the 1990 Agreement (DE 278 at 59-61), the testimony given by each of Lil Joe's witnesses (DE 278 at 57-64), the purported tax audit (DE 278 at 65-66,78), the origins of 2 Live Crew and their verbal agreement concerning the Copyrights (DE 278 at 69-73), the transfer of those Copyrights to Campbells' label, how the group performed under that agreement between 1986 and 1990 (DE 278 at 59, 67, 70, 73-74, 92), the terms of the Agreement, the lack of evidence presented by Lil Joe (DE 278 at 59, 61, 65-66, 79-80, 89), the evidence demonstrating that the members of 2 Live Crew were not employees (DE 278 at 68-70, 77, 79-84), the 1991 Agreements (DE 278 at 68-69, 80, 82-83, 91-92), Weinberger's participation in the bankruptcy of Luke Records (DE 278 at 56-57), and even the language and purpose of Section 203 termination rights (DE 278 at 66). Lil Joe's assertions on the improper substance of Defense counsel's closing arguments are baseless.

Notably, Lil Joe's closing was littered with falsehoods. For example, Lil Joe's counsel represented to the jury that Lil Joe had 2 Live Crew's employee tax returns and even entered them into evidence (DE 278 at 50); that the integration clause in the 1990 Agreement stated that there is no prior oral agreement (DE 278 at 45, 100); that Mark Ross testified there was no oral agreement prior to the 1990 Agreement (DE 278 at 55, in direct contrast with Ross' testimony (**Ex. A** at 7:9-23, 32:14-21, 33:10-18);  that Paychex is a company that solely processes payroll checks (DE 278 at 50-51); that Weinberger testified that he had "never heard of Milton Rothman" (DE 278 at 54, in direct contrast with Weinberger testimony DE 275 at 84-85, 225);

and that the (P) on an album cover could only mean that the members of 2 Live Crew were employees (DE 277 at 167, DE 278 at 53, 104). These were all *demonstrably* false remarks.

Finally, Lil Joe's arguments relating inflammatory language and allegedly inaccurate statements fail given that Lil Joe's counsel constantly made far more egregious statements. Indeed, Lil Joe's counsel proffered a narrative that Luther Campbell intentionally withheld documents that included the Schedule A to the 1991 Agreements and the Luke Records tax audit documents (Brief, pg. 5, 19, 21), that Campbell lied on the stand and gave conflicting testimony to further his case (Brief, pg. 13-14), and that the 1990 Agreement was a phony, a canard that Lil Joe returned to all trial and even during closing argument,[3] and which the Brief conveniently omits. Lil Joe's "proverbial pot calling the kettle black" (Brief, pg. 21) statement exemplifies irony.

## E.   The instruction regarding the transfer was in accord with Eleventh Circuit precedent

Lil Joe argues, frivolously, that "it was legal error to instruct the jury that the Copyrights could have been transferred orally and then later memorialized in writing when (1) the purported writing never mentioned any oral agreement, let alone the specifics of it, and actually featured an integration clause stating there were no other oral or written agreements (2) there was no evidence presented about the specifics of prior oral agreements, and (3) Defendants own conduct showed the 1991 Agreements were the operative instruments of transfer. Brief, pg. 25, citing *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007); *Spinelli v. Nat'l Football League*, 903 F.3d 185, 198 (2d Cir. 2018). Tellingly, they cite to out-of-Circuit precedent and fail to address *Imperial*

---

[3] Wolfe states Defendants "came up with a story, and the story they came up with is, oh, this recording contract confirms a prior oral agreement, and the prior oral agreement is what's confirmed here." DE 278 at 43.

*Residential Design, Inc. v. Palms Development Group*, 70 F.3d 96 (11th Cir. 1994), which is the binding authority on this point. And the jury instruction tracked cleanly with this binding precedent, which instructs that "an oral assignment later ratified or confirmed by a written memorandum of the transfer." *Imperial Residential Design*, 70 F.3d at 99, quoting *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc*., 29 F.3d 1529, 1532–33 (11th Cir.1994).

Lil Joe does reference *Imperial* but claims it is inapplicable here because the "1990 Agreement made no reference to any prior oral agreement," but there is no requirement that the writing reference any earlier oral agreement. Brief, pg. 26. The *Imperial* court makes no mention of such a requirement. A subsequent written document need only confirm the oral agreement such that it satisfies the statutory writing requirement of 17 U.S.C. § 204(a). *Id.* at 99. None of the many other cases acknowledging the propriety of a later written instrument confirming an oral transfer contain a requirement that the document specifically refer to a prior agreement. The 1990 Agreement was simply the written embodiment of the oral agreement made between the members of 2 Live Crew.

Lil Joe also argues, frivolously, that no witness testified about a prior oral agreement, but in reality all parties to that agreement testified that they had an oral agreement when they went into the studio. See, e.g., DE 276, Trial Tr. Vol. 3, pg. 146, ln. 24, Ross Video, tracking Ross Deposition Transcript p. 7, ll: 9-23, p. 32, ll. 16-18, 33 ll. 8-18; Campbell testimony (DE 277 at 16-17, 18, 20-21, 23, 28, 29-30, 30-31).

Lil Joe also lacked standing to challenge the 1990 Agreement's transfer of the copyrights at issue because Lil Joe is merely a third party to a transfer that all participating parties agree was valid. Courts have repeatedly confirmed that, under the Copyright Act, where there is "no dispute between the copyright owner and the transferee," it would be "unusual and unwarranted

to permit a third-party" to challenge the transfer. See *Imperial Residential Design*, 70 F.3d at 99 (addressing infringement), citing *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2nd Cir.1982). The undisputed facts at trial have established that there is no dispute between the members of 2 Live Crew and Luther Campbell (on behalf of his record label) that the 1990 Agreement confirmed their prior oral transfer of the copyrights in the Subject Albums from 2 Live Crew to Campbell's label. And not only is it undisputed that Lil Joe was a third party to the transfer with no involvement in the oral agreement or the 1990 confirmation, but Weinberger confirmed that he was not involved with 2 Live Crew in any way at the time the transfer occurred. Because the undisputed facts show that there is no dispute between the parties to the 1990 Agreement that it validly transferred the copyrights at issue, and that Lil Joe was an uninvolved third party to that transfer, Lil Joe lacks standing to challenge the transfer as a matter of law.

Because the evidence presented at trial shows that there is no dispute between the members of 2 Live Crew and Campbell's label that the 1990 Agreement transferred the copyrights at issue from the members to the label and that 2 Live Crew were not employees or creating the Subject Albums as specially commissioned works for hire, Lil Joe lacks standing to assert otherwise as a third party with no involvement of any of these transactions or relationships. Judgment as a matter of law is thus appropriate.

### F.      The motion should be denied

As proven at trial, 2 Live Crew originally owned the copyright in the Subject Albums, transferred those copyrights to Campbell's record label via the 1990 Agreement, and 35 years or so later, terminated that transfer, which resulted in those copyrights returning to Defendants. The instant motion should be denied.

Dated: December 21, 2024

Respectfully submitted,

By: */s/ Joel B. Rothman*
Joel B. Rothman, Esq.
FL Bar No. 98820
SRIP LAW
21301 Powerline Road, Suite 100
Boca Raton, Florida 3343
(561) 404-4350
joel.rothman@sriplaw.com

*-with-*

Scott Alan Burroughs, Esq.
(admitted *pro hac vice*)
DONIGER / BURROUGHS
237 Water Street, First Floor
New York, New York 10038
(310) 590 – 1820
scott@donigerlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 21, 2024, a true and authentic copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:      */s/ Joel B. Rothman*

Joel B. Rothman